1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Goodman (Cal. State Bar No. 154692)
2  Amy E. Rose (Cal. State Bar No. 222167)
   Ann J. Lee (Cal. State Bar No. 236501)
3  One Maritime Plaza, Suite 300
   San Francisco, CA  94111-3492
4  Telephone:  +1.415.954.0200
   Facsimile:   +1.415.393.9887
5  Email:   mgoodman@ssd.com
   Email:   arose@ssd.com
6  Email:   ajlee@ssd.com

7  Attorneys for Defendant
   UNITED STATES FIRE INSURANCE COMPANY
8

9

10           IN THE UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  (OAKLAND DIVISION)

13

14  LENSCRAFTERS, INC.; and EYEXAM        Case No. CV-07-2853 SBA
    OF CALIFORNIA, INC.;                  The Honorable Saundra B. Armstrong
15
                 Plaintiffs,              **E-FILING**
16
          vs.                            **UNITED STATES FIRE INSURANCE**
17                                       **COMPANY'S MOTION TO DISMISS OR,**
    LIBERTY MUTUAL FIRE INSURANCE        **IN THE ALTERNATIVE, STAY ACTION IN**
18  COMPANY; EXECUTIVE RISK              **FAVOR OF PRIOR-PENDING NEW YORK**
    SPECIALTY INSURANCE COMPANY;        **STATE COURT ACTION**
19  UNITED STATES FIRE INSURANCE
    COMPANY; MARKEL AMERICAN             Date:        September 11, 2007
20  INSURANCE COMPANY; and               Time:        1:00 p.m.
    WESTCHESTER FIRE INSURANCE           Courtroom:  3
21  COMPANY,

22               Defendants.

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................................. 2

    A.   Luxottica Negotiated And Purchased Its Insurance Policies From Its
        Principal Place Of Business In New York State ................................................ 2

    B.   Customers Sued Luxottica And Related Entities For Their "Co-Location"
        Business Model ................................................................................................ 4

    C.   LensCrafters, Eyexam and EyeMed Bring A Declaratory Judgment Action
        To Establish Their Insurers' Duties To Defend .............................................. 5

    D.   Subsequent Developments In The *Snow* Action ............................................ 6

    E.   U.S. Fire Commenced A Lawsuit In New York State Court Regarding
        Coverage For The *Snow* Action ................................................................... 7

    F.   LensCrafters Files This Lawsuit In Reaction To The New York Action .............. 7

III.  DISCUSSION ..................................................................................................... 8

    A.   Whether This Action Proceeds Along With The Pending New York Action
        Is Left To The Court's Discretion .................................................................. 8

    B.   The New York State Court Action Creates A Presumption Against This
        Court Exercising Its Permissive Jurisdiction Over This Action ......................... 9

    C.   The Issues To Be Resolved In This Case Are State Law Issues That Are
        Governed By New York Law ....................................................................... 13

        1.   Choice of Law is a Factor to Consider in Determining the
            Appropriate Court ................................................................................ 13

        2.   This Court Would Have To Apply New York Law ................................. 14

        3.   Location of the Risk at Issue Does Not Change the Analysis .................. 16

    D.   The Plaintiffs Should Not Be Allowed To Forum Shop .................................. 18

    E.   Dismissing This Action Promotes Judicial Efficiency And Avoids
        Duplicative Litigation .................................................................................. 20

IV.   CONCLUSION ................................................................................................. 21

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*American Automobile Ins. Co. v. Freundt*,
    103 F.2d 617 (7th Cir. 1939)................................................................... 20

*Arno v. Club Medical, Inc.*,
    22 F.3d 1464 (9th Cir. 1994)................................................................... 15

*Avondale Indust. v. Travelers Indemnity Co.*,
    774 F.Supp. 1416 (S.D.N.Y. 1991)......................................................... 16

*Brillhart v. Excess Ins. Co. of America*,
    316 U.S. 491 (1942).......................................................................... *passim*

*Calavo Growers of California v. Belgium*,
    632 F.2d 963 (2d. Cir. 1980)................................................................... 14

*Continental Cas. Co. v. Robsac Indus.*,
    947 F.2d 1367 (9th Cir. 1991)............................................................ *passim*

*Exxon Shipping Co. v. Airport Diner Depot, Inc.*,
    120 F.3d 166 (9th Cir. 1997)................................................................... 20

*GlobalNet Fin. Inc. v. Frank Crystal & Co.*,
    2004 U.S.Dist. LEXIS 13731 (S.D.N.Y.) ............................................... 16

*Government Employees Ins. Co. v. Dizol*
    133 F.3d 1220 (9th Cir. 1998)............................................................ 9, 12

*Industrial Addition Ass'n. v. Commissioner*,
    323 U.S. 310 (1945)................................................................................ 19

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941)................................................................................ 14

*Patton v. Cox*,
    276 F.3d 493 (9th Cir. 2002)................................................................... 14

*Polido v. State Farm Mut. Auto. Ins. Co.*,
    110 F.3d 1418 (9th Cir. 1997)............................................................ 10, 11

*Snodgrass v. Provident Life & Acc. Inc. Co.*,
    147 F.3d 1163 (9th Cir. 1998)................................................................. 21

*Tjontveit v. Den Norske Bank ASA*,
    997 F.Supp. 799 (S.D. Tex. 1998) .......................................................... 14

*Van Winkle v. Allstate Ins. Co.*,
    290 F.Supp.2d at 1158 (N.D. Cal. 2003) ........................................... 17, 18

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)....................................................................... 8, 9, 11, 14

1

2

## TABLE OF AUTHORITIES
### (Continued)

3

Page(s)

### STATE CASES

4

5

*California Cas. Indem. Exch. v. Pettis,*
    193 Cal.App.3d 1597 (1987)............................................................... 15

6

*Celotex Corp. v. American Ins. Co.,*
    199 Cal.App.3d 678 (1987).................................................................. 15

7

*Dixon Mobile Homes, Inc. v. Walters,*
    48 Cal.App.3d 964 (1975)..................................................................... 15

8

9

*Klein v. Superior Court,*
    198 Cal.App.3d 894 (1988)................................................................... 15

*Reich v. Purcell,*
    67 Cal.2d 551 (1967) ........................................................................... 15

10

*Stonewall Surplus Lines Ins. Co. v. Johnson,*
    14 Cal.App.4th 637 (1993) ............................................................ 16, 17

11

12

13

### STATUTES

Cal. Bus. & Prof. Code § 655 ......................................................................... 5

14

Cal. Civ. Code § 1646........................................................................... 14, 15, 17

15

28 U.S.C. § 2201(a) ....................................................................................... 8

16

17

### OTHER AUTHORITIES

18

1 Witkin *Summary of California Law*, Contracts § 62 (10th Ed. 2006) ........................... 15, 17

19

Restatement Second of Conflict of Laws §§ 188, 193................................... 15, 16, 17

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

TABLE OF AUTHORITIES

1   ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that, on September 11, 2007 at 1:00 p.m., or as soon thereafter

3   as counsel can be heard in the above-entitled Court located at 1301 Clay Street, Courtroom 3,

4   Oakland, California, defendant United States Fire Insurance Company ("U.S. Fire") will and

5   hereby does move to dismiss, or in the alternative stay, this action in favor of the prior-filed

6   action -- proceeding on the same issues of contract interpretation and involving the same parties --

7   currently pending in New York State Court.  This motion is based upon this Notice of Motion and

8   Motion, the Memorandum of Points and Authorities included herewith, the Request for Judicial

9   Notice, the declarations of Amy E. Rose and the exhibits thereto, and such other evidence or oral

10  argument as may be presented to the Court at the hearing on this motion.

11                      **MEMORANDUM OF POINTS AND AUTHORITIES**

12                            **I.    INTRODUCTION**

13         This lawsuit involves a dispute over the meaning and effect of contracts issued in New

14  York to a New York entity.  That same state-law dispute between those same parties is already

15  pending in New York State Court.  Despite these facts, the plaintiffs -- or at least their California-

16  based counsel -- want a federal court in California and, potentially, a California jury to become

17  embroiled in this litigation.  Under settled principles federal law, however, this declaratory relief

18  action does not belong in either federal court or in California.

19         U.S. Fire issued excess commercial liability insurance policies in New York to Luxottica

20  U.S. Holdings Corporation ("Luxottica") -- a New York-based company -- providing coverage in

21  the United States and Canada to a network of international Luxottica-related entities with

22  holdings and operations around the world.  Given the locale of the parties and of the negotiation,

23  execution and issuance of the contracts at issue, U.S. Fire reasonably expected that, if a dispute

24  arose regarding obligations under its policies, those issues would be resolved in New York, under

25  New York law, by a New York court.  When such a dispute did arise, U.S. Fire naturally brought

26  an action to resolve that dispute in New York, the jurisdiction with the greatest interest in

27  resolving disputes involving its citizen and arising under contracts negotiated and issued within

28  its borders -- and the state whose law will govern such disputes.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

Plaintiffs responded to the New York action by filing this federal action seeking the identical declaratory relief sought in New York.  There is no dispute that this action and the prior-filed New York action involve the same underlying legal dispute, require interpretation of the same contracts and will resolve the same issues.  Nor is there any question that those issues are entirely creatures of state contract and insurance law -- under New York law, which this Court would have to apply if it assumed jurisdiction over this matter -- in which this Court has only a minimal, if any, interest.

By trying to have New York contracts interpreted in California and by asking a federal court in California to apply New York state law, the plaintiffs ask the Court to upset the reasonable expectations of the contracting parties, to ignore U.S. Fire's prior-filed state court action, to proceed with duplicative litigation that could result in conflicting rulings and to address issues of state law in which this Court has no interest.  Well-settled federal law compels the Court to defer to the prior-filed state court action involving the same parties and same state-law issues, allow that action to proceed unencumbered and dismiss, or alternatively stay, this action.

## II.     FACTUAL BACKGROUND

### A.     Luxottica Negotiated And Purchased Its Insurance Policies From Its Principal Place Of Business In New York State

Luxottica is a New York-based subsidiary of Luxottica Group S.p.A., the world's largest eyewear conglomerate that controls hundreds of eye care and eyewear-related companies worldwide, including the Sunglass Hut and LensCrafters -- the largest retail sellers of sunglasses and prescription eyewear in the United States.  (*See* Declaration of Amy E. Rose ("Rose Decl."), Ex. A at ¶¶ 5-9, 30-33, Ex. B.)  Luxottica negotiated and obtained the primary and excess insurance policies that make up its comprehensive commercial and professional liability insurance program, which provides coverage throughout the United States and Canada for a vast network of Luxottica-related companies, including Italian, Canadian and American entities with world-wide holdings and operations.  (*See*, *e.g.*, Rose Decl., Ex. D at 4 (noting that Luxottica's policies also provide coverage for Luxottica Group, S.p.A., Luxottica Canada, Inc. and LensCrafters, Inc. among numerous others).)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

- 2 -
U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

1      In 1998, Luxottica worked with a New York-based insurance broker -- Blumencranz-

2  Klepper-Wilkins, Ltd. of Lake Success, New York -- to negotiate and purchase CFI Defender

3  2000 Commercial Umbrella Policy number 553-0587552-2 from U.S. Fire for the period from

4  February 1, 1998 to February 1, 1999 (the "1998 Policy").  (*Id.* at 1.)  The 1998 Policy provides

5  $25,000,000 in commercial liability coverage in excess of primary commercial liability coverage

6  for certain losses in an aggregate amount of at least $6,000,000 issued by Liberty Mutual

7  Insurance Company ("Liberty Mutual").  (Rose Decl., Ex. D at 1, Ex. G.)  In 1999 and 2000, U.S.

8  Fire issued policies numbered 533-068740-7 and 553-076092-8, each of which provided the same

9  type and amount of coverage as the 1998 Policy in excess of the same type and amount of

10  underlying primary coverage from Liberty Mutual.  (Rose Decl., Exs. D-I.)  Each of U.S. Fire's

11  policies was negotiated between New York-based companies -- Luxottica and Blumencranz -- in

12  New York State and the policies were each issued in New York.  (Rose Decl., Exs. D-F.)

13  LensCrafters and Eyexam2000 of California, Inc.[1] are each an additional named insured under the

14  three U.S. Fire policies.  (*Id.*)

15      Although U.S. Fire did not participate in Luxottica's procurement of its primary insurance

16  policies, it understands that Luxottica also negotiated and purchased its primary commercial

17  general liability coverage from 1998 until at least 2006 in New York from Liberty Mutual, which

18  policies were also issued in New York.  (*See* Complaint at ¶ 16; Rose Decl., Exs. G-I at 1.)[2]

19  Luxottica also purchased primary Managed Care Organization Errors and Omissions Liability

20  insurance for a number a years from Executive Risk Specialty Insurance Company ("ERSIC").

21  (*See* Complaint ¶¶ 18-19.)  ERSIC previously noted to this Court that its policies were also

22  negotiated and issued in New York.  (*See* Rose Decl., Ex. J at 5, fn. 5.)

23      U.S. Fire also understands that Luxottica purchased a commercial umbrella liability policy

24  from Markel American Insurance Company for the period from February 1, 2001 to February 1,

25

26  [1] Eyexam of California, Inc. appears to be the successor in interest to either EyeMed, Inc. or Eyexam2000 of California, Inc. -- or both.  (Rose Decl., Ex. C)  EyeMed, Inc. is an additional named insured under the 2000-2001

27  U.S. Fire policy only.  (Rose Decl., Ex. F.)

28  [2] Although not attached here, U.S. Fire understands that the Liberty Mutual policies issued from 2001 to 2006 were, similarly, issued to Luxottica in New York State.  (*See* Rose Decl. at ¶ 10.)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

1  2002, providing coverage in the amount of at least $15 million per occurrence and in the

2  aggregate in excess of the underlying Liberty Mutual policy. (*See* Complaint at ¶¶ 22-23.)  For

3  the same period, Luxottica purchased an additional $10 million policy -- excess to the Markel

4  policy -- from defendant Westchester Fire Insurance Company, a New York company. (*See*

5  Complaint at ¶¶ 11, 24.)  Westchester also issued to Luxottica four commercial umbrella policies,

6  from February 1, 2002 to February 1, 2006, each of which provides at least $25 million in

7  coverage per occurrence and in the aggregate in excess of the underlying Liberty Mutual policies.

8  (*See* Complaint at ¶¶ 25-26.)

9
10  **B.    Customers Sued Luxottica And Related Entities For Their "Co-Location" Business Model**

11          LensCrafters, which opened its first store in 1983, promises glasses "in about an hour" at

12  almost 900 locations in North America. (*See* Rose Decl., Ex. A at ¶ 31.)  To do so, it employs a

13  business model under which an optometrist, optical laboratory and optician are all present and

14  operating in the same (or physically proximate) retail space. (*Id.* at ¶ 34.)  A customer can

15  complete an eye exam, select and purchase frames and return to pick up his or her glasses in about

16  an hour from one location. (*Id.*)  In California, the optometrists located in or near LensCrafters' stores

17  are employed by Eyexam -- a Knox-Keene Act licensed specialized health care service company that

18  is also part of the Luxottica family of eye care and eyewear companies. (*Id.* at ¶¶ 34-35.)

19          In *Melvin Gene Snow, et al. v. LensCrafters, Inc., et al.*, San Francisco Superior Court

20  Case No. CGC-02-40554 (the "*Snow* action"), an as-yet-uncertified class of plaintiffs alleges that

21  the "co-location" business model and practices employed by LensCrafters violate several

22  California statutes, including the Unfair Business Practices Act, Consumer Legal Remedies Act

23  and Confidentiality of Medical Information Act ("COMIA").[3]  (Rose Decl., Ex. A at ¶¶ 72-117.)

24  The *Snow* plaintiffs' claims are based predominantly on alleged violations of California statutes

25  ─────────────────

26  [3] The *Snow* plaintiffs sued Luxottica, its parent company Luxottica Group, S.p.A. and a number of its subsidiaries -- including the United States Shoe Corporation, Luxottica Sun Corporation, LensCrafters, Inc., Eyexam of California, Inc., EyeMed, Inc., EyeMed Vision Care, L.L.C. and Eyexam 2000.  LensCrafters has represented to this Court that -

27  -- with the exception of it and Eyexam -- each of the Luxottica-related entities has been dismissed from the *Snow* action. (*See* Rose Decl., Ex. O at 1:15-17.)  To date, however, U.S. Fire has only been able to verify that the United

28  States Shoe Corporation and Luxottica Group, S.p.A. were dismissed for lack of personal jurisdiction.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

- 4 -

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

that prohibit opticians (*i.e.*, companies that are registered and authorized to sell eyewear, including prescription glasses and contact lenses) from hiring or providing services at or near the same location as an optometrist (*i.e.*, a licensed eye care professional trained to diagnose visual defects or impairments and prescribe corrective lenses or treatment). (Rose Decl., Ex. A at ¶ 25.) *See* Cal. Bus. & Prof. Code § 655 (prohibiting licensed optometrists from having "any membership, proprietary interest, coownership, landlord-tenant relationship, or any profit-sharing arrangement in any form, directly or indirectly" with an optician and vice versa) and 2556 (making it unlawful for opticians "to advertise the furnishing of, or to furnish, the services of . . . an optometrist," or "to directly or indirectly employ or maintain on or near the premises used for optical dispensing, . . . an optometrist"). The *Snow* plaintiffs also asserted COMIA claims based upon the alleged improper sharing of patient information between Eyexam optometrists and employees selling eyewear for LensCrafters. (*Id.* at ¶¶ 109-117.) The *Snow* action -- which was originally filed on March 12, 2002 -- seeks injunctive relief, statutory damages, compensatory damages and other relief. (*Id.* at 30-31.)

**C.    LensCrafters, Eyexam and EyeMed Bring A Declaratory Judgment Action To Establish Their Insurers' Duties To Defend**

In early 2004, the plaintiffs and EyeMed Vision Care, L.L.C. ("EyeMed") filed a complaint for Declaratory Relief and Breach of Contract against their primary insurers -- Liberty Mutual and ERSIC --  before this Court in Case No. 04-cv-01001-SBA. (S*ee* Rose Decl., Ex. K at 2.) In that action, the plaintiffs and EyeMed brought three claims for relief:  (1) Declaratory Judgment Re Defendants' Duty to Defend, (2) Declaratory Judgment Re Defendants' Duty to Indemnify and (3) Breach of Contract Re Defendants' Duty to Defend. (*Id.*) None of the plaintiffs' first-layer excess insurers -- U.S. Fire, Markel and Westchester -- was named a defendant in that suit.

Following the parties' cross-motions for partial summary judgment regarding the duty to defend, this Court determined that both Liberty Mutual and ERSIC were obligated to defend the *Snow* action under their respective policies. (Rose Decl., Ex. J.) The Court also held, however, that the applicable ERSIC policy was excess to Liberty Mutual's policies and, therefore, did not

1    owe a current obligation to defend against the *Snow* action.  (Rose Decl., Ex. L.)  Subsequently,

2    the parties apparently entered into a stipulation pursuant to which the plaintiffs and EyeMed

3    agreed to dismiss as unripe their second and third causes of action regarding the duty to

4    indemnify and for breach of contract.  (Rose Decl., Ex. J at 2.)  According to the plaintiffs, that

5    stipulation "provided that:  (1) any party to the stipulation could file a new action to adjudicate

6    the dismissed indemnity claims, (2) such action must be filed in the Federal District Court for the

7    Northern District of California, and (3) the parties to the stipulation consent to exclusive

8    jurisdiction and venue of such an action in this Court."  (*Id*.)

9         On November 7, 2005, the Court entered final judgment in that action and the case was

10   deemed terminated.  (Rose Decl., Ex. M.)  In December 2005, Liberty Mutual appealed the

11   judgment to the Ninth Circuit.  (*Id*.)   As of the filing of this motion, that action remains on appeal

12   awaiting oral argument.  (Rose Decl. at ¶ 14.)

13   **D.    Subsequent Developments In The *Snow* Action**

14        As the plaintiffs allege, after years of litigation in the *Snow* action, the parties to that

15   dispute "are presently involved in negotiations and mediation sessions through which they are

16   trying to reach a settlement."  (Complaint at ¶ 3.)  According to the plaintiffs, the parties have

17   made "significant progress" toward settlement and are "hopeful" that a settlement will be

18   finalized at an upcoming mediation session.  (*Id*.)  Plaintiffs allege, therefore, that -- for the first

19   time -- they have a present, active controversy with their insurers, including U.S. Fire, concerning

20   their duty to indemnify any settlement of the *Snow* action.  (*Id.* at 4.)

21        The *Snow* action raises the following issues under each of the applicable insurance

22   policies potentially implicated by the current state of that litigation:  (1) whether the *Snow* action

23   includes claims for which the defendants' policies provide coverage, (2) whether the *Snow* action

24   seeks damages that are indemnifiable (3) whether the *Snow* action involves one, multiple or

25   millions of "occurrences" under the defendants' policies and (4) how much, if anything, is each

26   primary insurer obligated to pay.  Depending upon how a court resolves these issues, that court

27   will determine whether any of the insurer-defendants are obligated to indemnify the Luxottica-

28   related entities for settlement of the *Snow* action and, if so, which insurers owe that obligation and

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1  in what amount.  Each of these issues requires analysis of the respective insurer-defendants'

2  policies of insurance under applicable state law to determine their contractual obligations to

3  Luxottica and its related companies.

4
5  **E.      U.S. Fire Commenced A Lawsuit In New York State Court Regarding Coverage For The *Snow* Action**

6         In light of the coverage issues raised by the potential settlement of the *Snow* action, on

7  May 24, 2007, U.S. Fire filed a lawsuit in the Supreme Court of the State of New York, County

8  of New York, Index No. 07/07338 (the "New York Action"), against eight defendants, including

9  each of the Luxottica-related defendants named in the *Snow* action and most of the defendant-

10  insurers named in this action.[4]  (*See* Request for Judicial Notice ("RJN"), Ex. 1.)  By its

11  complaint, U.S. Fire seeks a declaration of its rights and obligations under the terms and

12  conditions of its insurance policies and the other insurance policies issued to Luxottica.  (*Id*.)

13  **F.      LensCrafters Files This Lawsuit In Reaction To The New York Action**

14         On May 31, just one week after U.S. Fire filed the New York Action, two of the

15  Luxottica-related defendants, LensCrafters and Eyexam, filed this declaratory relief lawsuit.

16  (Complaint at 1.)  Like the New York Action, this suit arises from the claims alleged in the *Snow*

17  action and requests a determination of the insurers' obligations to provide coverage for the *Snow*

18  action under their respective policies of insurance, the same contracts at issue in the New York

19  Action.  (*Id*.)

20

21

22

23

24

25

26
27  [4] ERSIC, one of LensCrafters' primary professional liability insurers that is also a defendant in this action, was not named as a defendant in the New York Action.  (RJN, Ex. A at 1.)  ERSIC, however, is amenable to service and

28  jurisdiction in New York and can be easily added to the New York action, if necessary.  (*See* Rose Decl., Ex. J at 5, fn. 5 (noting that the ERSIC policies at issue were negotiated and issued in New York).)

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

### III.    DISCUSSION

**A.    Whether This Action Proceeds Along With The Pending New York Action Is Left To The Court's Discretion**

While this Court has permissive jurisdiction over declaratory relief actions like this one, brought on the basis of diversity, it exercises that jurisdiction only in its sound discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-89 (1995) ("[D]istrict courts posses discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction"); *see also* 28 U.S.C. § 2201(a) (2007) (a district court "**may** declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added).  Where -- as here -- a federal declaratory relief action based on diversity jurisdiction is commenced in reaction to or in anticipation of a state court action involving the same parties and state law issues, it is settled that the federal court should abstain from exercising jurisdiction and dismiss the action in favor of the state court proceeding.  *Wilton*, 515 U.S. at 289; *Brillhart*, 316 U.S. at 494.

The United States Supreme Court has confirmed that a federal court's broad discretion to abstain in declaratory relief actions empowers it to stay or dismiss such actions in favor of parallel state court proceedings.  *Wilton*, 515 U.S. at 287-89 ("[T]here is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action") (citations omitted).  In *Wilton*, London Underwriters brought suit in the Southern District of Texas on the basis of diversity jurisdiction seeking a declaration that its policies did not provide coverage for a claim against its insured.  *Id.* at 279-80.  Approximately one month later, the insured filed a state court action in Travis County, Texas against London Underwriters encompassing the same coverage issues raised in the federal court action.  *Id.*  The district court determined that, because the suits required resolution of the same state law legal issues, a stay was warranted to avoid piecemeal litigation and to bar London Underwriters' attempts at forum shopping for the federal forum.  *Id.*  The Fifth Circuit affirmed the decision and the Supreme Court granted *certiorari* to resolve a then-existing

1    circuit split regarding the standard governing a district court's decision to stay a declaratory

2    judgment action in favor of parallel state litigation.  *Id.* at 281.

3        Upon review, the Supreme Court unequivocally reaffirmed its decades-old decision in

4    *Brillhart v. Excess Insurance Company of America*, in which the Court explained that "ordinarily

5    it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory

6    judgment suit where another suit is pending in a state court presenting the same issues, not

7    governed by federal law, between the same parties."  *Brillhart*, 316 U.S. at 495.  Indeed, "where

8    another suit involving the same parties and presenting opportunity for ventilation of the same

9    state law issues is pending in state court, a district court might be indulging in 'gratuitous

10   interference' if it permitted the federal declaratory action to proceed."  *Wilton*, 515 U.S. at 283

11   (quoting *Brillhart*, 316 U.S. at 495).  Accordingly, in *Wilton*, the Supreme Court determined that

12   a district court's decision to decline jurisdiction in a declaratory judgment action rests within its

13   sound discretion and does not require a showing of "exceptional circumstances."  *Id.* at 289-90.

14   **B.    The New York State Court Action Creates A Presumption Against This Court
             Exercising Its Permissive Jurisdiction Over This Action**

15

16       Where -- as here -- a state court action is filed and is pending concurrently with a federal

17   declaratory suit involving substantially the same issues and parties, a district court should

18   presumptively decline to exercise jurisdiction.  *Government Employees Ins. Co. v. Dizol*

19   *("GEICO")*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("If there are parallel state proceedings

20   involving the same issues and parties pending at the time the federal declaratory action is filed,

21   there is a presumption that the entire suit should be heard in state court"); *Continental Cas. Co. v.*

22   *Robsac Indus.*, 947 F.2d 1367, 1370 (9th Cir. 1991) ("[W]hen a state court action is pending

23   presenting the same issues of state law as is presented in the federal declaratory suit, there exists a

24   presumption that the entire suit should be heard in state court").[5]  Because U.S. Fire's prior-filed

25   [5] The district court, however, may also consider the three principal rationales of *Brillhart* to determine whether any
     of the Supreme Court's enunciated concerns support application of the presumption.  *Continental Cas.*, 947 F.2d at

26   1371.  Those three rationales are (1) avoiding a needless determination of state law issues by federal courts,
     (2) discouraging litigants from filing declaratory judgment actions as a means of shopping for a federal forum and

27   (3) avoiding duplicative or piecemeal litigation.  *Id.*  Here, the presumption in favor of dismissing this litigation is
     fully supported by each of the *Brillhart* Court's rationales, providing this Court with "particularly strong" reasons to

28   apply the presumption and dismiss or stay this action.  *Id.* at 1373.  (*See* Sections III.C-E, *infra*.)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

- 9 -

1    New York Action involves substantially the same parties and the very same state law issues

2    raised in this action, this Court should presumptively dismiss or stay this action.

3         In *Continental Casualty*, the insured filed suit against its insurer and a number of the

4    insurer's California-based employees for breach of contract in California state court.  947 F.2d at

5    1367.  One month later, the insurer filed a federal declaratory judgment action on the basis of

6    diversity jurisdiction.  *Id.*  The federal court exercised its jurisdiction and the case proceeded to

7    judgment.  *Id.*  On appeal, the Ninth Circuit confirmed the Supreme Court's presumption that,

8    where a proceeding is pending in state court at the time that a federal declaratory action involving

9    the same issues and parties is filed, the dispute must be heard in the state court action.  *Id.* at 1373

10   (concluding that the case presented "strong reasons to apply the *Brillhart* presumption that the

11   entire suit should be heard in state court" and noting that district courts "should generally decline

12   to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only

13   issues of state law during the pendency of parallel proceedings in state court") (citations omitted).

14   Accordingly, the Ninth Circuit determined that the district court's exercise of its permissive

15   jurisdiction was contrary to the exercise of sound judicial discretion and instructed the court to

16   dismiss the action in favor of the parallel state proceeding.  *Id.* at 1372.

17        U.S. Fire's New York Action involves the same state-law issues presented by this action.

18   *See Brillhart*, 316 U.S. at 283 (noting that the district court should examine "the scope of the

19   pending state court proceeding and the nature of defense open there" to ensure that the claims of

20   the federal action "can satisfactorily be adjudicated in that proceeding").  But a state action does

21   not even have to be "identical" to be deemed "parallel" to a federal action; an overlap of factual

22   questions between the two actions suffices.  *Polido v. State Farm Mut. Auto. Ins. Co.,* 110 F.3d 1418,

23   1423 (9th Cir. 1997) *overruled on other ground by GEICO,* 133 F.3d at 1223 (noting that "differences

24   in factual and legal issues between the state and federal court proceedings are not dispositive [if the

25   federal court plaintiff] could have presented the issues that it brought to federal court in" the state

26   court action) (citations omitted).  Here, there is certainly overlap, if not identity, of facts and state-law

27   issues between this action and the New York Action and all issues raised by plaintiffs here can be

28   brought before the New York State Court.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    Both actions arise from the anticipated settlement of the *Snow* action and both seek

2  a declaration regarding the Luxottica-related entities' rights to coverage for those claims from

3  their various primary and excess insurers under state contract and insurance laws.  (*See and*

4  *compare* RJN, Ex. 1 *with* Complaint.)  In the New York Action, U.S. Fire seeks a declaration of

5  its obligations to provide coverage for the *Snow* action and seeks a declaration regarding its rights

6  to indemnity and/or contribution from the Luxottica-related entities' other insurers if it is

7  obligated to provide coverage for the *Snow* action.  (RJN, Ex. 1 at ¶¶ 38-49.)  To resolve the

8  issues presented in the New York Action, a court will have to determine each insurers' obligation

9  to the Luxottica-related entities and, if necessary, to each other.  (*See id*.)  Here, the plaintiffs seek

10  a declaration regarding their insurers' indemnity obligations.  (Complaint at ¶¶ 37-40.)  Thus,

11  while the scope of the New York Action is actually broader than this action, both actions seek to

12  determine the obligations of the insurers to provide indemnity for settlement of the *Snow* action.

13  Accordingly, the claims raised in this action can -- and will -- be "satisfactorily adjudicated" in

14  the New York Action.

15    Nor is there a legitimate dispute that the two actions involve substantially the same

16  parties.  *See Brillhart*, 515 U.S. at 283 (noting that, when deciding to decline to exercise its

17  permissive declaratory relief jurisdiction, a court should first consider "whether necessary parties

18  have been joined [or] whether such parties are amendable to process in that [state] proceeding").

19  Exact identity of parties is not required; a federal court may decline to exercise permissive

20  jurisdiction over declaratory relief actions even if parties to the federal suit are not party to the

21  state proceedings.  *Polido,* 110 F.3d at 1423.  It is enough that a party can be joined to the state

22  proceedings if it is a necessary party or has the ability to intervene in that action.  *Id.*

23    With the exception of LensCrafters' primary professional liability insurer -- ERSIC -- all

24  of the defendant-insurers in this action are already party to the New York Action.  (RJN, Ex. 1 at

25  1.)  Furthermore, ERSIC has already represented to this Court that its policies were negotiated

26  and issued in New York and, therefore, it is certainly "amenable to process" in New York and can

27  be added to the New York Action if necessary.  (*See* Rose Decl., Ex. J at 5, fn. 5 (noting that the

28  ERSIC policies at issue were negotiated and issued in New York).)  The New York Action also

- 11 -

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

1  already involves both of the named plaintiffs here.  (RJN, Ex. 1 at 1.)  LensCrafters, Inc. and

2  Eyexam's predecessors in interest -- Eyexam 2000 of California, Inc. and EyeMed, Inc. -- were

3  properly named and served in that action.[6]  More importantly, the New York Action names

4  *additional* Luxottica-related defendants that have an interest in this litigation but were not

5  included in this action.  (*See and compare* RJN, Ex. 1 at 1 *with* Complaint at 1.)  These parties

6  include Luxottica (which wholly owns -- directly or indirectly -- LensCrafters and Eyexam and

7  negotiated and purchased the policies at issue), Luxottica Group S.p.A., the United States Shoe

8  Corporation and Eyexam 2000, each of which is a defendant in the *Snow* action.[7]  (RJN, Ex. 1 at

9  1; Rose Decl., Ex. A at 1.)  Therefore, the New York Action is the more comprehensive action.[8]

10         Accordingly, this Court may grant U.S. Fire's motion to dismiss solely on the basis of the

11  well-established presumption that a court should decline to exercise its permissive jurisdiction

12  over a reactive federal declaratory action involving substantially the same parties and state law

13  issues already encompassed in a pre-existing state court proceeding.  *GEICO*, 133 F.3d at 1225

14  (confirming presumption against exercise of jurisdiction in such situations and noting that

15  "federal courts should generally decline to entertain reactive declaratory actions"); *Continental*

16  *Cas.*, 947 F.2d at 1370 (same). The presumption that this Court should decline to exercise its

17  permissive jurisdiction in favor of the prior-pending state court action applies here.  U.S. Fire

18  filed suit in New York court against the Luxottica-related entities and that nonremoveable state

19  _____

20  [6] U.S. Fire understands from publicly-available documents that Eyexam of California, Inc. may be the successor in interest to Eyexam 2000 of California, Inc. and/or EyeMed, Inc., each of which is an additional named insured under at least one of its policies.  (Rose Decl., Exs. C-F.)  U.S. Fire understands that the Luxottica-related entities named in the New York Action refused to accept service on behalf of Eyexam 2000, on of the *Snow* defendants, claiming that no such company exists.  (Rose Decl., Ex. N.)  EyeMed, Inc., however, was named and properly served in the New York Action.  (*Id.*)  Although it remains to be seen whether U.S. Fire owes any obligation to "Eyexam of California, Inc." under its policies, *if* Eyexam were entitled to seek benefits under U.S. Fire's policies -- which were all negotiated and issued in New York -- it is certainly subject to personal jurisdiction there.

24  [7] Because the New York Action names Luxottica -- a New York-based company -- and Luxottica Group S.p.A. -- an Italian company -- it is not removable to federal court in New York.

26  [8] Although LensCrafters has represented to this Court that -- with the exception of it and Eyexam -- each of the Luxottica-related entities has been dismissed from the *Snow* action (*see* Rose Decl., Ex. O at 1:15-17), to date U.S. Fire has only been able to verify from publicly-available documents that the United States Shoe Corporation and Luxottica Group, S.p.A. were dismissed for lack of personal jurisdiction.  In any event, because Luxottica negotiated and purchased the policies at issue, it has an interest in the resolution of rights that may impact available limits under its policies.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    court action was pending when the plaintiffs brought this claim for declaratory relief of the

2    identical state-law issues on the basis of diversity jurisdiction. (RJN, Ex. 1; Rose Decl., Ex. A.)

3    Sound judicial discretion requires that this Court apply the *Brillhart* presumption and dismiss this

4    action in favor of the prior-pending New York Action.

**C.    The Issues To Be Resolved In This Case Are State Law Issues That Are Governed By New York Law**

7    A closer examination of the rationale behind the *Brillhart* presumption further confirms

8    that the issues presented in this lawsuit should be litigated in New York state court.

**1.    Choice of Law is a Factor to Consider in Determining the Appropriate Court**

10    The Court's first concern in *Brillhart* was to "avoid having federal courts needlessly

11    determine issues of state law." *Continental Cas.*, 947 F.2d at 1371 (*citing Brillhart,* 316 U.S. at

12    1175-76 ("It is uneconomical as well as vexatious for a federal court to proceed in a declaratory

13    judgment where another suit is pending in a state court presenting the same issues, not governed

14    by federal law . . . . Gratuitous interference with the orderly and comprehensive disposition of

15    state court litigation should be avoided")). Where a state court action is nonremovable and

16    federal jurisdiction is premised upon diversity alone, the first *Brillhart* rationale will always

17    mandate dismissal, as it does here.

18    There is no question that only issues of state contract and insurance law have been

19    presented both in this case and in the New York Action. (*See and compare* RJN, Ex. 1 *with*

20    Complaint.) Federal jurisdiction exists in this matter solely on the basis of diversity. (*See*

21    Complaint at ¶ 12.) Accordingly, there is no federal question, federal law or federal interest at

22    issue in this litigation. *See Continental Cas.*, 947 F.2d at 1371 (noting lack of federal interest in

23    insurance law because it is an area that Congress has expressly left to the states through the

24    McCarran-Ferguson Act). As the court in *Continental Casualty* found, "[w]here, as in the case

25    before us, the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its

26    nadir. Thus, the *Brillhart* policy of avoiding unnecessary declarations of state law is especially

27    strong here." 947 F.2d at 1371.

28

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    *Brillhart* speaks to the need to avoid federal court adjudication of state law issues

2    generally, and instructs this Court to defer to the jurisdiction of a state court whenever state law

3    will be applied, regardless of which state's law is to be applied.  515 U.S. at 283.  Accordingly,

4    this Court need not conduct a choice of law analysis or determine which state's law will apply to

5    this dispute to warrant application of the *Brillhart* presumption that this case be dismissed or

6    stayed in favor of the prior-filed New York Action.  *See id.*  A federal court's determination of

7    state law is particularly problematic, however, where, as here, the Court would first be applying

8    the state law of the forum in which it sits and, under that state's conflicts of law analysis, would

9    end up applying a foreign state's law to the substantive issues in dispute.  *See, e.g., Calavo*

10   *Growers of California v. Belgium,* 632 F.2d 963, 967 (2d Cir. 1980); *Tjontveit v. Den Norske*

11   *Bank ASA*, 997 F.Supp. 799, 812 (S.D. Tex. 1998) (holding that trial is more appropriately held

12   "in a forum that is at home with the . . . law that must govern the case, rather than having a court

13   in some other forum untangle problems in conflicts of laws, and in law foreign to itself") (citing

14   *Gulf Oil Corp. v. Gilbert* (1947) 330 U.S. 501, 509).  Because the contracts to be interpreted were

15   negotiated and issued in New York, should this Court decide to exercise its permissive

16   jurisdiction and permit this litigation to proceed, it would be required to apply the laws of a

17   foreign state -- New York, where U.S. Fire's prior-filed action is already pending -- to the

18   substantive issues raised by the complaint.

19       **2.    This Court Would Have To Apply New York Law**

20       Sitting in California, this Court would follow California choice-of-law rules to determine

21   which state's law governs the contractual obligations of the defendant-insurers to the plaintiffs.

22   *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) (holding that federal courts exercising

23   diversity jurisdiction will apply the same choice-of-law rules that would be applied by the local

24   state courts of the state in which they sit); *Patton v. Cox,* 276 F.3d 493,495 (9th Cir. 2002).

25   Under California law, a contract is governed by the law of the state in which the contract was

26   agreed to be performed or -- if there is no such state -- by the law of the state in which the

27   contract was made. Cal. Civ. Code § 1646 (2007).  California courts will also refer to -- and

28   generally follow -- the Restatement Second of Conflict of Laws in resolving choice of law

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    questions.  1 Witkin *Summary of California Law*, Contracts § 62 (10th Ed. 2006) (*See, e.g.*,

2    *California Cas. Indem. Exch. v. Pettis*, 193 Cal.App.3d 1597, 1607 (1987) (applying Restatement

3    Second of Conflict of Laws to determine which state's law to apply to insurance contract).  Under

4    the Restatement, in the absence of an effective choice of law by the parties, contract disputes are

5    governed by the local law of the state that, with respect to the particular issue, has the most

6    significant relationship to **the transaction and the parties to the contract**.[9]  *Pettis*, 193

7    Cal.App.3d at 1607; *see also Restatement Second of Conflict of Laws* § 188(2) (noting that the

8    relevant contacts in determining which law governs a contract dispute are the place of:

9    (a) contracting, (b) negotiation of the contract, (c) performance, (d) the subject matter of the

10   contract, and (e) the domicile, residence, nationality, incorporation and business of the parties).

11   Under either analysis, New York law will govern the contracts at issue.[10]

12           Here, the contracts that must be interpreted are governed by New York law, not California

13   law.  Luxottica, whose principal place of business is New York, negotiated and purchased its

14   insurance policies in New York.  (*See, e.g.,* Rose Decl., Exs. D-I, J at 5, fn. 5.)  The policies were,

15   therefore, accepted and issued in New York.  (*Id.*)  There can be no dispute, then, that Luxottica's

16   policies of insurance were "made" in New York and are, therefore, governed by New York law.

17   *See* Cal. Civ. Code § 1646 ("A contract is to be interpreted according to the law and usage of the

18   place where it is to be performed; or, if it does not indicate a place of performance, according to

---

[9] Although U.S. Fire's policies do not contain a choice of law provision, each policy includes and incorporates numerous New York-law-specific endorsements.  (*See, e.g.,* Rose Decl., Ex. D at 11.)

[10] When resolving conflicts of law, California courts also sometimes apply the so-called "governmental interest" test, pursuant to which a court will determine (1) whether the substantive laws of the two jurisdictions conflict, (2) if so, whether this conflict implicates legitimate policy interests of each state's law and (3) which state's policy interest would be more impaired if its law were displaced by that of the other jurisdiction. *See Reich v. Purcell*, 67 Cal.2d 551 (1967); 1 Witkin *Summary of California Law,* Contracts § 63.  The governmental interest test, however, was first adopted -- and is most frequently applied -- in tort cases, not contract disputes such as that here. *See id. But see Dixon Mobile Homes, Inc. v. Walters*, 48 Cal.App.3d 964, 972 (1975) (applying governmental interest analysis to contract claim).  In more recent contract disputes, California courts apply Civil Code section 1646 to determine which state's law should apply. *See, e.g., Klein v. Superior Court*, 198 Cal.App.3d 894, 902 (1988); *Celotex Corp. v. American Ins. Co.*, 199 Cal.App.3d 678, 683 (1987). *See also Arno v. Club Med., Inc.*, 22 F.3d 1464, 1469 n.6 (9th Cir. 1994) (noting seeming conflict in California cases as to whether governmental interest test or Civil Code section 1646 applies to govern which state's law will govern contract).  Because the California Legislature has spoken directly to this issue, California Civil Code section 1646 unambiguously governs which state's law will apply to interpret a contract. Cal. Civ. Code § 1646.  But, in any event, California law would apply under the governmental interest test, as well. *See* footnote 13, *infra*.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    the law and usage of the place where it is made").

2        The analysis under the Restatement leads to the same result:   The policies were

3    negotiated in New York, which is also the place of Luxottica's acceptance of the contracts -- and,

4    therefore, the place of contracting.  (*See, e.g.,* Rose Decl., Exs. D-I, J at 5, fn. 5.)  As addressed in

5    greater detail below, the parties did not contemplate a single state of performance of the insurance

6    contracts because Luxottica's policies provide general commercial liability coverage for

7    approximately two dozen Luxottica-related entities with operations throughout the United States

8    and Canada.  (*See* Section IV.C.3, *infra.*)  Because no place of performance was contemplated,

9    the places of negotiation, purchase and issuance of the policies -- here, all New York -- become

10    increasingly important to the analysis.  *See Restatement Second of Conflict of Laws* § 188(2).[11]

11        **3.**    **Location of the Risk at Issue Does Not Change the Analysis**

12        The plaintiffs will no doubt claim that California law should apply because it is the site of

13    the "subject matter" of the contracts or the "insured risk" -- the co-location of LensCrafters and

14    Eyexam and the place where the *Snow* action is currently pending.  *See Restatement Second of*

15    *Conflict of Laws* § 193; *Stonewall Surplus Lines Ins. Co. v. Johnson*, 14 Cal.App.4th 637, 647

16    (1993).  Reliance on a location-of-the-risk analysis, however, is misplaced here.

17        California courts will only apply the law of the state in which a claim arises when the

18    parties expected and intended the insured risk to be confined to a single state.  *Stonewall*, 14

19    Cal.App.4th at 646-47 (noting that the location of the risk analysis is intended to determine the

20    state that the parties understood was to be the principal location of the insured risk during the

21    term of the policy, *i.e.*, the state whose law the parties reasonably understood and expected would

22    govern their contract); *Restatement Second of Conflict of Laws* § 193, comment b (noting that the

23    "location of the insured risk will be given greater weight than any other single contact in

---

24
[11]In the New York Action, the New York State Court will determine that New York should apply to the parties'

25    dispute.  In insurance cases involving parties resident in New York and contracts issued and negotiated in New York, New York courts give controlling effect to New York law. *Avondale Indust. v. Travelers Indem. Co.*, 774 F.Supp.

26    1416, 1422 (S.D.N.Y. 1991).  Where an insured's insurable interests cover a wide geographical range, as is the case here, New York courts apply the law of the state where the policies were issued and brokered. *GlobalNet Fin., Inc. v.*

27    *Frank Crystal & Co.*, 2004 U.S. Dist. LEXIS 13731 *9-10 (S.D.N.Y.).  *See also Restatement Second of Conflicts of Law* § 193, note f.  Again, the policies issued to Luxottica were negotiated, issued and brokered in New York. (Rose

28    Decl., Ex. D-I, J at 5, fn. 5.)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

1    determining the state of the applicable law ***provided that the risk can be located, at least***

2    ***principally, in a single state***") (emphasis added).  "[T]he location of the risk has less significance

3    . . . where the policy covers a group of risks that are scattered throughout two or more states."

4    *Stonewall*, 14 Cal.App.4th at 646, 647, n. 6.

5        The insured risk under Luxottica's policies was (and is) in no way limited to the plaintiffs'

6    operations in California.  Instead, the insured risk includes all of the Luxottica-related entities'

7    operations throughout the United States and Canada.  (*See* Rose Decl., Exs. A-F.)  With respect to

8    LensCrafters alone (one of ***two dozen*** entities that are named insureds under Luxottica's policies),

9    the insured risk includes 900 separate locations throughout the United States and Canada.  (Rose

10   Decl., Ex. A at ¶ 31, Exs. D-F.)  Clearly, the parties did not expect, understand or intend that the

11   primary risk insured under the policies would be located in a single state or even a small number

12   of states.  In such cases, California, like New York, will apply the law of the state in which the

13   contracts were negotiated, purchased and issued.  Cal. Civ. Code § 1646; *Restatement Second of*

14   *Conflict of Laws* § 188(2).

15       The plaintiffs will also claim that California law should apply based upon California's

16   supposed interest in this litigation because the *Snow* plaintiffs' compensation is at stake.  That

17   argument lacks merit.  Whether Luxottica's insurers indemnify the Luxottica-related *Snow*

18   defendants or not, the *Snow* plaintiffs will certainly be compensated.  *See Van Winkle v. Allstate*

19   *Ins. Co.*, 290 F.Supp.2d at 1158, 1166 (N.D. Cal. 2003) (noting that California's interest in

20   protecting Californians' abilities to ensure insurance will provide compensation for injury is

21   implicated when faced with a ***judgment-proof tortfeasor***).  As multi-billion dollar companies, the

22   plaintiffs cannot in good faith argue -- as they must -- that the anticipated payments to

23   consummate the *Snow* settlement would force them (or Luxottica) into bankruptcy, thereby

24   jeopardizing their recovery. [12]

25       Accordingly, the interest California may have in the compensation of its citizens does not

26   require it to assert its contract or insurance law over insurance policies negotiated, purchased and

27

28   _____
     [12] In fact, Luxottica just recently agreed to buy its competitor Oakley for US$2.39 billion.  (*See* Rose Decl., Ex. B.)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

1  issued in New York State by and between New York entities.  There is no concern that California

2  citizens will not be fully compensated.  *Id.* at 1168 (noting that the fact that the underlying suit

3  against the insured was adjudicated in California did not outweigh New York's "greater interest

4  in regulating the conduct of the insurer, as well as protecting the insurer" and that "applying

5  California law would abrogate the interests of . . . New York in the application of its law to a

6  situation arising out of an insurance policy issued to a New York resident by an agent of the

7  insurer located in New York") (citations omitted).[13]

8  **D.    The Plaintiffs Should Not Be Allowed To Forum Shop**

9      The Declaratory Relief Act was not designed to allow plaintiffs to choose what body of

10  law they would like to have applied to their cases, to dictate in what court they would like to have

11  their cases heard or to preempt litigation in a more appropriate state forum and trigger a race to

12  *res judicata*.  But that is precisely what the plaintiffs in this case are attempting to do -- and have

13  been maneuvering to do since the commencement of their prior declaratory relief action.  The

14  plaintiffs clearly "perceive[] a tactical advantage from litigating in a federal forum" in California

15  and are employing all means necessary to avoid New York state court.  *See Continental Cas.*, 947

16  F.2d at 1371.  Accordingly, the second *Brillhart* factor also militates in favor of this Court

17  declining its permissive jurisdiction.

18      The primary indicator of impermissible forum shopping is the filing of a "defensive" or

19  "reactive" federal declaratory relief action.  *Continental Cas.*, 947 F.2d at 1372.  The plaintiffs

20  here filed this federal declaratory relief claim in response to the New York Action after U.S. Fire

21  filed that action.  (Complaint at 1; RJN, Ex. 1.)  This action is categorically a "defensive" or

22  "reactive" federal action illustrating textbook forum shopping.  *See Continental Cas.*, 947 F.2d at

23  1372-73 (noting that the filing of a federal declaratory relief action "during the pendency of a

24  non-removable state court action presenting the same issues of state law is an archetype of what

25  we have termed 'reactive' litigation").

26

---

[13] Because New York has a greater interest than California in regulating insurers that issue insurance policies in its
27  state -- to its citizens -- and California does not have an interest here in securing insurance proceeds to ensure its
citizens will be compensated, New York law would also govern under the "governmental interests" conflicts-of-law
28  test.  (*See* footnote 9, *supra*.)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

1    The plaintiffs in this case will claim, no doubt, that their coverage action was not

2    "reactive" but the natural progression of events following their prior federal declaratory action in

3    this Court regarding their primary insurers' duties to defend.  (*See* Section II.C, *supra*.)  But that

4    action did not raise the same issues or involve the same parties as the New York Action and is,

5    therefore, irrelevant to whether **this** action is "reactive."  (*See id.*)  In any event, the plaintiffs'

6    conduct in filing (and voluntarily dismissing portions of) that prior action only confirms their

7    attempt to secure what they clearly perceive to be a preferable federal forum.

8    First, the plaintiffs chose to file a declaratory relief action in this Court and then dismissed

9    that action as to Liberty Mutual's and ERSIC's duty to indemnify.  (Rose Decl., Ex. K at 2:16-

10    22.)  Thus, the only issue resolved in that case was the duty to defend and only as to two primary

11    insurers.  (Rose Decl., Exs. J and L.)  That action did not raise -- or result in any consideration of

12    -- the duty to indemnify issues that the New York Action seeks to adjudicate.  (*See id.*)  Nor did it

13    involve all the same parties involved in -- and necessary to resolve the dispute alleged in -- the

14    New York Action, including the first-layer excess insurers and other interested Luxottica-related

15    entities. (*See id.*)

16    Second, the plaintiffs and EyeMed voluntarily dismissed the claims for indemnity initially

17    alleged in the prior action before this Court as not ripe for adjudication, subject to an agreement

18    by Liberty Mutual and ERSIC that (1) any party to the stipulation could file a new action to

19    adjudicate the dismissed indemnity claims, (2) such action must be filed in the Federal District

20    Court for the Northern District of California, and (3) the parties to the stipulation consent to the

21    exclusive jurisdiction and venue of such an action in this Court.[14]  (Rose Decl., Ex. K at 2:16-22.)

22    This agreement, of which U.S. Fire was not aware and had never seen prior to the plaintiffs'

23    revelation of its terms, demonstrates that the plaintiffs here will try to use the "renewal" of their

24    previously unripe indemnity claims against two other insurers as a "placeholder" to argue that this

25    Court should not only hear those indemnity issues but should entertain all others now raised by

26

27    _____

[14] Of course, just as parties cannot "agree" to federal jurisdiction in the first instance, they cannot simply agree their
way around this Court's need to conduct a *Brillhart* analysis to determine whether it may appropriately exercise its
permissive jurisdiction to entertain a declaratory relief action raising only state law issues already being litigated in
state court.  *See Industrial Addition Ass'n v. Commissioner*, 323 U.S. 310, 313 (1945).

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.

One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1   their complaint.  The fact that the plaintiffs brought indemnity claims they quickly dismissed as

2   unripe subject to an exclusive jurisdiction agreement shows that they have long been trying to

3   preclude coverage issues from being litigated in the appropriate court to address such issues:

4   New York State Court.  Such tactics, while creative, nevertheless further evince plaintiffs'

5   improper forum shopping.

6          A federal declaratory relief action is "reactive" or "defensive" and should be dismissed

7   where it is clearly filed to obtain a federal forum and avoid a state court forum.  *See Continental*

8   *Cas.*, 947 F.2d at 1372-73.  As discussed, this action has no other purpose, as U.S. Fire had

9   already commenced a comprehensive action in state court addressing the identical state law

10  issues.  (RJN, Ex. 1.)  Significantly, regardless of "[w]hether the federal declaratory judgment

11  action regarding insurance coverage is filed *first or second*, it is reactive, and permitting it to go

12  forward when there is a pending state court case presenting the identical issue would encourage

13  forum shopping in violation of the second *Brillhart* principle."  *Id.* (emphasis added); *see also*

14  *Exxon Shipping Co. v. Airport Diner Depot, Inc.*, 120 F.3d 166, 169 (9th Cir. 1997) (directing

15  district courts to abstain where a declaratory judgment action appears to have been filed to

16  preempt litigation in state court between the same parties on the same state law issues -- *i.e.*,

17  where the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to

18  provide an arena for a race to *res judicata*"); *American Auto. Ins. Co. v. Freundt,* 103 F.2d 613,

19  617 (7th Cir. 1939) ("The wholesome purposes of declaratory acts would be aborted by its use as

20  an instrument of procedural fencing either to secure delay or to choose a forum.  It was not

21  intended by the [Declaratory Judgment Act] to enable a party to obtain a change of tribunal and

22  thus accomplish in a particular case what could not be accomplished under the removal act").

23  **E.      Dismissing This Action Promotes Judicial Efficiency And Avoids Duplicative**
24          **Litigation**

25          Whatever else the parties may dispute, no party can argue that **both** the New York Action

26  and this action should proceed simultaneously.  The matter before this Court is duplicative of

27  U.S. Fire's New York Action:  It raises the same state law issues, involves the same parties and

28  will result in resolution of the same dispute -- whether the Luxottica-related defendants in the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1   *Snow* action are entitled to indemnity for the settlement of that action.

2           The third *Brillhart* rationale promotes a policy of judicial economy and requires this Court

3   to avoid the unnecessary creation or promotion of duplicative litigation. 316 U.S. at 495.  That

4   policy would clearly "be frustrated by permitting [a] federal action to go forward during the

5   pendency of [a] state court action [where] the federal declaratory suit is virtually the mirror image

6   of the state suit." *Continental Cas.*, 94 F.2d at 1373.  In *Continental Casualty*, as here, one action

7   involved an insurer's claim for declaratory relief against its insured, while the other action

8   involved the insured's claim against its insurer.  *Id.* at 1368-69.  There, as here, the two claims

9   were "mirror images" and "[a]ll of the issues presented by the declaratory judgment action could

10  be resolved by the state court."  *Id.* at 1373.  Here, as there, the Court should determine that

11  "permitting the present action to go forward would waste judicial resources in violation of the

12  third *Brillhart* factor."  *Id.*

13          Should this action not be dismissed or stayed, two actions involving the same parties and

14  the same dispute will proceed simultaneously.  This poses the unacceptable risk of inconsistent

15  rulings or judgments, leading to a likelihood of confusion and certainly resulting in a waste of

16  party and judicial resources.  "[T]he normal principle that federal courts should adjudicate claims

17  within their jurisdiction yields to considerations of practicality and wise judicial administration,"

18  both of which require this Court to exercise its discretion in a manner that avoids duplicative

19  litigation that will, necessarily, not serve the primary judicial goal of creating certainty and will,

20  instead, needlessly burden the parties and two court systems.  *Snodgrass v. Provident Life & Acc.*

21  *Inc. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998) (citations omitted).

22                          **IV.    CONCLUSION**

23          U.S. Fire commenced an action in New York State Court that encompasses the same facts

24  and parties as -- and will require adjudication of the New York state law issues raised by -- the

25  complaint in this case.  To allow this reactive federal declaratory relief action to go forward in

26  California in the face of that prior-filed action would run afoul of sound judicial discretion,

27  violate principles of judicial efficiency, permit needless duplication of litigation, initiate a "race to

28  *res judicata*," condone plaintiffs' blatant forum shopping and require this federal court to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

unnecessarily determine state law issues.  Because New York is the logical forum for the

adjudication of a case involving New York contracts and New York state law issues, U.S. Fire

respectfully asks that the Court exercise its discretion to decline jurisdiction and dismiss or stay

this matter.


DATED:      July 18, 2007                    SQUIRE, SANDERS & DEMPSEY L.L.P.

                                            By:  _/s/ Mark C. Goodman_
                                                  Mark C. Goodman

                                            Attorneys for Defendant
                                            UNITED STATES FIRE INSURANCE COMPANY

U.S. FIRE'S MOTION TO DISMISS ACTION IN FAVOR OF PRIOR-PENDING NEW YORK STATE COURT ACTION
CASE NO. C-07-2853

1

2

## **PROOF OF SERVICE**

3

4          I am employed in the County of San Francisco, State of California.  I am over the age of
18 and not a party to the within action; my business address is One Maritime Plaza, Third Floor,

5     San Francisco, California 94111-3492.

6          On July 18, 2007, I served the following document described as:

7          **UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS**
           **OR, IN THE ALTERNATIVE, STAY ACTION IN FAVOR OF**
8                          **PRIOR-PENDING NEW YORK STATE COURT ACTION**

9     ☒     VIA THE UNITED STATES DISTRICT COURT ELECTRONIC FILING SERVICE on
                 interested parties in this action as set forth below:

10

11    Richard DeNatale, Esq.
      Celia M. Jackson, Esq.
      Heller Ehrman LLP
12    333 Bush Street
      San Francisco, CA 94104-2878
13    Telephone:    (415) 772-6000
      Facsimile:    (415) 772-6268

14

15    Robert D. Dennison, Esq.                    Todd A. Roberts, Esq.
      Harris, Green & Dennison                    Ropers Majeski Kohn Bentley
      5959 W. Century Blvd., Suite 1100           1001 Marshall Street
16    Los Angeles, CA 90045                       Redwood City, CA 94063
      Telephone:    (310) 665-8656                Telephone:    (650) 364-8200
17    Facsimile:    (310) 665-8659                Facsimile:    (650) 780-1701

18    Terrence R. McInnis, Esq.                   Alex F. Stuart, Esq.
      Ross, Dixon & Bell, LLP                     Willoughby, Stuart & Bening
19    5 Park Plaza, Suite 1200                    Fairmont Plaza
      Irvine, CA 92614                            50 West San Fernando, Suite 400
20    Telephone:    (949) 622-2700                San Jose, CA 95113
      Facsimile:    (949) 622-2739                Telephone:    (408) 289-1972
21                                                Facsimile:    (408) 295-6375

22

23          Executed on July 18, 2007, at San Francisco, California.  I declare under penalty of
perjury under the laws of the State of California that the above is true and correct.

24

25                                      _____
                                              */s/ Agnes A. Gacayan*
                                              Agnes A. Gacayan

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

- i -