**Crum&Forster Insurance**

| Declarations | **CFI DEFENDER 2000**<br>**Commercial Umbrella Policy** | **POLICY NUMBER**<br>553    068740    7<br><br>CLIENT NUM<br>00709721 |
|---|---|---|

| DATE ISSUED    03/09/1999 | RENEWAL OR REPLACEMENT OF    553058755    2 |
|---|---|

| Item<br>1. | NAMED INSURED & ADDRESS<br><br>LUXOTTICA U.S. HOLDINGS CORP.<br>(SEE FM100.0.14)<br>44 HARBOR PARK DRIVE<br><br>PORT WASHINGTON, NY  11050 |
|---|---|

| 2. | POLICY PERIOD:    POLICY COVERS FROM  02/01/1999    TO 02/01/2000<br>12:01 a.m. Standard Time at the Named Insured's address stated above. |
|---|---|

| 3. | COVERAGE IS PROVIDED BY COMPANY<br>CHECKED BELOW:<br><br>[X] United States Fire Insurance Company<br>[ ] The North River Insurance Company<br>[ ] Crum and Forster Insurance Company<br>[ ] Crum & Forster Underwriters Co. of Ohio<br>[ ] Crum & Forster Indemnity Company<br>[ ] | REPRESENTATIVE:<br><br>Agent Number    50505        6<br>Agent or  BLUMENCRANZ-KLEPPER-WILKINS LTD<br>Broker<br>Office Address    3000 MARCUS AVENUE<br>Town, State & Zip LAKE SUCCESS, NY    11040 |
|---|---|

| 4. | LIMITS OF INSURANCE — AS IN INSURING AGREEMENT V AND VI (The Limits of Insurance are the amounts shown below) | |
|---|---|---|
| | (a) Each Occurrence Limit | $25,000,000. |
| | (b) General Aggregate Limit<br>    (Other than Products-Completed Operations) | $25,000,000. |
| | (c) Products-Completed Operations Aggregate Limit | $25,000,000. |
| | (d) Combined Aggregate Limit | N/A |
| | (e) Self Insured Retention | $    10,000. |

| 5. | POLICY JACKET, FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION (NUMBER AND EDITION DATE)<br><br>AS PER MASTER FORMS LIST ATTACHED. |
|---|---|

| 6. | PREMIUM<br><br>$ 45,000.00        Amount |
|---|---|

Countersigned by _____

AUTHORIZED REPRESENTATIVE

THESE DECLARATIONS, TOGETHER WITH POLICY JACKET, MASTER FORMS LIST, AND ENDORSEMENTS, IF ANY, ARE ISSUED AS PART OF, AND IN THE COMPLETION OF THE ABOVE NUMBERED POLICY.

**Crum&Forster Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MASTER FORMS LIST**

The following forms and endorsements are attached to this policy effective at inception:

| FORM NUMBER | FORM TITLE |
|---|---|
| L4021D(09-96) | DECLARATIONS PAGE |
| FM100.0.14(04-83) | NAMED INSURED ENDORSEMENT |
| FM101.0.350(10-92) | SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE |
| FM101.0.453(10-82) | PERSONAL CATA. LIAB. INS. ENDST. (DEC.) |
| FM101.0.450(07-80) | PERSONAL CATA. LIAB. INS. ENDST. (COVERAGE) |
| FM101.0.1150(09-96) | NEW YORK AMENDATORY ENDORSEMENT |
| FM116.0.1(07-96) | SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE |
| FM101.0.961(09-89) | WATERCRAFT LIMITATION |
| FM206.0.11(09-96) | SIGNATURE PAGE - U.S. FIRE |
| FM563.0.1(04-98) | YEAR 2000-COMPUTER-RELATED PROBLEMS - EXCLUSION |
| FM101.0.1173(09-89) | EMPLOYERS LIABILITY LIMITATION |
| FM101.0.1177(09-89) | FOREIGN EXPOSURE LIMITATION |
| FM101.0.1260(02-91) | AUTOMOBILE LIMITATION - NEW YORK |
| FM101.0.1067(09-89) | AGGREGATE LIMITS (PER LOCATION) ENDORSEMENT |
| FM101.0.923(09-89) | EXCLUSION OF DAMAGE TO PERSONAL PROPERTY |
| FM101.0.928(09-89) | PROFESSIONAL LIABILITY LIMITATION |
| FM101.0.1268(07-94) | EXCESS EMPLOYEE BENEFITS - SUPPLEMENTAL DEC |
| FM101.0.1305(05-91) | CROSS SUITS EXCLUSION |
| FM101.0.1108(09-96) | CFI DEFENDER 2000 - COMMERCIAL UMBRELLA POLICY |

**Crum&Forster**
**Insurance**

## ENDORSEMENT

This endorsement forms a part of policy No. **553    068740        7**


Issued by  **UNITED STATES FIRE INSURANCE**            Company

It is agreed that Item 1. (Name of Insured) of the Declarations is as follows:

```
LUXOTTICA U.S. HOLDINGS CORP.
AVANT GARDE OPTICS, INC.
LUXOTTICA, USA, INC.
LUXOTTICA CANADA, INC.
LUXOTTICA GROUP, SPA
BRICO, S.r.L.
LUXOTTICA S.p.A.
LA MECCANOPTICA LEONARDO S.p.A.
PERSOL S.p.A.
THE UNITED STATES SHOE CORPORATION
LENSCRAFTERS, INC.
EYEXAM 2000 OF CALIFORNIA, INC.
CLAUDIO DEL VECCHIO
LENSCRAFTERS CANADIAN, INC.
LENSCRAFTERS E.C. CORP.
549885 ALBERTA, INC.
CENTRE PROFESSIONNEL dE VISION USSC, INC.
LENSCRAFTERS FOUNDATION
LENSCRAFTERS FOUNDATION OF CANADA
LUXOTTICA SUN CORP.
USS DELAWARE
LENSCRAFTERS INTERNATIONAL, INC.
```

All other terms and conditions of this policy remain unchanged.


_____

Authorized Representative

FM 100.0.14 (4-83)

**Crum&Forster**
**Insurance**

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER, POLICY NO., POLICY TERM |
|---|---|---|
| FOREIGN LIABILITY COVERAGE | $1,000,000 (COMBINED SINGLE LIMIT) | GREAT NORTHERN    2/1/99-00 73178458 RENL OF AGO/LUX |
| FOREIGN AUTO COVERAGE | $1,000,000 (COMBINED SINGLE LIMIT) | GREAT NORTHERN    2/7/99-00 731778458 RENL OF AGO LUX |
| FOREIGN WORKERS COMPENSATION | $500,000 (EACH ACCIDENT) | GREAT NORTHERN    2/1/99-00 73178458 RENL OF AGO/LUX |

**Crum&Forster**
**Insurance**

## PERSONAL CATASTROPHE LIABILITY INSURANCE ENDORSEMENT
### PART 1

This endorsement effective  02/01/99          is attached to policy number, **553      068740        7**

issued to LUXOTTICA U.S. HOLDINGS CORP.

THE INSURANCE PROVIDED BY THIS ENDORSEMENT SHALL NOT APPLY TO ANY LIABILITY FOR WHICH AN INSURED UNDER THIS ENDORSEMENT HAS OTHER INSURANCE PROVIDED BY THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED.

### DECLARATIONS

(1)  Named Insured   CLAUDIO DEL VECCHIO

(2)  Address 3 TOBOGGAN HILL PASS
        COLD SPRING HARBOR, NY 11724-1200

(3)  Endorsement Period:    From: 02/01/99                    To    02/01/00

(4)  Limit of Liability:       $ 5,000,000        each occurrence

(5)  Self-Insured Retention:      $      1,000

(6)  Premium:               INCLUDED

(7)  Schedule of Underlying Insurance:

| COVERAGE | LIMITS OF LIABILITY | |
|---|---|---|
| COMPREHENSIVE PERSONAL LIABILITY<br>CHUBB<br>1028289301 | $ 5,000,000 | each occurrence |
| AUTOMOBILE LIABILITY | Bodily Injury: | each person |
| | | each occurrence |
| | Property Damage: | each occurrence |
| | - or -<br>Bodily Injury and Property<br>Damage combined: | each occurrence |
| WATERCRAFT LIABILITY | | each occurrence |
| EMPLOYERS LIABILITY | | each accident |
| OTHER | | each occurrence |

THESE DECLARATIONS, TOGETHER WITH PERSONAL CATASTROPHE LIABILITY INSURANCE ENDORSEMENT PART 2, ARE ISSUED AS A PART OF THE ABOVE NUMBERED POLICY.

COUNTERSIGNED BY _____
AUTHORIZED REPRESENTATIVE

**Crum&Forster**
**Insurance**

## PERSONAL CATASTROPHE LIABILITY INSURANCE ENDORSEMENT
### PART 2

### AGREEMENT

In consideration of the payment of premium and in reliance upon the statements in the Declarations and subject to the Limit of Liability, Exclusions, Conditions, and other terms of this endorsement, the Company agrees with the insured, also named in the Declarations attached, to provide coverage as follows:

### COVERAGE

Personal Liability:

The Company will pay on behalf of the insured the ultimate net loss in excess of the Retained Limit which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury.

Supplementary Payments:

With respect to any occurrence not covered by the underlying policies or insurance described in the Schedule of Underlying Insurance or any other underlying insurance available to the insured, but covered by the terms and conditions of this endorsement except for the amount of Self-Insured Retention specified in the Declarations, the Company shall:

    (a)    defend any suit against the insured alleging bodily injury, property damage, or personal injury and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotion and settlement of any claim or suit as it deems expedient;

    (b)    pay all premiums on bonds to release attachments for an amount not in excess of the applicable Limit of Liability of this policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the insured in the event of accident or traffic law violation during the policy period, but without any obligation to apply for or furnish any such bonds;

    (c)    pay all expenses incurred by the Company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;

    (d)    reimburse the insured for all reasonable expenses incurred at the Company's request but reimbursement for loss of earnings by the insured shall not exceed $100 per day nor an aggregate of $5,000;

and the amounts so incurred, except settlements of claims and suits, are payable by the Company in addition to the applicable Limit of Liability of this endorsement.

In any country where the Company may be prevented by law or otherwise from carrying out this agreement, the Company shall pay any expense incurred with its written consent in accordance with this agreement.

The insured shall promptly reimburse the Company for any amount of ultimate net loss (except for defense costs) paid on behalf of the insured within the Self-Insured Retention specified in the Declarations.

Limit of Liability:

The Company's liability as the result of any one occurrence shall be the Limit of Liability as shown on the Declarations and shall be only for the ultimate net loss in excess of the insured's Retained Limit.

This insurance applies separately to each insured against whom claim is made or suit is brought but the inclusion in this endorsement of more than one insured shall not operate to increase the limit of this Company's liability.

### POLICY PERIOD, TERRITORY

This endorsement applies only to those occurrences happening during the endorsement period as shown on the declarations. This coverage applies anywhere in the world.

## EXCLUSIONS

This endorsement shall not apply:

1.  to any obligation for which the insured or any of his insurers may be held liable under any workers' or unemployment compensation, disability benefits or similar law;

2.  to property damage to (a) property owned by the insured, or (b) aircraft rented to, used by or in the care, custody or control of the insured;

3.  to property damage to property, other than aircraft, rented to, occupied or used by or in the care, custody or control of the insured to the extent the insured is under contract to provide insurance therefor;

4.  to bodily injury, property damage, or personal injury with respect to which the insured under this endorsement is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

5.  to any act committed by or at the direction of the insured with intent to cause bodily injury or property damage, but this exclusion does not apply to bodily injury or property damage resulting from an act committed for the purpose of preventing or eliminating danger in the operation of automobiles, watercraft or aircraft or for the purpose of protecting persons or property;

6.  to liability arising out of the ownership, maintenance, operation, use, loading or unloading or any aircraft;

7.  to liability arising out of the ownership, maintenance, use, loading or unloading of any watercraft owned by an insured, while away from premises owned by, rented to or controlled by an insured, unless: (a) insurance therefor is provided by an underlying policy listed in the Schedule of Underlying Insurance attached, or (b) notice is given the Company within thirty (30) days following date of acquisition of watercraft covered by an underlying policy and additional premium charged;

8.  with respect to business pursuits or business property (other than farms) of an insured, to any claim for loss or expense for which insurance is not afforded by any underlying policy listed or insurance described in the Schedule of Underlying Insurance, but this exclusion shall not apply with respect to the ownership, maintenance, use, loading or unloading of any automobile or watercraft;

9.  to the rendering of any professional service or the omission thereof by an insured;

10. to liability arising out of ownership, maintenance, use, loading or unloading of any recreational motor vehicle, as defined herein, except to the extent that insurance therefor is provided by an underlying policy listed in the Schedule of Underlying Insurance;

11. to liability arising out of ownership, maintenance, use, loading or unloading of any vehicle or watercraft while practicing for or participating in competitive racing, except to the extent that insurance therefor is provided by an underlying policy listed in the Schedule of Underlying Insurance as respects watercraft;

12. to any act or omission of the insured as an officer or a member of the board of directors of any corporation or organization, other than a corporation or organization which is not formed for profit.

13. to any liability of an insured for which insurance is provided by the policy to which this endorsement is attached.

## DEFINITIONS

1.  *Automobile* means a land motor vehicle, trailer or semi-trailer, including farm tractors, trailers and implements.

2.  *Bodily injury* means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

3.  *Insured*

    The unqualified word insured includes:

    (a) the named insured;

    (b) any relative if a resident in the same household as the named insured;

    (c) any other person under the age of 21 in the care of the insured; and

    (d) to the extent that underlying insurance provides coverage, to any other person or organization included as an insured in any underlying policy listed in the Schedule of Underlying Insurance.

4. *Named insured* means the individual named in the Declarations and also includes the spouse, if a resident of the same household.

5. *Occurrence* means

 (a) with respect to bodily injury and property damage, an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured, provided that bodily injury or property damage committed for the purpose of protecting persons or property shall not be deemed to be expected or intended from the standpoint of the insured; and

 (b) with respect to personal injury, an offense which results in personal injury.

6. *Personal injury* means

 (a) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation;

 (b) libel, slander, defamation of character, or invasion of right of privacy; and

 (c) assault and battery not committed by or at the direction of the insured, unless committed for the purpose of preventing or eliminating danger in the operation of automobiles or watercraft or for the purpose of protecting persons or property; including death resulting therefrom, sustained by any person.

7. *Property damage* means injury to or destruction of tangible property, including the loss of use thereof.

8. *Recreational motor vehicle* means

 (a) a golf cart, snowmobile, minibike, motorcycle, moped, motor scooter, dune buggie, or all-terrain vehicle, or

 (b) if not subject to motor vehicle registration, any other land motor vehicle designed for recreational use off public roads.

9. *Retained Limit* means the greater of:

 (a) the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance, and the applicable limits of any other underlying insurance available to the insured; or

 (b) an amount stated as "Self-Insured Retention" in the Declarations as a result of any one occurrence not covered by the policies listed in the Schedule of Underlying Insurance or any other insurance.

10. *Ultimate net loss* means the sum actually paid or payable in the settlement or satisfaction of losses for which the insured is liable either by adjudication or compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages collectible.

## CONDITIONS

1. *Notice of Occurrence.* Upon the happening of an occurrence reasonably likely to involve the Company hereunder, written notice shall be given as soon as practicable to the Company or any of its authorized Agents. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the time. The insured shall give like notice of any claim made on account of such occurrence. If legal proceedings are begun in such a case, the insured shall forward to the Company each paper therein, or a copy thereof, received by the insured or the insured's representatives, together with copies of reports of investigations with respect to such claim proceedings.

2. *Assistance and Cooperation.* Except as provided in the Supplementary payments coverage provision and the Underlying Insurance policy condition, the Company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured; but the Company shall have the right and opportunity to associate with the insured in the defense and control of any claim or proceeding reasonably likely to involve the Company. In such event the insured and the Company shall cooperate fully.

3. *Appeals.* In the event the insured or the insured's underlying insurer elects not to appeal a judgment in excess of the Retained Limit, the Company may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the Limit of Liability stated in the Declarations for any one occurrence plus the taxable costs, disbursements and interest incidental to such appeal.

4. *Loss Payable.* Liability of the Company shall not apply until the insured's liability shall have been made certain by final judgment against the insured after actual trial, or by written agreement of the insured, the claimant, and the Company.

5. *Action Against the Company.* No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this endorsement nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured, or by written agreement of the insured, the claimant and the company. Any person or organization, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this endorsement to the extent of the insurance afforded by this endorsement. No person or organization shall have any right under this endorsement to join the Company as a party to any action against the insured to determine the insured's liability, nor shall the Company be impleaded by the insured or his legal representative.

6. *Other Insurance.* If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the Retained Limit and the Limit of Liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance.

7. *Underlying Insurance.* This endorsement shall not apply to investigation or legal expenses for which insurance is provided by underlying insurance. If such underlying insurance is exhausted by payment of claims arising out of any occurrence, the Company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence.

8. *Subrogation.* The Company shall be subrogated to the extent of any payment hereunder to all the insured's rights of recovery therefore, and the insured shall do everything necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

9. *Changes.* Notice to or knowledge of any Agent or other person shall not effect a waiver or change any part of this policy nor estop the Company from asserting any right under it, nor shall the terms of this endorsement be waived or changed except by endorsement hereon.

10. *Assignment.* Assignment of interest under this endorsement shall not bind the Company until its consent is endorsed hereon. Bankruptcy or insolvency of the insured shall not relieve the Company of any of its obligations hereunder. If however, the insured shall die or be adjudged bankrupt or insolvent within the policy period, this endorsement, unless cancelled, shall cover the insured's legal representative for the unexpired portion of such period.

11. *Employers' Liability Common Law Defenses.* As a condition to the recovery of any loss under this endorsement with respect to bodily injury to any employee arising out of and in the course of employment by the insured, the insured agrees that he has not and will not abrogate his common law defenses under any worker's compensation law. In the event the insured should, at any time during the policy period, abrogate such defenses, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

12. *Maintenance of Underlying Insurance.* The insured agrees that the underlying policies listed in the Schedule of Underlying Insurance or renewals or replacements thereof not more restricted, shall be maintained in force as collectible insurance during the currency of this endorsement. In the event of failure by the insured to maintain such policies or to meet all conditions subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner as it would have applied had such policies been so maintained in force.

13. *Cancellation.*

    (a)  This endorsement may be cancelled by the named insured by surrender thereof to the Company or any of its authorized Agents, or by mailing to the Company written notice stating when thereafter such cancellation shall be effective.

    (b)  This endorsement may be cancelled by the Company by mailing to the insured named in the Declarations at the address shown in this endorsement, written notice stating when, not less than 45 days thereafter, such cancellation shall be effective. However,

        (1)  if the insured fails to discharge when due any of his obligations in connection with the payment of premium for this endorsement or any installment thereof, whether payable directly to the Company or its Agent or indirectly under any premium finance plan or extension of credit, this endorsement may be cancelled by the Company by mailing to such insured written notice stating when not less than ten days thereafter such cancellation shall be effective, on

        (2)  if this endorsement has been in effect less than sixty days at the time notice of cancellation is mailed and this is not a renewal, this endorsement may be cancelled by the Company by mailing to such insured written notice stating when not less than ten days thereafter such cancellation shall be effective.

    (c)  If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the Company or its representative, mailed or delivered, shall be sufficient tender of any refund due the named insured.

14. *Liberalization.* If during the period that insurance is in force under this endorsement or within 45 days prior to the inception date hereof, on behalf of the Company there be filed with and approved or accepted by the insurance supervisory authorities of the jurisdiction in which the named insured maintains his principal residence, in conformity with law, any forms, endorsements, rules or regulations by which the insurance provided under this endorsement could be extended or broadened, without additional premium charge, by endorsement or substitution of form, then such extended or broadened insurance shall inure to the benefit of the insured as though such endorsement or substitution of form had been made.

---

COUNTERSIGNATURE DATE                 AUTHORIZED REPRESENTATIVE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**STATE OF NEW YORK AMENDATORY ENDORSEMENT**

I.   It is agreed that any reference to the following companies: Crum & Forster Insurance Company, Crum & Forster Underwriters Co. of Ohio, Crum & Forster Indemnity Insurance Company, on the Information Page or elsewhere in this policy, is deleted, as such companies are either not admitted to do business in the state in which this policy has been issued, or are not authorized to provide the insurance afforded by this policy.

II.  A.  It is agreed for "Claims" and "Suits" brought in New York State, Insuring Agreement I. Coverage, Paragraph D. is deleted and replaced with the following:

      D.  We will in accordance with A., B. and C. above, pay on behalf of the "Insured" those sums in excess of the "Retained Limit".

    B.  Condition J. Loss Payments, Paragraph 2., including parts a. and b., do not apply to Loss Payments made by us for "Claims" or "Suits" brought in New York State.

III. It is agreed that Insuring Agreement II., Defense Settlement, is amended, as follows:

    A.  The first sentence of Paragraph B. is replaced by the following:

      At our sole discretion, we may investigate, negotiate or, with your consent, settle any "Occurrence", "Claim", or "Suit".

    B.  Paragraph D. is deleted and replaced by the following:

      D.  We will not be obligated to investigate, negotiate, settle or defend any "Claim" or "Suit" brought against, or applicable to, any "Insured" when insurance is available to or collectible by the "Insured" under any "Underlying Insurance" or "Other Insurance".

      In the event that:

        1.  the "Underlying Insurance" is not available or collectible because of the bankruptcy, insolvency or inability or failure to comply with any of its policy obligations of the underlying insurer(s) providing such "Underlying Insurance"; or

        2.  the "Underlying Insurance" is not available or collectible because you did not maintain or meeting the requirements of such insurance as warranted by, or you otherwise violated the provisions of Condition K of the policy, our obligation to investigate, negotiate, settle or defend any "Claim" or "Suit" brought against, or applicable to, any "Insured" will be no different than it would have been if the circumstances described in 1. or 2. had not happened.

      We will, at our sole discretion, have the right and opportunity to associate and participate with you or any provider of "Underlying Insurance" or "Other Insurance" in the investigation, negotiation, settlement or defense of any "Claim" or "Suit" reasonably likely to involve us under this policy.  If we exercise such right, we will do so at our own expense.

    C.  Paragraph E. is deleted and replaced by the following:

      E.  Transfer of Duties When a Limit of Insurance is Used Up.

a.  If we conclude that, based on "Occurrences", offenses, "Claims" or "Suits" which have been reported to us and to which this insurance may apply, the:

    (1)  Each Occurrence Limit;

    (2)  General Aggregate Limit (other than Products-Completed Operations);

    (3)  Products-Completed Operations Aggregate Limit; or

    (4)  Combined Aggregate Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first "Named Insured", in writing, to that effect.

b.  When a limit of insurance described in paragraph a. above has actually been used up in the payments of judgments or settlements:

    (1)  We will notify the first "Named Insured", in writing, as soon as practicable, that:

        (a)  Such a limit has actually been used up; and

        (b)  Our duty to defend "Suits" seeking damages subject to that limit has also ended.

    (2)  We will initiate, and cooperate in, the transfer of control, to any appropriate "Insured", of all "Claims" and "Suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That "Insured" must cooperate in the transfer of control of said "Claims" and "Suits".

        We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "Suits" until such transfer is completed, provided the appropriate "Insured" is cooperating in completing such transfer.

        We will take no action whatsoever with respect to any "Claim" or "Suit" seeking damages that would have been subject to that limit, had it not been used up, if the "Claim" or "Suit" is reported to us after that limit of insurance has been used up.

    (3)  The first "Named Insured", and any other "Insured" involved in a "Suit" seeking damages subject to that limit, must arrange for the defense of such "Suit" within such time period as agreed to between the appropriate "Insured" and us. Absent any such agreement, arrangements for the defense of such "Suit" must be made as soon as practicable.

c.  The first "Named Insured" will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b.(2) above.

The duty of the first "Named Insured" to reimburse us will begin on:

    (1)  The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph a. above; or

    (2)  The date on which we sent notice in accordance with paragraph b.(1) above, if we did not send notice in accordance with paragraph a. above.

d.  The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

IV.  Paragraph 6. of the definition of "Personal Injury" is deleted and replaced by the following:

    6.  Discrimination other than discrimination on the basis of race, creed, color, sex, age or national origin (unless insurance thereof is prohibited by law).

V.  Exclusion B. is amended to read as follows:

The insurance provided by this policy does not apply to "Bodily Injury" to your employees if the "Bodily Injury" arises out of and in the course of employment that is subject to the Workers Compensation Law of New York, but this exclusion does not apply to liability of others you assume under contract.

The Underlying Workers Compensation and Employers Liability Insurer shown on Schedule A, Schedule of Underlying Insurance of this policy, may not limit its liability to pay damages for which it becomes legally liable to pay because of "Bodily Injury" to your employees, if the "Bodily Injury" arises out of and in the course of employment that is subject to the Workers Compensation Law of New York.

VI.  It is also agreed that Condition G., Duties in the Event of "Occurrence", "Claim", or "Suit" is amended to add paragraph 5:

    5.  Failure to give notice within the prescribed time shall not invalidate any "Claim" made by you, if it can be shown not to have been reasonably possible to give notice within the prescribed time and that the notice was given as soon as reasonably possible.

A notice given by, or on behalf of, the "Insured", or written notice by, or on behalf of, the injured person or any other claimant, to any licensed agent of ours in New York State with particulars sufficient to identify you, shall be deemed notice to us.

VII.  The following Condition is added to this policy:

    S.  In case judgment against the "Insured" or his personal representative in an action brought to recover damages for injury sustained or loss or damages occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the "Insured", or upon the "Insured", and upon the insurer, then an action may, except during a stay or limited stay of execution against the "Insured" on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

VIII. A. The following is added to the policy cancellation provision and supersede any other provision to the contrary:

    1. (a)  Cancellation For Policies in Effect 60 Days of Less

We may cancel this policy by mailing or delivering to the first "Named Insured" written notice of cancellation at least:

    (1)  60 days before the effective date of cancellation, if we cancel for any reason not included in Paragraph (2) below.

    (2)  15 days before the effective date of cancellation, if we cancel for any of the

        (a)  Nonpayment of premium;

        (b)  Conviction of a crime arising out of acts increasing the hazard insured against;

        (c)  Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a "Claim" thereunder;

(d)  After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increase the hazard insured against, and which occurred subsequent to inception of the current policy period.

(e)  Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

(f)  Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

(g)  A determination by the Superintendent that the continuation of the policy would violate, or would place us in the violation of, any provision of the Insurance Code; or

(h)  If this is an excess liability policy as defined in Section 3426(a)(6) or a hyper limits excess policy as defined in Section 342(a)(7) of the Insurance Law and if one or more of the underlying policies is canceled, for one of the reasons specified above, and such underlying policy is not replaced without a lapse in coverage.

(b)  Cancellation of Policies in Effect for more than 60 days

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel this policy only for any of the reason listed in Paragraph a.(2) above, provided we mail the first "Named Insured" a notice of cancellation at least 15 days before the effective date of cancellation.

2.  We will mail or deliver our notice, including the reason, to the first "Named Insured" at the address shown in the policy and the authorized agent or broker.

B.  1.  NON-RENEWAL

If we decide not to renew this policy, we will send a notice as provided in Paragraph B.3., below, along with the reason for non-renewal.

2.  CONDITIONAL RENEWAL

If this is an excess liability policy as defined in Section 3426(a)(6) of the Insurance Law and we condition renewal of this policy upon:

a.  Change of limits

b.  Change of type of coverage

c.  Reduction of coverage

d.  Increased deductible

e.  Addition of exclusion

f.  Increased premiums in excess of 10%, exclusive of any premium increase due to an commensurate with insured value added, or as a result of experience rating, retrospective rating or audit.

we will send notice as provided in Paragraph B.3.a., c., and d. below

3.   NOTICES OF NON-RENEWAL AND CONDITIONAL RENEWAL

   a.   If this is an excess liability policy as defined in Section 3426(a)(6) or a Jumbo Risk as defined in Section 3426(a)(8) of the Insurance Law and we decide not to renew this policy, or to conditionally renew this policy as provided in Paragraph B.1. and B.2., above, we will mail or deliver written notice to the first "Named Insured" shown in the Declarations at least 60 days, but not more than 120 days before:

       (1)   The expiration date; or

       (2)   The anniversary date, if this is a continuous policy.

   If this notice is sent late, coverage is extended for 60 days from when the notice was mailed, at the premium and terms of the existing policy.

   We may condition the renewal of an excess liability policy upon requirements relating to the underlying policy or policies.  If such requirements, as set forth in the conditional renewal notice, are not satisfied as of the latter of the expiration date of the policy, or 60 days after the mailing of the notice, the conditional renewal shall be deemed to be an effective notice of non-renewal.  This provision does not apply if we have offered to renew, or if you fail to pay a premium for the renewal.

   b.   If this is a hyper limits excess liability policy as defined in Section 3426(a)(7) of the Insurance Law and we decide not to renew this policy as provided in Paragraph B.1., above, we will mail or deliver written notice to the first "Named Insured" shown in the Declarations at least 60 days, but not more than 120 days before:

       (1)   The expiration date; or

       (2)   The anniversary date, if this is a continuous policy.

   c.   Notice will be mailed or delivered to the first "Named Insured" at the address shown in the policy and the authorized agent or broker.  If notice is mailed, proof of mailing will be sufficient proof of notice.

   d.   We will not send you notice of non-renewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or no longer desired.

All other terms and conditions of this policy remain unchanged.


**Crum&Forster**
**Insurance**

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE

LUXOTTICA U.S. HOLDINGS CORP.

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER/ POLICY NO. | POLICY PERIOD |
|---|---|---|---|
| (A) Automobile Liability | Bodily Injury<br><br>Each Person<br><br>Each Accident | LIBERTY MUTUAL AS1681004130058 RENL OF | 2/1/99-00 |
| Policy Type and Symbol<br>[X] Business Auto    1<br>[ ] Motor Carrier<br>[ ] Truckers<br>[ ] | Property Damage<br><br>Each Accident | | |
| | Bodily Injury and Property Damage<br>Combined Single Limit<br>$1,500,000    Each Occurrence | | |
| (B) Garage Liability | Auto Each Accident<br>Other Than Auto Each Accident<br>Other Than Auto Aggregate<br>[ ] Per Location<br>Personal & Advertising Injury<br>Fire Damage - Any One Fire | | |
| (C) Commercial General Liability | $3,000,000  Each Occurrence<br>$6,000,000  General Aggregate<br>[X] Per Location [ ] Per Project<br>$3,000,000  Products-Completed Operations<br>           Aggregate<br>    N/A    Policy Aggregate<br>$3,000,000  Personal & Advertising<br>           Injury<br>$1,000,000  Fire Damage - Any One Fire | LIBERTY MUTUAL TB2681004130038 RENL OF | 2/1/99-00 |
| Comprehensive General Liability | Bodily Injury<br><br>Each Occurrence<br>Aggregate When Applicable<br><br>Property Damage<br><br>Each Occurrence<br>Aggregate When Applicable | | |
| | Bodily Injury and Property Damage Combined<br>Single Limit<br><br>Each Occurrence<br>Aggregate When Applicable | | |

| (D) Liquor Liability | Each Common Cause Aggregate ☐ Per Location | | |
|---|---|---|---|
| (E) Standard Workers Compensation and Employers Liability | Part Two - Employers Liability Bodily Injury By Accident $   500,000 Each Accident Bodily Injury By Disease $   500,000 Policy Limit Bodily Injury By Disease $   500,000 Each Employee | LIBERTY MUTUAL WC168004130-028 RENL OF  LIBERTY MUTUAL WA168D004130-018 RENL OF | 2/1/99-00  2/1/99-00 |

(F)


**Crum&Forster Insurance**

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE
AVANTE GARDE

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER/ POLICY NO. | POLICY PERIOD |
|---|---|---|---|
| (A) Automobile Liability | Bodily Injury | VIGILANT INS CO. 77831460 RENL OF (AGO) | 2/1/99-00 |
| | Each Person | | |
| Policy Type and Symbol | Each Accident | | |
| [X] Business Auto   1 | Property Damage | | |
| [ ] Motor Carrier | | | |
| [ ] Truckers | Each Accident | | |
| [ ] | | | |

Bodily Injury and Property Damage
Combined Single Limit
$1,000,000    Each Occurrence

| (B) Garage Liability | Auto Each Accident Other Than Auto Each Accident Other Than Auto Aggregate [ ] Per Location Personal & Advertising Injury Fire Damage - Any One Fire | | |
|---|---|---|---|

| (C) Commercial General Liability | $1,000,000  Each Occurrence $2,000,000  General Aggregate [X] Per Location [ ] Per Project $1,000,000  Products-Completed Operations Aggregate N/A  Policy Aggregate $1,000,000  Personal & Advertising Injury $1,000,000  Fire Damage - Any One Fire | GREAT NORTHERN INS 6989821 RENL OF (AGO) | 2/1/99-00 |

Comprehensive
General
Liability

Bodily Injury

    Each Occurrence
    Aggregate When Applicable

Property Damage

    Each Occurrence
    Aggregate When Applicable

Bodily Injury and Property Damage Combined
Single Limit

    Each Occurrence
    Aggregate When Applicable

| (D) Liquor Liability | Each Common Cause |
|---|---|
| | Aggregate |
| | ☐ Per Location |

| (E) Standard Workers Compensation and Employers Liability | Part Two - Employers Liability |
|---|---|
| | Bodily Injury By Accident |
| |     Each Accident |
| | Bodily Injury By Disease |
| |     Policy Limit |
| | Bodily Injury By Disease |
| |     Each Employee |

(F)



## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF POLICY | APPLICABLE LIMITS | INSURER/ POLICY NO. | POLICY PERIOD |
|---|---|---|---|
| (A) Automobile Liability | Bodily Injury . | LIBERTY-ONTARIO CANADA AC1681004130078 RENL OF | 2/1/99-00 |
| | Each Person | | |
| Policy Type and Symbol | Each Accident | LIBERTY QUEBEC AQ1681004130098 RENL OF | 2/2/99-00 |
| [X] Business Auto    1 | Property Damage | | |
| [ ] Motor Carrier | | | |
| [ ] Truckers | Each Accident | | |
| [ ] | | | |
| | Bodily Injury and Property Damage Combined Single Limit $1,000,000    Each Occurrence | | |
| (B) Garage Liability | Auto Each Accident Other Than Auto Each Accident Other Than Auto Aggregate [ ] Per Location Personal & Advertising Injury Fire Damage - Any One Fire | | |
| (C) Commercial General Liability | $1,000,000  Each Occurrence $2,000,000  General Aggregate [X] Per Location [ ] Per Project $1,000,000  Products-Completed Operations Aggregate N/A  Policy Aggregate $1,000,000  Personal & Advertising Injury $1,000,000  Fire Damage - Any One Fire | LIBERTY-CANADA KE1681004130-068 RENL OF | 2/1/99-00 |
| Comprehensive General Liability | Bodily Injury Each Occurrence Aggregate When Applicable Property Damage Each Occurrence Aggregate When Applicable | | |
| | Bodily Injury and Property Damage Combined Single Limit Each Occurrence Aggregate When Applicable | | |

| (D) Liquor Liability | Each Common Cause<br>Aggregate<br>☐ Per Location |
|---|---|

| (E) Standard Workers Compensation and Employers Liability | Part Two - Employers Liability<br>Bodily Injury By Accident<br>    Each Accident<br>Bodily Injury By Disease<br>    Policy Limit<br>Bodily Injury By Disease<br>    Each Employee |
|---|---|

(F)

**Crum&Forster
Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT - AGGREGATE LIMITS OF INSURANCE (PER LOCATION)**

The General Aggregate Limit under Insuring Agreements, V. Limits of Insurance, Paragraph B. and as stated in Item 4(b) of the Declarations of this policy, applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

> Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy.
>
> Policy # _____
>
> Effective on and after _____ , 19_____   12:01 a.m. standard time.
>
> Issued to _____

Countersigned by _____
                          Authorized Representative

FM 101.0.1067 (9-89)

**Crum&Forster**
**Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EMPLOYERS  LIABILITY  LIMITATION**

With respect to "Bodily Injury" sustained by any of your employees arising out of, and in the course of employment, this policy is limited to the coverage provided by the "Underlying Insurance".

If coverage is not provided by "Underlying Insurance", coverage is excluded from this policy.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| |
|---|
| Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy. |
| Policy # _____ |
| Effective on and after _____ , 19_____  12:01 a.m. standard time. |
| Issued to _____ |

Countersigned by _____
                              Authorized Representative

FM 101.0.1173 (9/89)

**♪ Crum&Forster**
**♫ Insurance**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## FOREIGN EXPOSURE LIMITATION

Insuring Agreement VII. Territory is hereby deleted and replaced by the following:

**VII. Territory**

This policy applies to "Occurrences" that happen within the United States, its territories, possessions or Canada.

With respect to "Bodily Injury", "Property Damage", "Advertising Injury". or "Personal Injury" for claims arising out of "Occurrences" happening outside the United States, its territories, possessions or Canada this policy is limited to the coverage provided by the "Underlying Insurance".

If coverage is not provided by "Underlying Insurance", coverage is excluded from this policy.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy.

Policy # _____

Effective on and after _____ , 19_____ 12:01 a.m. standard time.

Issued to _____

Countersigned by _____
Authorized Representative

FM 101.0.1177 (9/89)

**Crum&Forster**
**Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION OF DAMAGE TO PERSONAL PROPERTY**

This policy does not apply to "Property Damage" to personal property in the care, custody or control of the "Insured" or over which the "Insured" is, for any purpose, exercising physical control.

Personal Property means all property other than real property.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy.

Policy # _____

Effective on and after _____ , 19_____ 12:01 a.m. standard time.

Issued to _____

---

Countersigned by _____
                        Authorized Representative

FM 101 0.923 (9-89)

*ʃ* **Crum&Forster**
*ʃ* **Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WATERCRAFT LIMITATION**

As respects "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury", this policy is limited to the coverage provided in the "Underlying Insurance" for the ownership, maintenance, operation, use, loading or unloading of any watercraft.

If coverage is not provided by "Underlying Insurance", coverage is excluded in this policy.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

---

Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy.

Policy # _____

Effective on and after _____ , 19_____ 12:01 a.m. standard time.

Issued to _____

---

Countersigned by _____
                              Authorized Representative

FM 101.0.961 (9-89)


**Crum&Forster Insurance**

**United States Fire Insurance Company**
**A New York Corporation**
**Home Office: New York, NY**

(A Capital Stock Company)

WE HAVE PROPERLY ISSUED THIS POLICY, BUT IT WILL NOT BE VALID UNLESS COUNTERSIGNED ON THE COMMON DECLARATIONS PAGE BY ONE OF OUR AUTHORIZED REPRESENTATIVES.

SIGNATURE

SIGNATURE

Valerie J. Gasparik
Secretary

James A. Stark
Chairman of the Board

FM 206.0.11 (9/96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS EXCLUSION**

This policy does not apply to "Bodily Injury", "Property Damage", "Personal Injury", or "Advertising Injury" arising directly or indirectly out of:

A.  Any actual or alleged failure, malfunction or inadequacy of:

    (1)  Any of the following, whether belonging to any "Insured" or others:

        (a)  Computer hardware, including microprocessors;

        (b)  Computer application software;

        (c)  Computer operating systems and related software;

        (d)  Computer networks;

        (e)  Microprocessors (computer chips) not part of any computer system; or

        (f)  Any other computerized or electronic equipment or components; or

    (2)  Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.(1) of this endorsement;

    due to the inability to correctly recongnize, process, distinguish, interpret or accept the year 2000 and beyond.

B.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.(1) of this endorsement.

**Crum&Forster**
**Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AUTOMOBILE LIMITATION - NEW YORK**

We will pay for "Bodily Injury" or "Property Damage" arising out of the ownership, maintenance, operation, use, loading or unloading of an "automobile", subject to the same terms and conditions as policies providing that coverage listed in the "Underlying Insurance". In the event the "Underlying Insurance" is not maintained, this policy shall apply subject to the same terms and conditions of such scheduled "Underlying Insurance".

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy. |
|---|
| Policy # _____ |
| Effective on and after _____ , 19_____ 12:01 a.m. standard time. |
| Issued to _____ |

Countersigned by _____
Authorized Representative

**Crum&Forster
Insurance**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**PROFESSIONAL LIABILITY  LIMITATION**

As respects "Bodily Injury", "Property Damage", "Advertising Injury" or "Personal Injury" for "Professional Liability" claims arising out of the "Insured's" profession as a(n)

OPTICIANS AND OPTOMETRISTS PROFESSIONAL

this policy is limited to the coverage  provided to the "Insured" in "Underlying Insurance".

If coverage is not provided by "Underlying Insurance", coverage is excluded from this policy.

"Professional Liability", as used in this endorsement, means liability arising out of the "Insured's" profession as stated above and caused by the rendering or failure to render professional services for others, including professional services of any employee of the "Insured" or of any other person for whom the "Insured" is legally liable.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the policy. |
| --- |
| Policy # _____ |
| Effective on and after _____ , 19_____  12:01 a.m. standard time. |
| Issued to _____ |

Countersigned by _____
                              Authorized Representative

FM 101.0.928 (9-89)

**Crum&Forster**
**Insurance**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


CROSS SUITS EXCLUSION


This policy does not apply to "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury"
arising out of suits brought by any "Insured" against another "Insured".

**Crum&Forster**
**Insurance**

# EXCESS EMPLOYEE BENEFITS LIABILITY COVERAGE LIMITATION

## THIS ENDORSEMENT PROVIDES EXCESS CLAIMS MADE COVERAGE. PLEASE READ IT CAREFULLY.

### SUPPLEMENTAL DECLARATIONS

ITEM 1. RETROACTIVE DATE (Same retroactive date as policy listed below in Item 2,
unless another date is shown here):

ITEM 2. SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE:

| Type of Coverge | Applicable Limits | Insurer, Policy No. & Policy Dates |
|---|---|---|
| | | LIBERTY MUTUAL |
| | | TB2681004130038    2/1/99-00 |
| EMPLOYEE BENEFITS LIABILITY | $ 3,000,000   Each Claim | |
| | $ 3,000,000   Aggregate | |

ITEM 3. LIMITS OF LIABILITY:

$25,000,000  Each Claim  $25,000,000  Aggregate

### INSURING AGREEMENT

I.   COVERAGE

We will pay those sums that the "Insured" becomes legally obligated to pay as damages, in accordance
with the applicable provisions of the underlying coverage shown above Item 2.  Schedule A - Schedule of
Underlying Insurance, which are in excess of the Applicable Limits of the Underlying Insurance shown
above in Item 2.  Schedule A - Schedule of Underlying Insurance.

This endorsement is a part of your policy and take effect on the effective date of your policy, unless
an other effective date is shown below.

Complete only when this endorsement is not prepared with the policy **or** is not to be effective with the
policy.

Policy#_____

Effective on and after_____, 19_____12:01 a.m. standard time.

Issued to_____

Countersigned by_____
Authorized Representative

The provisions of the coverage shown above in Item 2.  Schedule A - Schedule of Underlying Insurance
are incorporated as a part of this endorsement, except for (a) any duty to investigate or defend any
"Claim", or to pay for any investigation or defense, (b) the limits of insurance, and (c) any other provision
that is not consistent with the provisions of this endorsement.

FM 101 0 1268 (7/94)

This endorsement applies only to "Claims" first made during the "Policy Period" stated in the Declarations of this policy or during the policy period of this endorsement if the alternate endorsement effective date box has been completed on the front of this endorsement.

This endorsement does not apply to any "Claim" for damages which occurred before the date, if any, shown in Item 1. Retroactive Date, of this endorsement or which occurs after the "Policy Period".

## II. DEFENSE SETTLEMENT

Paragraph B of II. Defense Settlement is amended, as follows, as respects the coverage provided by this endorsement only:

(2) When we assume the defense of any "Claim" or Suit" we may investigate, negotiate and settle any "Claim", "Suit" or trial. We will pay our expenses as incurred in addition to the applicable Limits of Insurance under this policy when the underlying coverage shown above in Item 2. Schedule A - Schedule of Underlying Insurance, also pays its expenses in addition to its applicable limits of insurance. We will pay our expenses as part of the applicable Limits of Insurance under this endorsement when the underlying coverage shown above in Item 2. Schedule A - Schedule of Underlying Insurance also pays its expenses as part of its applicable limits of insurance.

## III. LIMITS OF INSURANCE

Insuring Agreement V. Limits of Insurance, is amended to include:

H. The Aggregate Limit shown above in Item 3. Limits of Liability, is the most we will pay under Insuring Agreement I of this endorsement for all damages. This aggregate limit is part of and not in addition to any General Aggregate Limit or Combined Aggregate Limit shown on the Declarations of this policy.

I. Subject to the Aggregate Limit, the Each Claim Limit shown above in Item 3. Limits of Liability, is the most we will pay under Insuring Agreement I of this endorsement for damages arising from a "Claim".

## IV. EXCLUSIONS

The following exclusion is added to the policy:

This policy does not apply to any obligation or liability imposed on the "Insured" under the Employees' Retirement Income Security Act of 1974, or any amendments thereto, or any similar laws.

## V. CONDITIONS

Paragraph (2) of Condition K, Maintenance of Underlying Insurance, is amended, as follows, as respects this endorsement only:

(2) that the applicable limits of liability, as warranted above in Item 2, Schedule A - Schedule of Underlying Insurance, will not change, except for reduction or exhaustion in the aggregate or each claim limits due to payments for damages for "Claims" first made during the "Policy Period" and occurring on or after the date, if any, shown in Item 1. Retroactive Date.

**Crum & Forster Insurance**

# CFI DEFENDER 2000
## COMMERCIAL UMBRELLA POLICY

## INTRODUCTION

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you", "your" and "Named Insured" refer to any person or organization identified as a "Named Insured" under INSURING AGREEMENT III.

The words "Insured" or "Insureds" refer to any person or organization qualifying as an "Insured" under INSURING AGREEMENT III.

The words "we", "us" and "our" refer to the Company stated in Item 3 of the Declarations providing this insurance.

Other words and phrases that appear in initial capital letters and quotation marks have special meanings. Refer to INSURING AGREEMENT IV and other provisions of this policy for such meanings.

## INSURING AGREEMENTS

### I. COVERAGE

A. We will pay on behalf of the "Insured" those sums in the excess of the "Retained Limit" which the "Insured" by reason of liability imposed by law, or tort liability assumed by the "Insured" under contract prior to the "Occurrence", shall become legally obligated to pay as damages for:

   1. "Bodily Injury" or "Property Damage" occurring during the Policy Period stated in Item 2 of the Declarations and caused by an "Occurrence";

   2. "Personal Injury" caused by an "Occurrence" committed during the Policy Period; or

   3. "Advertising Injury" caused by an "Occurrence" committed during the Policy Period.

   Damages because of "Bodily Injury" include damages claimed by any person or organization for care or loss of services resulting at any time from the "Bodily Injury".

B. We will also pay on behalf of the "Insured" those sums in excess of the "Retained Limit" which the "Insured" by reason of liability imposed by law shall become legally obligated to pay as a "Covered Pollution Cost or Expense" to which this insurance applies, caused by an "Occurrence" and resulting from the ownership, maintenance or use of an "Automobile" or "Mobile Equipment". However, we will only pay for the "Covered Pollution Cost or Expense" if there is either "Bodily Injury" or "Property Damage" to which this insurance applies that is caused by the same "Occurrence".

C. The amount we pay for damages, or damages and "Covered Pollution Cost or Expense", is limited as described in INSURING AGREEMENT V.

D. If we are prevented by law or statute from paying on behalf of the "Insured", we will, in accordance with paragraphs A., B. and C. above, indemnify the "Insured" for those sums in excess of the "Retained Limit".

## II. DEFENSE SETTLEMENT

A. We shall have the right and duty to defend any "Claim" or "Suit" seeking damages, or damages and "Covered Pollution Cost or Expense", covered by the terms and conditions of this policy, even if the allegations are groundless, false or fraudulent, when:

    1. the applicable limits of "Underlying Insurance" and "Other Insurance" have been exhausted by payments; or

    2. damages, or damages and "Covered Pollution Cost or Expense", are sought which are not covered by the terms and conditions of "Underlying Insurance" or "Other Insurance".

B When we assume the defense of any "claim" or "suit", we may investigate any "Occurrence" and, negotiate and settle any "Claim" or "Suit". We will pay our expenses as incurred in addition to the applicable Limits of Insurance stated in Item 4(a), 4(b), 4(c) or 4(d) of the Declarations, subject to the provisions of paragraph E. below.

C. When we assume the defense of any "Claim" or "Suit", we also have the following obligations, but only to the extent that they are not included in "Underlying Insurance" or "Other Insurance". We will:

    1. pay the premium for bonds required by law to release attachments for bond amounts not exceeding the applicable Limits of Insurance. We are not obligated to apply for or furnish any such bond;

    2. pay the premium for appeal bonds required by law to appeal any "Claim" or "Suit" we defend, but only for bond amounts not exceeding the applicable Limits of Insurance. We are not obligated to apply for or furnish any such bond;

    3. pay up to $3,000 in premium for bail bonds, but we are not obligated to apply for or furnish any such bond;

    4. pay all costs taxed against the "Insured" in any "Claim" or "Suit" we defend;

    5. pay all pre-judgment interest against the "Insured" attributable to that part of any judgment which we become obligated to pay. Our duty to pay such interest ends when we have offered to pay, or deposited in court, the part of the judgment which we become obligated to pay and which is within the applicable Limits of Insurance;

    6. pay all post-judgment interest against the "Insured" attributable to that part of any judgment which we become obligated to pay. Our duty to pay such interest ends when we have paid, or offered to pay or deposited in court, the part of the judgment which we become obligated to pay and which is within the applicable Limits of Insurance; and

    7. reimburse the "Insured" for reasonable expenses that are incurred at our request including the actual loss of earnings.

D. In those circumstances where paragraph A. above does not apply, we will not be obligated to investigate, negotiate, settle or defend any "Claim" or "Suit" brought against, or applicable to, any "Insured".

However, we will have the right and opportunity to associate and participate with you or any provider of "Underlying Insurance" or "Other Insurance" in the investigation, negotiation, settlement or defense of any "Claim" or "Suit" reasonably likely to involve us under this policy. If we exercise such right, we will do so at our own expense.

E.  We will not defend any "Suit" or "Claim" after we have exhausted by payment the applicable Limits of Insurance.

F.  If we are prevented by law or statute from complying with INSURING AGREEMENT II of this policy, we will reimburse the "Insured" for any expense incurred with our prior written consent.

## III. NAMED INSURED AND INSURED

A.  The term "Named Insured" means any individual or organization stated in Item 1 of the Declarations and:

    1.  if you are an individual, you and your spouse, but only with respect to the conduct of the business of which you are sole owner;

    2.  if you are a partnership or joint venture, your partners or members and their spouses, but only with respect to their conduct of your business; or

    3.  if you are an organization other than a partnership or joint venture:

        a.  any of your subsidiary companies or any company over which you exercise control and actively manage, other than newly acquired or formed companies; or

        b.  any organization you newly acquire or form over which you exercise control and actively manage and to which no other similar insurance is available; except that this policy does not apply to damages, or damages and "Covered Pollution Cost or Expense", that occurred before you acquired or formed the organization.

B.  The term "Insured" means the "Named Insured" and:

    1.  your "Executive Officers", directors and stockholders, but only within the scope of their duties as such;

    2.  "Employees" while within the scope of their employment by you, except for:

        a.  "Bodily Injury" or "Property Damage" arising out of the use of an "Automobile", other than one owned by, loaned to, or hired by you.  This exception applies only when such exception is in the "Underlying Insurance"; or

        b.  "Bodily Injury" or "Personal Injury":

            (i)  to you, to your partners or members (if you are a partnership or joint venture), or to a co-"Employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

            (ii)  to the spouse, child, parent, brother or sister of that co-"Employee"; or

            (iii)  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury.

        This exception applies only when such exception is in the "Underlying Insurance".

    3.  any person or organization that has obligated you by written contract to provide the insurance that is afforded by this policy, but only with respect to liability arising out of "Your Work", "Your Product" and to property owned or used by you;

    4.  any person who has your permission to use an "Automobile" owned by you, loaned to you, or hired for use by you, and any person or organization legally responsible for the use of that "Automobile";

5.  any person (other than your "Employee") or any organization while acting as manager of your real estate;

6.  any person or organization having proper temporary custody of your property if you die, but only:

   a.  with respect to liability arising out of the maintenance or use of that property; and

   b.  until your legal representative has been appointed;

7.  your legal representative if you die, but only with respect to duties as such;

8.  any person or organization included as an insured in the "Underlying Insurance"; or

9.  at your option, any person or organization (other than the "Named Insured") included as an additional insured in the "Underlying Insurance", but only with respect to liability arising out of "Your Work", "Your Product", or property owned or used by you.

## IV. DEFINITIONS

"**Advertising Injury**" means injury caused by one or more of the following offenses committed in the course of advertising your goods, products or services:

1.  oral, written, televised, videotaped or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.  oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy;

3.  misappropriation of advertising ideas or style of doing business; or

4.  infringement of copyright, title or slogan.

"**Automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. "Automobile" does not include "Mobile Equipment" but does include self-propelled vehicles with the following types of permanently attached equipment:

1.  equipment designed primarily for:

   a.  snow removal;

   b.  road maintenance, but not construction or resurfacing; or

   c.  street cleaning;

2.  cherry pickers and similar devices mounted on "Automobile" or truck chassis and used to raise or lower workers; and

3.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

"**Bodily Injury**" means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation including resulting death.

"**Claim**" means any demand upon the "Insured" for monetary compensation, whether formal or informal, written or oral, including, without limitation, the service of "Suit" or arbitration proceedings against the "Insured", for monetary compensation alleging liability of the "Insured" as a result of an "Occurrence" which may or may not be covered by this policy. The term "Claim" does not include reports of accidents, or "Occurrences", or any acts, errors, offenses or omissions which may give rise to a "Claim" under this policy.

"**Covered Pollution Cost or Expense**" means any cost or expense arising out of:

1. any request, demand or order; or

2. any "Claim" or "Suit" by or on behalf of a governmental authority demanding

that the "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants".

"Covered Pollution Cost or Expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":

a.  that are, or that are contained in any property that is:

   (i)    being transported or towed by, handled, or handled for movement into, onto or from the covered "Automobile" or "Mobile Equipment";

   (ii)   otherwise in the course of transit by or on behalf of the "Insured";

   (iii)  being stored, disposed of, treated or processed in or upon the "Automobile" or "Mobile Equipment"; or

b.  before the "Pollutants" or any property in which the "Pollutants" are contained are moved from the place where they are accepted by the "Insured" for movement into or onto the "Automobile" or "Mobile Equipment"; or

c.  after the "Pollutants" or any property in which the "Pollutants" are contained are moved from the "Automobile" or "Mobile Equipment" to the place where they are finally delivered, disposed of or abandoned by the "Insured".

Paragraph a. above does not apply to:

(i)    fuels, lubricants, fluids, exhaust gases or other similar "Pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "Automobile" or "Mobile Equipment" or their parts, if the "Pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "Automobile" or "Mobile Equipment" part designed by its manufacturer to hold, store, receive or dispose of such "Pollutants";

(ii)   heat, smoke or fumes from a "Hostile Fire"; or

(iii)  a release of pollutants caused by lightning or "Explosion".

Paragraphs b. and c. above do not apply to "Occurrences" that occur away from premises owned by or rented to an "Insured" with respect to "Pollutants" not in or upon an "Automobile" or "Mobile Equipment" if:

(i)    the "Pollutants" or any property in which the "Pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "Automobile" or "Mobile Equipment"; and

(ii)   the discharge, dispersal, seepage, migration, release or escape of the "Pollutants" is caused directly by such upset, overturn or damage.

"**Employee**" includes a "Leased Worker". "Employee" does not include a "Temporary Worker".

"**Executive Officer**" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

"**Explosion**" means explosion other than the following:

1. shock waves caused by aircraft, generally known as sonic boom;

2. electric arcing;

3. rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;

4. water hammer;

5. rupture or bursting of water pipes;

6. rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water; or

7. rupture, bursting or operation of pressure relief devices.

"**Hostile Fire**" means a fire that becomes uncontrollable or breaks out from where it was intended to be.

"**Impaired Property**" means tangible property, other than "Your Product" or "Your Work", that:

1. cannot be used or is less useful because:

   a. it incorporates "Your Product" or "Your Work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

   b. you have failed to fulfill the terms of a contract or agreement; and

2. can be restored to use by:

   a. the repair, replacement, adjustment or removal of "Your Product" or "Your Work"; or

   b. your fulfillment of the terms of such contract or agreement.

"**Leased Worker**" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased Worker" does not include a "Temporary Worker".

"**Mobile Equipment**" means any of the following types of land vehicles, including any attached machinery or equipment, but does not include any vehicle defined as an "Automobile":

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. power cranes, shovels, loaders, diggers or drills; or

    b. road construction or resurfacing equipment; such as graders, scrapers or rollers,

5. vehicles not described in paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in paragraphs 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

"**Occurrence**" means:

1. with respect to "Bodily Injury" or "Property Damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions that results in "Bodily Injury" or "Property Damage" that is not expected or intended by the "Insured".

    All damages, or damages and "Covered Pollution Cost or Expense", that arise from continuous or repeated exposure to substantially the same general conditions are considered to arise from one "Occurrence".

2. with respect to "Personal Injury" or "Advertising Injury", an offense.

    All damages that arise from exposure to the same act, publication or general conditions are considered to arise from one "Occurrence" regardless of:

    a. the frequency of repetition;

    b. the number, kind or type of media used; or

    c. the number of claimants.

"**Other Insurance**" means:

1. an insurance policy affording coverage to any "Insured" for damages or "Covered Pollution Cost or Expense" that this policy also affords; or

2. any type of Self-Insurance or other mechanism by which an "Insured" arranges for funding of legal liabilities that this policy also affords coverage for.

3. "Other Insurance" does not include:

    a. "Underlying Insurance"; or

    b. any insurance policy purchased expressly to apply excess of the insurance afforded by this policy.

"**Personal Injury**" means injury, other than "Bodily Injury" or "Advertising Injury", caused by one or more of the following offenses arising out of your business:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, if done by or on behalf of its owner, landlord or lessor;

4. oral, written, televised, videotaped or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy; or

6. discrimination other than discrimination on the basis of race, creed, color, sex, age or national origin.

"**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

"**Products - Completed Operations Hazard**" means:

1. all "Bodily Injury" and "Property Damage" occurring away from premises you own or rent and arising out of "Your Product" or "Your Work" except:

   a. products that are still in your physical possession; or

   b. work that has not yet been completed or abandoned.

2. "Your Work" will be deemed completed at the earliest of the following times:

   a. when all of the work called for in your contract or agreement has been completed;

   b. when all of the work to be done at the site has been completed, if your contract or agreement calls for work at more than one site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

For purposes of paragraphs 1. and 2. above, work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. "Products-Completed Operations Hazard" does not include "Bodily Injury" or "Property Damage" arising out of:

   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it; or

   b. the existence of tools, uninstalled equipment or abandoned or unused materials.

"**Property Damage**" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss being deemed to occur at the time of the "Occurrence" that caused it.

"**Retained Limit**" means:

1. with respect to any "Occurrence" that is covered by "Underlying Insurance" or "Other Insurance", the total of the applicable limits of "Underlying Insurance" and "Other Insurance"; or

2. with respect to any "Occurrence" that is not covered by "Underlying Insurance" or "Other Insurance", the amount of the Self-Insured Retention stated in Item (4)e of the Declarations.

"**Suit**" means a civil proceeding in which damages, because of "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" or, damages and "Covered Pollution Cost or Expense", to which this insurance applies, are alleged. "Suit" includes:

1. an arbitration proceeding in which such damages, or damages and "Covered Pollution Cost or Expense", are claimed and to which you must submit or do submit with our consent;

2. any other alternative dispute resolution proceeding in which such damages, or damages and "Covered Pollution Cost or Expense", are claimed and to which you submit with our consent; or

3. an appeal of a civil proceeding.

"**Temporary Worker**" means a person who is furnished to you to substitute for a permanent "Employee" on leave or to meet seasonal or short-term workload conditions.

"**Underlying Insurance**" means:

1. the policies and/or Self-Insurance listed in Schedule A - Schedule of Underlying Insurance;

2. the policies and/or Self-Insurance listed in any Supplemental Schedule of Underlying Insurance attached to this policy by endorsement; and

3. any other policies and/or Self-Insurance for newly acquired or formed organizations.

"**Your Product**" means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Product"; and

2. the providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines or other property rented to or located for the use of others but not sold.

**"Your Work"** means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work"; and

2. the providing of or failure to provide warnings or instructions.

## V. LIMITS OF INSURANCE

A. The Limits of Insurance stated in Item 4(a), 4(b), 4(c) or 4(d) of the Declarations and the rules below fix the most we will pay, regardless of the number of:

   1. "Insureds";

   2. "Claims" made or "Suits" brought; or

   3. persons or organizations making "Claims" or bringing "Suits".

B. If there is a limit stated in Item 4(b) of the Declarations for the General Aggregate Limit, that amount is the most we will pay for all damages under INSURING AGREEMENT I, except for:

   1. damages included in the "Products-Completed Operations Hazard"; and

   2. damages covered in the "Underlying Insurance" to which no underlying aggregate limit applies.

C. If there is a limit stated in Item 4(c) of the Declarations for the Products-Completed Operations Aggregate Limit, that amount is the most we will pay under INSURING AGREEMENT I for all damages included in the "Products-Completed Operations Hazard".

D. If there is a limit stated in Item 4(d) of the Declarations for the Combined Aggregate Limit, that amount is the most we will pay under INSURING AGREEMENT I for all damages, except damages resulting from the ownership, maintenance or use of an "Automobile".

E. Subject to paragraphs B., C. and D. above, the Each Occurrence Limit stated in Item 4(a) of the Declarations is the most we will pay for the total of all damages and "Covered Pollution Cost or Expense" arising out of any one "Occurrence".

F. If the applicable limits of "Underlying Insurance" or "Other Insurance" are reduced or exhausted by payments from one or more "Occurrences", the Limits of Insurance of this policy will apply in excess of such reduced or exhausted limits.

G. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the Policy Period, unless the Policy Period is extended after issuance of this policy for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding Policy Period for purposes of determining the Limits of Insurance.

## VI. SELF-INSURED RETENTION

You will pay up to the amount of the Self-Insured Retention, as stated in Item 4(e) of the Declarations, for any "Claims" or "Suits" covered by this policy and to which no "Underlying Insurance" or "Other Insurance" applies.

## VII. TERRITORY

This policy applies to "Occurrences" that happen anywhere and "Claims" made or "Suits" brought anywhere.

# EXCLUSIONS

This policy does not apply to:

### A. EXPECTED OR INTENDED INJURY

"Bodily Injury" or "Property Damage" expected or intended from the standpoint of the "Insured".

This exclusion does not apply to "Bodily Injury" resulting from the use of reasonable force to protect persons or property.

### B. WORKERS' COMPENSATION OR SIMILAR LAWS

Any obligation for which the "Insured" or any of its insurers may be held liable under any workers compensation, unemployment compensation, disability benefits or similar laws.

### C. DISCRIMINATION

"Bodily Injury" that arises from discrimination on the basis of race, creed, color, sex, age or national origin.

### D. DAMAGE TO PROPERTY

"Property Damage" to any property owned by the "Insured".

### E. DAMAGE TO YOUR PRODUCT

"Property Damage" to "Your Product", arising out of it or any part of it.

### F. DAMAGE TO YOUR WORK

"Property Damage" to "Your Work", arising out of it or any part of it and included in the "Products-Completed Operations Hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### G. DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY INJURED

"Property Damage" to "Impaired Property" or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use.

### H. RECALL OF PRODUCTS, WORK OR IMPAIRED PROPERTY

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "Your Product";

2. "Your Work"; or

3. "Impaired Property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

### I. ADVERTISING INJURY

"Advertising Injury" arising out of:

1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

2. the failure of goods, products or services to conform with advertised quality or performance; or

3. the wrong description of the price of goods, products or services.

### J. POLLUTION EXCLUSION APPLICABLE TO AUTOMOBILE AND MOBILE EQUIPMENT

"Bodily Injury" or "Property Damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":

1. that are, or that are contained, in any property that is:

    a. being transported or towed by, handled, or handled for movement into, onto or from, the "Automobile" or "Mobile Equipment";

    b. otherwise in the course of transit by or on behalf of the "Insured"; or

    c. being stored, disposed of, treated or processed in or upon the "Automobile" or "Mobile Equipment".

2. before the "Pollutants" or any property in which the "Pollutants" are contained are moved from the place where they are accepted by the "Insured" for movement into or onto the "Automobile" or "Mobile Equipment"; or

3. after the "Pollutants" or any property in which the "Pollutants" are contained are moved from the "Automobile" or "Mobile Equipment" to the place where they are finally delivered, disposed of or abandoned by the "Insured".

Paragraph 1. above does not apply to:

(i) fuels, lubricants, fluids, exhaust gases or other similar "Pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "Automobile" or "Mobile Equipment" or their parts, if the "Pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "Automobile" or "Mobile Equipment" part designed by its manufacturer to hold, store, receive or dispose of such "Pollutants";

(ii) heat, smoke, or fumes from a "Hostile Fire"; or

(iii) a release of "Pollutants" caused by lightning or "Explosion".

Paragraphs 2. and 3. above do not apply to "Occurrences" that occur away from premises owned by or rented to an "Insured" with respect to "Pollutants" not in or upon an "Automobile" or "Mobile Equipment" if:

(i)  the "Pollutants" or any property in which the "Pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "Automobile" or "Mobile Equipment"; and

(ii) the discharge, dispersal, seepage, migration, release or escape of the "Pollutants" is caused directly by such upset, overturn or damage.

## K.  POLLUTION EXCLUSION APPLICABLE TO OTHER THAN AUTOMOBILE AND MOBILE EQUIPMENT

"Bodily Injury", "Property Damage", "Personal Injury", "Advertising Injury" or loss, cost or expense arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":

1.  at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any "Insured";

2.  at or from any premises, site or location that is or was at any time used by or for any "Insured" or others or the handling, storage, disposal, processing or treatment of waste;

3.  that are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

4.  at or from any premises, site or location on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

    a.  to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of the "Pollutants"; or

    b.  if the "Pollutants" are brought on or to the premises, site or location in connection with such operations by such "Insured", contractor or subcontractor.

Loss, cost or expense means those resulting from any:

(i)  request, demand, or order, that the "Insured", test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "Pollutants"; or

(ii) "Claim" or "Suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants".

Paragraphs 1. and 4.b. do not apply to "Bodily Injury" or "Property Damage" arising out of:

(i)  heat, smoke of fumes from a "Hostile Fire"; or

(ii) a release of "Pollutants" caused by lightning or "Explosion".

## L.  AIRCRAFT

"Bodily Injury" or "Property Damage" arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft or entrustment to others of any aircraft.

This exclusion does not apply to:

1.  liability assumed under contract for the ownership, maintenance, operation, use, loading or unloading of aircraft; or

2.  aircraft chartered with crew.

**M. WAR**

"Bodily Injury" or "Property Damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

**N. ASBESTOS**

"Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

This policy does not apply to Economic Loss, Diminution of Property, Abatement Costs, or any other loss, cost, or expense including Equitable Relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any "Claim" or "Suit" arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

As used in this exclusion:

Abatement Costs means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal, or replacement.

Diminution of Property means the diminishing or lessening in value of property.

Economic Loss means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

Equitable Relief means any remedy of relief, including restitution or injunctive relief, sought in a court with equitable powers.

**O. NUCLEAR ENERGY LIABILITY**

1. "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury":

   a. with respect to which an "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its limits of liability; or

   b. resulting from the Hazardous Properties of Nuclear Material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" resulting from the Hazardous Properties of Nuclear Material, if:

   a. the Nuclear Material (i) is at any Nuclear Facility owned by, or operated by or on behalf of, an "Insured" or (ii) has been discharged or dispersed therefrom;

   b. the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used processed, stored, transported or disposed of by or on behalf of an "Insured"; or

   c. the "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c.) applies only to "Property Damage" to such Nuclear Facility and any property therein.

As used in this exclusion:

Hazardous Properties include radioactive, toxic or explosive properties.

Nuclear Facility means:

1. any nuclear reactor;

2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packaging waste;

3. any equipment or device used for processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property Damage" includes all forms of radioactive contamination of property.

Source Material, Special Nuclear Material and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

Waste means any waste material (1) containing By-Product Material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore produced primarily for its Source Material content, and (2) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraphs (1) and (2).

## P. EMPLOYMENT-RELATED PRACTICES

1. "Bodily Injury" to:

   a. a person arising out of any:

      (i) termination of that person's employment;

      (ii) refusal to employ that person; or

      (iii) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. the spouse, child, parent, brother or sister of that person as a consequence of "Bodily Injury" to that person at whom any of the employment-related practices described in paragraphs (i), (ii), or (iii) above is directed.

2. "Personal Injury" to:

a. a person arising out of any termination of that person's employment; or

b. the spouse, child, parent, brother or sister of that person as a consequence of "Personal Injury" to that person at whom the employment-related practices described in paragraph a. above is directed.

This exclusion applies:

(i) whether the "Insured" may be liable as an employer or in any other capacity; and

(ii) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

# CONDITIONS

## A. APPEALS

If the "Insured" or any "Insured's" underlying insurer elects not to appeal a judgment that is in excess of the "Retained Limit", we may elect to do so at our own expense.

## B. AUDIT OF YOUR BOOKS AND RECORDS

We may audit and examine your books and records as they relate to this policy at any time during the Policy Period and for up to three years afterward.

## C. BANKRUPTCY OR INSOLVENCY OF AN INSURED

Bankruptcy or insolvency of the "Insured" will not relieve us of our obligations under this policy.

## D. BANKRUPTCY OR INSOLVENCY OF UNDERLYING INSURER

For all purposes of this policy, if any "Underlying Insurance" is not available or collectible because of:

1. the bankruptcy or insolvency of the underlying insurer(s) providing such "Underlying Insurance"; or

2. the inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy,

then this policy shall apply as if "Underlying Insurance" were available and collectible.

## E. CANCELLATION OR NON-RENEWAL

1. The First "Named Insured", as stated in Item 1 of the Declarations, may cancel this policy by mailing or delivering to us this policy or written notice of cancellation, stating when thereafter the cancellation is to be effective.

2. We may cancel or non-renew this policy by mailing or delivering to the First "Named Insured" written notice at least:

a. 10 days before the effective date of cancellation, if we cancel for nonpayment of Premium, as stated in Item 6 of the Declarations; or

    b. 60 days before the effective date of cancellation or non-renewal, if we cancel for any other reason, or non-renew.

3. We will mail or deliver our notice to the First "Named Insured's" last mailing address known to us.

4. Notice of cancellation or non-renewal will state the effective date of cancellation or non-renewal and will be effective for all "Insureds". The Policy Period will end on that date.

5. If this policy is canceled, we will send the First "Named Insured" any Premium refund due.

    If we cancel, return Premium will be pro rata. If cancellation is at the request of the First "Named Insured", return premium will be computed at 90% of pro rata unless prohibited by law or statute.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## F. CHANGES

This policy (including the Declarations and any schedules and endorsements attached) contains all the agreements between you and us concerning this insurance. The First "Named Insured" is authorized to make changes in the terms of this policy, with our consent.

This policy's terms and conditions can be amended or waived only by written endorsement issued by us and made a part of this policy.

## G. DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

1. You must see to it that we are notified of any "Occurrence" which may result in a "Claim or Suit" under this policy. To the extent possible notice should include:

    a. how, when and where the "Occurrence" took place;

    b. the names and addresses of any injured persons and witnesses; and

    c. the nature and location of any injury or damage arising out of the "Occurrence".

    This requirement applies only when the "Occurrence" is known to:

    a. you, if you are an individual;

    b. a partner, if you are a partnership;

    c. a member, if you are a joint venture; or

    d. an "Executive Officer" or insurance manager, if you are an organization other than a partnership or joint venture.

2. If a "Claim" is made or "Suit" is brought against any "Insured" that is likely to involve this policy, you must:

    a. immediately record the specifics of the "Claim" or "Suit" and the date received; and

    b. see to it that we are notified as soon as practical.

    This requirement will not be considered breached unless the breach occurs after such "Claim" or "Suit" is known to:

    a. you, if you are an individual;

    b. a partner, if you are a partnership;

    c. a member, if you are a joint venture; or

    d. an "Executive Officer" or insurance manager, if you are an organization other than a partnership or joint venture.

3.  You and any other involved "Insureds" must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with any "Claim" or "Suit";

    b.  authorize us to obtain records and other information;

    c.  cooperate with us in the investigation, settlement or defense of any "Claim" or "Suit"; and

    d.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any "Insured" because of injury, damage or "Covered Pollution Cost or Expense" to which this insurance may also apply.

4.  No "Insureds" will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## H.  FIRST NAMED INSURED

The person or organization first stated in Item 1 of the Declarations will act on behalf of all other "Insureds" where indicated in this policy.

## I.  INSPECTIONS AND SURVEYS.

We have the right, but are not obligated, to:

1.  make inspections and surveys at any time;

2.  give you reports on the conditions we find; and

3.  recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the Premiums to be charged.  We do not:

1.  make safety inspections;

2.  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

3.  warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

## J.  LOSS PAYMENTS

1.  We are liable for payment under this policy for any one "Occurrence" only when the amount of the "Retained Limit" with respect to such "Occurrence" has been paid.

2.  If we are obliged to indemnify the "Insured" for any payment of judgments or settlements, the "Insured" must make a written claim within 12 months of:

    a.  actually paying any amount in excess of the "Retained Limit"; or

    b.  the "Insured's" liability being made certain by:

        (i)  a final judgment against the "Insured"; or

        (ii)  the written agreement of the "Insured", the claimant and us.

If any later payments are made by the "Insured" for the same "Occurrence", written claim for these payments must likewise be made. We will reimburse you for these payments within 30 days of confirming that they are payable by this policy.

3. The "Insured" will reimburse us promptly for any amount of judgments and settlements paid on behalf of the "Insured" that is within the Self-Insured Retention.

## K. MAINTENANCE OF UNDERLYING INSURANCE

You agree that the "Underlying Insurance" shall remain in force during the Policy Period and that:

1. the terms, conditions and endorsements of the "Underlying Insurance" will not materially change;

2. the limits of "Underlying Insurance" will not change except for reduction or exhaustion in the aggregate or "Occurrence" limits due to payments for "Occurrences";

3. that the "Underlying Insurance" may not be canceled or non-renewed by either you or the insurance company without immediately notifying us;

4. that renewals or replacements of the "Underlying Insurance" will not be more restrictive in coverage or limits afforded; and

5. that "Underlying Insurance" for any newly acquired or formed organization be not more restrictive than the terms, conditions, endorsements and limits of the policies and/or Self-Insurance listed in Schedule A - Schedule of Underlying Insurance.

If you do not meet these requirements, this insurance shall apply as if the "Underlying Insurance" were available and collectible.

## L. OTHER INSURANCE

If there is any collectible "Other Insurance" available to the "Insured", (whether such insurance is stated to be primary, contributing, excess or contingent), the insurance provided by this policy will apply in excess of, and shall not contribute with such "Other Insurance".

## M. PREMIUM

The First "Named Insured" is responsible for the payment of all Premiums. All other "Named Insureds" are contingently liable for payment of Premium if the First "Named Insured" fails to do so.

The Premium for this policy, as stated in Item 6 of the Declarations, is a flat Premium. It is not subject to an adjustment unless an endorsement is attached to this policy.

## N. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the First "Named Insured", this insurance applies:

1. as if each "Named Insured" were the only "Named Insured"; and

2. separately to each "Insured" against whom a "Claim" is made or "Suit" is brought.

## O. TITLES OR CAPTIONS OF POLICY PROVISIONS

The title or caption of the sections and paragraphs of this policy and any attached endorsements are solely for convenience or reference. They do not affect the provisions to which they relate.

**P. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair these rights or the transfer thereof to us. The "Insured" will cooperate with us and, at our request, will assist in the pursuit and enforcement of those rights.

If there is any money recovered, we will disburse that money, as follows:

1. first, we will repay any actual payment made by the "Insured" that is in excess of the "Retained Limit";

2. second, we will be repaid to the extent of our actual payment; and

3. third, if any money remains, the "Insured" or any underlying insurer will be repaid to the extent of their actual payment.

If any expenses are incurred to recover money, we will share the expenses with the "Insured" or any underlying insurer in proportion to the amount that each is repaid.

If our recovery attempt is not successful, we will bear all of the recovery expenses.

**Q. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY.**

Your rights and duties under this policy may not be transferred without our prior written consent, except in the case of death of an individual "Named Insured".

**R. UNINTENTIONAL FAILURE TO DISCLOSE**

Your unintentional failure to disclose all hazards or prior "Occurrences" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy.