**LIBERTY MUTUAL**
**FIRE INSURANCE COMPANY**

**LIBERTY MUTUAL.**
Liberty Mutual Insurance Group/Boston

**COMMERCIAL GENERAL**
**LIABILITY DECLARATIONS**

| ACCOUNT | SUB-ACCT NO. |
|---|---|
| 01 21 95 | 0000 |

| POLICY NO. | TD/CD | SALES OFFICE | CODE | SALES REPRESENTATIVE | CODE | N/R | 1ST YR |
|---|---|---|---|---|---|---|---|
| TB2-681-004130-038 | 04/5 | CINCINNATI | 877 | FISCHER | 8877 | 2 | 74 |

Item 1.  Named Insured:   LUXOTTICA U.S. HOLDINGS CORPORATION AND AS PER ENDORSEMENT 1

Address:    ATTN: MR. GREGORY MUNTEL
8600 GOVERNOR'S HILL DRIVE
CINCINNATI, OH  45242

The named insured is: ☐ Individual ☐ Partnership ☒ Corporation ☐ Other

Business of named insured is:  Manufacturing & Retail Sales

Item 2.  Policy Period From

| | Mo. | Day | Year | | Mo. | Day | Year |
|---|---|---|---|---|---|---|---|
| | 02 | 01 | 98 | to | 02 | 01 | 99 |

12:01 A.M., standard time at the address of the named insured as stated herein.

Item 3.  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**LIMITS OF INSURANCE**

| | |
|---|---|
| Coverages A, B, C - GENERAL AGGREGATE LIMIT (Other Than Products - Completed Operations) | $ 6,000,000 |
| Coverages A - PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 3,000,000 |
| Coverages A - BODILY INJURY and PROPERTY DAMAGE LIABILITY | $ 3,000,000 per occurrence |
| Coverages A - FIRE DAMAGE LIMIT (subject to occurrence limit) | $ 1,000,000 any one fire |
| Coverages C - MEDICAL PAYMENTS (subject to occurrence limit) | $ 1,000 per person |
| Coverages B - PERSONAL and ADVERTISING INJURY LIMIT | $ 3,000,000 per person/ per organization |

Deductible Endorsement Yes ☒   No ☐

TOTAL ADVANCE PREMIUM    $ 335,988

The premium for this policy is payable    $                in advance,   $                on  first anniversary and
$                on the second anniversary.

Audit Basis: ☒ At Expiration ☐ Annual ☐ Semi Annual ☐ Quarterly ☐ Monthly ☒ Flat Charge

The declarations are completed on the schedules designated  Declarations Extension Schedules

Forms and endorsements attached to this policy:
See Attached Schedule Page

This policy, including all endorsements issued herewith, is hereby countersigned by

Authorized Representative

*N*1L00*

| LOC. CODE | TYPED | PERIODIC PAYMENT | RATING BASIS | AUDIT BASIS | HOME STATE | POL. HG. | RENEWAL OF |
|---|---|---|---|---|---|---|---|
| 6 | | $ | ☐ R ☒ NR | 1 | OH | S- ☐ | TB2-037 |

**GPO 4081 R2 (3/93)**

## OHIO INSURANCE FRAUD

**"ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."**

**GPO 4169**



# DISCLOSURE FORM

Policyholder: ___LUXOTTICA U.S. HOLDINGS CORPORATION AND AS PER ENDORSEMENT 1___

Policyholder Number:___TB2-681-681-004130-038___

We hereby certify that the terms, conditions and coverages provided in this policy have been negotiated with you and you have agreed to accept such terms, conditions and coverages.

Your policy with us contains many forms and/or endorsements which affect your coverage. Please note that there are forms and/or endorsements included in your policy dealing with the issues marked by an (X) below that we wish to bring to your attention. As they are not the only forms and/or endorsements in your policy, we urge you to read your entire policy carefully.

☐ Asbestos Liability Exclusion

☐ Other _____
                    (SPECIFY)

_____
Signature of First Named Insured

_____
Title

_____
Date

_____
Signature of Insurer

_____
Title

_____
Date

**LIBERTY MUTUAL INSURANCE COMPANY**
**LIBERTY MUTUAL FIRE INSURANCE COMPANY**
**LM INSURANCE CORPORATION**
**THE FIRST LIBERTY INSURANCE CORPORATION**
**LIBERTY MUTUAL INSURANCE CORPORATION**

BS 1002

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## NOTICE TO POLICYHOLDERS

THIS IS A SUMMARY OF THE MAJOR COVERAGE CHANGES TO YOUR POLICY. IT DOES NOT REFERENCE EVERY EDITORIAL CHANGE MADE IN THESE FORMS AND ENDORSEMENTS. NO COVERAGE IS PROVIDED BY THIS SUMMARY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**CG 00 01**     **Commercial General Liability Coverage Form (Occurrence Version)**

**CG 00 02**     **Commercial General Liability Coverage Form (Claims-Made Version)**

- These coverage forms are revised to broaden coverage with respect to liability of leased workers. Two new definitions ("employee" and "leased worker") have been added to give leased workers the same status (both coverage and exclusions) under the CGL program as the traditional employee. A new endorsement CC 04 24. provides an optional coverage for the insured's liability for injuries sustained by leased workers while performing duties related to the conduct of the insured's business. A leased worker is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker'."

- These coverage forms have been revised to broaden coverage with respect to the "insured contract" definition. Previously, the exception to paragraph f. applied to any person or organization. There is now coverage for liability assumed in contracts or agreements that indemnify persons or organizations other than a railroad for injury or damage arising out of construction or demolition operations within 50 feet of railroad property and affecting such property.

- The Coverage A - Bodily Injury and Property Damage Liability exclusions under Section I now contain titles to provide for easier reading.

- The mobile equipment exclusion is revised to clarify that liability arising from mobile equipment, which is not being raced, but being used to prepare for prearranged racing events is covered. Coverage is still excluded for mobile equipment engaging or preparing to engage in these events.

- The Fire Damage Legal Liability exception and the LIMITS OF INSURANCE section in the CGL coverage forms are revised to clarify that coverage exists for situations where an insured is given permission to occupy a portion of a building without the transfer of rent in the form of money.

- Paragraph 1.b under Coverage C (MEDICAL PAYMENTS) has been editorially revised to add the word "administered."

- The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership or joint venture, employees are not insureds for "bodily injury" or "personal injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading.

**Includes Copyrighted Material from Insured Services Office, Inc., 1993**

Page 1 of 2

BS 1025 R1

- The title in the DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT will now include the term "OFFENSE" to reflect that Coverage B - Personal and Advertising Injury Liability is triggered by an offense.

- The EXTENDED REPORTING PERIOD provision in the claims-made version of this coverage form is editorially revised to clarify the language.

- The exceptions in the "insured contract" definition are reformatted and numbered in order to provide for easier reading.

- The DEFINITIONS section has been revised to add "executive officer" and "temporary worker" definitions.

Includes Copyrighted Material from Insured Services Office, Inc., 1993

Page 2 of 2

BS 1025 R1



LIBERTY
MUTUAL.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## NOTICE TO POLICYHOLDERS

THIS IS A SUMMARY OF THE MAJOR COVERAGE CHANGES TO YOUR POLICY IT DOES NOT REFERENCE EVERY EDITIORIAL CHANGE MADE IN THESE FORMS AND ENDORSEMENTS. NO COVERAGE IS PROVIDED BY THIS SUMMARY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.    IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, THE PROVISION OF THE POLICY SHALL PREVAIL.

### BROADENING AND CLARIFICATION OF COVERAGE FORMS:

- **CG 00 01 - Commercial General Liability Coverage Form (Occurrence Version)**

- **CG 00 02 - Commercial General Liability Coverage Form (Claims-Made Version)**

- **CG 00 09 - Owners and Contractors Protective Liability Coverage Form**

- **CG 00 33 - Liquor Liability Coverage Form (Occurrence Version)**

- **CG 00 35 - Railroad Protective Liability Coverage Form**

- **CG 00 37 - Products/Completed Operations Liability Coverage Form (Occurrence Version)**

- **CG 00 38 - Products/Completed Operations Liability Coverage Form (Claims - Made Version)**

All General Liability coverage forms contain minor editorial revisions to provide for consistency among policies.   In addition, these coverage forms have been revised to incorporate other various revisions in order to clarify coverage.

The Supplementary Payments provision has been revised to increase the maximum daily payment for loss of earnings from $100 per day to $250 per day to more adequately address the earnings of many professions.

Several revisions have been made to Section II - Who Is An Insured to acknowledge the existence of a new form of business entity known as the limited liability company and by specifying members and managers of limited liability companies as insureds.

The definition of "suit" has been broadened to allow <u>any</u> insured the ability to choose or participate (with the insurer's consent) in certain alternative dispute resolution mechanisms.

**BS 1067**

**Page 1 of 2**

Includes copyrighted material of Insurance Services Office, Inc.

The Insuring Agreement for both Coverage A - Bodily Injury and Property Damage Liability and Coverage B - Personal and Advertising Injury Liability is revised to clarify the intent under the Coverage Form not to defend insureds when no coverage exists under the policy.

A Pollution Exclusion is added to Coverage B – Personal and Advertising Injury Liability to clarify the intent that damages resulting from pollution incidents are not and were never intended to be covered under personal injury or advertising injury coverages under the CGL.

An exception has been added to the Pollution Exclusion in these coverage forms so that the exclusion does not apply to losses arising only out of the escape of fuels, lubricants or other operating fluids resulting from the normal functioning of mobile equipment, provided the pollutants escape from the mobile equipment part designed by its manufacturer to hold such pollutants.

The Other Insurance Condition is amended to specify that coverage is excess in situations in which an insured is given permission to occupy a portion of a building without the transfer of rent in the form of money if the insured has fire insurance available to cover such loss.

The Definitions section has been amended to clarify that the "products completed operations hazard" definition only includes coverage for damages arising out of a condition in a vehicle not owned or operated by the named insured and to more clearly state that products or operations that are subject to the General Aggregate Limit are excluded from products-completed operations coverage.

Paragraphs f. (2) and (3) the "insured contract" definition has been revised to update the list of professional services (for architects, engineers or surveyors) to conform to standard industry terms.

Your policy includes an Employments-Related Practices exclusion Endorsement, number CG 21 47 (CG 26 39 for Texas). The endorsement clarifies that your policy does not provide coverage for "bodily injury" or "personal injury" arising out of certain employment related practices.  Not included in PA, NE, WA.

Your policy includes an endorsement entitled suits (LG 6112, LG 6113, LG 6114, or LG 6115) that eliminates some restrictions on the defense of indemnitees by replacing the Contractual Liability exclusion and the Supplementary Payments section of the policy with less restrictive wording.  The result is the continued defense of Indemnitees without limitation.

BS 1067

Includes copyrighted material of Insurance Services Office, Inc.

## NOTICE TO POLICYHOLDERS

## BROADENING, RESTRICTIONS AND CLARIFICATIONS OF COVERAGE

This notice is a brief summary of the significant coverage changes in your renewal policy.
This notice does not describe minor editorial changes and does not provide any coverage.

Please read your policy, and the endorsements attached to your policy, carefully.

**BROADENINGS OF COVERAGE**
The following new endorsements are attached to your policy:

CG 00 54 -- Amendment of Pollution Exclusion - Exception For Building Heating Equipment.

This endorsement provides coverage for certain bodily injury arising out of the release or escape of smoke, fumes, vapor or soot from building heating equipment.

CG 00 55 - Amendment of Other Insurance Condition (Occurrence policies) **or**
CG 00 56 - Amendment of Other Insurance Condition (Claims-Made policies)

These endorsements make your CGL coverage excess insurance over the insurance provided by any other liability policy when you are covered by that policy as an additional insured. The new endorsement replaces endorsement LG 6099 if it was on your expiring policy.

**CLARIFICATIONS OF COVERAGE AND OTHER EDITORIAL REVISIONS**
If your policy includes either of the following endorsements, review the clarifications described below.

CG 25 03 -- Designated Construction Project(s) General Aggregate Limit
CG 25 04 -- Designated Location(s) General Aggregate Limit

These endorsements have been revised to more clearly state which aggregate Limit will apply with respect to a given occurrence accident. The determining factor is whether the loss can be attributed to a specific location or construction project.

The major changes to these endorsements are outlined below:

- The title has been changed to reflect the basic change being made in the endorsement from a blanket basis to a designated basis.

- Paragraph A. indicates that each designated location or construction project is subject to its own Designated General Aggregate Limit in lieu of the General Aggregate shown in the Declarations of the policy. The Designated Aggregate Limit is equal to the amount of the General Aggregate Limit shown in the Declarations of the policy. However, each such Designated Aggregate Limit will be reduced only when damages resulting from losses under Coverages A and C can be attributed only to the ongoing operations of that specific location or construction project.

- Paragraph B. indicates that payments made under Coverages A and C which cannot be attributed only to ongoing operations at a designated location or contruction project will be subject to the General Aggregate Limit in the policy Declarations.

- Paragraph C. States that the Designated Aggregate Limit does not apply to bodily injury or property damage included in the products / completed operations hazard.

- Paragraph D. in Endorsement CG 25 03 clarifies that if any construction project has been abandoned, delayed or changed, it is still deemed to be the same construction project.

- Paragraph D. in Endorsement CG 25 04 provides a definition of "location".

- Paragraph E. states that any provisions of LIMITS OF INSURANCE (Section III) not modified by the endorsement continue to apply.

Your policy may include other revised endorsements that are specific to your business. If you have questions about any of the endorsements please call your Liberty Mutual Representative.

BS 1502

SCHEDULE OF FORMS AND ENDORSEMENTS

| FORM NUMBER | FORM NAME | ENDORSEMENT NO. |
|---|---|---|
| GPO4081 R2 (3/93) | Commerical General Laibility Declarations | |
| GPO4169 | Insurance Fraud | |
| BS1002 | Disclosure Form | |
| BS1025R1 | Notice to Policyholder | |
| BS1067 | Notice to Policyholder | |
| BS1502 | Notice to Policyholder | |
| GPO4054R1 | Item 3 Declarations Extension Schedule | Page 2 |
| 102 | Named Insured Endorsement | 1 |
| 102 | Amendment - Deductible Liability Insurance | 2 |
| 102 | General Amendatory Endorsement | 3 |
| LG6112 0196 | Amendment Suits | 4 |
| LG6032 | Composite Rate Endorsement | 5 |
| LG2054R1 | Employee Benefits Liability Insurance Endorsement | 6 |
| LG6075R20196 | Personal and Advertising Injury Liability Endorsement | 7 |
| 2272R3 | Special Premium Discount Endorsement | 8 |
| CG25040397 | Designated Locations - General Aggregate Limits | 9 |
| CG24150196 | Limited Pollution Liability Extension Endorsement | 10 |
| 102 | Amendatory Endorsement | 11 |
| 102 | Optical/Audiological Professional Liability | 12 |
| 102 | Public Liability and Property Damage Endorsement | 13 |
| CG00540397 | Amendment of Pollution Exclusion - Exception for Building Heating Equipment | 14 |
| LG6044R1 0193 | Amendment - Non-Cumulation of Liability | 15 |
| LG3045 | Exclusion - Canadian Operations | 16 |
| LG3025 | Asbestos Exclusion Endorsement | 17 |
| LG3026 | Exclusion - Discrimination | 18 |
| IL00211194 | Nuclear Energy Liability Exclusion Endorsement | 19 |
| CG00550397 | Amendment of Other Insurance Condition | 20 |
| CG20110196 | Additional Insured - Managers or Lessors of Premises | 21 |
| CG21471093 | Employment -Related Practices Exclusion | 22 |
| CG20110196 | Additional Insured - Managers or Lessors of Premises | 23 |
| CG20151188 | Additional Insured - Vendors | 24 |
| CG20281185 | Additional Insured - Lessor of Leased Equipment | 25 |
| CG99011185 | Motor Vehicle Laws | 26 |
| CG24041093 | Waiver of Transfer of Rights of Recovery Against Others To Us | 27 |
| CG02241093 | Earlier Notice of Cancellation Provided by Us | 28 |
| IL02440689 | Ohio Changes - Cancellation and Nonrenewal | 29 |
| CG00010196 | Commercial General Liability Coverage Form | |
| GPO4079R1 | Backer | |

For Attachment to
Policy No. TB2-681-004130-038

*Declarations Extension Schedule*

| CLASSIFICATION AND LOCATION | CODE NO. | PREMIUM BASE SALES | RATES PER $1,000 SALES | ADVANCE PREMIUMS CODE 326 ☒ 327 ☐ 328 ☐ 360 ☐ 361 ☐ 362 ☐ |
|---|---|---|---|---|
| ALL OPERATIONS OF THE NAMED INSURED | 52950 | | | |
| 200001 - Lens Crafters, Inc. | 52950 | 1,006,300,000 | A) .078 | 78,491 |
| | | | DE) .167 | 168,052 |
| Deductible Handling Expense | | | | 89,445 |
| | | | Total Annual | 335,988 |
| A)  Administrative Rate | | | | |
| DE)  Discounted Excess | | | | |
| M = MINIMUM PREMIUM | | | | |

POLICY NO.:   TB2-681-004130-038                                    PAGE NO.:   2

**GPO  4054  R1**

## NAMED INSURED ENDORSEMENT

It is agreed that:

1. <u>Named Insured</u> The term "named insured" includes in addition to the person or organization named in Item 1 of the declarations:

> LUXOTTICA U.S. HOLDINGS CORP.
> LUXOTTICA GROUP S.P.A.
> LUXOTTICA, S.P.A.
> PERSOL S.P.A.
> LUXOTTICA, USA, INC.
> LUXOTTICA CANADA, INC.
> BRICO, S.R.L.
> LA MECCANOPTICA LEONARDO. S.P.A.
> AVANT-GRADE OPTICS, INC.
> AVANT-GRADE OPTICS INTERNATIONAL, INC.
> THE UNITED STATES SHOE CORPORATION
> LENSCRAFTERS, INC.
> LENSCRAFTERS CANADIAN, INC.
> LENSCRAFTERS INTERNATIONAL, INC.
> LENSCRAFTERS E.C. CORPORATION
> 549885 ALBERTA, INC.
> CENTRE PROFESSIONEL de VISION USSC, INC.
> EYEXAM 2000 OF CALIFORNIA, INC.
> LENSCRAFTERS FOUNDATION
> LENSCRAFTERS FOUNDATION OF CANADA
> NEW SHOE CORP.
> LUXOTTICA SUN CORP.

any business entity incorporated or organized under the laws of the United States of America (including any State thereof) its territories or possessions or Canada (including any Province thereof) while the person or organization named in Item 1 of the declarations or the aforenamed owns, during the policy period, an interest in such entity of more than fifty percent (50%).

Provided, however, the "named insured" shall not include any business entity acquired by the named insured during the policy period through consolidation, merger, purchase or assumption of control and active management unless reported to the company within the ninety days after the acquisition is affected.

For Attachment to
Policy: TB2-681-004130-038

The person or organization named in item 1 of the declarations by acceptance of this policy is authorized to act and agrees to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy, including the giving and receiving of notice of cancellation, the payment of premiums and the receiving of return premiums, if any, and/or such dividends as may be declared by the company.

This endorsement is executed by the company below designated by an entry in the box opposite its name

|   | LIBERTY MUTUAL INSURANCE COMPANY |
|---|---|
| Premium | [ ] LIBERTY MUTUAL INSURANCE COMPANY |
| | [X] LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | [ ] LIBERTY INSURANCE CORPORATION |
| Effective Date        Expiration Date | [ ] LM INSURANCE CORPORATION |
| | [ ] THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.    TB2-681-004130-038

*Barry S. Hilon*                    *Edward F Kelly*
SECRETARY                         PRESIDENT

Audit Basis
Issued to

Page 2 of 2
Countersigned by.................................................................................
                                            Authorized Representative

102
            Issued                    Sales Office and No.            End. Serial No.  1

Loc. 6

## AMENDMENT - DEDUCTIBLE LIABILITY INSURANCE

<u>Deductible Amount: Basis</u>
$ 250,000. each occurrence
(includes allocated expenses)

1. <u>How Deductible Applies</u>

You are obligated to pay the first $ 250,000. of the total of (a.) all damages, including amounts paid in settlement of claim or "suit," plus (b.) all "allocated loss adjustment expense", of any one "occurrence."

We are obligated to pay only that portion of the total of such damages (subject to the policy's limits of insurance) which exceeds such deductible amount.

2. <u>Effect of Deductible on Limits of Insurance</u>

Both your "Each Occurrence Limit" and your applicable "Aggregate Limit of Insurance" are reduced by the amount of damages, but not "allocated loss adjustment expense," paid or payable by you up to the deductible amount shown above.

For purposes of this paragraph, all damages are deemed to have been paid or to be payable before "allocated loss adjustment expense" has been paid or is payable.

3. <u>Definition</u>

"Allocated loss adjustment expense" includes, but is not limited to:

1. Attorneys fees for claims in suit; and
2. Court costs and other items of expense such as:

   a) Costs for medical, expert and other witness at trials or hearings, stenographic costs and costs of copies of documents and transcripts; and
   b) Medical, expert, or consultant fees and expenses relating to the defense of any claim or suit.

4. <u>Deductible Advances.</u>

~~We have the right but not the duty to advance any part of the deductible amount. If we exercise~~ this right, you must promptly reimburse us for any such amounts advanced. All such amounts advanced shall remain your sole and exclusive liability. Exercise of our right to advance such amounts shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.



In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered will first be applied to any payments made by us in excess of the deductible amount; only then shall the remainder of such recovery, if any, be applied to reduce the deductible amount payable or paid by you.

6.  <u>Named Insured's Duties</u>

The first Named Insured shown in the Declarations is responsible for the payment of all deductible amounts.

7.  <u>Other Rights and Duties</u>

All other terms of this policy, including those which govern (a) our right and duty to defend claims or "suits" and (b) the insured's duties in the event of an "occurrence," apply irrespective of application of the deductible amount.

This endorsement is executed by the company below designated by an entry in the box opposite its name

Premium

Effective Date                                    Expiration Date

For attachment to Policy or Bond No.   TB2-681-004130-038

| | |
|---|---|
| | LIBERTY MUTUAL INSURANCE COMPANY |
| X | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | LIBERTY INSURANCE CORPORATION |
| | LM INSURANCE CORPORATION |
| | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*                    *Edmund F. Kelly*
SECRETARY                              PRESIDENT

Audit Basis
Issued to

Page 2 of 2
Countersigned by.............................................................................
Authorized Representative

102

Issued                    Sales Office and No.                    End. Serial No. 2
LC 2-24

<u>Loc.</u> 6

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**GENERAL AMENDATORY ENDORSEMENT**

## I. AMENDMENT  - WHO IS AN INSURED

Paragraph 4. of **SECTION II - WHO IS AN INSURED** is replaced by the following:

4.    Any organization other than a partnership or joint venture over which you maintain ownership or majority interest (more than 50%) will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:

   a.  Coverage A only applies to "bodily injury" or "property damage" that occurs while you maintain ownership or majority interest (more than 50%); and

   b.  Coverage B only applies to "personal injury" or "advertising injury" arising out of an offense committed while you maintain ownership or majority interest (more than 50%).

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

Paragraph E of **COMMON POLICY CONDITIONS - PREMIUM** is replaced by the following:

E.    PREMIUMS

1.    Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligation of any Named Insured to us arising out of any agreements contained in this policy.

2.    The First Named Insured shown in the Declarations will be the payee for any return premiums we pay.

## II. AMENDMENT - REASONABLE FORCE

Exclusion a. of **COVERAGE A** is replaced by the following:

a.    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## III. AMENDMENT - CONTRACTUAL LIABILITY

Paragraph 6. c. of **SECTION V - DEFINITIONS** is replaced by the following:

6.    "Insured Contract" means:

   c.  Any other easement agreement:

## IV. AMENDMENT - LIQUOR LAW LIABILITY

Exclusion c. of **COVERAGE A** is deleted.

## V. AMENDMENT - COVERAGE FOR BODILY INJURY TO CO-EMPLOYEES

The exclusion in subparagraph 2.a. (1) of SECTION II - WHO IS AN INSURED is replaced by the following:

    (1)  "Personal Injury" to you or a co-employee while in the course of his or her employment; or

A. The insurance for "Bodily Injury" to co-employees as provided by the above wording applies only to employees described below.

    Employees:  All Employees

B. This insurance does not apply to "Bodily Injury" arising out of his or her providing or failing to provide professional health care services.

C. This insurance is subject to a sublimit of

    $    3,000,000    each occurrence.

    This sublimit is subject to the Each Occurrence Limit shown in the Declaration; it is not in addition to the Each Occurrence Limit.

D. This insurance is subject to the General Aggregate Limit shown in the Declarations.

## VI. AMENDMENT - PROFESSIONAL HEALTH CARE SERVICES BY EMPLOYEES

Subparagraph 2.a. (2) or SECTION II - WHO IS AN INSURED is deleted.

The insurance for providing or failing to provide professional health care services as provided by the above deletion is subject to the following:

    A. Subparagraph 2.a. (1) or SECTION II - WHO IS AN INSURED is deleted.

    B. This insurance is subject to a sublimit of

        $    3,000,000    each occurrence.

        This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

    C. this insurance is subject to the General Aggregate Limit shown in the Declarations.

## VII. EXCLUSION - DISCRIMINATION

SECTION I - COVERAGES - A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY - 2. Exclusions and B. PERSONAL AND ADVERTISING INJURY LIABILITY -2. Exclusions are amended to include:

    This insurance does not apply to:

    Damages arising out of unlawful discrimination.

## VIII. AMENDMENT - FOREIGN COVERAGE

Paragraph 4.c of **SECTION V - DEFINITIONS** section is replaced by the following:

c.  Anywhere in the world, except with respect to injury or damage arising out a your "foreign based operations." "Foreign based operations" means:

(1)  construction, fabrication, erection or installation operations outside the territory described in a. above;

(2)  the manufacturing of goods or products outside the territory described in a. above; or

(3)  the sale or distribution of goods manufacturing outside the territory described in a. above at or from locations outside the territory described in a. above.

The insured under our supervision shall investigate, defend or settle any claim or "suit" brought in any country where we are prevented by law from carrying out this agreement. We will reimburse the insured for the reasonable costs of such investigation and defense and, within the applicable limit of insurance, for the amount of any settlement made with our prior written consent.

## IX. LIMITATION - OTHER INSURANCE

Paragraph 4.b. of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is replaced by the following:

4.  OTHER INSURANCE

b.  Excess Insurance

This policy is excess over any of the other insurance whether primary, excess, contingent or any other basis:

(1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

(2)  That is Fire insurance for premises rented to you;

(3)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I); or

(4)  If the loss arises out of any coverage provided by this General Amendatory Endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)    the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                          Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

☐   LIBERTY MUTUAL INSURANCE COMPANY
☒   LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐   LIBERTY INSURANCE CORPORATION
☐   LM INSURANCE CORPORATION
☐   THE FIRST LIBERTY INSURANCE CORPORATION

SECRETARY                              PRESIDENT

102

Page 4 of 4
Countersigned by ..................................................................

Authorized Representative

Issued            Sales Office and No.          End. Serial No.   3

Loc. 6

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment Suits

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Exclusion b. of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I Coverages) replaced by the following:

  b.  **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  (1)  That the insured would have in the absence of the contract or agreement; or

  (2)  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

B.  SUPPLEMENTARY PAYMENTS - COVERAGES A AND B is replaced by the following:

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.  All expenses we incur.

2.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss earnings up to $250 a day because of time off from work.

5.  All costs taxed against the insured in the "suit".

6.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.  TB2-681-004130-038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gibson*                    *Edmund F. Kelly*
SECRETARY                          PRESIDENT

Countersigned by ................................................................................................

Authorized Representative

Issued                    Sales Office and No.        End. Serial No.    4

LG 6112 0196

## COMPOSITE RATE ENDORSEMENT

This premium for this policy shall be computed on the following basis:

Per $1,000 of sales
The word "sales" means the gross amount of money charged by "you" or by others trading under your name for all goods or products sold or operations performed during the policy period and includes taxes, other than taxes which "you" or such others collect as a separate item and remit directly to a governmental division.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.  TB2-681-004130-038

Audit Basis

Issued To

☐  LIBERTY MUTUAL INSURANCE COMPANY
☒  LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐  LIBERTY INSURANCE CORPORATION
☐  LM INSURANCE CORPORATION
☐  THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Wilson* SECRETARY      *Edmund F. Kelly* PRESIDENT

Countersigned by ...............................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.    5

LG 6032
(9-87)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EMPLOYEE BENEFITS LIABILITY INSURANCE ENDORSEMENT**
**THIS IS A CLAIMS MADE COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that, subject to all of the terms of the policy not modified herein:

1. **COVERAGE-EMPLOYEE BENEFITS LIABILITY**

   We will pay those sums which the insured becomes legally obligated to pay as damages because of injury to the rights or interests of employees or their beneficiaries in "employee benefits programs" caused by any improper advice, error or omission in the "administration" of such programs by persons authorized by the insured.

2. **EXCLUSIONS**

   This coverage does not apply to:

   a. Any claim based upon unlawful discrimination;

   b. Any claim with respect to which insurance is afforded in whole or part under any other coverage afforded by this policy or any endorsement thereto;

   c. Any claim based upon your failure or the failure of any insurer to pay or provide the benefits allegedly due under any contract relating to "employee benefits programs", or

   d. Any claim based upon the failure of stock or any compensation, investment or saving program to produce the financial gain represented.

3. **COVERAGE PERIOD**

   a. This coverage applies only to claims first made against the insured on or after the effective date of this endorsement and before the end of the endorsement period; but, if during this endorsement period the insured becomes aware of any incident which may give rise to a claim covered by this insurance and gives us written notice of such incident, within 60 days after the end of this endorsement period, any claim which is later made and which arises out of such incident will be deemed to have been first made during this endorsement period.

   b. All claims for damages arising out of any one or a related series of errors, omissions or improper advice to which this insurance applies will be deemed to have been made at the time the first of those claims is made against any insured in accordance with paragraph a. above.

4. **LIMITS OF INSURANCE**

   a. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

      (1)  insureds;

      (2)  claims made or suits brought; or

      (3)  persons or organizations making claims or bringing suits.

   b. The Aggregate Limit is the most we will pay for the sum of all damages arising out of all claims made during the endorsement period.

   c. Subject to b. above, the Each Claim Limit is the most we will pay for all damages arising out of any one claim.

**LG 2054 R1**
**(10/95)**

**Page    1  of  3**

    d.  If a Deductible Each Claim is shown in the Schedule of this endorsement, you are obligated to pay that amount of damages for each claim to which this insurance applies. We are obligated to pay only that portion of the total of all damages (subject to the Limits of Insurance) which exceeds that deductible amount. We may investigate and settle any claim at our discretion. However, regardless of the amount of any claim, you must:

        (1)  notify us promptly as required by Condition 2 of the policy ("Duties in the Event of Occurrence, Claim or Suit"), and

        (2)  reimburse us promptly for all amounts we pay within the deductible amount.

        Both your Aggregate Limit and your Each Claim Limit of Insurance are reduced by the amount of damages paid or payable by you up to the deductible amount shown in the Schedule of this endorsement.

**5.  PERSONS INSURED**

    The unqualified word insured includes you and also includes

    a.  All of your elected and appointed General, Division and Department officers, Directors and Stockholders while acting within the scope of their duties as such; and

    b.  Any of your employees who are authorized to act to in the "administration" of your "employee benefits programs."

**6.  DEFINITIONS**

    a.  "Administration" means:

        (1)  the determination of the eligibility of employees to participate in "employee benefits programs;"

        (2)  The enrollment of employees in those programs;

        (3)  the keeping of records as to those programs;

        (4)  interpreting of the provisions of those programs; and

        (5)  the giving of advice or counsel to employees or their beneficiaries as to their rights or interests in those programs.

    b.  "Employee Benefits programs" means those:

        (1)  group life insurance;

        (2)  "accident and health insurance";

        (3)  dental insurance;

        (4)  pension;

        (5)  employee stock subscription;

        (6)  profit sharing;

        (7)  disability;

        (8)  retirement; or

    any similar programs described in the Schedule of this endorsement and offered to employees and their beneficiaries in the United States of America, its territories and possessions, Puerto Rico and Canada.

    It also includes workers compensation, unemployment insurance and social security. If during this endorsement period you offer additional "employee benefits programs" not described in the Schedule of this endorsement then this insurance will also apply to those programs, but only until the 30th day after you first offer each additional programs or the end of this endorsement period, whichever is earlier. If we add such additional program to the Schedule, the insurance will then continue to apply to those programs.

**LG 2054 R1**                                                    **Page  2 of 3**
**(10/95)**

7.  **SCHEDULE**

    a.  LIMITS OF INSURANCE AGGREGATE LIMIT             $ <u>3,000,000</u>

        EACH CLAIM LIMIT                              $ <u>3,000,000</u>

    b.  DEDUCTIBLE EACH CLAIM                 $ <u>    1,000.</u>

    c.  LIST OF "EMPLOYEE BENEFITS PROGRAM"  All Employee Benefits Program

    d.  PREMIUM

        (1) Number of Employees

        (2) Rate of Employee

        (3) Advance Premium  Included

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                          Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*        *Edmund F. Kelly*

SECRETARY                 PRESIDENT

Countersigned by ...................................................................................

Authorized Representative

Issued            Sales Office and No.       End. Serial No.   6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# PERSONAL AND ADVERTISING INJURY LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORMS

Coverage B of Section I-COVERAGE and paragraphs 1 and 13 of Section V-DEFINITIONS are replaced by the following:

**COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III);

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverage A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to:

      (1) "Personal Injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by you or for you;

      (2) "Advertising Injury" caused by an offense committed in the course of advertising your goods, products or services;

      but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions.

   This insurance does not apply to:

   a. "Personal injury" or "advertising injury":

      (1) Done by or at the direction of the insured with knowledge of its falsity;

      (2) Whose first publication took place before the beginning of the policy period;

      (3) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

LG 6075 R2 (01/96)                                                                                      **Page 1 of 3**

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The incorrect description or mistake in the advertised price of goods, products or services;

(4) Patent infringement or securities fraud; or

(5) An offense committed by an insured whose business is advertising, publishing or telecasting.

c. (1) "Personal Injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    a. At or from premises you own, rent or occupy;

    b. At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

    c. Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

    d. At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

        (I) If the pollutants are brought on or to the site or location in connection with such operations; or

        (II) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion does not apply to personal injury caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of paid announcements in the print or broadcast media resulting in one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Copying a person's or organization's advertising ideas or advertising style; or

    d. Infringement of copyright, title or slogan.

13. "Personal injury" means:

    a. Injury to the feelings or reputation of a natural person other than "bodily injury" or "property damage"; and

b. Injury to intangible property sustained by any organization arising out of one or more of the following offenses:

(1) False arrest, detention or imprisonment;

(2) Malicious prosecution;

(3) Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

(4) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(5) Oral or written publication of material that violates a person's rights of privacy.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    TB2−681−004130−038

Audit Basis

Issued To

| | LIBERTY MUTUAL INSURANCE COMPANY |
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Wilson*                    *Edmund F. Kelly*
SECRETARY                              PRESIDENT

Countersigned by ........................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.    7

# SPECIAL PREMIUM DISCOUNT ENDORSEMENT

It is agreed that the Premium Discount Percentages applicable to the Total Standard Premium shall be based upon the estimated annual advance premium and shall not be subject to adjustment on audit as respects the following elements of the Total Standard Premium.

It is further agreed that this Endorsement is not applicable in:

Texas

| PREMIUM | NORTH CAROLINA | ALL OTHER STATES |
|---|---|---|
| GENERAL LIABILITY AND AUTOMOBILE GARAGE LIABILITY | | 14.0% |
| TAXICABS, PUBLIC AND PRIVATE LIVERY BUS AND LONG HAUL TRUCKMEN | | |
| ALL OTHER AUTOMOBILE LIABILITY | | |

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.   TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Gary S. Gilson*          *Edmund F. Kelly*
SECRETARY                        PRESIDENT

2272 R3
5-1-77

Countersigned by ................................................................
Authorized Representative

                Issued        Sales Office and No.        End. Serial No.   8

Loc. 6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATIONS
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated Location(s): |
| --- |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE **C** regardless of the number of:

   **a.** Insureds;
   **b.** Claims made or "suits" brought; or
   **c.** Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I). and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

   1. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

   2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

D. For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

   "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

E. The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    TB2−681−004130−038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*                *Edmund F. Kelly*
SECRETARY                        PRESIDENT

Countersigned by .................................................................................................

Authorized Representative

Issued            Sales Office and No.            End. Serial No.    9

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED POLLUTION LIABILITY
# EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

All retail locations operated by the Named Insured.
**Limited Pollution Liability Extension Aggregate Limit**                    $ 1,500,000.

**Premium $** Included

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

I. Exclusion **f.** under COVERAGE A (Section I) is replaced by the following:

  **f. Pollution**

  (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (b) Which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

   (c) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;

   (d) At or from a storage tank or other container, ducts or piping which is below or partially below the surface of the ground or water or which, at any time, has been buried under the surface of the ground or water and then subsequently exposed by erosion, excavation or any other means if the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants arises at or from any premises, site or location:

    (i) Which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

    (ii) Which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

   Subparagraph **(d)** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

   As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**CG 24 15 01 96**          Copyright, Insurance Services Office, Inc., 1994          **Page 1 of 2**   □

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order issued or made pursuant to any environmental protection or environmental liability statutes or regulations that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

II. With respect to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

A. The "Each Occurrence Limit" shown in the Declarations does not apply.

B. Paragraph 7. of LIMITS OF INSURANCE (Section III) does not apply.

C. Paragraph 1. of LIMITS OF INSURANCE (Section III) is replaced by the following:

1. The Limits of Insurance shown in the Declarations, or in the Schedule of this endorsement, and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

D. The following are added to LIMITS OF INSURANCE (Section III):

8. Subject to 2. or 3. above, whichever applies, the Limited Pollution Liability Extension Aggregate Limit shown in the Schedule is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

because of "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

9. Subject to 8. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                  Expiration Date

For attachment to Policy or Bond No.  TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson* SECRETARY      *Edmund F. Kelly* PRESIDENT

Countersigned by .................................................................................

                                       Authorized Representative

Issued                Sales Office and No.       End. Serial No.  10

## AMENDATORY ENDORSEMENT

It is hereby agreed and understood that Sec. IV.2., Duties in the Event of Occurrence, Claim or Suit, has been amended as follows:

A.  The requirement in condition 2.a. that you must see to it that we are notified of an "occurrence" applies only when the "occurrence" is known to:

  (1)  You, if you are an individual;
  (2)  A partner, if you are a partnership; or
  (3)  The Director of Insurance and Risk Management, if you are a corporation.

B.  The requirement in condition 2.b. that you must see to it that we receive notice of claim or "suit" will not be considered breached unless the breach occurs after such claim or "suit" is known to:

  (1)  You, if you are an individual;
  (2)  A partner, if you are a partnership; or
  (3)  The Director of Insurance and Risk Management, if you are a corporation.

This endorsement is executed by the company below designated by an entry in the box opposite its name

Premium

|   | LIBERTY MUTUAL INSURANCE COMPANY |
|---|---|
| X | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
|   | LIBERTY INSURANCE CORPORATION |
|   | LM INSURANCE CORPORATION |
|   | THE FIRST LIBERTY INSURANCE CORPORATION |

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

*Barry S. Hilton*                    *Edmund F. Kelly*
SECRETARY                              PRESIDENT

Audit Basis
Issued to

Countersigned by..............................................................................................
                                        Authorized Representative

102

Issued                    Sales Office and No.                    End. Serial No. 11
LC 2-24

Loc. 6

## OPTICAL / AUDIOLOGICAL PROFESSIONAL LIABILITY

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY INSURANCE COVERAGE PART

1.    COVERAGE - OPTICAL / AUDIOLOGICAL PROFESSIONAL LIABILITY

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of your "professional liability hazard". We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

2.    ADDITIONAL EXCLUSION

This coverage does not apply to:

"Bodily injury" arising out of the "professional liability hazard" for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

3.    ADDITIONAL DEFINITION

"Professional liability hazard" means the rendering of or failure to render professional services in the practice of optometry, optical or hearing aid services, including the prescribing, preparation, sale or distribution of ophthalmic lenses and similar products or hearing aid devices and the fitting thereof or the taking or making of impressions therefor.

4.    AMENDMENT OF LIMITS OF INSURANCE

The Products-Completed Operations Aggregate Limit appearing in part 3 of SECTION III-LIMITS OF INSURANCE of the COMMERCIAL GENERAL LIABILITY COVERAGE PART is amended to read:

3.    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damages included in the "products-completed operations hazard" and the "professional liability hazard".

5.    AMENDMENT OF WHO IS AN INSURED

Who is an Insured, Section II 2. a. (2) is replaced by:

"Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services not within the scope of the "professional liability hazard" definition.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Hilton*          *Edmund F. Kelly*
      SECRETARY                      PRESIDENT

102

Page 2 of 2
Countersigned by ..........................................................................

                                        Authorized Representative

          Issued          Sales Office and No.      End. Serial No.    12

Loc. 6

PUBLIC LIABILITY AND PROPERTY DAMAGE
ENDORSEMENT-SIGN, CANOPY OR CLOCK
MAINTENANCE

It is understood and agreed by and between the parties that the class-
ifications of operations, as set forth in the policy to which this endor-
sement is attached, shall be construed to include and cover all the op-
erations of the assured in any manner or nature whatsoever incident to
or connected with the erection, ownership, maintenance or removal of
any sign, canopy or clock, and that the undersigned insurance company
shall (to an extent not exceeding the amount of the indemnity or coverage
provided for in the policy to which this endorsement is attached) defend,
save, keep harmless and indemnify the assured and the City of Omaha, a
municipal corporation of the State of Nebraska, and its agents, from all
liability, claims, damages, judgments, costs and expenses of every nature
and description caused by or growing out of the erection, maintenance
or removal by the assured of any sign, canopy or clock within the City
of Omaha; the placing of any obstruction, barricade, material, thorough-
fare, including the sidewalk space, as an incident to or in connection
with the erection, maintenance or removal by the assured of a sign, can-
opy or clock, and any and all negligence on the part of the assured in
erection, maintenance or removal of a sign, canopy or clock in the City
of Omaha, which results in damage to the person or property of the said
City, or of any person, firm or corporation.

The insurance company shall have the right to cancel this endorsement
for future liability upon sixty days' written notice to the City of Omaha.

This endorsement is hereby made a part of Policy No. <u>TB2-681-004130-038</u>
issued by <u>Liberty Mutual Insurance Co.</u> of <u>Cincinnati, OH.</u>

Countersigned at <u>Cincinnati, OH</u> this <u>25th</u> day of <u>September.</u>

---

Authorized Representative

APPROVED AS TO FORM:

---

Assistant City Attorney

This endorsement is executed by the company below designated by an entry in the box opposite its name.

| | |
|---|---|
| Premium $ | ☐ LIBERTY MUTUAL INSURANCE COMPANY |
| | ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| Effective Date        Expiration Date | ☐ LIBERTY INSURANCE CORPORATION |
| | ☐ LM INSURANCE CORPORATION |
| For attachment to Policy or Bond No.  TB2-681-004130-038 | ☐ THE FIRST LIBERTY INSURANCE CORPORATION |
| Audit Basis | |
| Issued To | |

*Barry S. Gibson*          *Edmund F. Kelly*
SECRETARY                    PRESIDENT

**102**

Countersigned by ............................................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.  13

<u>Loc</u>. 6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF POLLUTION EXCLUSION - EXCEPTION FOR BUILDING HEATING EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

Subparagraph (1)(a) of the **Pollution** exclusion under Paragraph **2., Exclusions** of Bodily Injury And Property Damage Liability Coverage **(Section I - Coverages)** is replaced by the following:

This insurance does not apply to:

**POLLUTION**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Subparagraph **(a)** does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                Expiration Date

For attachment to Policy or Bond No.     TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Gary S. Gilson*                *Edmund F. Kelly*
SECRETARY                      PRESIDENT

Countersigned by ...........................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.  14

CG 00 54 03 97          Copyright, Insurance Services Office, Inc., 1996

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### AMENDMENT
### NON-CUMULATION OF LIABILITY
### (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to paragraph 5 of SECTION III - LIMIT OF INSURANCE:

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future general liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                        Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

- [ ] LIBERTY MUTUAL INSURANCE COMPANY
- [x] LIBERTY MUTUAL FIRE INSURANCE COMPANY
- [ ] LIBERTY INSURANCE CORPORATION
- [ ] LM INSURANCE CORPORATION
- [ ] THE FIRST LIBERTY INSURANCE CORPORATION

*Garry S. Gilson*    *Edmund F. Kelly*
SECRETARY                    PRESIDENT

Countersigned by .................................................................................................

Authorized Representative

Issued            Sales Office and No.        End. Serial No. 15

LG 6044 R1 0193

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

EXCLUSION
CANADIAN OPERATIONS

This endorsement modifies insurance provided under:

COMMERCIAL GENERAL LIABILITY COVERAGE A. and COVERAGE B. and
COVERAGE C.

This policy does not apply to **bodily injury** or **property damage** or **personal injury** or **advertising injury** arising out of:

(1) any premises **you** own or rent in Canada; or

(2) any property **you** have at a premises in Canada; or

(3) any operation **you** conduct in Canada; or

(4) **your product** if it was manufactured at or distributed from a location in Canada.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*                *Edmund F. Kelly*
SECRETARY                        PRESIDENT

Countersigned by ..........................................................................................................

Authorized Representative

Issued                Sales Office and No.            End. Serial No.   16

**LG 3045**
(9/1/87)

## ASBESTOS EXCLUSION ENDORSEMENT

This insurance does not apply to:

    bodily injury:
    personal injury:
    property damage:

caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                  Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Wilson*      *Edmund F. Kelly*
SECRETARY                   PRESIDENT

Countersigned by ..................................................................

Authorized Representative

         Issued             Sales Office and No.        End. Serial No.   17

**LG 3025**
**3-1-87**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION
### DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I - COVERAGES - A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** - 2. Exclusions and **B.PERSONAL AND ADVERTISING INJURY LIABILITY** - 2. Exclusions are amended to include:

This insurance does not apply to:
Damages arising out of unlawful discrimination.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.   TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Hilton* SECRETARY        *Edmund F Kelly* PRESIDENT

Countersigned by ...........................................................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.  18

**LG 3026**
**(9-1-87)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

    Copyright, Insurance Services Office, Inc., 1994     □

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date              Expiration Date

For attachment to Policy or Bond No.  TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

SECRETARY          PRESIDENT

Countersigned by ...........................................................

Authorized Representative

Issued        Sales Office and No.        End. Serial No.  19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF OTHER INSURANCE CONDITION
## OCCURRENCE VERSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition - **(Section IV - Commercial General Liability Conditions)** is replaced by the following:

4. **Other Insurance**

   b. **Excess Insurance**

      This insurance is excess over:

      (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

         (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

         (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

         (c) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of COVERAGE A (SECTION I).

      (2) Any other primary insurance available to you covering liability for damages arising out of

the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under COVERAGES A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date

For attachment to Policy or Bond No.     TB2−681−004130−038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

Expiration Date

*Gary S. Gilson*   SECRETARY      *Edmund F. Kelly*   PRESIDENT

Countersigned by ....................................................................................................

Authorized Representative

Issued      Sales Office and No.      End. Serial No.    20

CG 00 55 03 97      Copyright, Insurance Services Office, Inc., 1996

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1. Designation of Premises (Part Leased to You):
2. Name of Person or Organization (Additional Insured):
3. Additional Premium:

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date            Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Hilson*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

Countersigned by ..............................................................................

**Authorized Representative**

Issued            Sales Office and No.            End. Serial No.  21

CG 20 11 01 96            Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                 Expiration Date

For attachment to Policy or Bond No.  TB2-681-004130-038

Audit Basis

Issued To

  ☐ LIBERTY MUTUAL INSURANCE COMPANY
  ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
  ☐ LIBERTY INSURANCE CORPORATION
  ☐ LM INSURANCE CORPORATION
  ☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*      *Edmund F. Kelly*
SECRETARY                PRESIDENT

Countersigned by ....................................................................................

                                     Authorized Representative

Issued           Sales Office and No.      End. Serial No.  22

CG 21 47 10 93          Copyright, Insurance Services Office, Inc., 1992      ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

1. Designation of Premises (Part Leased to You):  Any Location
2. Name of Person or Organization (Additional Insured):  Any owner, lessor, mortgagee by the terms of a lease of premises agreement to be named as an additional insured or to be held harmless and indemnified.
3. Additional Premium:  Included

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.  TB2-681-004130-038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*          *Edmund F. Kelly*
SECRETARY                 PRESIDENT

Countersigned by .................................................................................

**Authorized Representative**

Issued          Sales Office and No.          End. Serial No.  23

CG 20 11 01 96          Copyright, Insurance Services Office, Inc., 1994

POLICY NUMBER:                                                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization (Vendor):**  Any Vendor of Jobber for which such coverage is required by contract with the Named Insured.

**Your Products:**  All Products of the Named Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    TB2-681-004130-038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*                    *Edmund F. Kelly*
            SECRETARY                                    PRESIDENT

Countersigned by ...............................................................................................

                                        Authorized Representative

Issued            Sales Office and No.            End. Serial No.    24

POLICY NUMBER:                                             COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**   Any lessor when terms of any such lease agreement requires the Named Insured to add the lessor or Additional Insured for machinery equipment, furniture or fixtures leased to the Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;

2. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                  Expiration Date

For attachment to Policy or Bond No.   TB2-681-004130-038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*         *Edmund F. Kelly*
SECRETARY                            PRESIDENT

Countersigned by ...........................................................................

Authorized Representative

Issued           Sales Office and No.          End. Serial No.   25

CG 20 28 11 85         Copyright, Insurance Services Office, Inc., 1984        ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

The following are added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

1. When this Coverage Part is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the coverage part for Bodily Injury Liability or Property Damage Liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

2. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverages required by any motor vehicle insurance law. We will provide the required limits for those coverages.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date          Expiration Date

For attachment to Policy or Bond No.   TB2-681-004130-038

Audit Basis

Issued To

|   | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*          *Edmund F. Kelly*
SECRETARY                  PRESIDENT

Countersigned by ...............................................................................................

**Authorized Representative**

Issued          Sales Office and No.          End. Serial No.   26

CG 99 01 11 85          Copyright, Insurance Services Office, Inc., 1984          ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**    Raymond D. Nasher d/b/a North Park Center
1030 North Park Center Dallas, TX
with respect to:  Lenscrafters, North Park Center, Dallas, TX

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                                Expiration Date

For attachment to Policy or Bond No. TB2-681-004130-038

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

Countersigned by ...............................................................................

Authorized Representative

Issued            Sales Office and No.            End. Serial No.    27

CG 24 04 10 93            Copyright, Insurance Services Office, Inc., 1992            ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION
# PROVIDED BY US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Number of Days' Notice**     90

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date          Expiration Date

For attachment to Policy or Bond No. TB2–681–004130–038

Audit Basis

Issued To

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*
SECRETARY

*Edward F. Kelly*
PRESIDENT

Countersigned by ...................................................................................................

Authorized Representative

Issued      Sales Office and No.      End. Serial No.    28

CG 02 24 10 93        Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the CANCELLATION Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy only for one or more of the following reasons, except as provided in paragraph 6. below.

   a. Nonpayment of premium;

   b. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   c. Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

   d. The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   e. Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

   f. Failure of an insured to correct material violations of safety codes; or

   g. A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

3. We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

4. We will mail the notice of cancellation at least:

   a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation, if we cancel for a reason stated in 2.b. through 2.g. above.

5. a. The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   b. The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

IL 02 44 06 89
Copyright, Insurance Services Office, Inc., 1988, 1989
Copyright, ISO Commercial Risk Services, Inc., 1988, 1989

6. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

C. 1. Paragraph A.2.a. of the BUSINESSOWNERS Common Policy Conditions is deleted.

2. Paragraph E.2. of the Cancellation Common Policy Condition in the STANDARD PROPERTY POLICY is deleted. Paragraph E.2. is replaced by the following (unless item A. of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

b. 30 days before the effective date, if we cancel for any other reason.

---

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.   TB2-681-004130-038

Audit Basis

Issued To

This endorsement is executed by the company designated below.
- ☐ LIBERTY MUTUAL INSURANCE COMPANY
- ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
- ☐ LIBERTY INSURANCE CORPORATION
- ☐ LM INSURANCE CORPORATION
- ☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Hilton*                 *Edmund F. Kelly*
SECRETARY                          PRESIDENT

Countersigned by ...............................................................................

Authorized Representative

| Form # / Term I.D. | | Issued | | LOC-6 | | | | |
|---|---|---|---|---|---|---|---|---|

| Sales Office | Code | Sales Representative | Code | N/R | 1st Year | End Serial No. |
|---|---|---|---|---|---|---|
| | | | | | | 29 |

Copyright, Insurance Services Office, Inc., 1988, 1989
Copyright, ISO Commercial Risk Services, Inc., 1988, 1989      ☐

*Liberty put in wrong form*

# OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM - COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I - COVERAGES
## BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" and arises out of:

**(a)** Operations performed for you by the "contractor" at the location specified in the Declarations; or

**(b)** Your acts or omissions in connection with the general supervision of such operations; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Work Completed or Put to Intended Use**

"Bodily injury" or "property damage" which occurs after the earlier of the following times:

**(1)** When all "work" on the project (other than service, maintenance or repairs) to be performed for you by the "contractor" at the site of the covered operations has been completed; or

**(2)** When that portion of the "contractor's" "work", out of which the injury or damage arises, has been put to its intended use by any person or organization, other than another contractor or subcontractor working directly or indirectly for the "contractor" or as part of the same project.

**d. Acts or Omissions by You and Your Employees**

"Bodily injury" or "property damage" arising out of your, or your "employees'", acts or omissions other than general supervision of "work" performed for you by the "contractor".

**e. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**f. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".



"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Property loaned to you;

**(3)** ▓▓▓▓▓▓▓▓▓ property in the care, custody or control of the insured; or

**(4)** "Work" performed for you by the "contractor".

**h. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to:

**(1)** Liability assumed under an "insured contract"; or

**(2)** Expenses for first aid.

**i. Mobile Equipment**

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**j. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "work" performed for you by the "contractor"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "work" performed for you by the "contractor".

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which this insurance applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

8. Expenses incurred by the insured for first aid administered to others at the time of an accident, for "bodily injury" to which this insurance applies.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

    Copyright, Insurance Services Office, Inc., 1994       □

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to their duties as partners or members of a joint venture.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to their duties as members of a limited liability company. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Any person (other than your "employee") or any organization while acting as your real estate manager.

   b. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for the sum of damages because of all "bodily injury" and "property damage".

3. Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of damages because of all "bodily injury" and "property damage" arising out of any one "occurrence".

If you designate more than one project in the Declarations, the Aggregate Limit shall apply separately to each project.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured will not relieve us of our obligations under this Coverage Part.

2. **Cancellation**

   a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this policy by mailing or delivering to the first Named Insured and the "contractor" written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notices to the first Named Insured's and the "contractor's" last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the "contractor" any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

## 3. Changes

This policy contains all the agreements between you, the "contractor" and us concerning the insurance afforded. The first Named Insured shown in the Declarations and the "contractor" are authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## 4. Duties In The Event Of Occurrence, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence".

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 5. Examination Of Your Books And Records

We may examine and audit your books and records as well as the "contractor's" books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## 6. Inspections And Surveys

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## 7. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

8. **Other Insurance**

The insurance afforded by this Coverage Part is primary insurance and we will not seek contribution from any other insurance available to you unless the other insurance is provided by a contractor other than the designated "contractor" for the same operation and job location designated in the Declarations. Then we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

9. **Premiums**

The "contractor":

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

10. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the "contractor". If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the "contractor".

c. The "contractor" must keep records of the information we need for premium computation, and send us copies at such times as we may request.

11. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

12. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

13. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. "Contractor" means the contractor designated in the Declarations.

4. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

6. "Impaired property" means tangible property, other than work performed for you, that cannot be used or is less useful because:

   a. It incorporates work performed for you that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of the work performed for you; or

   b. Your fulfilling the terms of the contract or agreement.

7. "Insured contract" means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

   e. An elevator maintenance agreement.

8. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

9. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     (1) Power cranes, shovels, loaders, diggers or drills; or

     (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     (1) Equipment designed primarily for:

       (a) Snow removal;

       (b) Road maintenance, but not construction or resurfacing; or

       (c) Street cleaning;

     (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

10. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

11. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    Copyright, Insurance Services Office, Inc., 1994    ☐

12. "Suit" means a civil proceeding. brought in the United States of America (including its territories and possessions), Puerto Rico or Canada, in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

13. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

14. "Work" includes materials. parts or equipment furnished in connection with the operations.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F.** **TRANSFER OF YOUR RIGHTS AND DUTIES UN-
DER THIS POLICY**

Your rights and duties under this policy may not
be transferred without our written consent ex-
cept in the case of death of an individual named
insured.

If you die, your rights and duties will be trans-
ferred to your legal representative but only while
acting within the scope of duties as your legal
representative. Until your legal representative is
appointed, anyone having proper temporary
custody of your property will have your rights
and duties but only with respect to that property.

**LIABILITY POLICY**



**Liberty Mutual
Insurance Group/Boston**

### Liberty Mutual Fire Insurance Company

#### (A Mutual Insurance Company herein called the Company)

This policy is non-assessable.  The named insured is hereby notified that by virtue of this policy he is a member of the Company and as such is entitled to vote either in person or by proxy at any and all meetings of the Company and to participate, to the extent and upon the conditions fixed and determined by the board of directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined. The annual meetings of the Company are held at its home office, Boston, Massachusetts, on the second Wednesday of April in each year, at eleven o'clock in the morning.

This policy is classified for dividend purposes in Dividend Class V.

**IN WITNESS WHEREOF,** the company has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned on the declarations page by a duly authorized representative of the company

*Gary S. Gilson*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

**GPO 4079 R1 (4-19-95)**