**COMMERCIAL GENERAL
LIABILITY DECLARATIONS**



**LIBERTY
MUTUAL.**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY - BOSTON**

| Account | Sub-Acct. No |
|---|---|
| 01 21 95 | 0000 |

| Policy No. | TD/CD | Sales Office | Code | Sales Representative | Code | N/R | 1st Yr. Liab. Pol. |
|---|---|---|---|---|---|---|---|
| RG2-681-004130-039 | 04/6 | Cincinnati | 877 | Fischer | 8877 | 2 | 74 |

**Item 1.  Named Insured**   Luxottica U.S. Holdings Corporation
and as per Endorsement 1

**Address**   Attn:  Mr. Gregory Muntel
44 Harbor Park Drive
Port Washington, NY  11050-4686

**First Named Insured**  Luxottica U.S. Holdings Corporation

The named insured is:   ☐ Individual   ☐ Partnership   ☒ Corporation   ☐ Other

Business of the named insured is:  **Manufacturing & Retail Sales**

| | Mo. | Day | Year | | Mo. | Day | Year |
|---|---|---|---|---|---|---|---|
| **Item 2  Policy Period : From** | 02 | 01 | 1999 | to | 02 | 01 | 2000 |

12:01 A.M., standard time at the address of the named insured as stated herein

**Item 3.  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you
to provide the insurance as stated in this policy.**

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| PERSONAL INJURY and PROPERTY DAMAGE LIABILITY | $3,000,000 | each occurrence |
| -FIRE DAMAGE LIMIT (subject to occurrence limit) | $1,000,000 | any one fire |
| -MEDICAL EXPENSE LIMIT (subject to occurrence limit) | $    1,000 | any one person |
| GENERAL AGGREGATE LIMIT (Other Than Products-Completed Operations) | $6,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $3,000,000 | |

| Item 4 PREMIUM<br><br>Classification and Locations | Code.<br>No. | Premium Base<br><br>Sales | Rates<br>Per $1,000<br>Sales | Advance Premiums<br>Code  326 X  327    328 |
|---|---|---|---|---|
| All Operations of the<br>Named Insured | 52950 | See | Attached | Schedule |

| MINIMUM PREMIUM $ 418. | TOTAL ADVANCE PREMIUM $ 91,566. |
|---|---|

The premium for this policy is payable  $            in advance, $            on first anniversary,
and $            on the second anniversary.

**Audit Basis:** ☐ At Expiration  ☐ Annual  ☐ Semi-Annual  ☐ Quarterly  ☒ Monthly  ☐ Flat Charge

The Declarations are completed on the attached schedules designated Item 4 Declarations Extension Schedules

This policy, including all endorsements issued herewith, is hereby countersigned by ...........................
*N*1L25*                                                             Authorized Representative

| Loc. Code | Typed | Periodic Payment | Rating Basis | Audit Basis | Home State | Pol. H.G. | Renewal of<br>TB2-681- |
|---|---|---|---|---|---|---|---|
| 6 | sc<br>4/14 | | R | 9 | OH | S- | 004130-038 |

NRD 206 R1 RG 01 87

Item 4  *Declarations Extension Schedule*

| CLASSIFICATION AND LOCATIONS | CODE No. | PREMIUM BASE SALES | RATES PER $1,000 SALES | ADVANCE PREMIUMS CODE 326 ☒ 327 ☐ 328 ☐ |
|---|---|---|---|---|
| All Operations of the Named Insured | 52950 | | | |
| 200001 – Lenscrafters, Inc. | 52950 | 1,180,000,000 | AE) .069 DE) .167 | 81,420. 197,060. |
| A/O (Frozen Premium Discount 11.5%) | | | | |
| Estimated Loss Adj. Expense | | | | 87,783. |
| | | | Annual Deposit | 366,263. 91,566. |

AE) Administrative Expense Rate
DE) Discounted Excess

M = MINIMUM PREMIUM

NRD433 RG/RH
For Attachment to
Policy:  RG2-681-004130-039

## SCHEDULE OF FORMS AND ENDORSEMENTS

| FORM NUMBER | FORM NAME | ENDORSEMENT NO. |
|---|---|---|
| NRD 206 R1 RG 01 87 | Commercial General Liability Declarations | |
| BS 1060 | Notice to Policy Holder | |
| GPO 4169 | Notice to Policy Holder | |
| NRD 433 RG/RH | Declarations Extension Schedule | |
| NRD 201 RG R9 0597 | General Amendatory Endorsement | 1 |
| 102 | Amendatory Endorsement-Named Insured | 2 |
| 102 | Amendatory Endorsement-Port Authority Indemnity Clause | 3 |
| 102 | Amendatory Endorsement-Personal Injury | 4 |
| NRD 203 R4 RG 08 01 94 | Advertising Offense Coverage Endorsement | 5 |
| 102 | Amendatory Endorsement-Advertising Offense Coverage | 6 |
| 102 | Amendatory Endorsement-Non-Owned Watercraft | 7 |
| 102 | Coverage Endorsement-Short Term Premises | 8 |
| NRD 215 RG 0796 | Amendatory Endorsement | 9 |
| NRD 442 | Asbestos Exclusion Endorsement | 10 |
| 102 | Coverage-Employee Benefits Liability Insurance Endorsement | 11 |
| NRD 205 R2 RG 8-1-90 | Amendment-Deductible Liability Insurance | 12 |
| CG 2504 0397 | Designated Locations General Aggregate Limit | 13 |
| LG 6032 | Composite Rate Endorsement | 14 |
| CG 2415 0196 | Limited Pollution Liability Extension Endorsement | 15 |
| IL 0021 1194 | Nuclear Energy Liability Exclusion Endorsement | 16 |
| CG 2015 1188 | Additional Insured-Vendors Endorsement | 17 |
| 2272 R3 | Special Premium Discount Endorsement | 18 |
| CG 2147 1093 | Employment-Related Practices Exclusion Endorsement | 19 |
| 2319 | Notice of Cancellation Endorsement | 20 |
| CG 0054 0397 | Amendment of Pollution Exclusion-Exception | 21 |
| CG 2034 0397 | Additional Insured-Lessor of Leased Equipment | 22 |
| CG 2404 1093 | Waiver of Transfer of Rights of Recovery Against Others | 23 |
| IL 0244 0689 | Ohio Changes-Cancellation and Nonrenewal | 24 |
| CG 2021 0196 | Additional Insured - Volunteer Workers | 25 |
| NRD 207 R4 0796 | Commercial General Liability Coverage Form | |
| LEW 53 R1 | Backer | |



## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## NOTICE TO POLICYHOLDERS

Dear Policyholder:

Your General Liability renewal policy is attached.

"Please note that your renewal policy includes an Employment-Related Practices Exclusion endorsement, number CG 21 47 (CG 26 39 for Texas). The endorsement clarifies that your renewal policy does not provide coverage for "bodily injury" or "personal injury" arising out of certain employment-related practices. Please read this endorsement carefully."

If you have any questions about this endorsement, contact your Liberty Mutual Sales Representative.

BS 1060

## OHIO INSURANCE FRAUD

**"ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."**



**LIBERTY MUTUAL.**

**FIRE INSURANCE COMPANY**
**Boston, Massachusetts**

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

### SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2.  **Exclusions**

This insurance does not apply to:

a.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement;  or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)  Liability to such party for , or for the cost of, that party's defense has also been assumed in the same "insured contract";  and

(b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.11.).

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

    **c.** Any loss, cost or expense arising out of any:

        **(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        **(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement.**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways next to premises you own or rent; or

        **(3)** Because of your operations;

    provided that:

        **(1)** The accident takes place in the "coverage territory" and during the policy period;

        **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

        **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        **(1)** First aid administered at the time of an accident;

        **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

    We will not pay expenses for "bodily injury":

    **a.** To any insured.

    **b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

    **c.** To a person injured on that part of premises you own or rent that the person normally occupies.

d.  To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e.  To a person injured while taking part in athletics.

f.  Included within the "products-completed operations hazard."

g.  Excluded under Coverage A.

h.  Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.  All expenses we incur.

2.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

5.  All costs taxed against the insured in the "suit."

6.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d.   The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e.   The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f.   The indemnitee:

     (1)   agrees in writing to:

        (a)   cooperate with us in the investigation, settlement or defense of the "suit";

        (b)   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        (c)   notify any other insurer whose coverage is available to the indemnitee; and

        (d)   cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

     (2)   provides us with written authorization to:

        (a)   obtain records and other information related to the "suit"; and

        (b)   conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b. (2) of Coverage A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I — Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a.   We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.   The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

1.   If you are designated in the Declarations as:

   a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b.   A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        **(1)** "Bodily injury" or "personal injury":

            **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

            **(c)** For which there is an obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

            **(d)** Arising out of his or her providing or failing to provide professional health care services.

        **(2)** "Property damage" to property:

            **(a)** Owned, occupied or used by,

            **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

            you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

**NRD 207 RG R4 07 96**                                                       **Page 11 of 23**

      d.   Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

      a.   "Bodily injury" to a co-"employee" of the person driving the equipment; or

      b.   "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

      a.   Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

      b.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

      c.   Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

      No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

      a.   Insureds;

      b.   Claims made or "suits" brought; or

      c.   Persons or organizations making claims or bringing "suits."

2.  The General Aggregate Limit is the most we will pay for the sum of:

      a.   Medical expenses under Coverage C;

      b.   Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

      c.   Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under **Coverage A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B** for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

      because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under **Coverage A** for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under **Coverage C** for all medical expenses because of "bodily injury" sustained by any one person.

The limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after insurance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit;" and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds.**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew.**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

10. **Cancellation.**

    a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

       (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

       (2) 30 days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **e.**  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **f.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes.**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**12. Examination Of Your Books And Records.**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**13. Inspections And Surveys.**

We have the right but are not obligated to:

    **a.**  Make inspections and surveys at any time;

    **b.**  Give you reports on the conditions we find; and

    **c.**  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.**  Are safe or healthful; or

    **b.**  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**14. Premiums.**

The first Named Insured shown in the Declarations:

    **a.**  Is responsible for the payment of all premiums; and

    **b.**  Will be the payee for any return premiums we pay.

**15. Transfer Of Your Rights And Duties Under This Policy.**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c. All parts of the world if:

        (1) The injury or damage arises out of:

            (a) Goods or products made or sold by you in the territory described in a. above; or

            (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (2) The insured's responsibility to pay damages is determined in a "suit" on the merits; in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b.  You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b.  Your fulfilling the terms of the contract or agreement.

8.  "Insured contract" means:

   a.  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damages by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b.  A sidetrack agreement;

   c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e.  An elevator maintenance agreement;

   f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1)  That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a)  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

      (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2)    Cherry pickers and similar devices used to raise or lower workers;

   f.   Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     (1)   Equipment designed primarily for:

         (a)        Snow removal;

         (b)        Road maintenance, but not construction or resurfacing; or

         (c)        Street cleaning;

     (2)   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     (3)   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13   "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

   a.   False arrest, detention or imprisonment;

   b.   Malicious prosecution;

   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e.   Oral or written publication of material that violates a person's right of privacy.

14   "Products-completed operations hazard";

   a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1)   Products that are still in your physical possession; or

     (2)   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a)   When all of the work called for in your contract has been completed.

         (b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (3)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.**  Does not include "bodily injury" or "property damage" arising out of:

      (1)   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2)   The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3)   Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products - completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

  **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.**  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.**  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

  **a.**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1)   You;

      (2)   Others trading under your name; or

      (3)   A person or organization whose business or assets you have acquired; and

  **b.**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warning or instructions.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned by a duly authorized representative of the company

*Barry S. Shilon*
SECRETARY

*Edmund F Kelly*
PRESIDENT

The policy, including all Endorsements issued therewith, is hereby countersigned by

_____
Authorized Representative

ISSUED TO   Luxottica U.S. Holdings Corporation
            and as per Endorsement 1

POLICY NO: RG2-681-004130-039

EXPIRES    02-01-2000



# LIBERTY MUTUAL.

FIRE INSURANCE COMPANY
Boston, Massachusetts

THIS POLICY IS CLASSIFIED
IN DIVIDEND CLASS V

The named insured is hereby notified that by
virtue of this policy he is a member of Liberty
Mutual Fire Insurance Company and is en-
titled to vote either in person or by proxy
at any and all meetings of said company.

The annual meetings are held at the home
office, Boston, Massachusetts, on the second
Wednesday of April in each year, at
eleven o'clock in the morning.

This policy is nonassessable.

LEW 53 R1

**GENERAL AMENDATORY ENDORSEMENT**
(Occurrence Form)

A. **AMENDMENT - NAMED INSURED**

1. The term "Named Insured" includes in addition to the person or organization designated in the Declarations as the "First Named Insured":

   a. **See Endorsement 2**

      but only while the First Named Insured owns, during the policy period, an interest therein of more than 50% (fifty percent); and

   b. subject to 1.a. above, any other organization (except for a partnership, joint venture or limited liability company) incorporated or organized under the laws of the United States of America or its states, territories or possessions, Puerto Rico, Canada or its provinces, but only while the First Named Insured or any of the Named Insureds in 1.a. above owns, during the policy period, an interest therein of more than 50%. But:

      None of the above-designated persons or organizations is a Named Insured with respect to:

      (1) Injury within subdivision a. of the definition of "personal injury" (that is, "bodily injury") or "property damage" that occurred, or

      (2) Injury within subdivisions b. or c. of the definition of "personal injury" caused by an offense or a series of related offenses committed,

      prior to the ownership interests described in Item 1. above.

      A partnership, joint venture or limited liability company is not a Named Insured unless it is shown in 1.a. above. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in 1.a. above.

2. Paragraph 4. of SECTION II - WHO IS AN INSURED is deleted.

3. a. The First Named Insured is authorized to act and agrees to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

   b. Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligations of any Named Insured to us arising out of any agreements contained in this policy, and paragraph a. of Condition 14. "Premiums" is amended accordingly.

B. **EXCLUSION - ADVERTISING INJURY; AMENDMENT - PERSONAL INJURY**

1. Coverage B. PERSONAL AND ADVERTISING INJURY LIABILITY (and all references thereto in this policy) is deleted.

2. The term "bodily injury" is replaced by the term "personal injury" throughout the policy except:

a.  In Exclusions a. and e. (and all references thereto) of COVERAGE A,

b.  In "Amendment - Excess Employers Liability Insurance," and

c.  In the definitions of "bodily injury" and "personal injury."

3.  The following is added to the DEFINITIONS section:

"Personal injury" means:

a.  "Bodily injury";

b.  Injury to the feelings or reputation of a natural person, except for injury within the definitions of "bodily injury" or "property damage"; and

c.  Injury to intangible property sustained by any organization as the result of a "covered offense."

   "Covered offense" means:

   (1)  False arrest, detention or imprisonment;

   (2)  Malicious prosecution;

   (3)  Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies;

   (4)  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   (5)  Oral or written publication of material that violates a person's right of privacy.

4.  Paragraph 2. Exclusions of Coverage A. (except exclusions a., e. and f.) applies to the insurance provided under subdivisions b. and c. of "personal injury." The following additional exclusions also apply to that insurance:

   (a)  Injury arising out of advertising, publishing, broadcasting or telecasting done by or for the insured;

   (b)  Injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (c)  Injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period (except for injury to which paragraph 6. "Stop Gap" Coverage for Renewal Insureds Only applies);

   (d)  Injury arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

   (e)  Injury to an employee while employed in violation of law with the actual knowledge of the insured or the actual knowledge of any "executive officer" of the insured; or

(f)    Injury arising out of an offense committed by or at the direction of the insured for the purpose of causing injury.

(g)    Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(h)    Any loss, cost or expense arising out of any:

    (1)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (2)    Claim or suit by on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5.    Paragraph 12. of the DEFINITIONS section is replaced by the following;

12. "Occurrence" means:

    (a)    with respect to injury within subdivision a. of the definition of "personal injury" (that is, "bodily injury") or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

    (b)    with respect to injury within subdivision b. of the definition of "personal injury", the commission of one or a related series of acts (including but not limited to a series of oral or written publications of the same or similar material) during the policy period;

    (c)    with respect to injury within subdivision c. of the definition of "personal injury," the commission of one or a related series of "covered offenses" during the policy period.

6.    "Stop gap" coverage for renewal insureds only:

Explanatory Note.

This policy applies to injury within subdivisions b. and c. of the definition of "personal injury" only if caused by one or a related series of covered acts or offenses committed during the policy period.  If your prior policy(ies) written by us included our General Amendatory Endorsement, then they applied to such injury that occurred during the policy period, regardless of when the act of offense was committed.  Therefore:

Limited "Stop Gap" Coverage

If injury within subdivisions b. or c. of this policy's definition of "personal injury" (and not otherwise excluded) occurs during the policy period, but arises from one or a related series of covered acts or offenses (as defined by this policy) which were committed during the term of your prior policy written by us, this policy will apply to such injury; but:  only if your prior policy does not apply.

7. <u>Explanatory Note on Limits of Insurance:</u>

For the purpose of determining the Limits Of Insurance, the following is added to SECTION III - LIMITS OF INSURANCE:

All injury within subdivision a. of the definition of "personal injury" (that is "bodily injury") and "property damage" arising out of continuous or repeated exposure to substantially the same general harmful conditions will be considered as the result of one and the same "occurrence."

## C. AMENDMENT - REASONABLE FORCE

Exclusion a. of COVERAGE A is replaced by the following:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## D. AMENDMENT - CONTRACTUAL LIABILITY

1. Paragraph 8 of the DEFINITIONS section is replaced by the following:

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

d. Any other easement agreement;

e. An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

f. An elevator maintenance agreement; or

g. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "personal injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "personal injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. But:

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (1) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

        (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    b. Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering of or failing to render professional services, including those listed in a. above and supervisory, inspection, architectural or engineering activities;

    c. That indemnifies any person or organization for "property damage" to real or personal property owned by, rented to, or used by such person or organization arising out of work or operations performed for you;

    d. Under which you agree to pay any fines, penalties, liquidated damages, or any amounts in excess of such compensatory damages as would be recoverable therefor in an action of tort;

    e. That indemnifies an "employee" of the insured for "personal injury" or "property damage" sustained by any other "employee" of the insured arising out of and in the course of employment by the insured or while performing duties related to the conduct of the insured's business; or

    f. That indemnifies an "employee" of the insured for any amounts or benefits because of "personal injury" that exceed any obligation of the insured under a Workers' Compensation, disability benefits or unemployment compensation law or any similar law.

2. We will defend any claim made or "suit" brought against the "indemnitee" under an "insured contract" which you are required to defend by the specific terms of such "insured contract," but only to the same extent and on the same terms that we would defend if the "indemnitee" were the insured under the policy, and then only if all of the following conditions are satisfied: (1) the claim or "suit" seeks damages for which the "indemnitee" is legally entitled to indemnification under the "insured contract," (2) the policy covers such damages, and (3) the applicable Limit of Insurance with respect to such damages has not been exhausted by payment of judgments or settlements. "Indemnitee" means the person or organization whose liability you have assumed under an "insured contract."

3. Nothing in this Amendment D. shall supersede any limitation imposed by A. Amendment - Named Insured, with respect to who is a "Named Insured" under this policy.

**E. DELETION OF EXCLUSION - LIQUOR LAW LIABILITY**

Exclusion c. of COVERAGE A is deleted.

**F. AMENDMENT - EXCESS EMPLOYER'S LIABILITY INSURANCE**

1. Exclusion e. of COVERAGE A relating to "bodily injury" to any "employee" of the insured or to the spouse, child, parent, brother or sister of that "employee" does not apply to any "bodily injury" to which primary Employers Liability Insurance written by us applies, or would apply but for exhaustion of policy limits.

The insurance provided under this Section F., is excess over:

a.   The total amount provided by such primary Employers Liability Insurance written by us that is available to the Named Insured for damages because of such injury; and

b.   The total of all deductible and retained amounts under such primary insurance.

The insurance provided under this Section F. is conditioned upon the existence of primary Employers Liability Insurance written by us and shall not apply to "bodily injury" by accident or "bodily injury" by disease which is not covered under primary Employer's Liability Insurance written by us.  But:

This insurance does not apply to:

(1)   Any claim brought under the laws of:

   (a)   California, New Jersey, New York, or Missouri; or

   (b)   Any other state which now or during the term of this policy prohibits by law the establishment of limits of liability applicable to Employers Liability Insurance, but only if the claim results from:

      (i)   "bodily injury" by accident which occurs after such law becomes effective; or

      (ii)   "bodily injury" by disease where the "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" by disease occurs after such law becomes effective.

(2)   Liability assumed under an "insured contract" or any other contract or agreement;

(3)   Punitive or exemplary damages because of "bodily injury" to an "employee" employed in violation of law;

(4)   "Bodily injury" to an "employee" while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers";

(5)   Any obligation imposed by a Workers' Compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

(6)   "Bodily injury" intentionally caused or aggravated by you;

(7)   "Bodily injury" occurring outside the United States of America, its territories or possessions, and Canada.  This exclusion does not apply to "bodily injury" to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

(8)   Damages arising out of the discharge of, coercion of, or discrimination against any "employee" in violation of law;

(9)   "Bodily injury" covered by a Protection and Indemnity Policy or similar policy issued to you or for your benefit.  This exclusion applies even if the other policy does not apply because of an other insurance clause, deductible or limitation of liability clause, or any similar clause;

(10) Your duty to provide transportation, wages, maintenance and cure.

2.  The limits of our liability for this excess insurance are shown in the schedule below. They apply as follows:

a.  "Maritime Coverage"

(1)  Bodily Injury by Accident. The limit shown for "bodily injury by accident-annual aggregate" is the most we will pay for all damages covered by "Maritime Coverage" and arising out of "bodily injury" by accident, regardless of the number of "employees" who sustain "bodily injury" by accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by "Maritime Coverage" because of "bodily injury" to one or more "employees" in any one accident.

A disease is not "bodily injury" by accident unless it results directly from "bodily injury" by accident.

(2)  Bodily Injury by Disease. The limit shown for "bodily injury by disease-annual aggregate" is the most we will pay for all damages covered by "Maritime Coverage" because of "bodily injury" by disease to one or more "employees". The limit applies separately to "bodily injury" by disease arising out of work in each state. "Bodily injury" by disease will be deemed to occur in the state of the vessel's home port.

"Bodily injury" by disease does not include disease that results directly from a "bodily injury" by accident.

"Maritime Coverage" means coverage for "bodily injury" to a master or member of the crew of a vessel.

b.  Other than "Maritime Coverage"

(1)  Bodily Injury by Accident. The limit shown for "bodily injury by accident-annual aggregate" is the most we will pay for all damages covered by this insurance other than "Maritime Coverage" and arising out of "bodily injury" by accident, regardless of the number of "employees' who sustain "bodily injury" by accident. The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance other than "Maritime Coverage" because of "bodily injury" to one or more "employees" in any one accident.

A disease is not "bodily injury" by accident unless it results directly from "bodily injury" by accident.

(2)  Bodily injury by Disease. The limit shown for "bodily injury by disease-annual aggregate" is the most we will pay for all damages covered by this insurance other than "Maritime Coverage" and arising out of "bodily injury" by disease, regardless of the number of "employees" who sustain "bodily injury" by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages covered by this insurance other than "Maritime Coverage" because of "bodily injury" by disease to any one "employee."

"Bodily injury" by disease does not include disease that results directly from a "bodily injury" by accident.

c.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

## SCHEDULE - LIMITS OF LIABILITY

"MARITIME COVERAGE":

| | | |
|---|---|---|
| "Bodily Injury" by Accident | $ 0 | annual aggregate |
| | $ 0 | each accident |
| "Bodily Injury" by Disease | $ 0 | annual aggregate |

OTHER THAN "MARITIME COVERAGE":

| | | |
|---|---|---|
| "Bodily Injury" by Accident | $ 0 | annual aggregate |
| | $ 0 | each accident |
| "Bodily Injury" by Disease | $ 0 | annual aggregate |
| | $ 0 | each "employee" |

G.  AMENDMENT - COVERAGE FOR BODILY INJURY TO CO-EMPLOYEES

1.  Coverage

Your "employees" (other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company)) are insureds with respect to injury within subdivision a. of the definition of "personal injury" (that is "bodily injury"):

(a)  to you

(b)  to your partners or members (if partnership or joint venture)

(c)  to your members (if you are a limited liability company)

(d)  to a co-"employee" while that co-"employee" is either in the course of his or her employment by you or while performing duties related to the conduct of your business (including participation in any recreational activities sponsored by you.)  But:

This coverage for your "employees" does not apply:

(1)  To injury within subdivisions b. and c. of the definition of "personal injury."

(2)  To acts outside the scope of their employment by you (which employment includes participation in any recreational activities sponsored by you).

(3)  In excess of the Limits of Insurance designated in Item 3 below.

(4)  To the providing of or failure to provide professional health care services.

2. **Amendment - Who is an Insured.**

Subparagraph 2. a. (1), (a), (b) and (c) of SECTION II - WHO IS AN INSURED does not apply to injury within subdivision a. of the definition of "personal injury" (that is, "bodily injury") for which insurance is provided by this Amendment G, but solely to the extent of the Limits of Insurance designated in Item 3 below.

3. **Limits of Insurance.**

a. Sublimit Each Occurrence. This insurance is subject to a sublimit of:

$_____each occurrence.

This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

If a sublimit is not designated above, the applicable limit is the Each Occurrence Limit shown in the Declarations.

b. Aggregate. This insurance is subject to the General Aggregate Limit shown in the Declarations.

## H. AMENDMENT - PROFESSIONAL HEALTH CARE SERVICES BY EMPLOYEES

1. **Coverage.**

Any "employee" of the Named Insured who is a "designated health care provider" is an insured under this policy with respect to "personal injury":

a. Which arises out of the providing of or failure to provide professional health care services; and

b. Which occurs in the course of and within the scope of such "employee's" employment by the Named Insured; but:

Solely to the extent of the Limits of Insurance designated in Item 3 below.

"Designated health care provider" means any "employee" of yours who provides professional health care services, including but not limited to doctors, nurses, emergency medical technicians or designated first aid personnel.

2. **Amendment - Who is an Insured.**

Subparagraphs 2. a. (1) of SECTION II - WHO IS AN INSURED do not apply to the insurance provided by this amendment, but solely to the extent of the Limits of Insurance designated in Item 3 below.

3. **Limits of Insurance.**

a. Sublimit Each Occurrence. This insurance is subject to a sublimit of:

$_____ each occurrence.

This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition of the Each Occurrence Limit.

If a sublimit is not designated above, the applicable limit is the Each Occurrence Limit shown in the Declarations.

    b.   Aggregate.  This insurance is subject to the General Aggregate Limit shown in the Declarations.

4.   Exclusions.

This insurance does not apply to:

    a.   Liability assumed under an "insured contract" or any other contract or agreement;

    b.   Liability arising out of the providing of professional health care services in violation of law;

    c.   Liability arising out of the providing of any professional health care services while in any degree under the influence of intoxicants or narcotics;

    d.   Liability arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or failure to act; or

    e.   Punitive or exemplary damages, fines or penalties.

## I.  LIMITATION - PARKING AN AUTO

Subparagraph (3) of Exclusion g. of COVERAGE A is deleted.

## J.  AMENDMENT - MOBILE EQUIPMENT

Exclusion h. (2) of COVERAGE A is deleted.

## K.  EXCLUSION - DISCRIMINATION

This insurance does not apply to:

Damages arising out of unlawful discrimination.

## L.  AMENDMENT - BLANKET ADDITIONAL INSURED

Section II - WHO IS AN INSURED is amended to include as an insured any person, organization, state or other political subdivision, trustee or estate for whom you have agreed in writing to provide liability insurance.  But:

The insurance provided by this amendment:

1.   Applies only to "personal injury" or "property damage" arising out of (a) "your work" or (b) premises or other property owned by or rented to you;

2.  Applies only to coverage and limits of insurance required by the written agreement, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy; and

3.  Does not apply to any person, organization, state or other political subdivision, trustee or estate for whom you have procured separate liability insurance while such insurance is in effect, regardless of whether the scope of coverage or limits of insurance of this policy exceed those of such other insurance or whether such other insurance is valid and collectible.

### M.  AMENDMENT - NON-CUMULATION OF LIMITS (SAME OCCURRENCE)

The following paragraph is added to Item 5 of Section III - LIMITS OF INSURANCE:

If one "occurrence" causes "bodily injury", "personal injury" and/or "property damage" during this policy period and during the policy period of one or more prior and/or future policy(ies) that include(s) a commercial general liability coverage form issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence."

### N.  LIMITATION - OTHER INSURANCE

1.  With respect to loss for which coverage is provided by this General Amendatory Endorsement, unless otherwise stated below or elsewhere in this Endorsement:

    This policy does not apply to any portion of a loss for which the insured has available any other valid and collectible insurance, whether primary, excess, contingent, or on any other basis, unless such other insurance was specifically purchased by the insured to apply in excess of this policy.

2.  With respect to "Amendment - Blanket Additional Insured," the following provisions apply:

    a.  Where the applicable written agreement requires the insured to provide liability insurance on a primary, excess, contingent, or any other basis, this policy will apply solely on the basis required by such written agreement and Item 4. Other Insurance of SECTION IV of this policy will not apply, regardless of whether the person, organization, state or other political subdivision (for whom the insured has agreed in writing to provide such insurance) has available other valid and collectible insurance.

    b.  Where the applicable written agreement does not specify on what basis the liability insurance will apply, the provisions of Item 4. Other Insurance of SECTION IV of this policy will govern.

3.  With respect to coverage provided by "Amendment - Contractual Liability", "Amendment - Coverage For Bodily Injury To Co-Employees", and "Amendment - Professional Health Care Services By Employees", we will deem our policy to be primary regardless of whether any other valid and collectible insurance is available to the insured, and Item 4. Other Insurance of SECTION IV of this policy will not apply.

4.  With respect to coverage available to you as an additional insured under another policy the following is added under item 4.b. Other Insurance of SECTION IV of the policy:

    (4) This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis that is valid and collectible insurance available to you as an additional insured.

O.  AMENDMENT - FOREIGN COVERAGE

    1.  Amended Definition - Coverage Territory.

        Paragraph 4.c. of the DEFINITIONS section is replaced by the following:

        c.  Anywhere in the world, except with respect to injury or damage arising out of your "foreign based operations."  As used herein, "foreign based operations" means:

            (1)  construction, fabrication, erection or installation operations outside the territory described in a. above;

            (2)  the manufacturing of goods or products outside the territory described in a. above; or

            (3)  the sale or distribution of goods manufactured outside the territory described in a. above at or from locations outside the territory described in a. above.

    2.  Investigation, Defense, Settlement - Foreign Claims or Suits.

        The insured under our supervision shall investigate, defend or settle any claim or "suit" brought in any country where we are prevented by law from carrying out this agreement.

        We will reimburse the insured for the reasonable costs of such investigation and defense and, within the applicable limit of insurance, for the amount of any settlement made with our prior written consent.

P.  AMENDMENT - DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT.

    For purposes of paragraphs a. and b. of Condition 2. of the policy, you refers to an "executive officer" of the insured or to the "employee" designated by the insured to give us notice.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name

|  | LIBERTY MUTUAL INSURANCE COMPANY |
|---|---|
| Premium | **X** LIBERTY MUTUAL FIRE INSURANCE COMPANY |
|  | LIBERTY INSURANCE CORPORATION |
|  | LM INSURANCE CORPORATION |
| Effective Date         Expiration Date | THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.    **RG2-681-004130-039**

Audit Basis
Issued to

Countersigned by.............................................................................

                                                            Authorized Representative

      Issued                Sales Office and No.              End. Serial No.    **1**

Loc. 6

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDATORY ENDORSEMENT - NAMED INSURED

This Amendatory Endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 1. of A. Amendment - Named Insured of the General Amendatory Endorsement is replaced by the following:

A.  For entities owned prior to 2/1/99, the following applies:

   1.  The term "Named Insured" includes in addition to the person or organization designated in the Declarations as the "First Named Insured":

      a.  See Attached Schedule

         but only while the First Named Insured owns, during the policy period, an interest therein; and

      b.  subject to 1.a. above, any other organization (except for a partnership, joint venture or limited liability company) incorporated or organized under the laws of the United States of America or its states, territories or possessions, Puerto Rico, Canada or its provinces, but only while the First Named Insured or any of the Named Insureds in 1.a. above owns, during the policy period, an interest therein of more than 50%.  But:

         None of the above-designated persons or organizations is a Named Insured with respect to:

         (1)  Injury within subdivision a. of the definition of "personal injury" (that is, "bodily injury") or "property damage" that occurred, or

         (2)  Injury within subdivisions b. or c. of the definition of "personal injury" caused by an offense or a series of related offenses committed,

         prior to the ownership interests described in Item 1. above.

         A partnership, joint venture or limited liability company is not a Named Insured unless it is shown in 1.a. above.  No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in 1.a. above.

B.  For entities owned 2/1/99 and after, the following applies:

   1.  The term "Named Insured" includes in addition to the person or organization designated in the Declarations as the "First Named Insured":

      a.  See Attached Schedule

For Attachment to
Policy: RG2-681-004130-039                  Page 1 of 2                        End. 2

NAMED INSURED ENDORSEMENT

Luxottica U.S. Holdings Corp.
Luxottica Group S.P.A.
Luxottica, S.P.A.
Persol S.P.A.
Luxottica, USA, Inc.
Luxottica Canada, Inc.
Brico, S.R.L.
La Meccanoptica Leonardo, S.P.A.
Avant-Grade Optics, Inc.
Avant-Grade Optics International, Inc.
The United States Shoe Corporation
Lenscrafters, Inc.
Lenscrafters Canadian, Inc.
Lenscrafters International, Inc.
Lenscrafters E.C. Corporation
549885 Alberta, Inc.
Centre Professionel de Vision USSC, Inc.
Eyexam 2000 Of California, Inc.
Lenscrafters Foundation
Lenscrafters Foundation Of Canada
New Shoe Corp.
Luxottica Sun Corp.

but only while the First Named Insured owns, during the policy period, an interest therein of more than 50% (fifty percent); and

b.   subject to 1.a. above, any other organization (except for a partnership, joint venture or limited liability company) incorporated or organized under the laws of the United States of America or its states, territories or possessions, Puerto Rico, Canada or its provinces, but only while the First Named Insured or any of the Named Insureds in 1.a. above owns, during the policy period, an interest therein of more than 50%. But:

None of the above-designated persons or organizations is a Named Insured with respect to:

(1) Injury within subdivision a. of the definition of "personal injury" (that is, "bodily injury") or "property damage" that occurred, or

(2) Injury within subdivisions b. or c. of the definition of "personal injury" caused by an offense or a series of related offenses committed,

prior to the ownership interests described in Item 1. above.

A partnership, joint venture or limited liability company is not a Named Insured unless it is shown in 1.a. above. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in 1.a. above.

All other terms and conditions of this coverage remain unchanged.

This endorsement is executed by the company below designated by an entry in the box opposite its name

| | | |
|---|---|---|
| | | LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | X | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | | LIBERTY INSURANCE CORPORATION |
| Effective Date | Expiration Date | LM INSURANCE CORPORATION · |
| | | THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.   RG2-681-004130-039

Audit Basis
Issued to

Page 2 of 2
Countersigned by...........................................................................
                                                      Authorized Representative

Loc: 6

Issued                          Sales Office and No.                    End. Serial No.     2
sc 4-14-99

102

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE ENDORSEMENT - PORT AUTHORITY INDEMNITY CLAUSE**

This Coverage Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

SECTION IV - COMMERCIAL LIABILITY CONDITIONS is amended to include the following:

16. Indemnity Clause

We shall not raise any defense involving in any way the jurisdiction of the tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority without obtaining express advance permission from the General Counsel of the Port Authority.

All other terms and conditions of this policy remain unchanged.

This endorsement is executed by the company below designated by an entry in the box opposite its name

| | |
|---|---|
| | ☐ LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | ☐ LIBERTY INSURANCE CORPORATION |
| Effective Date                 Expiration Date | ☐ LM INSURANCE CORPORATION |
| | ☐ THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.    RG2-681-004130-039

Audit Basis
Issued to

Countersigned by.................................................................................................
                                   Authorized Representative

Loc. 6

      Issued               Sales Office and No.            End. Serial No.    3
      sc 4-14-99

102

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


AMENDATORY ENDORSEMENT - PERSONAL INJURY


This Amendatory Endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART


In B. Amendment - Personal Injury of the General Amendatory Endorsement, paragraph 3. c. (2) is replaced with the following:

(2)  Malicious prosecution or abuse of process;

All other terms and conditions of this coverage remain unchanged.


This endorsement is executed by the company below designated by an entry in the box opposite its name

| | |
|---|---|
| | LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | X  LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | LIBERTY INSURANCE CORPORATION |
| Effective Date          Expiration Date | LM INSURANCE CORPORATION |
| | THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.    RG2-681-004130-039


Audit Basis
Issued to

Countersigned by.............................................................................................
Authorized Representative

Loc. 6

Issued                          Sales Office and No.                          End. Serial No.    4
sc 4-14-99

102

## ADVERTISING OFFENSE COVERAGE ENDORSEMENT

1. <u>Coverage</u>

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "advertising injury" to which this endorsement applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in section 5 of this endorsement; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlement.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

   b. This endorsement applies to "advertising injury" caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

2. <u>Definitions</u>

   a. The following is added to the DEFINITIONS section:

      "Advertising injury" means injury arising out of paid announcements in the print or broadcast media resulting in one or more of the following offenses:

      (1) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      (2) Oral or written publication of material that violates a person's right of privacy;

      (3) Copying a person's or organization's advertising ideas or advertising style; or

      (4) Infringement of copyright, title or slogan;

   b. The definition of "occurrence" is extended to include the following subdivision (d):

      (d) with respect to "advertising injury," commission of one or a related series of offenses during the policy period.

3.    "Stop-Gap" Coverage for Renewal Insureds Only

    a.    Explanatory Note

        This insurance applies to "advertising injury" only if caused by one or a related series of offenses committed during the policy period. If your prior policy(ies) written by us included an Advertiser's Liability Endorsement, then they may have applied to such injury that occurred during the policy period, regardless of when the offense was committed. Therefore:

    b.    Limited "Stop-Gap" Coverage

        If "advertising injury" as defined by this endorsement (and not otherwise excluded) occurs during the policy period, but arises from one or a related series of offenses which were committed during the term of your prior policy written by us, this endorsement will apply to such injury; but: only if your prior policy does not apply.

4.    Exclusions

This insurance does not apply to "advertising injury" arising out of:

    (1)    Oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    (2)    Oral or written publication of material whose first publication took place before the beginning of the policy period, except as provided in Item 3. "Stop gap" coverage for renewal insureds only;

    (3)    An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting;

    (4)    Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    (5)    The failure of goods, products or services to conform with advertised quality or performance;

    (6)    The incorrect description or mistake in the advertised price of goods, products or services;

    (7)    An offense committed by any organization which is a Named Insured by operation of A. AMENDMENT - NAMED INSURED of the General Amendatory Endorsement, before you acquired or formed the organization;

    (8)    Patent infringement or securities fraud;

    (9)    Oral or written publication of material for which the insured has assumed Liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

    (10)    Injury arising out of an offense committed by or at the direction of the insured for the purpose of causing injury.

5. <u>Limits of Insurance</u>

    a. <u>Each Occurrence Limit.</u>

      This insurance is subject to the Each Occurrence Limit shown in the Declarations unless a separate Advertising Injury Each Occurrence Limit is shown below.

      $_____ Advertising Injury Each Occurrence Limit

      If a separate Advertising Injury Each Occurrence Limit is shown above, damages because of all injury to which this endorsement applies are subject solely to such separate limit, it being our intent that only one limit of insurance shall apply to all such damages arising out of any one "occurrence."

    b. <u>General Aggregate Limit</u>

      This insurance is subject to the General Aggregate Limit shown in the Declarations.

    c. <u>Explanatory Note On Limits Of Insurance:</u>

      For the purpose of determining the Limits Of Insurance, the following is added to Section III-Limits Of Insurance:

      All injury within subdivision b. and c. of the definition of "personal injury," and "advertising injury" arising out of a series of related acts or "covered offenses," including all repetitions or reproductions, will be considered as the result of one and the same "occurrence."

6. <u>Other Insurance</u>

    This insurance does not apply to any portion of a claim for damages for which the insured has available any other valid and collectible insurance, whether primary, excess, contingent, or any other basis, unless such other insurance was purchased by the insured specifically to apply in excess of this policy.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name

| | | |
|---|---|---|
| | ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | ☐ | LIBERTY INSURANCE CORPORATION |
| Effective Date      Expiration Date | ☐ | LM INSURANCE CORPORATION |
| | ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.    RG2–681–004130–039

*Barry S. Hilton*    *Edward F. Kelly*
       SECRETARY               PRESIDENT

Audit Basis
Issued to

                  Page 3 of 3
Countersigned by...............................................................................................................

                                          Authorized Representative

      Issued             Sales Office and No.          End. Serial No.   5

NRD 203 R4 RG 08 01 94

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


AMENDATORY ENDORSEMENT - ADVERTISING OFFENSE COVERAGE


This Amendatory Endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART


Endorsement NRD 203 R4 RG 08 01 94 - Advertising Offense Coverage Endorsement is amended as follows:


Item 4., Exclusions, exclusion (9) is deleted.


All other terms and conditions of this coverage remain unchanged.


This endorsement is executed by the company below designated by an entry in the box opposite its name

| | | |
|---|---|---|
| | ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | ☐ | LIBERTY INSURANCE CORPORATION |
| Effective Date | Expiration Date ☐ | LM INSURANCE CORPORATION |
| | ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |
| For attachment to Policy or Bond No.   RG2-681-004130-039 | | |


Audit Basis
Issued to


Countersigned by.....................................................................................................
                                                              Authorized Representative

Loc. 6

          Issued              Sales Office and No.              End. Serial No.    6
          sc 4-14-99

102

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDATORY ENDORSEMENT - NON-OWNED WATERCRAFT

This Amendatory Endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section I - Coverages, Coverage A. - Bodily Injury and Property Damage Liability, Item 2. - Exclusions, Exclusion g. is deleted and replaced by the following:

g.   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)   Less than 90 feet long; and

(b)   Not being used to carry persons or property for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract"' for the ownership, maintenance or use of aircraft or watercraft; or

(5)  "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section VII.).

All other terms and conditions of this coverage remain unchanged.

This endorsement is executed by the company below designated by an entry in the box opposite its name

| | |
|---|---|
| Premium | ☐ LIBERTY MUTUAL INSURANCE COMPANY |
| | ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | ☐ LIBERTY INSURANCE CORPORATION |
| Effective Date            Expiration Date | ☐ LM INSURANCE CORPORATION |
| | ☐ THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.   RG2-681-004130-039

Audit Basis
Issued to

Countersigned by...................................................................................................
                                                                          Authorized Representative

Loc. 6

| | | |
|---|---|---|
| Issued | Sales Office and No. | End. Serial No.    7 |
| sc 4-14-99 | | |

102

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE ENDORSEMENT - SHORT TERM PREMISES

This Coverage Endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  The following paragraph is add to Exclusion j. Damage to Property of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

    Paragraph **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.  A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE.**

2.  a.  The following replaces paragraph 6. of **SECTION III - LIMITS OF INSURANCE:**

    6.  Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under **Coverage A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

    b.  The Fire Damage Limit in the Declarations is changed to the Damage To Premises Rented To You Limit.

3.  The following replaces the first paragraph in 4.b. of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

    This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

    (1)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work;"

    (2)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (3)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

All other terms and conditions of this policy remain unchanged.

This endorsement is executed by the company below designated by an entry in the box opposite its name

| | | |
|---|---|---|
| | | LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | X | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | | LIBERTY INSURANCE CORPORATION |
| Effective Date          Expiration Date | | LM INSURANCE CORPORATION |
| | | THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.    RG2-681-004130-039

Audit Basis
Issued to

Page 2 of 2
Countersigned by...............................................................................................
                                                          Authorized Representative

Loc. 6

Issued                    Sales Office and No.              End. Serial No.      8
sc 4-14-99

102

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Amendatory Endorsement**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion b. of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I Coverages) is replaced by the following:

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

B. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B  is replaced by the following:

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

**6.** Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**7.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

This endorsement is executed by the company below designated by an entry in the box opposite its name

| | |
|---|---|
| | LIBERTY MUTUAL INSURANCE COMPANY |
| Premium | [X] LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | LIBERTY INSURANCE CORPORATION |
| Effective Date                    Expiration Date | LM INSURANCE CORPORATION |
| | THE FIRST LIBERTY INSURANCE CORPORATION |

For attachment to Policy or Bond No.   RG2–681–004130–039

*Barry S. Gilbes*   SECRETARY      *Edmund F Kelly*   PRESIDENT

Audit Basis
Issued to

Page 2 of 2
Countersigned by................................................................................................
Authorized Representative

NRD 215 RG 07 96
                Issued                    Sales Office and No.                    End. Serial No.   9

Loc. 6

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ASBESTOS EXCLUSION ENDORSEMENT

This insurance does not apply to "personal injury" or "property damage" caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    RG2-681-004130-039

Audit Basis

Issued To

| | LIBERTY MUTUAL INSURANCE COMPANY |
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Gilson*                    *Edmund F. Kelly*
SECRETARY                    PRESIDENT

Countersigned by .........................................................................

AUTHORIZED Representative

Issued                    Sales Office and No.                    End. Serial No.    10

NRD 442 (01 86)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE - EMPLOYEE BENEFITS LIABILITY INSURANCE
### (Claims Made Coverage)

This Coverage Endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

THIS ENDORSEMENT PROVIDES CLAIMS MADE AND REPORTED COVERAGE.

Various provisions in this endorsement restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

In consideration of the payment of the premium, and subject to all of the provisions of the policy not expressly modified in this endorsement, we agree with you as follows:

1. **COVERAGE - EMPLOYEE BENEFITS LIABILITY**

   We will pay those sums which the "insured" becomes legally obligated to pay as damages because of injury to the rights or interests of employees or their dependents or beneficiaries in "employee benefits programs" to which this insurance applies caused by any improper advice, error or omission in the "administration" of such programs. We will have the right and duty to defend any "suit" seeking such damages. We may investigate and settle any "claim" or "suit" at our discretion. We will not be obligated to pay any "claim" or judgments or to defend any "suit" after the applicable limit of insurance has been exhausted by payment of judgments or settlements.

2. **EXCLUSIONS**

   This coverage does not apply to:

   a. Any "claim" based upon unlawful discrimination;

   b. Any "claim" with respect to which insurance is afforded in whole or in part under any other coverage afforded by this policy or any endorsement to this policy;

   c. Any "claim" based upon your failure (whether in the capacity of self-insurer or otherwise) or the failure of any insurer to pay or provide the benefits allegedly due under any contract relating to "employee benefits programs"; or

   d. Any "claim" based upon the failure of stock or any compensation, investment or savings program to produce the financial gain represented.

3. **COVERAGE PERIOD**

   This insurance applies only to "claims" first made against the "insured" on or after the effective date of this endorsement and before the end of the endorsement period that arise out of injury to the rights or interest of an employee or the employee's dependents or beneficiaries in "employee benefits programs" after the retroactive date shown in the schedule and before the end of the policy period.

All "claims" for damages arising out of any one or a related series of errors, omissions or improper advice to which this insurance applies will be deemed to have been made at the time the first of those "claims" is made against any "insured" in accordance with paragraph 2. above.

4. **LIMITS OF INSURANCE**

    a. The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of:

        (1) Insureds;

        (2) "Claims" made or "suits" brought; or

        (3) Persons or organizations making "claims" or bringing "suits".

    b. The Aggregate Limit is the most we will pay for the sum of all damages arising out of all "claims" made during the endorsement period.

    c. Subject to b. above, the Each Claim Limit is the most we will pay for all damages arising out of any one "claim".

    d. If a Deductible Each Claim is shown in the Schedule of this endorsement, you are obligated to pay that amount of damages for each "claim" to which this insurance applies. We are obligated to pay only that portion of the total of all damages (subject to the Limits of Insurance) which exceeds that deductible amount. We may investigate and settle any "claim" at our discretion. However, regardless of the amount of any "claim", you must:

        (1) notify us promptly as required by Condition 2. of the policy ("Duties in the Event of Occurrence, Claim or Suit"); and

        (2) reimburse us promptly for all amounts we pay within the deductible amount.

    Both your Aggregate Limit and your Each Claim Limit of Insurance are reduced by the amount of damages paid or payable by you up to the deductible amount shown in the Schedule of this endorsement.

5. **PERSONS INSURED**

The unqualified word "insured" includes you and also includes:

    a. All of your elected and appointed general, division and department officers, directors and stockholders while acting within the scope of their duties as such; and

    b. Any of your employees who are authorized to act in the "administration" of your "employee benefits programs".

6. **DEFINITIONS**

    a. "Administration" means:

        (1) the determination of the eligibility of employees to participate in "employee benefits programs";

    (2)  the enrollment of employees in those programs;

    (3)  the keeping of records pertaining to those programs;

    (4)  the interpreting of the provisions of those programs; and

    (5)  the giving of advice or counsel to employees or their dependents or beneficiaries as to their rights or interest in those programs.

b.  "Employee benefits programs" means those:

    (1)  group life insurance;

    (2)  group accident and health insurance;

    (3)  dental insurance;

    (4)  pension;

    (5)  employee stock subscription;

    (6)  profit sharing;

    (7)  disability;

    (8)  retirement;

    (9)  severance;

    (10) workers compensation;

    (11) unemployment insurance;

    (12) social security; or

similar programs described in the Schedule of this endorsement offered to employees and their dependents or beneficiaries in the United States of America, its territories and possessions, Puerto Rico and Canada.

c.  "Claim" includes all claims for damages to the same person or persons arising out of any one or a related series of errors, omissions, or improper advice.

## 7. EXTENDED REPORTING PERIODS

a.  We will provide one or more Extended Reporting Periods, as described below, if:

    (1)  This Coverage Part is canceled or not renewed; or

    (2)  We renew or replace this Coverage Part with insurance that:

     (a) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

     (b) Does not apply to improper advice, error or omission in the "administration" of "employee benefits programs" on a claims-made basis.

b.   Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for:

     Injury to the rights or interest of an employee or the employee's dependents or beneficiaries in "employee benefits programs" that occurs before the end of the policy period but not before the retroactive date, if any, shown in the schedule.

Once in effect, Extended Reporting Periods may not be canceled.

c.   A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

     (1) Five years with respect to "claims" because of injury to the rights or interest of an employee or the employee's dependents or beneficiaries in "employee benefits programs" arising out of an incident reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);

     (2) Sixty days with respect to "claims" arising from incidents or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

d.   The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

e.   A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

     (1) The exposures insured;

     (2) Previous types and amounts of insurance;

(3) Limits of Insurance available under this Coverage Part for future payments of damages; and

(4) Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage Part.

*This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.*

f.   If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period.

The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Schedule in effect at the end of the policy period for such of the following limits of insurance for which a dollar amount has been entered:

Aggregate Limit
Each Claim Limit

8.   **SCHEDULE**

a.   LIMITS OF INSURANCE

AGGREGATE LIMIT                 $ 3,000,000

EACH CLAIM LIMIT                 $ 3,000,000

b.   DEDUCTIBLE EACH CLAIM          $      1,000

c.   LIST OF "EMPLOYEE BENEFITS PROGRAMS"

ALL EMPLOYEE BENEFITS PROGRAMS

d.   PREMIUM

1.   Number of Employees

2.   Rate per Employee

3.   Advance Premium          $

For Attachment to
Policy: RG2-681-004130-039          Page 5 of 6          End. 11

e.  RETROACTIVE DATE          2/1/99

All other terms and conditions of this policy remain unchanged.

This endorsement is executed by the company below designated by an entry in the box opposite its name

|  | |
|---|---|
| | LIBERTY MUTUAL INSURANCE COMPANY |
| X | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | LIBERTY INSURANCE CORPORATION |
| | LM INSURANCE CORPORATION |
| | THE FIRST LIBERTY INSURANCE CORPORATION |

Premium

Effective Date                          Expiration Date

For attachment to Policy or Bond No.    RG2-681-004130-039

Audit Basis
Issued to

Page 6 of 6
Countersigned by.....................................................................
                                        Authorized Representative

Loc. 6

        Issued                Sales Office and No.            End. Serial No.   11
        sc 4-14-99

102

## AMENDMENT - DEDUCTIBLE LIABILITY INSURANCE

| Coverage | Deductible Amount | Basis |
|---|---|---|
| Personal Injury Liability and Property Damage Liability Combined | $   250,000 | Each Occurrence |
| Employee Benefits Liability | $      1,000 | Each Claim |

1. **How Deductible Applies**

   a. You are obligated to pay the first $ 250,000 of the total of (1) all damages, including amounts paid in settlement of a claim or "suit," plus (2) all "allocated loss adjustment expense," because of all "personal injury" and "property damage" as the result of any one "occurrence." We are obligated to pay only that portion of the total of such damages (subject to the policy's Limits of Insurance) plus "allocated loss adjustment expense" which exceeds such deductible amount.

   b. You are obligated to pay the first $ 1,000 of the total of (1) all damages, including amounts paid in settlement of a claim or "suit," plus (2) all "allocated loss adjustment expense," because of injury to the rights or interests of employees or their beneficiaries in "employee benefits programs" to which this insurance applies and which is caused by any improper advice, error or omission in the "administration" of such programs. We are obligated to pay only that portion of the total of such damages (subject to the policy's Limits of Insurance) plus "allocated loss adjustment expense" which exceeds such deductible amount.

2. **Effect of Deductible on Limits of Insurance**

   Your Each Occurrence limit, your Each Claim limit and your applicable Aggregate limit of insurance is reduced by the amount of damages, as referred to in paragraphs 1.a. and 1.b. above, paid or payable by you up to the deductible amount shown above.

   For purposes of this paragraph, all damages are deemed to have been paid or to be payable before "allocated loss adjustment expense" has been paid or is payable.

3. **Definition**

   "Allocated loss adjustment expense" includes, but is not limited to:

   1. Attorneys fees for claims in suit; and

   2. Court costs and other items of expense such as:

      a) Costs for medical, expert and other witnesses at trials or hearings, stenographic costs and costs of copies of documents and transcripts; and

      b) medical, expert, or consultant fees and expenses relating to the defense of any claim or suit.

4. <u>Deductible Advances</u>

We have the right but not the duty to advance any part or all of the deductible amount.  If we exercise this right, you must promptly reimburse us for any such amounts advanced.  All such amounts advanced shall remain your sole and exclusive liability. Exercise of our right to advance such amounts shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.

5. <u>Subrogation</u>

In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the deductible amount; only then shall the remainder of such recovery, if any, be applied to reduce the deductible amount payable or paid by you.

6. <u>Named Insured's Duties</u>

The first Named Insured shown in the Declarations is responsible for the payment of all deductible amounts.

7. <u>Other Rights and Duties</u>

All other terms of this policy, including those which govern (a) our right and duty to defend claims or "suits" and (b) the insured's duties in the event of an "occurrence," apply irrespective of application of the deductible amount.

This endorsement is executed by the company below designated by an entry in the box opposite its name

Premium

Effective Date                                    Expiration Date

For attachment to Policy or Bond No.  RG2-681-004130-039

| | |
|---|---|
| | LIBERTY MUTUAL INSURANCE COMPANY |
| X | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| | LIBERTY INSURANCE CORPORATION |
| | LM INSURANCE CORPORATION |
| | THE FIRST LIBERTY INSURANCE CORPORATION |

*Gary S. Gilson*          *Edmund F Kelly*
SECRETARY                              PRESIDENT

Audit Basis
Issued to

Page 2 of 2
Countersigned by_____
                                              Authorized Representative

NRD 205 R2 RG 8-1-90
        Issued              Sales Office and No.          End. Serial No.   12

<u>Loc</u>. 6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATIONS
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Designated Location(s): |
| --- |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

     Copyright, Insurance Services Office, Inc., 1996

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE **A** (SECTION I), and for all medical expenses caused by accidents under COVERAGE **C** (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under COVERAGE **A** for damages or under COVERAGE **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                Expiration Date

For attachment to Policy or Bond No.  RG2–681–004130–039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Gary S. Wilson*                    *Edmund F. Kelly*
SECRETARY                              PRESIDENT

Countersigned by ......................................................................................
                                                              Authorized Representative

Issued          Sales Office and No.          End. Serial No.  13

## COMPOSITE RATE ENDORSEMENT

This premium for this policy shall be computed on the following basis:

Per $1,000 of sales
The word "sales" means the gross amount of money charged by "you" or by others trading under your name for all goods or products sold or operations performed during the policy period and includes taxes, other than taxes which "you" or such others collect as a separate item and remit directly to a governmental division.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.   RG2−681−004130−039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*          *Edmund F. Kelly*
        SECRETARY                    PRESIDENT

Countersigned by ...............................................................................

                        Authorized Representative

        Issued          Sales Office and No.          End. Serial No.    14

LG 6032
(9-87)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED POLLUTION LIABILITY
# EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

ALL RETAIL LOCATIONS OPERATED BY THE NAMED INSURED

Limited Pollution Liability Extension Aggregate Limit                   $ __1,500,000__

Premium $ __INCLUDED__

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

I. Exclusion **f.** under COVERAGE A (Section I) is replaced by the following:

   **f. Pollution**

     (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

       **(a)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

       **(b)** Which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

       **(c)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;

       **(d)** At or from a storage tank or other container, ducts or piping which is below or partially below the surface of the ground or water or which, at any time, has been buried under the surface of the ground or water and then subsequently exposed by erosion, excavation or any other means if the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants arises at or from any premises, site or location:

         **(i)** Which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

         **(ii)** Which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

Subparagraph **(d)** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

          Copyright, Insurance Services Office, Inc., 1994           ☐

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order issued or made pursuant to any environmental protection or environmental liability statutes or regulations that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

II. With respect to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

A. The "Each Occurrence Limit" shown in the Declarations does not apply.

B. Paragraph 7. of LIMITS OF INSURANCE (Section III) does not apply.

C. Paragraph 1. of LIMITS OF INSURANCE (Section III) is replaced by the following:

1. The Limits of Insurance shown in the Declarations, or in the Schedule of this endorsement, and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits."

D. The following are added to LIMITS OF INSURANCE (Section III):

8. Subject to 2. or 3. above, whichever applies, the Limited Pollution Liability Extension Aggregate Limit shown in the Schedule is the most we will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C

because of "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

9. Subject to 8. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date      Expiration Date

For attachment to Policy or Bond No.   RG2–681–004130–039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

SECRETARY      PRESIDENT

Countersigned by ......................................................................................

Authorized Representative

Issued      Sales Office and No.      End. Serial No. 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

---

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.    RG2−681−004130−039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*          *Edmund F. Kelly*
SECRETARY                  PRESIDENT

Countersigned by .........................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.    16

POLICY NUMBER:                                                    COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization (Vendor):**     Any Vendor or Jobber for which such Coverage
is required by contract with the Named Insured.

**Your Products:**       All Products of the Named Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

CG 20 15 11 88              Copyright, Insurance Services Office, Inc., 1986, 1988              Page 1 of 2    □

COMMERCIAL GENERAL LIABILITY

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date            Expiration Date

For attachment to Policy or Bond No.    RG2-681-004130-039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

SECRETARY            PRESIDENT

Countersigned by ........................................................................................

Authorized Representative

Issued            Sales Office and No.            End. Serial No.    17

CG 20 15 11 88            Copyright, Insurance Services Office, Inc., 1986, 1988            Page 2 of 2

# SPECIAL PREMIUM DISCOUNT ENDORSEMENT

It is agreed that the Premium Discount Percentages applicable to the Total Standard Premium shall be based upon the estimated annual advance premium and shall not be subject to adjustment on audit as respects the following elements of the Total Standard Premium.

It is further agreed that this Endorsement is not applicable in:

    Texas

| PREMIUM | NORTH CAROLINA | ALL OTHER STATES |
|---|---|---|
| GENERAL LIABILITY AND AUTOMOBILE GARAGE LIABILITY | | 11.5% |
| TAXICABS, PUBLIC AND PRIVATE LIVERY BUS AND LONG HAUL TRUCKMEN | | |
| ALL OTHER AUTOMOBILE LIABILITY | | |

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                  Expiration Date

For attachment to Policy or Bond No. RG2−681−004130−039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Davy S. Hilson*    *Edmund F. Kelly*
     SECRETARY                  PRESIDENT

2272 R3
5-1-77

Countersigned by ................................................................

                                      Authorized Representative

        Issued           Sales Office and No.       End. Serial No.   18

Loc. 6

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date          Expiration Date

For attachment to Policy or Bond No. **RG2—681—004130—039**

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gibson*     *Edmund F Kelly*
SECRETARY              PRESIDENT

Countersigned by .............................................................................

Authorized Representative

Issued         Sales Office and No.        End. Serial No.   **19**

CG 21 47 10 93       Copyright, Insurance Services Office, Inc., 1992     ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### NOTICE OF CANCELLATION

We will not cancel this policy or make changes that reduce the insurance afforded by this policy until written notice of cancellation or reduction has been mailed or delivered to those scheduled below at least

    a) 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or

    b)  __90__  days before the effective date of the cancellation or reduction if we cancel or reduce the insurance afforded by this policy for any other reason.

| NAME | ADDRESS |
|---|---|
| Luxottica U.S. Holdings Corporation | ATTN:  James S. Bettner, Mgr. of Insurance 8650 Governor's Hill Drive Cincinnati, OH  45242 |

This endorsement is executed by the company designated below.

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.    RG2–681–004130–039

Audit Basis

Issued To

*Dary S. Gilson* SECRETARY          *Edmund F Kelly* PRESIDENT

Countersigned by ................................................................

Authorized Representative

| Form # / Term I.D. | | Issued | | LOC-6 | | | | |

| Sales Office | Code | Sales Representative | Code | N/R | 1st Year | End Serial No. |
|---|---|---|---|---|---|---|
| | | | | | | 20 |

2319
(9-1-87)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF POLLUTION EXCLUSION - EXCEPTION FOR BUILDING HEATING EQUIPMENT

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

Subparagraph **(1)(a)** of the **Pollution** exclusion under Paragraph **2., Exclusions** of Bodily Injury And Property Damage Liability Coverage (**Section I - Coverages**) is replaced by the following:

This insurance does not apply to:

**POLLUTION**

  **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

    However, Subparagraph **(a)** does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date               Expiration Date

For attachment to Policy or Bond No.    RG2-681-004130-039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*       *Edmund F Kelly*
      SECRETARY              PRESIDENT

Countersigned by ..............................................................

**Authorized Representative**

Issued           Sales Office and No.        End. Serial No.  **21**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT - AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Who Is An Insured (Section II)** is amended to include as an insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person or organization. A person's or organization's status as an insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;

2. To "bodily injury" or "property damage" arising out of the sole negligence of such person or organization.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date          Expiration Date

For attachment to Policy or Bond No.   RG2-681-004130-039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Hilton*          *Edmund F. Kelly*
SECRETARY                  PRESIDENT

Countersigned by ...........................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.     22

CG 20 34 03 97          Copyright, Insurance Services Office, Inc., 1996

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**     Raymond D. Nasher   d/b/a North Park Center
1030 North Park Center   Dallas, TX
With Respect to:     Lenscrafters, North Park Center, Dallas, TX

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date

For attachment to Policy or Bond No.   RG2-681-004130-039

Audit Basis

Issued To

- ☐ LIBERTY MUTUAL INSURANCE COMPANY
- ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
- ☐ LIBERTY INSURANCE CORPORATION
- ☐ LM INSURANCE CORPORATION
- ☐ THE FIRST LIBERTY INSURANCE CORPORATION

Expiration Date

*Barry S. Gilson*            *Edward F. Kelly*
SECRETARY                    PRESIDENT

Countersigned by ...............................................................................
AUTHORIZED REPRESENTATIVE

Issued          Sales Office and No.          End. Serial No.   23

CG 24 04 10 93          Copyright, Insurance Services Office, Inc., 1992          ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART*
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

* This endorsement does not apply to coverage provided for employee dishonesty (Coverage Form A) or public employee dishonesty (Coverage Forms O and P).

A. With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the CANCELLATION Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy only for one or more of the following reasons, except as provided in paragraph 6. below.

   a. Nonpayment of premium;

   b. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   c. Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

   d. The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   e. Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

   f. Failure of an insured to correct material violations of safety codes; or

   g. A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

3. We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

4. We will mail the notice of cancellation at least:

   a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation, if we cancel for a reason stated in 2.b. through 2.g. above.

5. a. The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   b. The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

Copyright, Insurance Services Office, Inc., 1988, 1989
Copyright, ISO Commercial Risk Services, Inc., 1988, 1989

6. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

NONRENEWAL

1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

C. 1. Paragraph A.2.a. of the BUSINESSOWNERS Common Policy Conditions is deleted.

2. Paragraph E.2. of the Cancellation Common Policy Condition in the STANDARD PROPERTY POLICY is deleted. Paragraph E.2. is replaced by the following (unless item A. of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

b. 30 days before the effective date, if we cancel for any other reason.

---

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.   RG2-681-004130-039

Audit Basis

Issued To

This endorsement is executed by the company designated below.

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Hilton*                    *Edmund F. Kelly*
SECRETARY                           PRESIDENT

Countersigned by ...............................................................................

                                    Authorized Representative

Form # / Term I.D.          Issued              LOC-6

| Sales Office | Code | Sales Representative | Code | N/R | 1st Year | End Serial No. |
|---|---|---|---|---|---|---|
| | | | | | | 24 |

IL 02 44 06 89          Copyright, Insurance Services Office, Inc., 1988, 1989          Page 2 of 2   ☐
                        Copyright, ISO Commercial Risk Services, Inc., 1988, 1989

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VOLUNTEER WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, none of these volunteer worker(s) are insured for:

1. "Bodily injury" or "personal injury":

   a. To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to your other volunteer worker(s) or to your "employees" arising out of and in the course of their duties for you;

   b. To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above;

   c. For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 1.a. or b. above; or

   d. Arising out of his or her providing or failing to provide professional health care services.

2. "Property damage" to property:

   a. Owned, occupied, or used by,

   b. Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your other volunteer workers, your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date                    Expiration Date

For attachment to Policy or Bond No.  RG2−681−004130−039

Audit Basis

Issued To

☐ LIBERTY MUTUAL INSURANCE COMPANY
☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY
☐ LIBERTY INSURANCE CORPORATION
☐ LM INSURANCE CORPORATION
☐ THE FIRST LIBERTY INSURANCE CORPORATION

*Barry S. Gilson*          *Edmund F. Kelly*
SECRETARY                  PRESIDENT

Countersigned by ..............................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No. 25

          Copyright, Insurance Services Office, Inc., 1994          ☐

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**  Any person or organization for whom the Named Insured has agreed in writing a waiver of subrogation.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

This endorsement is executed by the company below designated by an entry in the box opposite its name.

Premium $

Effective Date  12-30-99    Expiration Date  2-1-00

For attachment to Policy or Bond No.  RG2-681-004130-039

Audit Basis

Issued To  Luxottica U.S. Holdings Corporation

| | |
|---|---|
| ☐ | LIBERTY MUTUAL INSURANCE COMPANY |
| ☒ | LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| ☐ | LIBERTY INSURANCE CORPORATION |
| ☐ | LM INSURANCE CORPORATION |
| ☐ | THE FIRST LIBERTY INSURANCE CORPORATION |

*Barry S. Hilton*   *Edmund F Kelly*
SECRETARY                    PRESIDENT

Countersigned by ........................ *[signature]* ........................
                                    **Authorized Representative**

Issued             Sales Office and No.         End. Serial No.  28
bl 1/10/00         Cincinnati - 877

CG 24 04 10 93        Copyright, Insurance Services Office, Inc., 1992        ☐