IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENSCRAFTERS, INC., et al., | No. C 04-1001 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket Nos. 103, 109, 110, 123] |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, et al., | |
| Defendants. | |

This matter comes before the Court on Defendant and Cross-Claimant Executive Risk Specialty Insurance Company's ("ERSIC") Motion for Summary Judgment against Defendant and Cross-Claimant Liberty Mutual Fire Insurance Company ("Liberty") [Docket No. 103]; Liberty's Motion for Partial Summary Judgment against ERSIC [Docket No. 110]; Liberty's Request for Judicial Notice [Docket No. 109]; and Liberty's Objection to Evidence [Docket No. 123]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS ERSIC's Motion for Summary Judgment [Docket No. 103]; DENIES Liberty's Motion for Partial Summary Judgment [Docket No. 110]; GRANTS Liberty's Request for Judicial Notice [Docket No. 109]; and OVERRULES Liberty's Objection to Evidence [Docket No. 123].

## BACKGROUND

**A.   The Underlying *Snow* Action**

On March 12, 2002, a lawsuit captioned *Snow, et al. v. LensCrafters, Inc., et al.*, No. CGC-02-405544 (San Francisco Super Ct.) (the "*Snow*" action) was brought on behalf of a putative class of Eyexam/EyeMed parties from March 15, 1998 to the present. *See* Liberty MSJ at Ex. I. Named as

defendants were LensCrafters, Inc., Luxottica Group S.p.A., Luxottica USA, Luxottica U.S. Holdings, Luxottica Sun Corp., Eye Med, Inc. and Luxottica Retail Group. *Id.* A Second Amended Complaint ("SAC") was filed on April 15, 2003 and, thereafter, some defendants were dismissed from the lawsuit. *Id.* at Ex. J. The remaining defendants are LensCrafters, Inc., EyeMed, Inc. and EyeMed Vision Care, LLC. *Id.*

The *Snow* action asserts causes of action for deceptive advertising practices, unlawful business practices, violations of the consumer legal remedies act, and violations of the California Confidential Medical Information Act. *Id.* In particular, the plaintiffs in *Snow* allege, *inter alia*, that the defendants violated patient privacy rights by sharing confidential patient information among themselves, without authorization, for marketing and other purposes. *Id.*

Currently, the *Snow* Action is stayed pending the determination of *People v. Cole*, Case No. S121724, which is before the California Supreme Court.

**B.   The Liberty Policies**

Between 1998 and 2004, Liberty Mutual Fire Insurance Company ("Liberty") issued to Luxottica a series of Commercial General Liability Policies (collectively referred to herein as the "Liberty Policies"), including:

(1) Policy No. TB2-681-004130-038, for the February 1, 1998 to February 1, 1999 Policy Period;

(2) Policy No. RG2-681-004130-039, for the February 1, 1999 to February 1, 2000 Policy Period;

(3) Policy No. RG2-681-004130-030, for the February 1, 2000 to February 1, 2001 Policy Period;

(4) Policy No. RG2-681-004130-031, for the February 1, 2001 to February 1, 2002 Policy Period;

(5) Policy No. RG2-681-004130-032, for the February 1, 2002 to February 1, 2003 Policy Period; and

(6) Policy No. RG2-681-004130-033, for the February 1, 2003 to February 1, 2004 Policy Period.

*See* Liberty MSJ at Exs. A-F. Each of the Liberty Policies contains a $3 million limit of liability per

1  occurrence and a $6 million aggregate limit of liability. *Id.* Insureds under the Liberty Policies include
2  the following entities that are or were named as defendants in the *Snow* action: LensCrafters, Inc.,
3  Luxottica Group, S.p.A., EyeMed, Inc., United States Shoe Corporation, and EyeMed Vision Care,
4  LLC. *Id.* The Liberty Policies provide that amounts incurred in defending the insureds is in addition
5  to the Policies' limit of liability, and so does not apply to deplete or exhaust the Policies' limits. *See*
6  Liberty MSJ at Ex. A (LC0013); Ex. B (LC00072-73); Ex. C (LC0098-99); Ex. D (LC0156-57); Ex.
7  E (LC0213-14); Ex. F (LC0282-83). Accordingly, Liberty's duty to defend potentially covered suits
8  does not end until all applicable limits of liability have been exhausted through the payment of damages
9  on behalf of the insureds. *See* Liberty MSJ at Ex. A (LC0015, LC0023); Ex. B (LC0040, LC0064); Ex.
10 C (LC0090, LC0115, LC0143); Ex. D (LC0148, LC0173, LC0200); Ex. E (LC0206, LC0249, LC0251);
11 Ex. F (LC0257, LC0301).

Relevant to the instant litigation is the fact that the Liberty Policies contain an "other insurance" clause, which is stated in the Liberty Policies as follows:

> This insurance is excess over:
>
> (1) Any other insurance, whether primary, excess, contingent or on any other basis:
>
>> (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
>>
>> (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
>>
>> (c) That is insurance purchased by you to cover your liability as tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
>>
>> (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of SECTION 1 - Coverage A - Bodily Injury and Property Damage Liability.
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of any endorsement.

*See, e.g.,* Liberty MSJ at Ex. C (LC00104) (emphasis added).

3

C.   **The ERSIC Policy**

Executive Risk Specialty Insurance Company ("ERSIC") issued Managed Care Organization Errors and Omissions Liability Policy No. 8167-2076 to EyeMed Vision Care, LLC for the November 12, 2001 to November 12, 2002 Policy Period (the "ERSIC Policy"). Liberty MSJ at Ex. H (ER00039). The ERSIC Policy contains a $3 million limit of liability per claim, and in the aggregate, inclusive of defense expenses and subject to a $100,000 deductible. *Id.* (ER00039, ER00072). EyeMed Vision Care, LLC and EyeMed Inc. are "Insured Entiti[es]" under the ERSIC Policy. LensCrafters, Inc., Luxottica Group, S.p.A., and United States Shoe Corporation are "Additional Insureds." *Id.* at Ex. H (ER00039, ER00046, ER00072).

The "insuring agreement" of the ERSIC Policies provides that ERSIC "will pay on behalf of any Insured any Loss which the Insured is legally obligated to pay as a result of any Claim that is made against the Insured during the Policy Period [i.e., November 12, 2001 to November 12, 2002] . . . ." Id. at Ex. H (ER00064). The term "Loss" is defined as: "Defense Expenses and any monetary amount which an Insured is legally obligated to pay as a result of a Claim[.]" *Id.* at Ex. H (ER00066.)

The ERSIC Policy contains an "other insurance" clause that is found at Section IV(G)(1) of the Policy, as amended by Endorsement No. 11. Endorsement No. 11 provides in relevant part that:

> This Policy shall be excess of and shall not contribute with:
>
> (a) Commercial General Liability Insurance Liability Insurance Policy No. RG2-681-004130-031 issued by Liberty Mutual or any renewal or replacement thereof, but only with respect to **Managed Care Activities;**
>
> (b) any other existing insurance or self-insurance, unless such other insurance or self-insurance is specifically stated to be in excess of this Policy;
>
> (c) any indemnification to which an Insured is entitled from any entity other than the **Insured Entity.**

*Id.* at Ex. H (ER00055-56) (emphasis in original).

"Managed Care Activity" is defined in the ERSIC Policy as:

> [A]ny of the following services or activities: **Provider Selection; Utilization Review**, advertising, marketing, selling, or enrollment for health care or

4

> worker's compensation plans; **Claim Services**; establishing health care provider networks; reviewing the quality of **Medical Services** or providing quality assurance; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines; practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration of health care or workers' compensation plans.

See id. at Ex. H (ER00067) (emphasis in original).

"Medical Information Protection" is defined in the ERSIC Policy as "maintaining the confidentiality of information regarding Medical Services and limiting the release or use of such information in conformance with requirements of law." Id.

### D.   The Instant Controversy

The present insurance coverage litigation began when LensCrafters, Inc., EyeExam of California, Inc., and EyeMed Visioncare, LLC (collectively, "Plaintiffs") filed a complaint on March 11, 2004 against Liberty. On July 26, 2004, Plaintiffs amended the complaint to add ERSIC as a defendant.

Liberty answered the amended complaint on August 24, 2004 and also brought a cross-claim against ERSIC in which it alleged, in part, that the Liberty Policies are excess to the ERSIC Policy and therefore that ERSIC should (1) reimburse Liberty for the defense costs it has already paid, and (2) assume the defense of the *Snow* Action.

ERSIC answered the complaint on October 1, 2004. ERSIC also filed a cross-complaint against Liberty, which alleged, in part, that only Liberty should defend the *Snow* Action, or, alternatively, that the ERSIC Policy is excess to the Liberty Policies and therefore that ERSIC does not have to pay defense costs until the exhaustion of the Liberty Policies' available limits of liability.

On November 30, 2004, Plaintiffs filed a motion for partial summary judgment in which they argued that both Liberty and ERSIC have a duty to defend it in the *Snow* Action. Liberty and ERSIC both filed motions for summary judgment against Plaintiffs arguing that each insurer, respectively, did not have a duty to defend Plaintiffs in the *Snow* Action.

On the same date, Liberty and ERSIC both filed cross-motions for summary judgment against

each other. Each insurer argued that the other insurer's duty to defend was triggered while their own duty to defend was not. Each insurer also argued that to the extent its own duty to defend was triggered, its own policy was excess to the other insurer's policy, and thus its duty to defend would not arise until the other insurer's coverage was exhausted.

On January 20, 2005, this Court entered an Order on Plaintiffs' motion for summary judgment and found that the six Liberty Policies were triggered by the allegations in the *Snow* action. The Court also found that the ERISC Policy was likewise triggered by the *Snow* lawsuit. Accordingly, the Court found that both insurers had duties to defend Plaintiffs in the *Snow* action. The Court, however, denied without prejudice ERSIC and Liberty's cross-motions for summary judgment on the issue of whether either insurer was the excess insurer.

On May 3, 2005, ERSIC filed a motion for summary judgment seeking a declaration that ERSIC is the excess insurer. Alternatively, ERSIC sought an equitable allocation of defense expenses between ERSIC and Liberty if found to be co-primary insurers. On June 6, 2005, the Court denied the motion without prejudice. ERSIC was granted leave to re-file its motion for summary judgment after the close of discovery.

On August 12, 2005, ERSIC filed the instant Motion for Summary Judgment. Also on August 12, 2005, Liberty filed its own Motion for Partial Summary Judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

To withstand a motion for summary judgment, the non-movant must show that there are genuine factual issues which can only be resolved by the trier of fact. *Anderson*, 477 U.S. at 250. The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence). Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. *Id.* at 1029. "The district court need not examine the entire file for evidence establishing a genuine issue of fact." *Id.* at 1031.

When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

## ANALYSIS

A.   **Liberty and ERSIC's Cross-Motions for Summary Judgment**

In Liberty's Motion for Partial Summary Judgment, Liberty asks the Court to determine that the

six Liberty Policies are excess to the ERSIC Policy.[1] In essence, Liberty argues that the Liberty Policies provide only general coverage while the ERSIC Policy is "specific." Thus, according to Liberty, the Liberty Policies are "excess," and the ERSIC Policy is the primary policy. In ERSIC's Motion for Summary Judgment, ERSIC asks the Court to determine that the ERSIC Policy is excess to the six Liberty Policies on the grounds that the ERSIC Policy specifically mentions that, with respect to Managed Care Activities, the ERSIC Policy is excess to Liberty's Commercial General Liability Insurance Policy No. RG2-681-004130-031 or any renewal or replacement thereof.

"Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.App.3d 593, 598 (1981). "'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id.* The identification of the underlying primary insurance may be as to (1) a particular policy or policies that are specifically described; or (2) underlying coverage provided by a particular and specifically described insurer. *Century Surety Co. v. United Pacific Ins. Co.*, 109 Cal.App.4th 1246, 1255 (2003). In other words, "excess insurance" is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage. *Id.* It is not uncommon to have several layers of secondary insurance. *Olympic Ins. Co.*, 126 Cal.App.3d at 598. When secondary insurance is written to be excess to identified policies, it is said to be "specific excess." *Id.*

Here, in support of its argument that the Liberty Policies are the "excess" policies and that the ERSIC Policy is not an excess policy, Liberty advances three principal theories: (1) that the Liberty

---

[1] As both parties concede, since there is no conflict between the laws of Ohio and California on this issue, both Ohio and California law apply. Further, to the extent that Liberty is requesting judicial notice of Liberty and ERSIC's prior motions for summary judgment to establish the fact that the parties have previously conceded the applicability of Ohio and California law, Liberty's Request for Judicial Notice is GRANTED. The documents subject to Liberty's request are part of the public record in this matter and therefore judicial notice is proper.

8

Policies are excess because ERSIC's Policy provides "specific," rather than general, coverage for all of the claims asserted in the Snow Action; (2) that the Liberty Policies contain an "other insurance" provision that makes the Liberty Policies excess over the ERSIC Policy; and (3) that the ERSIC Policy is not an excess policy because its "other insurance" endorsement applies only to "Managed Care Activities" and not to "Medical Information Protection" violations. ERSIC, in turn, argues: (1) that the Court must follow the express language of the insurance contracts to determine which is excess and may not rely on Liberty's contention that the Liberty Policies are more "general" than the ERSIC Policy; (2) that Liberty's argument that the Liberty Policies are more "general" is irrelevant and is a legally unsupportable conclusion; (3) that the ERSIC Policy clearly states that it is excess to the Liberty Policies because the risks covered by the ERSIC Policy constitute "Managed Care Activities" regardless of whether they also constitute "Medical Information Protection" violations; (4) that the Liberty Policies' "other insurance clause" is inapplicable because the ERSIC Policy is not a "primary" insurance policy; and (5) that even if the ERSIC Policy is not excess to the Liberty Policies, then the Liberty Policies and the ERSIC Policy are co-primaries.

ERSIC is correct that Liberty's first argument, that the Liberty Policies are the excess policies because they are more "general," is not supported by the undisputed facts or any relevant authorities. First and foremost, Liberty's argument depends entirely on a finding that the ERSIC Policy covers all of the causes of action in the *Snow* action, whereas the Liberty Policies only cover the fifth cause of action in *Snow*. The determination that this Court made in its January 20, 2005 Order, however, was that *both* Liberty and ERSIC had a duty to defend Plaintiffs in the *Snow* action because *both* insurer's obligations were triggered by the allegations asserted in *Snow*'s fifth cause of action. Contrary to Liberty's current belief, the Court did not determine – and could not, because the issue was not before it – that the ERSIC Policy covers the four other causes of action in *Snow*. Liberty's assertion that the "ERSIC Policy has the exclusive obligation to defend the first four causes of action [in *Snow*]" is therefore *its own legal conclusion* and is not an undisputed material fact. As such, it is not a basis for summary judgment in Liberty's favor.

9

1   Second, Liberty's assertion that the Liberty Policies are "general" merely because they "afford[]
2   liability coverage for a general category of 'personal injury'" and because the Liberty Policies "do[] not
3   mention medical information at all" flatly contradicts this Court's January 20, 2005 ruling. Specifically,
4   in the January 20, 2005 Order, the Court considered the fifth cause of action in *Snow*, which states a
5   claim under California's Medical Information Act, and determined that the fifth cause of action triggered
6   the "personal injury" coverage in the Liberty Policies as well as the relevant provisions in the ERSIC
7   Policy. The fact that the ERSIC Policy refers to "medical information" and includes the term "Medical
8   Information Protection" is irrelevant and has no bearing on Liberty's Policies. What *is* relevant is the
9   fact that the Court has already held that the *same cause of action* and, thus, *the same risk*, is covered by
10  *both* policies, regardless of the terminology the insurers, themselves, use to refer to that risk.
11  Accordingly, since the Liberty Policies and the ERSIC Policy cover the same risk, Liberty's reliance on
12  *Trinity Universal Ins. Cor. v. General Accident, Fire & Life Assur. Corp.*, 138 Ohio St. 488, 490-491
13  (1941) is misplaced. Further, this Court finds significant the fact that, while the court in *Trinity* did
14  discuss the fact that the defendant's insurance policy was more generalized, it also based its ruling on
15  the fact that the defendant's insurance policy was the only policy that expressly stated that it was
16  "excess" insurance. *Id.* at 491; *accord Shelby Ins. Co. v. Insurance Co. of North America*, 76 Ohio
17  App.3d 227, 231 (1991) (noting that only one policy mentioned excess insurance and finding that the
18  "language of the two policies . . . is determinative."); *see also Buckeye Union Ins. Co. v. State*
19  *Automobile Mutual Ins. Co.*, 49 Ohio St.2d 213 (1977) (rejecting *Trinity*'s "general vs. specific" theory
20  as arbitrary).[2]

21  Liberty next argues that the Liberty Policies are the excess policies because the Liberty Policies
22  contain an "other insurance" provision. Specifically, the Liberty Policies contain the following
23  language:

---

[2] Likewise, in the one California case cited by Liberty, *Gillies v. Michigan Millers Mutual Fire Ins. Co.*, 98 Cal.App.2d 743, 748 (1950), the court based its ruling on the language of the policies at issue and not on a general "rule of construction" that general policies should be deemed excess to specific policies.

10

> This insurance is excess over:
>
> > (1) Any other insurance, whether primary, excess, contingent or on any other basis:
> >
> > > (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
> > >
> > > (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
> > >
> > > (c) That is insurance purchased by you to cover your liability as tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
> > >
> > > (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of SECTION 1 - Coverage A - Bodily Injury and Property Damage Liability.
> >
> > **(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of any endorsement.**

See, e.g., Liberty MSJ at Ex. C (LC00104) (emphasis added).[3]

However, as Liberty concedes, its "other insurance" clause argument is only viable in instances where there is no conflict between the "other insurance" clauses contained in the two insurers' policies. See *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.*, 110 Cal.App.4th 710 (2003). Thus, the resolution of this issue turns on ERSIC's own Motion for Summary Judgment and whether the Court finds that ERSIC's "excess liability" clause is (a) triggered by this litigation, and (b) in conflict with the Liberty Policies.

With respect to this issue, ERSIC argues that Section IV(G)(1) of the ERSIC Policy, as amended by Endorsement No. 11, clearly and unambiguously establishes that ERSIC's policy is excess to Liberty's insurance policies.

Endorsement No. 11 provides that:

> This Policy shall be excess of and shall not contribute with:

---

[3] Specifically, Liberty focuses on the applicability of paragraph two which is set forth above in bold.

11

>    (a) Commercial General Liability Insurance Liability Insurance Policy No. RG2-681-004130-031 issued by Liberty Mutual or any renewal or replacement thereof, but only with respect to **Managed Care Activities;**
>
>    (b) any other existing insurance or self-insurance, unless such other insurance or self-insurance is specifically stated to be in excess of this Policy;
>
>    (c) any indemnification to which an Insured is entitled from any entity other than the **Insured Entity.**

Liberty MSJ at Ex. H (ER00055-56).

Based on this contract language, ERSIC first argues that the ERSIC policy is a "specific excess" insurance policy as a matter of law because the ERSIC policy expressly states that it is excess to the Liberty Policies. In support of this argument, ERSIC cites *Century Surety Co. v. United Pacific Ins. Co.*, 109 Cal. App. 4th 1246, 1255 (2003), which states that "excess insurance is insurance that is expressly understood by both the insurer and the insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage." *Id.* (emphasis in original omitted). ERSIC's argument, however, oversimplifies the issue. The focus of this dispute is not whether the ERSIC policy identifies the Liberty Policies. Instead, it is whether the phrase "but only with respect to Managed Care Activities" establishes that ERSIC's policy is excess to the Liberty Policies with respect to the coverage of this litigation.

It is fundamental that an insurance policy, like any contract, is to be interpreted to effectuate the mutual intent of the parties. *Union Oil Co. v. International Ins. Co.*, 37 Cal. App. 4th 930, 935 (1995); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992); *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821 (1990). Whenever possible, the court's interpretation is governed by the clear and explicit meaning of the policy's written provisions, interpreted in their ordinary and popular sense unless used by the parties in a technical sense or special meaning is given to them by usage. *Union Oil Co.*, 37 Cal. App. 4th at 935); *AIU Ins. Co., supra*, at p. 822. If, on the other hand, a policy term is ambiguous, the court must give it the meaning the insurer believed the insured party understood it to have at the time of formation. *Union Oil Co.*, 37 Cal. App. 4th at 935.

12

A policy term is ambiguous if it is susceptible to two or more interpretations that are (1) reasonable and (2) not based on a strained interpretation of the policy language. *Id.* at 935-936; *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 737 (1993); *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 912 (1986). "[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." *Union Oil Co.*, 37 Cal. App. 4th at 935-936 (citations omitted). In doing so, the court "must interpret the language in context, with regard to its intended function in the policy. This is because 'language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" *Id.*; *see also Kavruck v. Blue Cross of California*, 108 Cal.App.4th 773, 780 (2003) ("[D]isputed language must be examined *in context* with regard to its intended function in the policy.... This requires a consideration of the policy as a whole, the circumstances of the case in which the claim arises, and 'common sense.'") (emphasis in original).

In the instant matter, Liberty contends that Endorsement No. 11, which states that the ERSIC policy "shall be excess of and shall not contribute with ... Policy No. RG2-681-004130-031 issued by Liberty Mutual ... but only with respect to Managed Care Activities," does not provide that the ERSIC policy is excess to the Liberty Policies because the only claim that triggered Liberty's duty to defend Lenscrafters in the *Snow* litigation involved Medical Information Protection, not Managed Care Activities. In support of its argument, Liberty notes that the ERSIC Policy separately defines the terms "Managed Care Activities" and "Medical Information Protection,"[4] thus indicating that the two terms

---

[4] The ERSIC Policy provides coverage for "Wrongful Act[s]" which are defined, under Endorsement No. 9, as:

> (1) any actual or alleged act, error or omission in the performance of, or any failure to perform, a **Managed Care Activity** by an **Insured Entity** or by any **Insured Person** acting within the scope of his or her duties or capacity as such; (2) any actual or alleged act, error or omission in the performance of, or any failure to perform, **Medical Information Protection** by any **Insured Entity** or by any **Insured Person** acting within the scope of his or her duties or capacity as such . . .

13

are meant to be mutually exclusive. ERSIC, on the other hand, argues that the term Medical Information Protection is merely a subset of the more general term Managed Care Activities. Thus, according to ERSIC, so long as the alleged Medical Information Protection violations occurred during the performance of Managed Care Activities, which ERSIC alleges is the case here, and which Liberty does not clearly dispute, the ERSIC policy is, and is intended to be, excess to the Liberty Policies.[5]

The Court finds that ERSIC and Liberty's interpretations of the relevant language are both, arguably, reasonable. In other words, it is just as plausible to assume that Medical Information Protection violations occurring during Managed Care Activities do trigger the "excess" insurance provision as it is to assume that they do not. Thus, the Court concludes that Endorsement No. 11 is ambiguous. Accordingly, the next step in the analysis is whether Plaintiffs contemplated that the ERSIC Policy would be excess to the Liberty Policies in this particular instance. *See Union Oil Co.*, 37 Cal. App. 4th at 935-936 ("[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the

---

*See* Liberty MSJ at Ex. H (ER00051) (emphasis in original).

In the Policy, **"Managed Care Activity"** is defined as:

> any of the following services or activities: **Provider Selection; Utilization Review**, advertising, marketing, selling, or enrollment for health care or worker's compensation plans; **Claim Services**; establishing health care provider networks; reviewing the quality of **Medical Services** or providing quality assurance; design and/or implementation of financial incentive plans; wellness or health promotion education; development or implementation of clinical guidelines; practice parameters or protocols; triage for payment of **Medical Services**; and services or activities performed in the administration of health care or workers' compensation plans.

*See* Liberty MSJ at Ex. H (ER00067).

"Medical Information Protection" is defined in the Policy as "maintaining the confidentiality of information regarding Medical Services and limiting the release or use of such information in conformance with requirements of law." *Id.*

[5]Indeed, the fifth cause of action includes allegations that "Defendant cause[d] the confidential medical information they obtain[ed] from patients and the members of the Class to be disclosed to LENSCRAFTERS for marketing and sales purposes." *See* Liberty MSJ at Ex. J (Second Amended Compl. at ¶ 113).

14

insured's objectively reasonable expectations."); *see also Kavruck*, 108 Cal.App.4th at 780 ("[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."). In making this determination, extrinsic evidence may be considered. *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1291 (2000).

In support of its argument that the insureds did not contemplate that the ERSIC Policy would be excess to Liberty Policies, Liberty relies solely on the deposition testimony of Eli Moraweic ("Moraweic"), an insurance broker with BWD who was responsible for negotiating the ERSIC Policy up until his departure from BWD on or about January 12, 2002. See Decl. of Hee Young Lee ("Lee Decl.") at Ex. 1 (Moraweic Depo.); *see also* Decl. of Terrence R. McInnis I.S.O. Mot. for Summ. J. ("McInnis Summ. J. Decl.") at ¶ 3, Ex. 2.[6] In his deposition, Moraweic testified that, at the time he was negotiating the ERSIC Policy with ERSIC, the ERSIC Policy was designed to be excess over the Liberty Policies only with respect to medical malpractice claims. Specifically, Liberty relies on the following testimony:

> Q:   You also said that you believed it desirable that claims be paid under – to the extent covered under the Liberty policies, rather than depleting the limits of the managed care policy?
>
> Ms. Lee: Objection. Misstates prior testimony.
>
> Q.   Is that an accurate statement?
>
> A.   What I tried to do when this issue came up was, I realized that not only needed [sic] to coordinate this medical mal vicarious liability coverage, also needed to coordinate the entire depth and breadth of coverage that was provided under both policies, which policy should be primary for managed care related errors and omission types of claims.
>
>   If you're buying a managed care E&O policy, that's the place where it should be primary. But there were other consideration. Those considerations were the type of – the fact that the general liability program of Liberty Mutual was loss sensitive.
>   So, the insured, you know, was retrospectively rated. So, why

---

[6] Liberty also tries to support its position by inappropriately referring to prior and subsequent ERSIC policies. However, such evidence is irrelevant and inadmissible. *See, e.g., State Farm Fire & Cas. Co. v. Eddy*, 218 Cal.App.3d 958, 972-73 (1990).

15

> would you want to have a claim that's related, that should be something covered under a managed care E&O policy to be covered also, first covered or covered under a general liability policy that really wasn't designed to provide – to respond to that coverage.
>
> As well as the fact that it was, you know, a loss sensitive program where the insured would have to pay more money going forward, the losses that they incurred. So, that's when I realized that this was, as I explained to you before, not to be redundant, but I realized that, you know, the insurance program needed to be refined with – with another insurance clause that addressed what I just said to you.
>
> That would be that the managed care E&O policy is primary for managed care E&O types of claims, with the exception of the med mal coverage provided by the Liberty Mutual policy.
>
> Q.   If – so, is it – could you explain to me then if there is an overlap of coverage, if – if the same claim would trigger coverage under both the Liberty Mutual policies and the Executive Risk policy, what is your – what was your attempt with respect to the other insurance clauses, how those policies would operate?
>
> . . . .
>
> Q:   I'm asking your intent?
>
> A.   The intent was for the managed care E&O policy to be primary in that situation.
>
> Q:   Whenever the coverage is overlapped?
>
> A:   That is correct . . . .

Hee Decl. at Ex. 1 (Moraweic Depo. at 35:23-38:16).

While Liberty suggests that this testimony conclusively establishes that the insureds did not intend for the ERSIC Policy to be excess to the Liberty Policies, as ERSIC points out, there are several reasons why Liberty's reliance on Moraweic's testimony is unpersuasive. First, Moraweic left BWD in January 2002, and the ERSIC Policy was not issued until April 2002. *See* McInnis Summ. J. Decl. at ¶¶ 3, 6. In fact, Moraweic admits that he did not have any knowledge of any policy negotiations or communications that occurred after his departure. *Id.* at ¶ 4. Further, the "other insurance" endorsement Moraweic refers to in his deposition is not, in fact, Endorsement No. 11. *Id.* at ¶ 5. Additionally, Ken Pagliughi ("Pagliughi"), the broker who replaced Moraweic when Moraweic departed from BWD, has testified that he participated in subsequent negotiations with the insureds and ERSIC that ultimately resulted in Endorsement 11. *Id.* at ¶¶ 6-8.

16

1  Accordingly, Moraweic's testimony is irrelevant and does not provide any clarity with respect
2  to how Endorsement 11 should be interpreted. Indeed, the single piece of relevant evidence that has
3  been identified with regard to the insured's understanding of Endorsement No. 11 supports ERSIC's
4  interpretation. Specifically, ERSIC has produced testimony from Greg Muntel ("Muntel"), the Senior
5  Director of Risk Management at LensCrafters, Inc., and the person designated by Plaintiffs pursuant to
6  Federal Rule of Civil Procedure 30(b)(6) to testify on their behalf. In his deposition, Muntel testified
7  as follows:

8  Q:   So something could be a claim based upon disclosure of private medical information, could constitute both a managed care activity and
9       a medical information protection claim; is that correct?

10  Ms. Jackson: Objection. Hypothetical. Calls for speculation.

11  Ms. Lee: Join. Objection. Relevance.

12  A:   I would say they are not mutually exclusive.

13  Q:   By saying that they are not mutually exclusive, then you are acknowledging that it is possible for a claim to involve both managed
14       care activities and medical information protection?

15  A:   I'm saying there is an overlap – between the two.

16  See Decl. of Terrence R. McInnis in Opp. to Liberty MSJ ("McInnis Opp. Decl.") at ¶ 3, Ex 1 (Muntel
17  Depo. at 60:1-21).[7] Based on this testimony, one could reasonably conclude that Plaintiffs did anticipate
18  that the ERSIC Policy would be excess to the Liberty Policies with respect to coverage concerning

---

[7] Liberty's separately filed Objection to Evidence seeks to exclude Muntel's testimony on the grounds that it is irrelevant, constitutes an improper opinion, and lacks foundation. Specifically, with regard to the "improper opinion" and foundation objections, Liberty primarily argues that "the deposition transcript does not establish that Mr. Muntel was qualified or had personal knowledge on the implementation of a managed care vision plan." This argument is without merit. As stated above, when a disputed contract term is found to be ambiguous, the Court must consider the insured's reasonable expectations as to the insurance coverage described therein. Muntel was specifically designated by the Plaintiffs, who are the insureds, to speak on behalf of the Plaintiffs. Further, as a lay witness, his opinion testimony is not necessarily inadmissible and Liberty has not adequately demonstrated that Muntel's testimony does not fit within the criteria governing lay person opinion testimony set forth in Federal Rule of Evidence 701. See Fed. R. Evid. 701. Additionally, Muntel has testified that he was the Senior Director of Risk Management and Insurance at LensCrafters, Inc. and was one of four people responsible for applying for the ERSIC Policy. See McInnis Opp. Decl. at Ex. 1 (Muntel Depo. at 7:23-8:9; 15:18-16:12). For these reasons, Muntel's testimony is both relevant and admissible and Liberty's Objection to Evidence is therefore OVERRULED.

17

Managed Care Activities, even when the specific violation at issue also constituted a Medical Information Protection violation. Thus, contrary to Liberty's assertion, ERSIC's interpretation of the ERSIC Policy does not turn the definitions of Medical Information Protection and Managed Care Activities into meaningless surplusage. As ERSIC explains in its brief, while some Medical Information Protection violations may occur during Managed Care Activities, some may not. In this particular case, the underlying allegations in the fifth cause of action of the *Snow* litigation appear to concern both Managed Care Activities and Medical Information Protection violations. As such, the Court finds that Section IV(G)(1)(a) of Endorsement No. 11 is applicable.[8]

Having determined that Section IV(G)(1)(a) does provide that the ERSIC Policy is excess to the Liberty Policies, the next question before the Court is whether the "other insurance" clauses of the ERSIC Policy and the Liberty Policies are in conflict. The applicable portion of Liberty's other insurance clause provides that the Liberty Policies are excess to "[a]ny other *primary* insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of any endorsement." *See, e.g.*, Liberty MSJ at Ex. C (LC00104) (emphasis added). Since ERSIC's Policy is excess and not "primary," there is no conflict. *See North River Ins. Co. v. American Home Assur. Co.*, 210 Cal.App.3d 108, 114 (1989) ("An 'other insurance' dispute can only arise between carriers on the same level, it cannot arise between excess and primary insurers.") Accordingly, Liberty's Motion for Partial Summary Judgment is DENIED and ERSIC's Motion for Summary Judgment is GRANTED. The Court finds that ERSIC is entitled to judgment in its favor declaring the ERSIC Policy to be excess to the Liberty Policies.

Last, Liberty argues in its Opposition to ERSIC's Motion for Summary Judgment that if the ERSIC Policy is determined to be excess to the Liberty Policies, then ERSIC "may not assert equitable contribution to seek reimbursement of past fees and costs because the rights of contribution only exists where two or more insurers cover the same risk for which they are both primarily liable." *See* Opp. at

---

[8] Since the Court concludes that Section IV(G)(1)(a) is applicable, it does not reach a determination with respect to whether Section IV(G)(1)(b) also provides that ERSIC is the excess insurer.

18

15 (emphasis in original). Liberty also argues that ERSIC may not seek recovery on an equitable subrogation theory, since Liberty settled with the insureds on June 29, 2004. *See Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 21 Cal.App.4th 1586, 1587-98 (1994). As ERSIC correctly observes in its Reply, however, ERSIC is not arguing that it is entitled to equitable contribution, since it concedes that this theory of recovery applies only to co-primary insurers. ERSIC also concedes that it is not entitled to recovery under the theory of equitable subrogation. ERSIC does contend, however, that, if found to be the excess insurer, it is entitled to equitable indemnity. Equitable indemnity "applies in cases in which one party pays for a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." *United Services Automobile Ass'n v. Alaska Ins. Co.*, 94 Cal.App.4th 638, 644-45 (2001). Since the Court finds that ERSIC is the excess insurer, it also finds that the theory of equitable indemnity entitles ERSIC to indemnification from Liberty for the defense costs it has expended, in an amount subject to proof.

## CONCLUSION

IT IS HEREBY ORDERED AS FOLLOWS:

(1)   ERSIC's Motion for Summary Judgment [Docket No. 103] is GRANTED;

(2)   Liberty's Motion for Partial Summary Judgment [Docket No. 110] is DENIED;

(3)   Liberty's Request for Judicial Notice [Docket No. 109] is GRANTED; and

(4)   Liberty's Objection to Evidence [Docket No. 123] is OVERRULED.

IT IS FURTHER ORDERED THAT judgment shall be entered in favor of ERSIC following the submission of the appropriate documentation and proof. ERSIC shall submit such documentation to the Court on or before October 21, 2005.

IT IS SO ORDERED.

Dated: 10/5/05

SAUNDRA BROWN ARMSTRONG
United States District Judge

19