# EXHIBIT 1

RICHARD DeNATALE (California Bar No. 121416)
CELIA M. JACKSON (California Bar No. 124508)
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
Email:  richard.denatale@hellerehrman.com
Email:  celia.jackson@hellerehrman.com

Attorneys for Plaintiffs
LENSCRAFTERS, INC. and EYEXAM OF
CALIFORNIA, INC.


IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION


| | |
|---|---|
| LENSCRAFTERS, INC.; and EYEXAM OF CALIFORNIA, INC.;<br><br>                   Plaintiffs,<br><br>    v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY; and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>                   Defendants. | Case No.:  C-07-2853 SBA<br><br>**[PROPOSED] FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs LensCrafters, Inc. and EYEXAM of California, Inc. (together, "LensCrafters") allege as follows:

## INTRODUCTION

1.    Defendants are insurers that sold LensCrafters primary, umbrella and/or excess insurance policies, the material terms of which are described below.  Those policies contain a duty to indemnify LensCrafters.  Pursuant to the implied covenant of good faith and fair dealing, defendants also have a duty to accept reasonable offers to settle claims.

2.    This action arises out of defendants' refusal and failure to indemnify LensCrafters and settle claims with respect to a putative class action lawsuit captioned *Melvin Gene Snow, et al. v. LensCrafters, Inc., et al.*, San Francisco Superior Court Case No. CGC-02-40554 (the "*Snow* Action").  In 2004, LensCrafters brought an action against Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Executive Risk Specialty Insurance Company ("ERSIC") in the Northern District of California, Case No. C 04-1001 SBA, concerning insurance coverage for the *Snow* Action.  In that prior action, this Court found that Liberty Mutual  and ERSIC had a duty to defend the *Snow* Action.  The prior coverage action did not resolve the question of the insurers' duty to indemnify and the duty to settle.

3.    After several years of litigation in the *Snow* Action, the parties have reached a reasonable settlement that is contingent on approval and funding by defendants.  Although LensCrafters has requested that defendants accept the settlement, in accordance with the terms of their respective insurance policies, they have refused to do so.  Defendants' failure and refusal to acknowledge their indemnity obligation and agree to accept and fund a reasonable settlement have prevented LensCrafters from settling the *Snow* Action.  Defendants have therefore breached their duties under the policies.

4.    There is a present, active controversy between LensCrafters and its insurers concerning the insurers' duty to indemnify LensCrafters for and their duty to settle the *Snow* Action, and a dispute among the defendants themselves as to which insurer(s) must fund the settlement.  Therefore, LensCrafters brings this action for a declaration of the rights, duties and responsibilities of the parties under defendants' insurance policies.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

## THE PARTIES

5.      Plaintiff LensCrafters, Inc. is an Ohio corporation with its principal place of business in Ohio.

6.      Plaintiff EYEXAM of California, Inc., fka EyeMed, Inc. ("EYEXAM") is a California corporation with its principal place of business in California.

7.      LensCrafters is informed and believes, and thereon alleges, that defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") is a Massachusetts corporation with its principal place of business in Massachusetts.

8.      LensCrafters is informed and believes, and thereon alleges, that defendant Executive Risk Specialty Insurance Company ("ERSIC") is a Connecticut corporation with its principal place of business in Connecticut.

9.      LensCrafters is informed and believes, and thereon alleges, that defendant United States Fire Insurance Company ("U.S. Fire") is a Delaware corporation with its principal place of business in New Jersey.

10.     LensCrafters is informed and believes, and thereon alleges, that defendant Markel American Insurance Company ("Markel") is a Virginia corporation with its principal place of business in Wisconsin.

11.     LensCrafters is informed and believes, and thereon alleges, that defendant Westchester Fire Insurance Company ("Westchester") is a New York corporation with its principal place of business in Pennsylvania.

## JURISDICTION

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.  There is complete diversity of citizenship between LensCrafters and defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

13.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, because the alleged events and/or omissions giving rise to this Complaint are alleged to have occurred in this District.

3

## FACTUAL ALLEGATIONS

14.     Each of the defendants issued one or more policies of insurance to LensCrafters, the material terms of which are alleged below.  The policies are not being attached to this Complaint because of their bulk and because it would be wasteful and burdensome for the Court and the parties.

15.     LensCrafters has complied with all terms and conditions precedent of defendants' policies and is entitled to the benefit of insurance provided by them.

### The Liberty Mutual Policies

16.     Liberty Mutual issued to LensCrafters the following Commercial General Liability policies (collectively, the "Liberty Mutual Policies"):

- Policy No. TB2-681-004130-038, effective February 1, 1998 to February 1, 1999;

- Policy No. RG2-681-004130-039, effective February 1, 1999 to February 1, 2000;

- Policy No. RG2-681-004130-030, effective February 1, 2000 to February 1, 2001;

- Policy No. RG2-681-004130-031, effective February 1, 2001 to February 1, 2002;

- Policy No. RG2-681-004130-032, effective February 1, 2002 to February 1, 2003;

- Policy No. RG2-681-004130-033, effective February 1, 2003 to February 1, 2004;

- Policy No. RG2-681-004130-034, effective February 1, 2004 to February 1, 2005;

- Policy No. RG2-681-004130-035, effective February 1, 2005 to February 1, 2006.

17.     LensCrafters, Inc. and EYEXAM are each a named insured under the Liberty Mutual Policies.  The Liberty Mutual Policies provide, *inter alia*, that Liberty Mutual "will

4

pay those sums that [LensCrafters] becomes legally obligated to pay as damages" because of "personal injury." The term "personal injury" is defined to include "injury. . . arising out of . . . [the] [o]ral or written publication of material that violates a person's right of privacy." Each of the Liberty Mutual Policies has limits of liability for personal injury of $3 million for each occurrence and $6 million in the aggregate.

**The ERSIC Policy**

18.    ERSIC issued a Managed Care Organization Errors and Omissions Liability policy, Policy No. 8167-2076, effective November 12, 2001 to November 12, 2002 (the "ERSIC Policy"), which provides coverage to EYEXAM and LensCrafters, Inc.

19.    The ERSIC Policy provides coverage for "any Loss which the Insured is legally obligated to pay as a result of any Claim. . . ." The term "Loss" is defined to include "any monetary amount which an Insured is legally obligated to pay as a result of a Claim." The term "Claim" is defined as "any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act." The term "Wrongful Act" is defined, *inter alia,* to mean "any actual or alleged act, error or omission in the performance of, or any failure to perform, Medical Information Protection by any Insured Entity or by any Insured Person acting within the scope of his or her duties or capacity as such . . . ." The term "Medical Information Protection" is defined as "maintaining the confidentiality of information regarding Medical Services and limiting the release or use of such information in conformance with requirements of law." The ERSIC Policy has limits of liability of $3 million for each Claim or Related Claims and $3 million in the aggregate.

**The U.S. Fire Policies**

20.    U.S. Fire issued to LensCrafters the following Commercial Umbrella Policies (collectively, the "U.S. Fire Policies"):

- Policy No. 553-058755-2, effective February 1, 1998 to February 1, 1999;
- Policy No. 553-068740-7, effective February 1, 1999 to February 1, 2000;
- Policy No. 553-076092-8, effective February 1, 2000 to February 1, 2001.

LensCrafters, Inc., is a named insured under the U.S. Fire Policies.

5

21.    The U.S. Fire Policies provide that U.S. Fire "will pay on behalf of the 'Insured' those sums in the excess of the 'Retained Limit' which the 'Insured' by reason of liability imposed by law . . . shall become legally obligated to pay as damages for: 'Personal Injury' caused by an 'Occurrence' committed during the Policy Period." The term "Personal Injury" is defined as "oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy." Each of the U.S. Fire Policies has limits of liability for personal injury coverage of $25 million in excess of the retained limit for each occurrence and in the aggregate.

**The Markel Policy**

22.    Markel issued to LensCrafters a Commercial Umbrella Liability Policy, Policy No. CU-GA-1345-01, effective February 1, 2001 to February 1, 2002 (the "Markel Policy"). LensCrafters, Inc. and EYEXAM are each a named insured under the Markel Policy.

23.    The Markel Policy provides coverage, pursuant to Endorsement No. 4, for "Personal Injury" to the same extent such insurance is provided by "a policy listed in the Schedule of Underlying Insurance, and then only to the extent provided by such policy or policies." The Schedule of Underlying Insurance lists "Liberty Mutual Ins. Policy No. RG2 681001430030 [sic] 02/01/01 to 02/01/02." The Markel Policy has limits of liability for personal injury coverage of $15 million per occurrence and in the aggregate in excess of the limits of the underlying insurance.

**The Westchester Policies**

24.    Westchester issued to LensCrafters an Excess Umbrella Policy, Policy No. MEA-675648, effective February 1, 2001 to February 1, 2002 (the "Westchester Excess Policy"). The Westchester Excess Policy is excess to the Markel Policy, follows form to that policy in terms of its coverage and the named insureds, and provides coverage for "that amount of loss which exceeds the amount of loss payable by [the Markel Policy]." The Westchester Excess Policy has limits of $10 million per occurrence and in the aggregate in excess of the Markel Policy.

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

1    25.    Westchester also issued to LensCrafters the following Commercial Umbrella

2  Policies (collectively the "Westchester Umbrella Policies"; the Westchester Excess Policy

3  and the Westchester Umbrella Policies are collectively referred to as the "Westchester

4  Policies"):

5       • Policy No. CUA-150963, effective February 1, 2002 to February 1, 2003;

6       • Policy No. CUA-706488, effective February 1, 2003 to February 1, 2004;

7       • Policy No. CUW-774410, effective February 1, 2004 to February 1, 2005;

8       • Policy No. CUW-785695, effective February 1, 2005 to February 1, 2006.

9  LensCrafters, Inc. and EYEXAM are each a named insured under the Westchester Umbrella

10  Policies.

11    26.    The Westchester Umbrella Policies provide that Westchester "will pay on

12  behalf of the 'Insured' those sums in the excess of the 'Retained Limit' which the 'Insured'

13  by reason of liability imposed by law . . . shall become legally obligated to pay as damages

14  for: 'Personal Injury' arising out of an 'Occurrence'" during the policy period.  The term

15  "personal injury" is defined to include injury arising out of "oral or written publication of

16  material that violates a person's right of privacy . . . ."  Each of the Westchester Umbrella

17  Policies has limits of liability for personal injury of $25 million in excess of the retained

18  limit per occurrence and in the aggregate.

19    **Defense and Settlement of the _Snow_ Action**

20    27.    The _Snow_ Action was originally filed against LensCrafters, Inc. and other

21  entities on March 12, 2002 on behalf of a putative class.  The Second Amended Complaint

22  ("SAC"), which is the current operative complaint, was filed on or about April 15, 2003.  At

23  present, the two defendants in the _Snow_ Action are LensCrafters, Inc. and EYEXAM.

24    28.    Among other things, the SAC alleges that LensCrafters disclosed private

25  medical information of the putative plaintiff class, in violation of the California

26  Confidentiality of Medical Information Act, Cal. Civ. Code § 56 _et seq._, thus violating the

27  privacy rights of the putative plaintiff class.  The purported disclosures of private medical

28  information is alleged to have occurred during the periods of defendants' policies described

7

1  in this Complaint.

2      29.    LensCrafters gave timely notice of the *Snow* Action to defendants.

3  LensCrafters also requested that Liberty Mutual and ERSIC defend the *Snow* Action. These

4  insurers agreed to pay defense costs under a reservation of rights. After payment of certain

5  defense costs, however, both insurers then contended that they had no further duty to

6  defend.

7      30.    On March 11, 2004, LensCrafters brought an action against Liberty Mutual in

8  the Northern District of California, Case No. C 04-1001 SBA, for breach of contract and

9  declaratory relief regarding Liberty Mutual's duty to defend and indemnify LensCrafters

10 (the "Coverage Action"). On July 26, 2004, LensCrafters amended the complaint to add

11 ERSIC as a defendant. In the course of the Coverage Action, the parties filed cross-motions

12 for summary judgment regarding Liberty Mutual's and ERSIC's respective obligations to

13 defend LensCrafters.

14     31.    The Court, in an Order dated January 20, 2005, held that both Liberty Mutual

15 and ERSIC had a duty to defend LensCrafters with respect to the *Snow* Action. The Court

16 further held that the allegations in the *Snow* Action regarding disclosures of private medical

17 information constituted "publication[s] of material that violate[] a person's right of privacy"

18 as covered by the policies.

19     32.    By stipulation of the parties, LensCrafters' claims for indemnity alleged in the

20 Coverage Action were dismissed without prejudice on grounds that they were unripe for

21 adjudication at that time because the *Snow* Action was still being litigated. The Stipulation

22 and Order dismissing the indemnity claims provided that any party in the case could file a

23 new action to adjudicate the dismissed claims, that such action must be filed in the Federal

24 District Court for the Northern District of California, and that the parties consented to

25 exclusive jurisdiction and venue of such an action in this Court.

26     33.    On November 22, 2005, the Court entered an Amended Judgment in the

27 Coverage Action in favor of LensCrafters and against Liberty Mutual and ERSIC regarding

28 the duty to defend. Liberty Mutual has appealed from that judgment, and that appeal is

8

1  currently pending before the Ninth Circuit.

2       34.    As a result of a mediation in the *Snow* Action held on April 27, 2007 and

3  subsequent negotiations, the parties to the *Snow* Action have agreed to a reasonable

4  settlement contingent on the approval and funding by defendants. The settlement is for less

5  than the total limits of the defendant insurers' policies.

6       35.    A further mediation was held on July 26, 2007 to ask defendants to accept and

7  fund the settlement. The Superior Court hearing the *Snow* Action ordered defendants to

8  attend that mediation. While the other defendants appeared at the mediation, U.S. Fire

9  refused to appear, in violation of the Court's order.

10      36.    The mediation on July 26 was unsuccessful. Despite LensCrafters' request

11 that defendant insurers agree to settle the *Snow* Action, and pay for the settlement under the

12 indemnity provisions of their policies, defendants refused to do so.

13      37.    Defendant insurers have raised several purported coverage defenses and have

14 taken contrary and conflicting positions about which of them must pay, about which

15 policies must exhaust their limits of liability first, and about what their respective total

16 limits of liability are for the *Snow* Action. Defendants' refusal to acknowledge their

17 indemnity obligations and their duty to settle the *Snow* Action for an amount within policy

18 limits, and their disputes about which insurers must pay and in what order, has prevented

19 the settlement of the *Snow* Action. A present controversy exists with respect to defendants'

20 obligations to indemnify LensCrafters, to settle the *Snow* Action, and to pay for a settlement

21 in the *Snow* Action, and with respect to the parties' respective rights and obligations under

22 the various insurance policies identified and described in this Complaint.

23      38.    Defendant insurers have breached their duty under the policies to settle the

24 *Snow* Action by refusing to accept and fund a reasonable settlement within policy limits.

25 Defendants' actions have exposed LensCrafters to further litigation and the risk of a

26 judgment in excess of policy limits.

27

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

## FIRST CLAIM FOR RELIEF:
## DECLARATORY JUDGMENT RE
## DEFENDANTS' DUTY TO INDEMNIFY

39.     LensCrafters repeats and incorporates the allegations of paragraphs 1 through 38.

40.     Defendants have a duty under the terms of their respective insurance policies to indemnify LensCrafters in full for all legal liabilities they may incur in connection with the *Snow* Action.  The duty to indemnify includes the duty to fund a reasonable settlement.

41.     Defendants have each failed to honor and refused to accept their duty to indemnify LensCrafters by refusing to agree to settle and fund the settlement of the *Snow* Action.  Accordingly, LensCrafters seeks a declaration of rights concerning the duties of each insurer, concerning the applicable limits of liability of each defendant's policy for the *Snow* Action, and concerning which policies must pay and in what amounts.  LensCrafters further seeks a declaration that defendants and each of them have an obligation under their respective policies to settle the *Snow* Action and indemnify LensCrafters for such settlement, or to pay all legal liabilities that LensCrafters may incur in the future as a consequence of the *Snow* Action should it not be settled now.

42.     By reason of the foregoing, an actual and justiciable controversy presently exists between LensCrafters and defendants concerning their duty to indemnify LensCrafters in connection with the *Snow* Action.

## SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT RE DEFENDANTS'
## DUTY TO INDEMNIFY AND DUTY TO SETTLE

43.     LensCrafters repeats and incorporates the allegations of paragraphs 1 through 38.

44.     Defendants have a duty to accept a reasonable settlement offer within policy limits.  This duty is implied in every insurance policy as part of the covenant of good faith and fair dealing.  LensCrafters has negotiated a reasonable settlement with the plaintiffs in the *Snow* Action, contingent on approval and funding by defendants.  At a mediation on

July 26, 2007, LensCrafters asked defendants to accept and fund that settlement to resolve the *Snow* Action and to limit LensCrafters' exposure to a judgment in excess of the settlement amount. Defendants refused. Defendants thereby breached their duty to LensCrafters by failing to indemnify LensCrafters and accept the settlement.

45.    As a direct and proximate result of defendants' breach of contract, defendants have deprived LensCrafters of the benefit of their policies, for which substantial amounts in premiums were paid. As a direct and proximate result of defendants' acts, LensCrafters has been damaged in an amount that is to be proved at trial and that is in excess of the jurisdictional requirements of this Court.

### THIRD CLAIM FOR RELIEF:
### TORTIOUS BREACH OF THE COVENANT
### OF GOOD FAITH AND FAIR DEALING AGAINST
### DEFENDANTS U.S. FIRE, MARKEL AND WESTCHESTER

46.    LensCrafters repeats and incorporates the allegations of paragraph 1 through 38.

47.    Implied in each of the U.S. Fire Policies, the Markel Policy, and the Westchester Policies is a covenant of good faith and fair dealing by the insurer that it will act in good faith and deal fairly with its insured; that it will do nothing to interfere with the right of its insured to receive the benefits of the insurance policy; that it will place the interests of its insured before its own interests; that it will exercise diligence, good faith and fidelity in safeguarding its insured's interests; that it will deal ethically with its insured and will fairly and adequately inform its insured with respect to the nature and scope of its insurance coverage.

48.    U.S. Fire has breached the implied covenant of good faith and fair dealing by, among other things:

    (a)    Willfully disobeying a court order that directed U.S. Fire to attend a mediation session at which LensCrafters sought to settle the *Snow* Action;

    (b)    Wrongfully and unreasonably denying coverage for the *Snow* Action;

11

(c)     Failing to accept a reasonable settlement of the *Snow* Action within its policy limits, thereby exposing LensCrafters to further litigation and potential liability above the limits of the U.S. Fire Policies;

(d)     Refusing to settle the *Snow* Action based on improper considerations concerning alleged coverage defenses and allocation issues;

(e)     Failing to respond to a reasonable settlement demand;

(f)     Failing to adequately investigate the claims in the *Snow* Action, LensCrafters' potential liability and the reasonableness of the settlement;

(g)     Engaging in tactics designed to harass LensCrafters and obstruct LensCrafters' efforts to settle the *Snow* Action and obtain funding from its other insurers;

(h)     Placing its own interests above those of LensCrafters for the purpose of retaining and utilizing money that should have been spent on settling the *Snow* Action;

(i)     Refusing to communicate with LensCrafters regarding the settlement; and

(j)     Compelling LensCrafters to initiate this litigation in order to obtain the rights and benefits to which it is entitled under the U.S. Fire Policies.

49.     Markel has breached the implied covenant of good faith and fair dealing by, among other things:

(a)     Wrongfully and unreasonably denying coverage for the *Snow* Action;

(b)     Failing to accept a reasonable settlement of the *Snow* Action within its policy limits, thereby exposing LensCrafters to further litigation and potential liability above the limits of the Markel Policy;

(c)     Refusing to settle the *Snow* Action based on improper considerations concerning alleged coverage defenses and allocation issues;

(d)     Failing to respond to a reasonable settlement demand;

12

       (e)    Failing to adequately investigate the claims in the *Snow* Action, LensCrafters' potential liability and the reasonableness of the settlement;

       (f)    Placing its own interests above those of LensCrafters for the purpose of retaining and utilizing money that should have been spent on settling the *Snow* Action; and

       (g)    Compelling LensCrafters to initiate this litigation in order to obtain the rights and benefits to which it is entitled under the Markel Policy.

50.    Westchester has breached the implied covenant of good faith and fair dealing by, among other things:

       (a)    Wrongfully and unreasonably denying coverage for the *Snow* Action;

       (b)    Failing to accept a reasonable settlement of the *Snow* Action within its policy limits, thereby exposing LensCrafters to further litigation and potential liability above the limits of the Westchester Policies;

       (c)    Refusing to settle the *Snow* Action based on improper considerations concerning alleged coverage defenses and allocation issues;

       (d)    Failing to adequately investigate the claims in the *Snow* Action, LensCrafters' potential liability and the reasonableness of the settlement;

       (e)    Placing its own interests above those of LensCrafters for the purpose of retaining and utilizing money that should have been spent on settling the *Snow* Action; and

       (f)    Compelling LensCrafters to initiate this litigation in order to obtain the rights and benefits to which it is entitled under the Westchester Policies.

51.    U.S. Fire, Markel and Westchester, in breach of the implied covenant of good faith and fair dealing, acted unreasonably in committing the wrongful acts alleged above for the purpose of withholding from LensCrafters the rights and benefits to which it is entitled

13

1  under these defendants' policies.

2       52.     By reason of the wrongful conduct alleged herein, LensCrafters has sustained

3  damages in an amount yet to be determined including, but not limited to, attorneys fees,

4  related expenses and costs incurred in obtaining coverage under defendants' policies.

5       53.     The wrongful conduct of defendants alleged herein was done with a conscious

6  disregard of LensCrafters' rights and with the intent to vex, injure or annoy LensCrafters,

7  such as to constitute oppression, fraud or malice under California Civil Code section 3294,

8  thereby entitling LensCrafters to punitive damages in an amount appropriate to punish or set

9  an example of these defendants.

10       WHEREFORE, LensCrafters requests this Court to enter a judgment as follows:

11       1.     With respect to the First Claim for Relief, a declaration that defendants have a

12  duty under the terms and conditions of their policies to indemnify LensCrafters in full for

13  all legal liabilities that may be incurred in connection with the *Snow* Action, and must

14  accept and fund any reasonable settlement of that action, subject only to the limits of

15  liability set forth in the various policies; or if defendants fail to accept and fund a reasonable

16  settlement within policy limits, that they are liable for the full amount of any liability

17  incurred by LensCrafters even if it exceeds their policy limits;

18       2.     With respect to the Second Claim for Relief, damages according to proof at

19  the time of trial, plus interest;

20       3.     With respect to the Third Claim for Relief, an award of actual and

21  consequential damages according to proof at trial and interest allowed by law; punitive

22  damages; and attorneys' fees and related expenses incurred in obtaining coverage as

23  permitted by *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985);

24       4.     With respect to all Claims for Relief:

25       a.     LensCrafters' costs of suit incurred herein; and

26       b.     for such other, further, and/or different relief as the Court may deem

27  just and proper.

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

1    DATED:  August __, 2007          HELLER EHRMAN LLP

2

3                                     By_____

4                                        Richard DeNatale

5                                     Attorneys for Plaintiffs
                                      LENSCRAFTERS, INC. and EYEXAM OF
6                                     CALIFORNIA, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND TORTIOUS BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEMAND FOR JURY TRIAL; CASE NO. C-07-2853 SBA

**DEMAND FOR JURY TRIAL**

Plaintiffs LensCrafters, Inc. and EYEXAM of California, Inc. hereby demand trial by jury.


DATED:  August __, 2007          HELLER EHRMAN LLP



By _____
           Richard DeNatale

Attorneys for Plaintiff
LENSCRAFTERS, INC. and EYEXAM OF
CALIFORNIA, INC.

16