RICHARD DeNATALE (California Bar No. 121416)
CELIA M. JACKSON (California Bar No. 124508)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California  94104-2878
Telephone: +1 (415) 772-6000
Facsimile: +1 (415) 772-6268
Email:  richard.denatale@hellerehrman.com
Email:  celia.jackson@hellerehrman.com

Attorneys for Plaintiffs
LENSCRAFTERS, INC. and
EYEXAM OF CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LENSCRAFTERS, INC.; and EYEXAM OF CALIFORNIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY; and WESTCHESTER FIRE INSURANCE COMPANY, <br><br> Defendants, | Case No.: CV-07-2853 SBA <br><br> **LENSCRAFTERS, INC.'S AND EYEXAM OF CALIFORNIA, INC.'S OPPOSITION TO UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION** <br><br> Hearing Date:    September 18, 2007 <br> Time:    1:00 p.m. <br> Courtroom:    3 <br> The Hon. Saundra Brown Armstrong |
| AND RELATED COUNTER- AND CROSS-CLAIMS. | |

**Table of Contents**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT..................................................1

II.   STATEMENT OF FACTS.................................................................................................5

    A.   The *Snow* Action ..........................................................................................5

    B.   The 2004 California Action In This Court ....................................................5

    C.   LensCrafters Filed This 2007 Action In The Only Court It Could
       Once Indemnity Issues Ripened ...................................................................6

    D.   U.S. Fire's Preemptive Filing In New York.................................................7

    E.   The Insurers And Policies At Issue Here Have Contacts With Many
       States And Cover Insureds And Separate Risks In Many States .................8

III.  ARGUMENT .....................................................................................................................9

    A.   This Case Does Not Involve Broad *Brillhart* Discretion Or Any
       "Presumption" Favoring Abstention Because It Also Concerns Non-
       Discretionary Claims ...................................................................................9

    B.   The *Brillhart* Rationale And Factors Militate In Favor Of This Court
       Continuing To Exercise Its Jurisdiction Over This California Dispute ....................11

          1.   The New York Action Cannot Present The Same Issues For
             The Same Parties; This Action Is More Complete..........................12

          2.   This Coverage Dispute Is Better Settled Here, Because This
             Court Is By Far The More Convenient Forum.................................13

          3.   Retaining Jurisdiction Of The Declaratory Relief Claims Will
             Not Cause Needless Determination Of State Law Issues, But
             Abstaining Would Waste Judicial Resources..................................15

          4.   Only Retention Of Jurisdiction Will Discourage Insurance
             Companies From Forum Shopping By Filing Preemptive And
             Reactive Suits.................................................................................16

    C.   U.S. Fire's Choice Of Law Arguments Are Both Irrelevant And
       Wrong.........................................................................................................17

          1.   The Court Cannot Decide Any Choice Of Law Issue On
             These Papers...................................................................................17

i

2.    Where An Insurance Policy, As Here, Covers Multiple
Insureds And Risks In Many States, California Courts Apply
The Law Of The Forum Where The Particular Risk At Issue Is
Located ........................................................................................................19

3.    California Law Will Likely Apply To All Issues Under Either
Civil Code Section 1646 or the Governmental Interest Test .........................20

IV.    CONCLUSION ..........................................................................................................22

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE
COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA

## Table of Authorities

Page

### Cases

*American Cas. Co. Reading, Pa. v. Krieger*,
  181 F.3d 1113 (9th Cir. 1999).................................................................................. 10, 16

*American States Ins. Co. v. Kearns*,
  15 F.3d 142 (9th Cir. 1994)........................................................................................ 13

*Avondale Indust. v. Travelers Indem. Co.*,
  774 F.Supp.1416 (S.D.N.Y. 1991) ............................................................................ 18

*Brillhart v. Excess Ins. Co. of America*,
  316 U.S. 491 (1942) ............................................................................................ passim

*Bullis v. Security Pac. Nat. Bank*,
  21 Cal.3d 801 (1978)................................................................................................. 18

*California Cas. Indem. Exch. v. Pettis*,
  193 Cal.App.3d (1987).............................................................................................. 19

*Chamberlain v. Allstate Ins. Co.*,
  931 F.2d 1361 (9th Cir. 1991) ............................................................................. 11, 15

*Charter Oak Fire Ins. Co. v. American Home Assurance Co.*,
  2006 WL 305086 (N.D. Cal. Oct. 26, 2006) ............................................................ 13

*Clemco Ind. v. Commercial Union Ins. Co.*,
  665 F.Supp. 816 (N.D. Cal. 1987) ............................................................................ 14

*Continental Cas. Co. v. Robsac*,
  947 F.2d 1367 (9th Cir. 1991).............................................................................. 15, 17

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
  472 F.Supp.2d 1183 (S.D. Cal. 2007) ................................................................. 17, 18

*Dixon Mobile Homes, Inc. v. Walters*,
  48 Cal.App.3d 964 (1975)......................................................................................... 18

*First State Ins. Co. v. Callan Assoc.*,
  113 F.3d 161 (9th Cir. 1997)................................................................................... 3, 10

*Frontier Oil Corp. v. RLI Ins. Co.*,
  63 Cal. Rptr. 3d 816 (2007) ................................................................................. 18, 20

*Gitano Group, Inc. v. Kemper Group*,
  26 Cal.App.4th 49 (1994).......................................................................................... 17

iii

*Government Employees Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) ....................................................................... passim

*Hurtado v. Superior Court*,
    11 Cal.3d 574 (1974) ....................................................................................... 17

*Huth v. Hartford Ins. Co. of the Midwest*,
    298 F.3d 800 (9th Cir. 2002) .................................................................... 11, 17

*Mitsui Sumitomo Ins. Co. of America v. Delicato Vineyards*,
    slip op., 2007 WL 1378025 (E.D. Cal. May 10, 2007) ............................... 15

*Nicolet v. Superior Court*,
    188 Cal.App.3d 28 (1986) ............................................................................... 21

*Polido v. State Farm Mut. Auto. Ins. Co.*,
    110 F.3d 1418 (9th Cir. 1997) ................................................................. 10, 13

*Scarpone v. Empire Blue Cross Blue Shield*,
    1996 WL 231026 (N.D. Cal. Apr. 29, 1996) ............................................... 21

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
    14 Cal.App.4th 637 (1993) ..................................................................... passim

*Van Winkle v. Allstate Ins. Co.*,
    290 F.Supp.2d 1158 (C.D. Cal. 2003) ................................................... 17, 22

*Washington Mutual Bank, FA v. Superior Court*,
    24 Cal.4th 906 (2001) ...................................................................................... 18

*Western Int'l Synd. Corp. v. Gulf Ins. Co.*,
    2007 WL 625264 (9th Cir. Feb. 6, 2007) .............................................. 21, 22

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ................................................................................ 9, 10, 11

**Statutes**

Cal. Civ. Code § 1646 ............................................................................................ 20

**Other Authorities**

*Restatement Second of Conflicts Law*, Section 193 ........................................... 19

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

U.S. Fire asks this Court to dismiss or stay this action ("2007 California Action") in favor of a state court action that U.S. Fire, racing to the courthouse, filed one week earlier in New York. U.S. Fire grounds its motion solely on the "*Brillhart*" doctrine—*i.e.*, that a federal court sitting in a diversity case has broad discretion under the Declaratory Relief Act to exercise or to abstain from exercising jurisdiction where an action seeking **only** declaratory relief was filed while a state court action involving the same issues and parties was pending. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). U.S. Fire raises no other jurisdictional issue, and does not claim that California is an inconvenient forum. U.S. Fire's motion should be denied.

*First*, this dispute involves overwhelming connections to California, and almost none to New York. The two insured plaintiffs—EYEXAM of California, Inc., a California company that operates only in California, and LensCrafters, Inc., an Ohio company (together "LensCrafters")— seek indemnity coverage for a California class action lawsuit entitled *Melvin Gene Snow, et al. v. LensCrafters, Inc., et al.*, San Francisco Superior Court, Case No. CGC-02-40554 ("*Snow* Action"). The *Snow* Action that lies at the center of this coverage dispute seeks to hold LensCrafters liable to a class of more than a million California consumers. The *Snow* plaintiffs allege that LensCrafters' business practices in its 90 California stores violated a number of California statutes that regulate LensCrafters' California operations—including the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.* ("COMIA"). Thus, the particular, and only, insured risk that the defendant insurers are being asked to cover here is LensCrafters' alleged liability to California consumers under California law arising out of discrete California operations. In short, this case is all about California.

*Second*, this Court already is familiar with the coverage issue arising out of *Snow*. Since 2004, it has presided over another coverage suit brought by LensCrafters against a subset of the defendant insurers, entitled *LensCrafters, Inc., et al. v. Liberty Mutual Fire Ins. Co., et al.*, Case No. C-04-01001 SBA ("2004 California Action"). On June 15, 2007, this Court ruled, over U.S. Fire's objections, that the 2007 California Action is "related" to the 2004 California Action. As a result of that prior action, significant discovery, motion practice, and substantive rulings already

1 have been accomplished. This Court devoted significant time and effort to resolving three sets of

2 cross-motions for summary judgment. Its two lengthy opinions addressed many of the same issues,

3 policy provisions, and California statutes that are at issue in the current action. It ruled that there

4 was a potential for coverage, and thus a duty to defend, under some of the same policies at issue

5 here and based on the same policy language contained in the policies issued by U.S. Fire and the

6 other excess insurers.

7      *Third*, U.S. Fire's attempt to beef up the minimal New York connections fails. For

8 example:

9 • U.S. Fire is incorrect in claiming that its policies were issued to a New York entity. In fact,

10     the Risk Management Department of LensCrafters, Inc., located at the company's

11     headquarters in Ohio, purchased the insurance policies on behalf of more than a dozen

12     named insureds. And the New York-based entity U.S. Fire chooses to focus on—Luxottica

13     U.S. Holdings—has been dismissed from *Snow* and is not seeking coverage.

14 • U.S. Fire's argument that some of the negotiations and contracting for the policies occurred

15     in New York likewise goes nowhere. While it is true that LensCrafters used the services of a

16     New York broker (as well as a New Jersey broker), LensCrafters' Risk Manager in Ohio

17     procured the coverage. And the insurers are scattered in many states. It is most telling that

18     the one New York resident insurer (Westchester, by virtue of its place of incorporation) has

19     told the New York court that New York is *not* the proper forum for this insurance dispute.

20     In any event the disputes in this case do not concern contract negotiations or issuance; rather

21     they concern how the undisputed language of the insurance policies applies to the California

22     claims, statutes, and transactions at issue in *Snow*.

23 • New York law will not apply to the claims in this case. U.S. Fire drafted the policies, and

24     affirmatively chose not to include any forum or choice of law provision. There is a

25     presumption that this Court will apply California law in this case—and U.S. Fire has not

26     carried its burden of raising any conflict between California and New York law on any

27     specific issue, so no choice of law analysis can even begin. Moreover, under either the

28     governmental interest test or the California Civil Code section 1646 test, the Court would

2

undoubtedly choose California law.  For example, Section 1646 requires the Court to apply the law of the state where the parties anticipated that the contract was to be performed.  Where an insurance policy covers insureds and risks in multiple states, the place of performance is the state where the particular risk involved in the coverage dispute is located because the insured expects performance there.  *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 646-47 (1993).  Here, that is California.

*Fourth*, the broad *Brillhart* discretion that underpins U.S. Fire's entire argument does not apply because LensCrafters has filed a motion for leave to amend its complaint to add claims for breach of contract and bad faith.  Leave to amend a complaint is liberally granted.  A district court has a "'virtually unflagging' obligation to exercise jurisdiction" over claims such as these.  When they are joined with a declaratory relief claim the district court should *not,* as a general rule, decline to entertain the entire action.  *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225-26 (9th Cir. 1998) (en banc) (quoting *First State Ins. Co. v. Callan Assoc.*, 113 F.3d 161, 163 (9th Cir. 1997)).

*Fifth*, the *Brillhart* factors are either neutral or weigh in favor of proceeding here:

- Because the New York action cannot properly include "the same issues and parties," *Brillhart* discretionary abstention does not come into play.  *Dizol*, 133 F.3d at 1225.  While the two cases are substantially similar, they differ in important ways:  (1) the New York court cannot obtain jurisdiction over EYEXAM of California, a necessary party that does not do business in New York; (2) the New York action does not name ERSIC, another necessary party to the dispute; and (3) because the Court's order dismissing the 2004 California Action requires LensCrafters, Liberty Mutual, and ERSIC to litigate their indemnity claims in this Court, there are serious questions as to whether the New York court can resolve claims among those central parties.

- This Court is by far the most convenient forum.  *Dizol,* 133 F.3d at 1225.  Coverage litigation over *Snow* has been ongoing here in California for three and a half years.  Critical analysis and decisions on substantive issues bearing directly on this action were resolved in the 2004 California Action.  The locus of the dispute is California, and the vast majority of

3

the potential evidence—such as documents and witnesses from LensCrafters' California stores, the underlying claimants and their counsel, and thousands of documents produced in *Snow*—is located in California.  All of the insurers, including U.S. Fire, have been using California-based coverage counsel that are familiar with this dispute.  Not only LensCrafters, but also Liberty Mutual and Westchester, agree the New York action is in the wrong forum.

- The declaratory relief claim here will not require "needless determination of state law issues," and dismissing this action would not prevent duplicative litigation.  *Dizol*, 133 F.3d at 1225.  Dismissing LensCrafters' declaratory relief claim would not avoid two litigations because this case would continue with respect to LensCrafters' claims for breach of contract and bad faith, for which *Brillhart* discretion does not exist.  Moreover, this Court will need to determine the very same state law issues to resolve those claims.  The only way to avoid duplicative litigation is for this Court to retain jurisdiction over this suit, and for the New York court to dismiss or stay U.S. Fire's action pursuant to the motion that LensCrafters has already filed there.

*Finally,* by retaining jurisdiction this Court can discourage the sort of forum-shopping in which U.S. Fire has engaged.  While U.S. Fire—apparently believing the old adage that "the best defense is a good offense"—accuses LensCrafters of forum shopping, the opposite is in fact true.  LensCrafters filed its 2007 California Action when the potential settlement of *Snow* became imminent and indemnity became a real issue.  It filed here because this Court's Order required it to do so.  It initially included only declaratory relief claims because the insurers had not yet breached.  And it promptly moved to amend its complaint after the insurers breached their duty to settle the *Snow* Action.  In contrast, surely aware of the publicly-filed order requiring LensCrafters to file its suit in this Court, U.S. Fire filed its preemptive New York action in the hope that first-filed status would give it an edge in the forum battle; and it included irrelevant insureds in its lawsuit to bolster the illusion of New York connections.  Then, *knowing* LensCrafters' breach of contract claims were about to ripen when U.S. Fire and the other insurers refused to settle *Snow*, and after ***being told*** that LensCrafters intended to file breach of contract claims when ripe, U.S. Fire hurriedly filed this motion based on the grounds that this action involves only declaratory relief.  Only by retaining

4

1   jurisdiction can this Court send the message *Brillhart* demands—that an insurance company should
2   not forum shop by filing preemptive suits against its policyholder.
3        For all these reasons, U.S. Fire's motion to dismiss or stay should be denied.
4   **II.    STATEMENT OF FACTS**
5        **A.    The *Snow* Action**
6        In March 2002, the *Snow* plaintiffs filed a class action complaint in San Francisco Superior
7   Court against LensCrafters and several other entities.  That suit arose from the business model used
8   by LensCrafters, Inc. at its 90 stores in California and its business relationship with EYEXAM, a
9   California-licensed health care plan.  Specifically, the complaint alleges that LensCrafters' business
10  practices and its procedures for handling patient information violate several California laws,
11  including Business & Professions Code 655 (prohibiting certain business relationships between
12  opticians and optometrists) and COMIA (Cal. Civ. Code § 56, regulating disclosure of confidential
13  medical information).  The *Snow* plaintiffs seek to certify a California-only class of more than a
14  million consumers who had their eyes examined by a California-licensed optometrist employed by
15  EYEXAM and who purchased eyewear from LensCrafters on the same day.  Schechter Dec.,
16  ¶¶ 1, 8; Rose Dec., Ex. 1.
17       Only LensCrafters and EYEXAM remain subject to any liability in *Snow*.  Luxottica U.S.
18  Holdings, U.S. Shoe, and EyeMed Vision Care were dismissed or dropped from the case.
19  Schechter Dec., ¶¶ 4-7.  Thus LensCrafters and EYEXAM are the only parties seeking indemnity
20  coverage from the insurers.  Muntel Dec., ¶ 9.
21       **B.    The 2004 California Action In This Court**
22       In March 2004, LensCrafters filed the 2004 California Action for declaratory relief and
23  breach of contract, seeking insurance coverage for the *Snow* Action.  LensCrafters' two primary
24  insurers, Liberty Mutual ("Liberty") and ERSIC, were defendants in the lawsuit.  The 2004
25  California Action raised issues concerning both the duty to defend and the duty to indemnify for
26  any damages that might be paid to the *Snow* plaintiffs.  Jackson Dec., ¶¶ 4, 5 & Ex. 2.
27       Discovery included written discovery, document productions and several depositions.  The
28  Court entertained three sets of complex cross-motions for summary judgment regarding the duty to

defend filed by LensCrafters, Liberty and ERSIC.  To resolve them, the Court analyzed the policy language, considered the underlying factual allegations and California business practices that gave rise to the *Snow* Action, and construed the California statutes and California constitutional right of privacy as they relate to the coverage issues.  The Court issued two major rulings:  (1) that Liberty and ERSIC both have a duty to defend LensCrafters for the claims asserted in *Snow* and (2) that Liberty's policy is primary to ERSIC's for the purposes of the *Snow* claims.  Jackson Dec., ¶¶ 7, 8.  Judgments were entered in November 2005 and are on appeal to the Ninth Circuit.  *Id.*, ¶ 9.

LensCrafters' indemnity claims were not resolved in the 2004 California Action.  At that time, the *Snow* Action was ongoing and mediation had not begun.  Consequently, there was no present controversy requiring immediate resolution between LensCrafters and its insurers, and this Court indicated that LensCrafters' indemnity claims were not yet ripe.  Thus the parties stipulated and the Court ordered that those claims be dismissed without prejudice, with conditions:  (1) any party could re-file indemnity claims when they ripened, (2) such action had to be filed in the Federal District Court for the Northern District of California, and (3) the parties consented to exclusive jurisdiction and venue in this Court.  Jackson Dec., ¶ 10 & Ex. 4.

### C.  LensCrafters Filed This 2007 Action In The Only Court It Could Once Indemnity Issues Ripened

U.S. Fire agrees that the indemnity dispute ripened only recently.  But the story of how and when it ripened is worth reciting because it shows that LensCrafters filed its action when and where it could, while U.S. Fire filed a preemptive suit in order to beat LensCrafters to the courthouse.

The *Snow* Action was actively litigated from 2002 to early 2007.  LensCrafters kept its insurers closely informed about the case.  U.S. Fire and the other insurers attended meetings in San Francisco in January 2006, January 2007, and April 2007 to discuss the progress of the litigation and the prospects for settlement, as well as a mediation session in San Francisco in November 2005.  Jackson Dec, ¶ 11, 14.

Earlier this year, the parties in *Snow* began serious settlement discussions.  On April 27, 2007, the parties—along with Liberty, U.S. Fire and the other insurers—attended a mediation in California at which significant progress was made towards settlement, but no deal was reached.  Jackson Dec., ¶ 12.  Negotiations continued, and by the end of May it was apparent that the

6

1  insurers' positions on certain insurance issues—whether the *Snow* claims are covered, whether the

2  insurers had a duty to approve and fund a settlement, and how settlement funding should be

3  allocated—were significant obstacles to settlement.

4  To resolve these issues, on May 31, 2007, LensCrafters filed this action for declaratory

5  relief.  Per this Court's earlier Order, LensCrafters re-filed in this Court.  On June 15, 2007, the

6  Court deemed this action to be "related" to the 2004 California Action, despite an opposition brief

7  filed by U.S. Fire.  Jackson Dec., ¶ 2 & Ex. 1.  Because the breaches of contract had not yet

8  occurred, the Complaint initially sought only declaratory relief to determine whether and which

9  insurers were liable for indemnity.  Jackson Dec., ¶ 17.

10  In June, LensCrafters reached a settlement of *Snow*, contingent on approval and funding by

11  insurers.  Jackson Dec., ¶ 13.  Because the settlement is reasonable in terms of LensCrafters'

12  exposure in the *Snow* Action and is within the limits of the insurance policies, on June 21

13  LensCrafters asked the insurers to accept the settlement.  A further mediation session was

14  scheduled for July 26, 2007 to finalize the settlement and obtain the insurers' consent and funding.

15  The Superior Court handling *Snow* issued an order requiring the insurers to attend, but U.S. Fire

16  defied the order refused to do so.[1]  *Id.* & Ex. 5.  The mediation was unsuccessful.  *Id.*  The insurers

17  refused to accept the *Snow* settlement, thereby breaching their insurance contracts and their duty to

18  settle.

19  Within eleven days, LensCrafters moved to amend the Complaint to add claims for breach

20  of contract against all insurers and claims for tortious breach of the covenant of good faith and fair

21  dealing against U.S. Fire, Markel and Westchester.  Jackson Dec., ¶ 17.  The hearing on this motion

22  is set for October 2.  *Id.*

23  **D.    U.S. Fire's Preemptive Filing In New York**

24  U.S. Fire knew all about the 2004 California Action (a case it has certainly been following

25  carefully), and its key summary judgment ruling in favor of LensCrafters.  Jackson Dec., ¶ 8 & Ex.

26  3.  Surely aware of the publicly-filed order in that case requiring LensCrafters to re-file indemnity

27
28  [1] U.S. Fire had attended three meetings and two prior mediation sessions in San Francisco, but then U.S. Fire cited its New York complaint as grounds for refusing to attend the July 26 session.  Jackson Dec., ¶ 11 & Ex. 6.

7

1    claims in this Court, and plainly wanting to avoid this Court at all costs, U.S. Fire filed a

2    preemptive, declaratory relief action in New York state court on May 24, 2007—just one week

3    before LensCrafters filed here.

4         Even though only LensCrafters and EYEXAM are seeking coverage from U.S. Fire or any

5    other insurer (Jackson Dec., 16), U.S. Fire also named in its suit some (but not all) of the other

6    dozens of entities insured by the policies.[2]  U.S. Fire sued three other insurers, but did not name

7    ERSIC.  *Id.*, ¶ 18.  LensCrafters has asked the New York court to dismiss or stay U.S. Fire's

8    lawsuit on forum grounds.  *Id.,* ¶ 22.  Liberty seeks the same relief by way of its Sixth Affirmative

9    Defense to U.S. Fire's Complaint:  "Defendant Liberty Mutual is a party to two other actions in

10   California involving the same or similar issues with respect to the duties of Liberty Mutual to

11   defend and/or indemnify the Underlying Action, and, on that basis, this action should be dismissed

12   or in the alternative stayed, until the resolution of those other pending actions."  *Id.,* ¶ 23.  The one

13   New York resident insurer, Westchester, has stated in its answer that New York is not a proper

14   forum.  *Id.*  In addition, EYEXAM has requested dismissal from the New York action based on lack

15   of personal jurisdiction.[3]  *Id.,* ¶¶ 21, 22.

16        **E.    The Insurers And Policies At Issue Here Have Contacts With Many States And
                 Cover Insureds And Separate Risks In Many States**

17        This action includes all of LensCrafters primary and first layer excess insurers, and the

18   policies they issued, for the period February 1, 1998 to February 1, 2006.  The policies were

19   acquired from insurers who have contacts with multiple states.  And the insureds under the policies

20

21         [2] U.S. Fire sued, for example, Luxottica U.S. Holdings (a New York corporation), Luxottica

22   Group S.p.A. (an Italian company), and The United States Shoe Corporation (a Delaware
     corporation).  These three companies had been named in the original *Snow* complaint but, as U.S.

23   Fire should have known, were later dismissed.  Schechter Dec., ¶¶ 4-7.  The only two remaining
     defendants in *Snow* are LensCrafters, Inc. and EYEXAM.

24         [3] EYEXAM was organized as a health care service plan under California's Knox-Keene

25   Health Care Service Plan Act of 1975, solely for the purpose of employing California-licensed
     optometrists to work in optometric offices located within LensCrafters' California stores, in space

26   leased by EYEXAM from LensCrafters.  Grossman Dec., ¶¶ 3, 4.  EYEXAM has never engaged in
     any business in New York.  It is not licensed to do business there, nor has it designated an agent for

27   service there.  It does not provide any services in New York.  It does not maintain any offices or
     bank accounts there, or own or lease any property there, or employ any employees there.  *Id.,* ¶¶ 6,

28   7.

1  include dozens of LensCrafters-related companies who have operations around the country.  While

2  U.S. Fire repeatedly asserts that Luxottica U.S. Holdings, a New York-based company, is the

3  "named insured" and suggests the others are somehow less important "additional insureds," in fact

4  each of the policies contains an endorsement that includes EYEXAM, LensCrafters, and others as

5  "named insureds" with equal status under the contracts.  Rose Dec., Exs. D-I; Muntel Dec., ¶ 5.

6       The policies were negotiated by LensCrafters, Inc.'s Risk Manager in Ohio.  He was

7  assisted by brokers located in New York and New Jersey.  Muntel Dec., ¶¶ 4, 6.  To illustrate why

8  U.S. Fire is mistaken when it asserts that New York contacts and interests predominate, we note

9  that *at least 12 states* have some connection to the contracts in dispute:  (1) California:

10  EYEXAM's state of incorporation and principal place of business; (2) Delaware:  U.S. Fire's state

11  of incorporation; (3) New Jersey:  U.S. Fire's principal place of business and location of its claims

12  handler; location of Markel's claims handler; and location of one broker; (4) Connecticut:  ERSIC's

13  state of incorporation and place where it underwrote LensCrafters' policy and where its claims

14  handler is located; (5) Georgia:  location of Westchester's claims handler; (6) New Hampshire:

15  location of Liberty's claims handler; (7) Ohio:  LensCrafters' state of incorporation and principal

16  place of business, and site of its risk management function; (8) Pennsylvania:  Westchester's

17  principal place of business; (9) Massachusetts:  Liberty's state of incorporation and principal place

18  of business; (10) Virginia:  Markel's state of incorporation; (11) Wisconsin:  Markel's principal

19  place of business; and (12) New York:  Westchester's state of incorporation and location of one

20  broker.  *See* Jackson Dec., ¶¶  21, 24, 25.

21  **III.    ARGUMENT**

22       Citing *Brillhart*, 316 U.S. 491, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and several

23  cases that have applied those decisions, U.S. Fire's sole ground for dismissal or stay is that (a) this

24  action involves only claims for declaratory relief and (b) where a state court action is also pending,

25  there is a presumption that the federal court should dismiss the declaratory relief claims.  U.S.

26  Fire's argument is wrong for many reasons, as we explain below.

27       **A.    This Case Does Not Involve Broad *Brillhart* Discretion Or Any "Presumption"
              Favoring Abstention Because It Also Concerns Non-Discretionary Claims**

28       In *Dizol*, 133 F.3d at 1225-26, the Ninth Circuit, *en banc*, held that the district court's

discretion under the Declaratory Relief Act is quite constrained, ***and any presumption favoring abstention actually is reversed***, when other claims are also presented by the dispute. According to *Dizol*, "there is no presumption in favor of abstention in declaratory relief actions generally, nor in insurance cases specifically." *Id.* at 1225. Moreover:

> Because claims of bad faith, breach of contract, breach of fiduciary duty and rescission provide an independent basis for federal diversity jurisdiction, the district court is ***without discretion*** to remand or decline to entertain these causes of action. Indeed, the district court has a '***virtually unflagging*** *obligation to exercise jurisdiction*' over these claims."

*Id.* at 1225 n.6 (emphasis added) (quoting *First State Ins. Co. v. Callan Assoc.*, 113 F.3d 161, 163 (9th Cir. 1997)). *See also American Cas. Co. Reading, Pa. v. Krieger*, 181 F.3d 1113, 1119-20 (9th Cir. 1999) (same). The Ninth Circuit then repeated:

> [W]hen other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract . . .), ***the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief***.

*Id.* at 1119 (emphasis added).

LensCrafters has already filed a request to amend its complaint to add breach of contract and bad faith claims that ripened only after the initial complaint was filed. This court should take into account this request—as well as the liberal policy permitting amendment—in deciding U.S. Fire's motion.[4] Indeed, it is puzzling that U.S. Fire chose to file this motion while knowing that it was about to spawn breach of contract claims by refusing to accept the *Snow* settlement, and having been told by LensCrafters that it intended to file breach of contract claims if necessary. Jackson Dec., ¶ 20 & Ex. 7. Under *Dizol*, assuming that LensCrafters' breach of contract and bad faith claims are added to this case, the *Brillhart* discretion on which U.S. Fire's motion relies disappears.

We anticipate that U.S. Fire will label LensCrafters' motion to amend a "tactic." But the timing of LensCrafters' motion to amend, filed August 6, 2007, was dictated by events:

---

[4] The Court is not limited to the facts existing when the declaratory relief suit was filed, but may consider the circumstances existing at the time it rules on a request for dismissal. *Wilton*, 515 U.S. at 278 (considering facts that did not exist when federal declaratory relief action was filed. *i.e.*, a later filed state court action that was served before the federal action ); *Krieger*, 181 F.3d at 1119 (court may evaluate the motion to dismiss under the circumstances existing when the issue is decided, not when the declaratory relief suit was filed); *Polido v. State Farm Mutual Automobile Ins. Co.*, 110 F.3d 1418, 1422, overruled on other grounds by *Dizol*, 133 F.3d at 133 (same).

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA

specifically, the insurers' refusal to accept and fund the *Snow* settlement at the July 26 mediation. It would be ironic to penalize LensCrafters for its prudent course of adding the breach claims only after they ripened, and to reward U.S. Fire for filing this motion on grounds it knew would be rendered moot.

Given the non-discretionary claims that LensCrafters seeks to add, dismissing or staying the declaratory relief claims here would thwart the principles behind *Brillhart*. The overriding rationale behind the Ninth Circuit's refusal to apply *Brillhart* when other claims are also brought is the goal of avoiding piecemeal litigation. *See Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367-68 (9th Cir. 1991). The rationale is satisfied when the controversy can be accommodated in one court—even if it is the federal court. *Id.* at 1368. "If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation." *Dizol*, 133 F.3d at 1225-26 (citation omitted).

**B.    The *Brillhart* Rationale And Factors Militate In Favor Of This Court Continuing To Exercise Its Jurisdiction Over This California Dispute**

U.S. Fire offers a flawed application of the policy behind *Brillhart* and the relevant factors the Court must consider. U.S. Fire ignores or downplays some of the factors, and misapplies others to the facts. When properly analyzed, *Brillhart* and the cases that have followed it require retention of jurisdiction over these claims.

As a threshold matter, the decision to retain jurisdiction over a declaratory judgment action lies within the sound discretion of the district court. *Wilton*, 515 U.S. at 278 (district court's decision to exercise jurisdiction "should be reviewed for abuse of discretion"); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002). U.S. Fire's repeated suggestion that the Court has virtually no discretion here, and that there is some overwhelming presumption that the case should be dismissed, simply overstates the law. While Ninth Circuit cases interpret *Brillhart* as creating a presumption against retaining jurisdiction over a purely declaratory relief action, that presumption is easily overcome by the overwhelming connections between this dispute and this forum and by the other compelling reasons why this dispute should proceed in this Court.

**1.    The New York Action Cannot Present The Same Issues For The Same Parties; This Action Is More Complete**

The *Brillhart* doctrine starts from the proposition that there is a pending state court action that presents "the same issues" between "the same parties." *Brillhart*, 316 U.S. at 495. The district court should also consider "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state] proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id*. Where, as here, it is "doubtful" that the state court can adequately address all of the claims, the district court should retain jurisdiction. *Brillhart*, 316 U.S. at 496-97.

The California action is different from—and broader than—the New York action in several respects.

- One of the two insureds seeking coverage, EYEXAM, is not subject to the New York court's jurisdiction and has requested dismissal from the New York action. Jackson Dec., ¶ 22. EYEXAM conducts business exclusively in California, has no New York operations, and could not have anticipated being hailed into a New York court to defend a suit concerning insurance policies that were to be performed in California. *See* Grossman Dec., ¶¶ 6, 7.

- U.S. Fire chose not to sue ERSIC, which issued a policy that potentially covers the *Snow* claims and is a necessary party to this dispute. Jackson Dec., ¶¶ 15, 18.

- The stipulation and order dismissing the 2004 California Action requires LensCrafters, Liberty, and ERSIC to litigate their indemnity claims in this Court, raising serious questions as to whether the New York court can resolve the claims among LensCrafters and its primary insurers. Jackson Dec., ¶¶ 10, 15 & Ex. 4.

Thus, the New York action may be incapable of resolving a large portion of this coverage dispute. Despite this, U.S. Fire boldly asserts that its action is "broader" and "more comprehensive" because it names as defendants several insureds not included in this action. Mot. at 11:11-12:9. But in reality, all U.S. Fire has done is add several entities to its New York complaint (like Luxottica U.S. Holdings and U.S. Shoe) that do not seek coverage for *Snow*, and are

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA

not proper defendants, because they present no current case or controversy.[5]

## 2. This Coverage Dispute Is Better Settled Here, Because This Court Is By Far The More Convenient Forum

The district court should consider "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. Three related *Brillhart* factors consider: (1) "whether the declaratory action will settle all aspects of the controversy," (2) "whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue," and (3) "the convenience of the parties, and the availability and relative convenience of other remedies." *Dizol*, 133 F.3d at 1225 n.5 (quoting *American States Ins. Co. v. Kearns*, 15 F.3d 144, 145 (9th Cir. 1994). Here, these factors overwhelmingly weigh in favor the California forum.

In addition to including necessary parties and important claims not present in the New York action, this Court can better settle this dispute for several reasons. *First*, this Court handled the 2004 California Action, presiding over significant discovery and motion practice and issuing two summary judgment rulings that bear on this dispute. This Court has already addressed many of the same legal issues, policy provisions, factual allegations, and underlying claims at issue in the current action.

*Second*, this California federal court is better situated, as compared to the New York state court, to review and rule upon issues of first impression concerning the California statutes, like COMIA, that govern LensCrafters' alleged liability in *Snow*.[6] Indeed, the insurers have raised coverage defenses—such as their argument that COMIA's nominal damage remedy is an

---

[5] U.S. Fire argues that under *Polido*, 110 F.3d 1418, this Court must abstain even if the two actions are not "parallel," but merely similar. Mot. at 10-11. But nine months after *Polido* was decided, the Ninth Circuit, *en banc*, issued *Dizol*, which reiterated that there is a presumption in favor of abstention in pure declaratory relief actions "[i]f there are parallel state proceedings involving the **same issues and parties** . . . ." *Dizol*, 133 F.3d at 1225 (emphasis added). *See also Charter Oak Fire Ins. Co. v. American Home Assurance Co.*, 2006 WL 3050863, at * 4 (N.D. Cal. Oct. 26, 2006) (noting that pre-*Dizol* cases applying the presumption when the parties and issues in the federal action were not the same are inconsistent with the later *en banc* opinion in *Dizol*).

[6] No matter what choice of law determinations are made later in this case (*see* Section C.3 below), this dispute will still center on the analysis of the California laws that give rise to LensCrafters' alleged liability.

1  uninsurable penalty despite the statute's express language to the contrary—that will require a close

2  analysis of the meaning and legislative history of this California statute.

3       ***Third***, and perhaps most important, this Court is by far the most convenient forum, because

4  California is the center of the claims, contacts, witnesses, documents, and other evidence.  The

5  underlying *Snow* Action that lies at the center of this dispute, and from which the bulk of the facts

6  and evidence will be drawn, is in California.  So are the 90 LensCrafters stores whose business

7  practices are at issue both in *Snow* and in this coverage lawsuit.  The witnesses to those business

8  practices are in California, and the alleged violations of patient privacy occurred here.

9       In addition, one of the insureds seeking coverage is a California resident that operates solely

10 in this state.  California has a "very strong interest" in regulating insurance contracts entered into by

11 its own residents.  *Clemco Ind. v. Commercial Union Ins. Co.*, 665 F.Supp. 816, 818 (N.D. Cal.

12 1987).  The other insured is an Ohio company whose California operations (and those of no other

13 state) are at issue.  Again, California has a strong interest in determining the meaning of its statutes

14 and whether a California business can be insured for alleged liabilities that arise under them.

15      For all these reasons, California plainly is the most convenient and sensible forum.  This

16 may explain why all the parties—including U.S. Fire and the other insurers—have long-standing

17 California coverage counsel and have met together five times in San Francisco (and nowhere else)

18 over the past two years to discuss the *Snow* case and the coverage issues.  *See* Jackson Dec., ¶¶ 11,

19 14.

20      U.S. Fire downplays all the California connections by suggesting that the coverage issues

21 are somehow independent of the underlying facts.  U.S. Fire prefers to focus on New York because

22 some of the policies were brokered there.  But in fact the brokers and underwriters are located in

23 many different states.  And in any event, we anticipate little need for discovery from brokers and

24 underwriters, because this case does not involve significant contract formation issues.  The key

25 work in this coverage dispute will involve understanding the actual facts and laws underlying the

26 insureds' alleged liability and applying them to the terms of the insurance policies.

27      In the end, while there are more than ten states that can claim some connection to the

28 insurance policies at issue here, California—not New York—is the state at the center of the issues

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE
COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA

in dispute. It bears repeating that Westchester, the only insurer that is a citizen of New York, has asserted that New York is an inconvenient forum, and Liberty, LensCrafters' primary insurer that has been defending the *Snow* Action, has asserted in its answer that U.S. Fire's New York complaint should be dismissed or stayed in favor of this California action. Jackson Dec., ¶ 23 & Exs. 8, 9. Under *Brillhart,* in short, this dispute is "better settled" here.

> ### 3. Retaining Jurisdiction Of The Declaratory Relief Claims Will Not Cause Needless Determination Of State Law Issues, But Abstaining Would Waste Judicial Resources

As noted in *Continental Cas. Co. v. Robsac*, 947 F.2d 1367, 1371 (9th Cir. 1991), *reversed on other grounds in Dizol*, 133 F.3d at 133, one of the concerns expressed in *Brillhart* was to "avoid having federal courts needlessly determine issues of state law." The key phrase is "***needlessly***." Federal courts routinely adjudicate declaratory relief claims involving state law issues concerning insurance coverage. In *Mitsui Sumitomo Ins. Co. of America v. Delicato Vineyards*, slip op., 2007 WL 1378025, at *6 (E.D. Cal. May 10, 2007), for example, the district court found that this *Brillhart* factor did not support abstention because the insurance coverage dispute did not require the court to decide novel questions of state law; rather, as the court explained, the coverage dispute involved interpretation of an insurance policy, which is governed by well-settled state law that a California federal court can apply.

Moreover, this *Brillhart* factor leans in favor of abstention only when the federal court's decision is unnecessary and gratuitous because a state court having jurisdiction over all necessary parties can and will render decisions on the same issues. Here, because this action includes all necessary parties while the New York action does not, this Court's decisions will not be "needless." And since the Court does not have discretion to abstain from the breach of contract and bad faith claims, it will have to decide the same state law issues to resolve those claims anyway, so keeping the declaratory relief claims would not implicate this *Brillhart* factor. *Chamberlain*, 931 F.2d at 1367.

Nor does this case present any risk of "gratuitous interference" in state court litigation. *Brillhart*, 316 U.S. at 495. The New York action has been pending only since May 2007, and to date little substantive activity has taken place there other than the filing of the complaint, answers,

15

and cross-complaints, and the filing of LensCrafters' motion to dismiss or stay the case. Jackson Dec., ¶ 19, 22. In contrast, this California litigation affords the parties and the Court the opportunity to build on, rather than waste, the time and effort already expended by the Court and the parties in the 2004 California Action. In *Krieger*, the Ninth Circuit held that because the district court had "worked long and hard" on the coverage dispute, and "the record in [the] case is voluminous," "the waste of judicial resources inherent in duplicative litigation would occur ***not*** if the federal action ***continued, but if it were dismissed*** . . . ." *Id.* at 1119 (emphasis added). *Krieger* may just as well have been talking about this case.

### 4. Only Retention Of Jurisdiction Will Discourage Insurance Companies From Forum Shopping By Filing Preemptive And Reactive Suits

A key purpose of the *Brillhart* doctrine is to discourage the filing of reactive declaratory relief actions as a means of forum shopping. Almost as a rule, this principle has been applied in insurance cases to prevent insurance companies from racing to federal court to file declaratory relief actions in order to deprive the insured of a state law action, not the other way around. Moreover, if the insured's federal action is not "reactive," meaning it was not filed for the improper purpose of "procedural fencing," then this factor does not weigh in favor of abstention.

U.S. Fire, of course, contends that it was LensCrafters that engaged in forum shopping in filing the 2007 California Action.[7] Yet it is indisputable on the record here that LensCrafters had no choice but to re-file its indemnity claims in this Court. Jackson Dec., ¶ 10 & Ex. 4. And it made eminent sense for LensCrafters to file the indemnity claims here—because this is where the 2004 California Action proceeded, where the *Snow* Action is pending, where all the meetings between LensCrafters and its insurers concerning *Snow* have taken place, and where a court was already familiar with the dispute. As for timing, this suit was filed one week later than U.S. Fire's action only because LensCrafters was acting judiciously to try to resolve its dispute informally before re-instituting its indemnity action, while U.S. Fire raced to New York in an effort to avoid at all costs

---

[7] U.S. Fire's further suggestion that the ***2004*** California Action somehow was reactive litigation intended to preclude U.S. Fire's state court action filed three years later (Mot. at 19-20) is so fantastic that it requires no substantive response.

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA

litigating before this Court.[8]

In terms of forum shopping. then, U.S. Fire has it backwards. **U.S. Fire** is the party that engaged in "procedural fencing" by filing a preemptive, reactive suit in state court. Abstaining in this case would only serve to reward U.S. Fire's tactics. *Robsac*, 947 F.2d at 1372 (insurer's suit may be "reactive" when brought in response to a claim the insurer believes is not covered, even if the insurer files first); *Krieger*, 181 F.3d at 1119 (recognizing countervailing forum shopping considerations where defendants, not plaintiff, are the "major offenders" with regard to forum shopping); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.Supp.2d 1183, 1191-92 (S.D. Cal. 2007) (refusing to find forum shopping by plaintiff suing in federal court where the case had an obvious connection to the Southern District of California).

**C.    U.S. Fire's Choice Of Law Arguments Are Both Irrelevant And Wrong**

Although it discusses choice of law at length, U.S. Fire acknowledges that "this Court does not need to conduct a choice of law analysis or determine which state's law will apply to this dispute . . . ." Mot. at 14:4-5. U.S. Fire is right that the Court need not decide which law will apply. Moreover, for the reasons discussed below, the Court **cannot** conduct that analysis now. For present purposes, the Court must decide this motion on the assumption that California provides the rule of law for all issues. U.S. Fire's choice of law arguments are also flat wrong—this Court would almost certainly apply California law to all issues under the applicable choice of law tests.

**1.    The Court Cannot Decide Any Choice Of Law Issue On These Papers**

The Court cannot conduct a choice of law analysis in the abstract, or in general terms. *See Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162 (C.D. Cal. 2003) ("The fact that two states are involved does not itself indicate that there is a 'conflict of laws' or 'choice of law' problem.") (quoting *Hurtado v. Superior Court*, 11 Cal.3d 574, 580 (1974)) (internal citation omitted). Rather, the analysis can only be conducted with respect to specifically identified legal issues and principles that are pertinent to the dispute. This is true under both California Civil Code

---

[8] The one week difference in filing date is irrelevant under *Brillhart*. While the facts of *Huth* are completely different, and warranted abstention, the Ninth Circuit said there: "the fact that Hartford [the insurer] won the race to the courthouse by several days does not place it in a preferred position." *Huth*, 298 F.3d at 804.

section 1646 and the governmental interest test.  *See Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 915 (2001) and *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal.App.4th 637, 645 (1993) (under governmental interest test, the first, essential step is to identify an issue where there is a difference in the law of the states); *Gitano Group, Inc. v. Kemper Group*, 26 Cal.App.4th 49, 57 (1994) (finding choice of law irrelevant under section 1646 because there was no identified conflict between the law of the states that the parties cited).  In fact, under the recent decision by Justice Croskey in *Frontier Oil v. RLI Insurance*, 63 Cal.Rptr.3d 816 (2007) (slip op.), the Court cannot even determine which of the two tests applies until specific conflicts are identified.  *Id.* (holding that Section 1646 applies to conflicts that involve pure contract interpretation, while governmental interest test applies to conflicts about other issues related to coverage).  When no issues are identified on which the laws of two states conflict, the choice of law analysis cannot even begin.

We have searched U.S. Fire's papers in vain for discussion of any specific legal issue where it contends the laws of California and New York differ—and there is none.  Thus, we cannot even address which of the two potential choice of law tests might apply, or cite authorities and marshal facts showing why California law should govern.[9]  Where the party advocating application of another state's law fails to meet its burden of identifying an issue and showing there is a true conflict, the Court must apply the law of the forum.  *Costco*, 472 F.Supp.2d at 1198 ("[t]he party advocating for the application of foreign law carries the burden of proof"); *Dixon Mobile Homes, Inc. v. Walters*, 48 Cal.App.3d 964, 972 (1975) ("The law of the forum will be displaced only if there is a compelling reason for doing so.") (citation omitted) *overruled on other grounds by Bullis v. Security Pac. Nat. Bank*, 21 Cal.3d 801, 815 n.18 (1978).[10]

---

[9] It would be a violation of due process for U.S. Fire to wait until its reply to identify purported conflicts on specific points since LensCrafters would have no opportunity to respond.

[10] U.S. Fire's argument in its footnote 11 that a New York court will apply New York law, again without the requisite analysis of the factors and issues, deserves as brief a response. *Avondale Indust. v. Travelers Indem. Co.*, 774 F.Supp.1416, 1422 (S.D.N.Y. 1991) actually said that New York courts would apply "the law of the jurisdiction which has the greatest interest in the matter," and the first factor it listed was the "**location of the insured risk**."  *Id.* at 1422 (emphasis added).  The second factor listed in *Avondale* was the residence of the parties—though here neither U.S. Fire, nor LensCrafters, Inc., nor EYEXAM is a New York resident.

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA

**2.    Where An Insurance Policy, As Here, Covers Multiple Insureds And Risks In Many States, California Courts Apply The Law Of The Forum Where The Particular Risk At Issue Is Located**

While no choice of law analysis is necessary or possible here, we feel compelled to address U.S. Fire's argument because it misstates the law in several respects. Under California choice of law principles, California law should apply in this case because California is the location of the specific insured risk at issue. *Stonewall*, 14 Cal.App.4th at 646-47; *see also Restatement Second of Conflicts of Law* ("*Restatement*"), Section 193, Comment F. Under *Stonewall*, where an insurance policy covers risks that are in several states, the court is more likely to treat the policy as if ***separate policies*** were issued in the principal location of each risk. *Id. Stonewall*, in fact, rejected the same argument U.S. Fire makes here—namely, that all the separate insureds and risks should be conglomerated into one giant "insured risk," and because that conglomerated risk is not confined to California, the location of the risk has little importance. *Stonewall* involved a single insured, a Wisconsin corporation, that bought a policy covering its operations in 18 states. Applying the "multiple risks equals multiple policies" analysis, the court applied California law; since the manufacturing operations that led to the claim were confined to California and the insurer reasonably expected California law to apply. *Id.* at 647-48.

In discussing these cases, U.S. Fire argues that *California Cas. Indem. Exch. v. Pettis*, 193 Cal.App.3d 1597, 1607 (1987) applied the *Restatement* to rule that contract disputes are governed by the law of the state that, for the specific issue, "has the most significant relationship to ***the transaction and the parties to the contract***." Mot. at 15:2-7 (emphasis in U.S. Fire brief). What *Pettis* actually said is that the court should apply the law of the state that ***the parties understood was the principal location of the risk***, unless, with respect to the issue, some other state has a more significant relationship. *Pettis*, 193 Cal.App.3d at 1610. Next, U.S. Fire cites *Stonewall* for the propositions that California courts apply the law of the state where the claim or risk is located only when the parties expected the risk to be confined to a single state (Mot. at 16:17-18) and that "the location of the risk has less significance . . . where the policy covers a group of risks scattered throughout two or more states." Mot. at 17:2-4. In fact, *Stonewall* **refused** to apply these principles, which it was quoting from a different case, and ruled instead that the court should treat a

19

policy covering multi-state risks as if separate policies covered the separate locations. *Stonewall*, 14 Cal.App.4th at 647, and 647, n.6.

These authorities fully support LensCrafters' position. U.S. Fire issued its policies to a large number of insureds located around the country; it agreed to cover a number of separate risks in a variety of states, knowing that some of those risks were confined to a single state; and it expressly agreed to cover as a named insured EYEXAM, which operates only in California and whose insured risks are entirely within this state.

### 3. California Law Will Likely Apply To All Issues Under Either Civil Code Section 1646 or the Governmental Interest Test

California Civil Code section 1646 provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." U.S. Fire glides right past the "place of performance" because it prefers to argue about the "place of contracting." But the second prong does not apply at all if there is a place of performance. As discussed above (Section C.2), where a policy covers nationwide operations of many insureds, it will be treated as if separate policies were issued in the location of each risk. Place of performance governs under Section 1646 where the contract expressly or implicitly contemplates performance in one or more particular places. *Frontier*, 63 Cal.Rptr.3d at 826. According to *Frontier*: "If the insured risk involves operations at one or more fixed locations, as here, a third party complaint against the insured arising from those operations typically is prosecuted in the jurisdiction where the operations are located." *Id*. at 837. The court concluded that even though the insurance contracts were entered into in Texas (*id.* at 821), California law governed, because the parties had to anticipate that a suit arising from the operations of a California insured would be prosecuted in California, and because performance of the insurance contract with respect to a California lawsuit would take place in California. *Id.* at 837.[11]

_____

[11] The *Frontier* court was not persuaded by the trial court's reliance on "Texas Change Endorsements" to conclude that Texas law should apply. *Id.* at 822-823. U.S. Fire's similar argument about New York Change Endorsements in its policies is even less persuasive since the key portion of the endorsements applies only to "'Claims' and 'Suits' brought in New York State." *See* Rose Dec., Exs. D-F. This helps show that U.S. Fire contemplated that its multi-state, multi-

20

1    Here, indeed, the insurers have already been performing activities under the contracts in

2    California—*e.g.,* defending the *Snow* action, investigating the *Snow* claims, reviewing documents

3    produced in *Snow*, attending meetings with LensCrafters, and participating in mediations.  For

4    coverage issues related to *Snow*, Section 1646 would require application of California law.

5    The government interest test would also result in application of California law.  The various

6    *Restatement* factors—place of contracting, place of performance, location of subject matter of the

7    contract, *etc.*—must "be evaluated according to their relative importance with respect to the

8    particular issue."  *Stonewall*, 14 Cal.App.4th at 646.  Thus, where a liability insurance policy is in

9    dispute, "particular importance is placed on the location of the subject matter of the contract, *i.e.*,

10    the location of the insured risk" because "the parties would naturally expect the local law of the

11    state where the risk is to be principally located to apply," and that state "has an interest in the

12    determination of issues arising under the insurance contract."  *Id.*

13    As in *Stonewall*, California has an obvious and strong interest in this litigation.  California's

14    interest in protecting its residents would be more severely impaired by applying New York law than

15    would New York's interest in regulating its resident insurers if California law were applied.

16    *Scarpone v. Empire Blue Cross Blue Shield*, 1996 WL 231026, at *6-7 (N.D. Cal. Apr. 29, 1996).

17    There, applying the governmental interest test, the court held that California's interest in protecting

18    a resident insured from improper denial of insurance proceeds outweighs New York's interest in

19    protecting a New York resident insurer when the insurer knew the covered risk was in California,

20    even though the initial policy was issued to New York resident.  *Id.*; s*ee also Nicolet v. Superior*

21    *Court*, 188 Cal.App.3d 28, 418-19 (1986) (California law allowing punitive damages against

22    insurer applied rather than Pennsylvania law restricting such damages because California has

23    greater interest in protecting insureds from bad faith denials of coverage when the insurer offered

24    coverage to California resident than Pennsylvania has in protecting a resident insurer from punitive

25    damages) *appeal dismissed as moot* 236 Cal.Rptr. 905 (1987); *Western Int'l Synd. Corp. v. Gulf*

26    _____

27    risk policy would involve claims in many states, and it had to conform its coverage grant to New
      York requirements for New York claims only.  *Stonewall*, 14 Cal.App.4th at 647-48, found that

28    these type of change endorsements evidence the parties' understanding that the law of the state
      where the particular claim arose would apply.

*Ins. Co.*, 2007 WL 625264, at * 3-4 (9th Cir. Feb. 6, 2007) (California law applied on prejudice standard for late notice instead of New York's stricter notice requirement).[12]

Again, while LensCrafters cannot brief, and the Court cannot engage in, any meaningful choice of law analysis, it is clear that U.S. Fire's argument that New York law must apply is simply wrong. The Court's consideration of this motion should proceed on the assumption that California law will apply.

**IV.    CONCLUSION**

For the foregoing reasons, this Court should not abstain in favor of the New York action.

DATED: August 28, 2007              Respectfully submitted,

                                    HELLER EHRMAN LLP


                                    By */s/ Richard DeNatale*
                                        RICHARD DENATALE

                                    Attorneys for Plaintiffs
                                    LENSCRAFTERS, INC. and EYEXAM OF
                                    CALIFORNIA, INC.

---

[12] Although U.S. Fire cites *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, for the proposition that New York's interests in regulating and protecting its resident insurers is greater than California's competing interest in protecting its residents from unfair practices of insurance companies, that case did not involve any California resident insured.

LENSCRAFTERS' AND EYEXAM OF CALIFORNIA'S OPPOSITION TO UNITED STATES FIRE INSURANCE COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ACTION, CASE NO. C 07-2853 SBA