# TAB 11

Westlaw.

14 Cal.App.4th 637

Page 1

14 Cal.App.4th 637, 17 Cal.Rptr.2d 713

**(Cite as: 14 Cal.App.4th 637)**

▷

STONEWALL SURPLUS LINES INSURANCE
COMPANY et al., Plaintiffs and Respondents,
v.
JOHNSON CONTROLS, INC., Defendant and
Appellant.
**No. D013420.**

Court of Appeal, Fourth District, Division 1,
California.

Mar. 24, 1993.

SUMMARY

In an action for personal injuries caused by an
exploding car battery, the jury awarded punitive
damages against the battery manufacturer.
Subsequently, the manufacturer's liability insurers
filed a declaratory relief action claiming that they
were not required to indemnify the manufacturer for
the punitive damages. The manufacturer, which was
based in Wisconsin, argued that Wisconsin law
applied and permitted it to recover from the insurers.
The trial court ruled that California law applied and
barred indemnification for punitive damages. It
entered summary judgment for the insurers. (Superior
Court of San Diego County, No. 610216, Ronald L.
Johnson, Judge.)

The Court of Appeal affirmed. It held that, given the
nature of the risks involved, the manufacturer had in
effect obtained separate policies for separate risks in
the states where it did business, and that the parties
would reasonably expect California law to govern the
right to indemnity. Since the defective battery was
made in California, sold to a California retailer, and
purchased by a California resident who was injured
in California, the court held that applying California
law was consistent with the parties' expectations,
with California's interest in deterring tortfeasors by
compelling them to pay punitive damages, and also
with Wisconsin's interest in protecting the reasonable
expectations of its insured. (Opinion by Benke,
Acting P. J., with Froehlich and Nares, JJ.,
concurring.)

HEADNOTES

Classified to California Digest of Official Reports

(1) Damages § 25--Punitive Damages--Persons
Liable--Insurers--Public Policy.
Public policy prohibits insurance covering punitive
damages, whether the conduct giving rise to the
award was intentional **\*638** or committed in
conscious disregard of the safety or rights of the
plaintiff.

[Liability insurance coverage as extending to
liability for punitive or exemplary damages, note, 16
**A.L.R.4th** 11.]

(2a, 2b) Conflict of Laws § 1--Governmental
Interest Approach.
Under the "governmental interest" approach to
choice of law problems, which is followed in
California, the forum must search to find the proper
law to apply based on the interests of the litigants and
the involved states, considering all the foreign and
domestic elements and interests involved in the case
to determine the applicable rule.

(3) Conflict of Laws § 5--Contracts--Governmental
Interest Approach.
Under the "governmental interest" approach to
choice of law problems, which is followed in
California, the parties' relevant contacts with the
forum are examined in connection with the interest of
the involved state in the issues, the character of the
contract and the relevant purposes of the contract law
under consideration.

(4) Conflict of Laws § 5--Contracts--Relevant
Contacts.
Where no effective choice of law has been made by
the parties, the relevant contacts to be considered in
determining which state's law to apply in a dispute
over the validity or effect of a contract are: the place
of contracting; the place of contract negotiation; the
place of performance; the location of the contract's
subject matter; and the domicil, residence,
nationality, place of incorporation and place of
business of the parties. These contacts are evaluated
according to their relative importance with respect to
the disputed issue.

(5) Conflict of Laws § 5--Contracts--Casualty
Insurance Contracts--Multiple Risk Contracts.
In a conflict of law dispute involving a casualty
insurance contract, particular importance is placed on
the location of the insured risk. The applicable law is

14 Cal.App.4th 637
14 Cal.App.4th 637, 17 Cal.Rptr.2d 713
**(Cite as: 14 Cal.App.4th 637)**

that of the state which the parties understood was to be the principal location of the insured risk during the policy term, unless some other state has a more significant relationship with the particular issue. The state where the insured risk is located has an interest in the determination of issues arising under the insurance contract. Where a multiple risk policy insures against risks located in several states, the transaction may be viewed as if it involved separate policies, each insuring an individual risk and interpreted under the law of the state where the particular risk is principally located.

[See 1 **Witkin**, Summary of Cal. Law (9th ed. 1987) Contracts, § 71.]**\*639**

(6) Conflict of Laws § 6--Torts--Punitive Damages--Insurance Coverage-- Injury to California Resident in California Caused by Product Made and Sold in California.
In an action by insurers for a declaration that they were not liable for punitive damages awarded against the insured in an action for personal injuries caused by a defective car battery, the trial court properly applied California law and granted summary judgment to the insurers, instead of applying Wisconsin law as sought by the insured. The insured was a large corporation with worldwide operations and both the insured and the insurers had carefully considered the complexity of its activities when the policies were issued. The parties would reasonably expect California law to govern the insured's right to indemnity; given the nature of the risks involved, the insured in effect obtained separate policies for separate risks in the states where it did business. Since the defective battery was made in California, sold to a California retailer, and purchased by a California resident who was injured in California, applying California law was consistent with the parties' expectations, with California's interest in deterring tortfeasors by compelling them to pay punitive damages, and also with Wisconsin's interest in protecting the reasonable expectations of its insured.

(7) Conflict of Laws § 1--Choice of Law--Constitutional Requirements.
Due process and full faith and credit require that for a state's law to be selected in a constitutionally permissible manner, that state must have a significant contact or contacts creating state interests such that choice of its law is not arbitrary or fundamentally unfair.

COUNSEL

Arnstein & Lehr, Michael A. Stiegel, Arthur L. Klein, Luce, Forward, Hamilton & Scripps, Richard R. Spirra and Mark W. Hansen for Defendant and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Virginia R. Gilson, James E. Chodzko and Robert Scott Dreher for Plaintiffs and Respondents.

**BENKE, Acting P. J.**

In this case a San Diego jury returned a verdict assessing $6.5 million in exemplary damages against a Wisconsin corporation. The corporation's liability insurers, residents of Connecticut, Alabama, **\*640** Texas and Illinois, filed a declaratory relief action alleging they were not required to provide the corporation with any indemnity for the exemplary damages. The corporation answered the complaint, alleging Wisconsin law governed the policies and under Wisconsin law the insurers were liable for both compensatory and punitive damages.

On cross-motions for summary judgment the trial court agreed with the insurers and entered judgment in favor of the insurers. On appeal we affirm.

The parties agree that in California an insured may not seek indemnity from an insurer for exemplary damages. Because the defective battery which gave rise to the underlying claim was manufactured in California and caused injury in California to a California resident, California has an interest which supports application of this restriction on insurance coverage.

Factual and Procedural History
A. *Jones Action*
On June 3, 1986, a resident of San Diego, Gary Jones was assisting his neighbor Fred Hill "jump-start" Hill's car. While Jones was working on Hill's battery it exploded. Jones suffered brain damage and was blinded in one eye. As a result of his injuries Jones has experienced persistent seizures.

The battery in Hill's car was manufactured in Fullerton, California, by defendant and appellant Johnson Controls, Inc. (Johnson Controls). Hill purchased the battery from a Sears store in San Diego.

Jones and his wife, Mona, filed a complaint against Hill, Sears, and Johnson Controls in superior court in San Diego. Following trial, the jury returned a verdict

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 Cal.App.4th 637
14 Cal.App.4th 637, 17 Cal.Rptr.2d 713
**(Cite as: 14 Cal.App.4th 637)**

which found Johnson Controls and Sears had been negligent and that their negligence caused Jones's injuries. The jury found Jones had not been negligent. The jury awarded Jones $2,905,000 in compensatory damages and his wife $325,000 in damages.

In addition, the jury found Johnson Controls had acted with malice, fraud or oppression. As we have previously noted, the jury found that $6.5 million was an appropriate amount of punitive damages to impose on Johnson Controls.**\*641**

Judgment in the amount of $10,693,649.228 [FN1] was entered against Johnson Controls.

> FN1 This amount included an award of prejudgment interest and costs.

### B. *These Proceedings*

On March 17, 1989, shortly after the verdict in the Jones action was returned, plaintiffs and respondents Stonewall Surplus Lines Insurance Company (Stonewall), Constitution State Insurance Company (Constitution) and Republic Insurance Company (Republic) filed a declaratory relief action against Johnson Controls and the Joneses in superior court in San Diego. The insurers alleged they had provided excess liability insurance to Johnson Controls at the time Jones was injured. The insurers further alleged they were not required to indemnify Johnson Controls for the exemplary damages awarded because such indemnification was contrary to public policy and because they had not been given timely notice of the Joneses' claim.

After making an unsuccessful attempt to remove the case to district court and an unsuccessful attempt to have the case dismissed on forum non conveniens grounds, Johnson Controls filed an answer. As an affirmative defense Johnson Controls alleged the insurance policies issued by the excess insurers were governed by Wisconsin law and that, in any event, a judgment in the excess insurers' favor would be an unconstitutional impairment of Johnson Controls's contract rights and violate its right to due process of law.

The insurers moved for summary adjudication. They argued that, as alleged in their complaint, they are not liable for the punitive damages assessed against Johnson Controls. Johnson Controls filed a cross-motion for summary judgment or, in the alternative, summary adjudication. Johnson Controls, as alleged in its answer, argued the insurance contracts were governed by Wisconsin law which permits insurance

companies to indemnify punitive damages awards.

The trial court agreed with the insurers and granted their motion and denied Johnson Controls's motion. Having found the insurers had no obligation to indemnify the punitive damage award and no other triable issue of material fact, the trial court entered judgment in favor of the insurers. Johnson Controls filed a timely notice of appeal. [FN2]**\*642**

> FN2 An order directing entry of judgment in favor of the insurers was filed on August 13, 1990. Johnson Controls filed a notice of appeal from the order on October 12, 1990. Thereafter, on April 11, 1991, a judgment in favor of the insurers was entered. If, as the insurers suggest, the August 13, 1990, order was not appealable (see *Dover v. Sadowinski (1983) 147 Cal.App.3d 113, 115 [194 Cal.Rptr. 866]*), the notice of appeal may be construed as if it was filed immediately after entry of judgment, (rule 2(c), Cal. Rules of Court.) Thus, as Johnson Controls argues, under either circumstance we have jurisdiction to reach the merits of its appeal.

### Issues on Appeal

As it did below, Johnson Controls argues its rights under the insurance policies are governed by the law of Wisconsin, the state where its headquarters are located. Johnson Controls contends Wisconsin law is required by both conflict of laws principles and the United States Constitution. We reject these contentions and affirm the judgment.

### Discussion
### I

We begin our analysis of Johnson Controls's conflict of laws argument by determining whether there is any conflict between the laws of California and Wisconsin. (*Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co.* (1980) 103 Cal.App.3d 198, 202 [162 Cal.Rptr. 720].) As "succinctly described in *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666]: 'The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical.' (*Id.*, at p. 580; see also *Beech Aircraft Corp. v. Superior Court* (1976) 61 Cal.App.3d 501, 518 [132 Cal.Rptr. 541].)" (*Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co., supra,* 103 Cal.App.3d at p. 202.)

(1) The parties agree that in California an insurer is

14 Cal.App.4th 637
14 Cal.App.4th 637, 17 Cal.Rptr.2d 713
**(Cite as: 14 Cal.App.4th 637)**

Page 4

not liable for any portion of a judgment which awards punitive damages. (*City Products Corp. v. Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 42 [151 Cal.Rptr. 494] (*City Products*); see also *Peterson v. Superior Court* (1982) 31 Cal.3d 147, 156 [181 Cal.Rptr. 784, 642 P.2d 1305]; *State Farm Fire & Cas. Co. v. Superior Court* (1987) 191 Cal.App.3d 74, 77 [236 Cal.Rptr. 216]; *California State Auto. Assn. Inter-Ins. Bureau v. Carter* (1985) 164 Cal.App.3d 257, 262-263 [210 Cal.Rptr. 140, 54 A.L.R.4th 1177]; *Ford Motor Co. v. Home Ins. Co.* (1981) 116 Cal.App.3d 374, 379 [172 Cal.Rptr. 59]; Annot., Insurance Coverage-Punitive Damages, 16 A.L.R.4th 11.) As explained in *City Products*, "the policy of this state with respect to punitive damages would be frustrated by permitting the party against whom they are awarded to pass on the liability to an insurance carrier. The objective is to impose such damages in an amount which will appropriately punish the defendant in view of 'the actual damages sustained,' 'the magnitude and flagrancy of the offense, the **\*643** importance of the policy violated, and the wealth of the defendant.' [Citation.] Consideration of the wealth of the defendant would of course be pointless if such damages could be covered by insurance. The onus of the award would depend entirely upon the amount of insurance coverage and not upon the legally relevant factors. We conclude, therefore, that the public policy of this state prohibits insurance covering the punitive damages levied against plaintiff." (*City Products, supra,* 88 Cal.App.3d at p. 42.) [FN3]

> FN3 The rationale expressed by the court in *City Products* is the most recent opinion of our Supreme Court on the subject of punitive damages: "Because the quintessence of punitive damages is to deter future misconduct by the defendant, the key question before the reviewing courts is whether the amount of damages 'exceeds the level necessary to properly punish and deter.' (*Neal* [v. *Farmers Ins. Exchange* (1978)] 21 Cal.3d [910,] at p. 928 [148 Cal.Rptr. 389, 582 P.2d 980]; *Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].) The question cannot be answered in the abstract. The reviewing court must consider the amount of the award in *light of* the relevant facts. The nature of the inquiry is a comparative one. Deciding in the abstract whether an award is 'excessive' is like deciding whether it is 'bigger,' without asking ' Bigger than what?'

"A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition. Since *Neal, supra,* 21 Cal.3d 910, we have repeatedly examined punitive damage awards in light of the defendant's financial condition. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 790-791 [157 Cal.Rptr. 392, 598 P.2d 45]; *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 823-824 [169 Cal.Rptr. 691, 620 P.2d 141].)" (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110-111 [284 Cal.Rptr. 318, 813 P.2d 348].)

The prohibition against insuring exemplary damages applies whether the conduct which gave rise to the award of punitive damages was intentional or committed in conscious disregard of the safety or rights of the plaintiff. (*Peterson v. Superior Court, supra,* 31 Cal.3d at pp. 158-159; *Ford Motor Co. v. Home Ins. Co., supra,* 116 Cal.App.3d at pp. 383-384.)

The rule in Wisconsin is different. (See *Brown v. Maxey* (1985) 124 Wis.2d 426 [369 N.W.2d 677, 686-688].) In *Brown v. Maxey* a landlord was held liable for burns suffered by one of his tenants in a fire; in addition to compensatory damages the jury awarded $200,000 in punitive damages. The Supreme Court of Wisconsin held the jury could award punitive damages based on the landlord's reckless disregard of his tenant's safety. (*Id.* at pp. 681-682; cf. *Peterson v. Superior Court, supra,* 31 Cal.3d at pp. 156, 160 [conscious disregard of safety of others will support punitive damages]; Civ. Code, § 3294, subd. (c)(1) [malice exists where defendant engages in "despicable conduct which is carried on by the defendant with a willful or conscious disregard of the rights or safety of others"].)

The Wisconsin court also held the landlord's insurer was required under the terms of its policy to pay both the compensatory and punitive portions of **\*644** the judgment. (*Brown v. Maxey, supra,* 369 N.W.2d at pp. 686-688.) The court found that as defined in the policy "[t]he term 'damages' is sufficiently broad to cover liability for both compensatory and punitive damages. Punitive damages are not specifically excluded from the policy language." (*Brown v. Maxey, supra,* 369 N.W.2d at p. 686.) Although the court agreed the policy did not cover acts intended or expected from the insured's point of view, and that the landlord had acted outrageously, "we uncover no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 Cal.App.4th 637
14 Cal.App.4th 637, 17 Cal.Rptr.2d 713
**(Cite as: 14 Cal.App.4th 637)**

evidence that [the landlord's] conduct crosses the line to be classified as intentional." (*Ibid.*)

Unlike the court in *City Products,* the Wisconsin Supreme Court found that public policy did not prevent indemnity for punitive damages. " ' "Public policy" is no magic touchstone. This state has more than one public policy. Another and countervailing public policy favors freedom of contract, in the absence of overriding reasons for depriving the parties of that freedom. Still another public policy favors the enforcement of insurance contracts according to their terms, where the insurance company accepts the premium and reasonably represents or implies that coverage is provided.' [Citation.]

"

. . . . . . . . . .

"... We find no overriding reason to deprive these parties of what they have freely contracted. State Farm had the option of excluding liability for punitive damages. It failed to do so and has presumably collected premiums which it believed to be sufficient consideration for such coverage. [Citation.]

"Moreover, we are not convinced that allowing insurance coverage for punitive damages will totally alleviate the deterrent effect of such awards. For example, as a consequence of the punitive damage award, defendant Maxey's insurance premiums may rise, he may find himself unable to obtain insurance coverage, the punitive damage award may exceed coverage, and his reputation in the community may be injured.

"Finally, punitive damages are designed not only to deter and punish the wrongdoer, but also are designed to serve as a deterrent to others. Allowing insurance coverage to extend to punitive damages will not thwart this purpose." (*Brown v. Maxey, supra,* 369 N.W.2d at pp. 687-688.)

In this case we cannot avoid consideration of the conflict between the laws of California and Wisconsin. Under California law public policy prevents Johnson Controls from avoiding the deterrent effect of the punitive damages by obtaining indemnity from its insurers.

On the other hand, like the insurance policy discussed in *Brown v. Maxey,* the excess insurers' policies do not expressly exclude coverage for punitive *645 damages. Moreover, although the

policies only cover accidental events which are "neither expected nor intended from the standpoint of the insured," as in *Brown v. Maxey,* the verdict in the *Jones* action contains no finding Johnson Controls was guilty of intentional conduct, as opposed to a conscious disregard for Jones's safety, and there is no other evidence in the record the company intended to injure Jones. Thus, under *Brown v. Maxey* the excess insurance policies would provide indemnity for the punitive damages assessed in the *Jones* action and Johnson Controls's contractual right to such indemnity would prevail over any public policy supporting imposition of punitive damages.

In short then, there is a true conflict of laws here because the substantive law of California leads to a different result than the substantive law of Wisconsin.

II

(2a) "California now follows a methodology characterized as the ' governmental interest' approach to choice of law problems. (*Kasel v. Remington Arms Co.* (1972) 24 Cal.App.3d 711, 730 [101 Cal.Rptr. 314].) Applying this method, the forum must search to find the proper law to apply based upon the interests of the litigants and the involved states. (*Reich v. Purcell, supra,* at p. 553.) (3) With the governmental interest approach, 'relevant contacts' stressed by the Restatement Second of Conflict of Laws are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration. (*Kasel v. Remington Arms Co., supra,* 24 Cal.App.3d at p. 731.) (2b) The forum must consider all the foreign and domestic elements and interests involved in the case to determine the applicable rule. (*Reich v. Purcell, supra,* 67 Cal.2d at p. 555.)" (*Dixon Mobile Homes, Inc. v. Walters* (1975) 48 Cal.App.3d 964, 972 [122 Cal.Rptr. 202], fn. omitted [overruled on other grounds by *Bullis v. Security Pacific Nat. Bank* (1978) 21 Cal.3d 801, 815 (148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642)]; *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co., supra,* 103 Cal.App.3d at pp. 204-205.) [FN4]

> FN4 The parties do not dispute this case is governed by California's choice of law rules.

In considering the interests of the parties and the states involved, initially we note there is no express choice of law provision in the policies issued by the excess insurers. The absence of a choice by the

14 Cal.App.4th 637
14 Cal.App.4th 637, 17 Cal.Rptr.2d 713
(Cite as: 14 Cal.App.4th 637)

parties is significant because where the parties have made a choice of law, their choice is usually enforced. (Rest.2d Conf. of Laws, § 187; 1 Witkin, Summary of Cal. Law *646 (9th ed. 1987) Contracts, § 44, pp. 82-86 (Witkin); see *California Casualty Indemnity Exchange v. Deardorff* (1984) 157 Cal.App.3d 548, 552 [203 Cal.Rptr. 725]; but see *Mencor Enterprises, Inc. v. Hets Equities Corp.* (1987) 190 Cal.App.3d 432, 439-440 [235 Cal.Rptr. 464].)

(4) Where no effective choice of law has been made by the parties, the relevant contacts to be considered in a dispute over the validity of a contract or the rights thereunder are set forth in section 188, subdivision (2) of the Restatement Second of Conflict of Laws: "(a) the place of contracting, [¶] (b) the place of negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. [¶] These contacts are to be evaluated according to their relative importance with respect to the particular issue." (See also *Dixon Mobile Homes, Inc. v. Walters*, 48 Cal.App.3d at p. 972; *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co., supra*, 103 Cal.App.3d at pp. 204-205.)

(5) Where, as here, a casualty insurance contract is in dispute, particular importance is placed on the location of the subject matter of the contract, i.e. the location of the insured risk. (See *California Casualty Indemnity Exchange v. Pettis* (1987) 193 Cal.App.3d 1597, 1607 [239 Cal.Rptr. 205]; Witkin, *supra*, Contracts, § 71, pp. 106; Rest.2d, Conf. of Laws, § 193.) "The Restatement of Conflict of Laws section 193 states: 'The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship. ...' As the court explained in *Cunningham v. Equitable Life Assur. Soc. of U.S.* (2d Cir. 1981) 652 F.2d 306: 'In contracts of casualty insurance, ... the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law. [Citation.] This is so because location has an intimate bearing upon the nature of the risk and the parties would naturally expect the local law of the state where the risk is to be principally located to apply. [Citations.] Moreover, the state where the insured risk will be principally located during the

term of the policy has an interest in the determination of issues arising under the insurance contract.' (*Id.*, at p. 308, fn. 1.)" (*California Casualty Indemnity Exchange v. Pettis, supra*, 193 Cal.App.3d at p. 1607.)

More importantly for our purposes, "Where a multiple risk policy insures against risks located in several states, it is likely that the courts will view the *647 transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved. (Rest.2d, Conflict of Laws, § 193, Comment f.)" [FN5] (Witkin, *supra*, Contracts, § 71, p. 106; see also *Crown Center v. Occidental Fire & Cas. Co.* (Mo.Ct.App. 1986) 716 S.W.2d 348, 358-359; *Baybutt Constr. Corp. v. Commercial Union Ins.* (Me. 1983) 455 A.2d 914, 919; but see *Vigen Const. Co. v. Millers Nat. Ins. Co.* (N.D. 1989) 436 N.W.2d 254, 257; *St. Paul Surplus Lines v. Diversified Athletic* (N.D.Ill. 1989) 707 F.Supp. 1506, 1513. [FN6]

FN5 Restatement Second, Conflict of Laws section 193, comment f, states: "A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of a policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state."

FN6 In *Vigen Const. Co. v. Millers Nat. Ins. Co., supra*, 436 N.W.2d at page 257 and *St. Paul Surplus Lines v. Diversified Athletic, supra*, 707 F.Supp. at page 1513, the courts relied solely on comment b to section 193 of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 Cal.App.4th 637
14 Cal.App.4th 637, 17 Cal.Rptr.2d 713
**(Cite as: 14 Cal.App.4th 637)**

the Restatement Second of Conflict of Laws which states in part: "The location of the insured risk will given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states." We do not believe it is appropriate to rely solely on comment b without considering the applicability of comment f (see fn. 5, *ante*) and the likelihood that the parties intended to create separate policies for the risks created in separate states.

We believe the multiple risk approach suggested by Witkin and the Restatement should apply here. Initially, we note that in an effort to obtain excess coverage, Johnson Controls circulated an underwriting submission prepared by its insurance broker. Attached to the underwriting submission is a list of 18 states and 5 foreign countries where Johnson Controls operates manufacturing facilities and 128 locations from Adelaide, Australia to Youngstown, Ohio where the corporation has sales and service facilities. According to the text of the underwriting submission, Johnson Controls expected to produce $2.6 billion in sales during the 1985-1986 policy period.

We also note that, except for the limits of liability, the excess insurers agreed to provide Johnson Controls with the same coverage provided by the company's primary carrier. Significantly, the primary policy contains individual amendatory endorsements for the states of New York, New Jersey, *648 Massachusetts, New Hampshire, Wisconsin, Kansas, Oregon, Florida, Michigan, Alaska and Vermont.

(6) Thus, the record here supports the conclusion Johnson Controls is a large corporation with worldwide operations and, more importantly, both Johnson Controls and its insurers carefully considered the complexity of the corporation's activities at the time the policies were issued. Under these circumstances we believe Johnson Controls and its insurers would reasonably expect not only that the corporation's liability to a third party might be governed by the law of a state with significant

interests at stake, but that Johnson Controls's right to indemnity for such a claim might also be governed by that state's law. As suggested by Witkin and the Restatement, given the nature of the risks insured, this is a case where in reality Johnson Controls did not obtain a single policy which it could expect would be governed by the law of one state; rather, Johnson Controls obtained separate policies which insure separate risks located in any number of states where the corporation does business. [FN7]

> FN7 We do not mean to suggest that such a multiple risk approach will be appropriate in all cases where an insured's activities expose it to liability in a number of states. In a variety of circumstances the particular risks insured or a particular policy will make it clear that the parties do not expect the insured's rights under a policy will be controlled by the location of insured event. (See e.g., com. b to Rest.2d, Conf. of Laws, § 193.)

Our adoption of the multiple risk approach is significant in measuring the competing interests of California and Wisconsin. First, there can be little doubt that from the perspective of Johnson Controls and the insurers, California is the principal location of the risk created by the defective battery. The battery was manufactured in California, sold to a retailer here and purchased by a California resident. Thus, Johnson Controls and the insurers would reasonably expect this risk to be governed by California law. (Rest.2d, Conf. of Laws, § 193, com. f.)

As we have seen, in *Brown v. Maxey* the court found Wisconsin's interest in protecting the reasonable expectations of its insureds outweighs any additional deterrence provided by a rule which relieves insurers from responsibility for punitive damages. (*Brown v. Maxey, supra,* 369 N.W.2d at pp. 687-688.) Because Johnson Controls would reasonably expect California law would apply to the battery it manufactured and sold here, application of the California rule would not seriously impair the expectation interest Wisconsin has sought to protect by permitting insurers to pay punitive damage awards. *649 Rather, since we have concluded Johnson Controls obtained multiple policies, application of the California rule would give Johnson Controls the benefit of its bargain with the insurers. [FN8]

> FN8 We also note the court in *Brown v. Maxey* recognized Wisconsin has an interest,

Page 8

albeit a subsidiary one, in providing deterrence to tortfeasors. (*Brown v. Maxey, supra,* 369 N.W.2d at pp. 687-688.) Obviously, application of the California rule would enhance that subsidiary interest.

In contrast, failure to apply California's rule would severely impair California's interests. As we have seen California's paramount interest is in protecting its residents by deterring tortfeasors. (See *Adams v. Murakami, supra,* 54 Cal.3d at p. 110; *Peterson v. Superior Court, supra,* 31 Cal.3d at pp. 158-159; *City Products, supra,* 88 Cal.App.3d at p. 42; *Ford Motor Co. v. Home Ins. Co., supra,* 116 Cal.App.3d at pp. 383-384.) Here, the liability imposed grew out of severe injury suffered by a California resident while he was in California and caused by manufacturing and marketing activities which occurred exclusively in this state. It is difficult to imagine circumstances where California would have a greater interest in altering the future behavior of a defendant by compelling payment directly from the defendant rather than its insurers. [FN9]

> FN9 In this regard *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co., supra,* 103 Cal.App.3d at pages 205-206, is readily distinguishable. In that case a California insured sued a Maryland insurer for declaratory relief, alleging the insurer had breached its duty to defend. The insured was successful and sought attorney fees under the law of Florida, the state where the claim arose. In applying California law, we found Florida had no interest in deterring the insurer's wrongful conduct. (*Id.* at p. 206.) Unlike the interests of Florida in *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co.,* here California is not concerned with governing the conduct of an nonresident insurer and its impact on a nonresident insured. Rather, here application of California law will have a direct impact on a tortfeasor whose activities within this state harmed a California resident.

In sum then California's rule applies here because it is the principal location of the risk involved, because application of California's rule is entirely consistent with Wisconsin's interest in protecting the reasonable expectations of its insured and because California has a significant interest in applying its rule.

III

In addition to its choice of laws contentions, on appeal Johnson Controls argues application of California law is barred by the due process and full faith and credit clauses of the United States Constitution. (U.S. Const., 14th Amend., art. IV, § 1.) We reject this argument.

(7) Due process and full faith and credit require "that for a State's substantive law to be selected in a constitutionally permissible manner, that *650 State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." (*Allstate Ins. Co. v. Hague* (1981) 449 U.S. 302, 313 [66 L.Ed.2d 521, 530-531, 101 S.Ct. 633]; see also *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 821-822 [86 L.Ed.2d 628, 648-649, 105 S.Ct. 2965].) As we pointed out in our discussion of the choice of laws issue, California has a substantial interest in regulating Johnson Controls's manufacturing activities in this state, especially as here, where those activities have injured one of its residents.

Judgment affirmed.

Froehlich, J., and Nares, J., concurred.

Cal.App.4.Dist.,1993.

Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 12

Westlaw.

24 Cal.4th 906                                                    Page 1
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

▷

WASHINGTON MUTUAL BANK, FA, Petitioner,
v.
THE SUPERIOR COURT OF ORANGE COUNTY,
Respondent; JAYNE A. BRISENO, Real Party
in Interest.
No. S070418.

Supreme Court of California

Jan. 25, 2001.

SUMMARY

The trial court certified an action against a bank as a nationwide class action. The named plaintiff was a home mortgagor who sued on behalf of herself and others similarly situated, alleging that defendant, which originated and purchased home loans in multiple states, charged excessive amounts for replacement hazard insurance when a mortgagor defaulted on the loan obligation to maintain the insurance. Defendant's standard mortgage was secured by a deed of trust that contained a choice-of-law clause providing that the instrument was governed by federal law and the law of the state where the secured property was located. The trial court ordered the certification without deciding what law applied to the claims of class members. (Superior Court of Orange County, No. 774773, William F. McDonald, Judge.) The Court of Appeal, Fourth Dist., Div. Three, No. G023218, denied defendant's petition for an extraordinary writ, since defendant had failed to show that the contractually selected state laws would lead to different results.

The Supreme Court reversed the judgment of the Court of Appeal and remanded the matter to that court with instructions to issue a peremptory writ of mandate directing the trial court to vacate its order of certification and to conduct further proceedings. The court held that the trial court and the Court of Appeal used an incomplete and erroneous analysis of factors relevant to certification. First, the trial court should not have granted certification without determining the effect of the choice-of-law agreements; choice-of-law issues must be resolved as part of a certification process. Second, the trial court and the Court of Appeal erred in concluding that nationwide certification was appropriate on the ground that defendant did not demonstrate dispositive conflicts between California law and the laws of other states. A party challenging certification is not required to make such a showing when the claims of putative class members must, by virtue of an advance consent, be resolved under the laws of other states. Rather, when an *907 enforceable choice-of-law agreement is involved, the burden rests upon the party seeking nationwide class certification to identify any variations of applicable state law and to meaningfully demonstrate how a trial on the class causes of action can be conducted fairly and efficiently in light of those variations. Certification of a nationwide class is proper only where the proponent of the class action meets that burden and demonstrates that all other requirements for class certification are met. (Opinion by Baxter, J., expressing the unanimous view of the court.)

HEADNOTES

Classified to California Digest of Official Reports

(1) Parties § 6.3--Class Actions--Community of Interest and Common Questions--Burden of Showing.
Code Civ. Proc., § 382, authorizes class suits in California when the question is one of a common or general interest of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members. To establish the requisite community of interest, the proponent of certification must show, among other factors, that questions of law or fact common to the class predominate over the questions affecting the individual members. In essence, this means that each member must not be required to individually litigate numerous and substantial questions to determine his or her right to recover following the class judgment, and that the issues that may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants. A class action should be certified only if it will provide substantial benefits both to the courts and the litigants.

(2) Parties § 6.5--Class Actions--Discretion of Trial Court.

24 Cal.4th 906                                                                                              Page 2
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
(Cite as: 24 Cal.4th 906)

Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting a class action, they are afforded great discretion in granting or denying class certification. Nonetheless, an order based upon improper criteria or incorrect assumptions calls for reversal even though there may be substantial evidence to support the trial court's order.

(3a, 3b) Parties § 6.3--Class Actions--Community of Interest and Common Questions--Nationwide Class--Effect of Choice-of-Law **908 Provisions in Class Members' Contracts.

In an action brought by mortgagors against a bank that originated and purchased home loans in multiple states, and that allegedly overcharged for replacement hazard insurance when a mortgagor defaulted on the obligation to maintain the insurance, the trial court erred in certifying a nationwide class action, without deciding what law applied to the claims of class members, where defendant's standard mortgage was secured by a deed of trust that contained a choice-of-law clause providing that the instrument was governed by federal law and the law of the state where the secured property was located. Subsequently, the Court of Appeal erred in denying defendant writ relief. First, the trial court should not have granted certification without determining the effect of the choice-of-law agreements; choice-of-law issues must be resolved as part of a certification process. Further, the trial court and the Court of Appeal erred in concluding that nationwide certification was appropriate on the ground that defendant did not demonstrate conflicts between California law and the laws of other states. A party challenging certification is not required to make such a showing when the claims of putative class members must, by virtue of an advance consent, be resolved under the laws of other states. Rather, the burden rests upon the party seeking nationwide class certification to identify any variations of applicable state law and to meaningfully demonstrate how a trial on the class causes of action can be conducted fairly and efficiently in light of those variations.

[See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § § 256-258; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2000) ¶ ¶ 14:15 et seq., 14:72 et seq.]

(4) Conflict of Laws § 5--Contracts--Choice-of-Law Provisions--Trial Court's Analysis.
California has two different analyses for selecting which law should be applied in an action that involves parties from different states. When the

parties have an agreement that another jurisdiction's law will govern their disputes, the trial court must determine the enforceability of the choice-of-law agreement. Alternatively, when there is no advance agreement on applicable law, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law.

(5) Parties § 6.3--Class Actions--Community of Interest and Common Questions--Action Involving Nonresident Parties.
In actions involving nonresidents in which a party seeks class certification, discerning the applicable law is an important task, for if the claims of **909 nonresident class members will require adjudication under the laws of the members' home states, the trial court must ascertain the degree of complexity arising from the need to apply those laws in order to make an informed decision on certification. The trial court should deny certification if it determines that the complexity results in the common legal questions not predominating or makes nationwide class litigation unmanageable. Conversely, the court may certify the nationwide class despite the complexity if it determines the legal questions are sufficiently similar to be manageable and all other requirements for certification are satisfied.

(6) Parties § 6.3--Class Actions--Community of Interest and Common Questions--Action Involving Nonresident Parties--Choice-of-Law Provision.
In actions involving nonresidents, in which class action certification is sought, the trial court must evaluate disputed claims that class causes of action are subject to contracts with enforceable choice-of-law agreements. The trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope. If the trial court finds that the class claims fall within the scope of a choice-of-law clause, it must next evaluate the enforceability of the clause. The court must determine (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law, but if there is a fundamental conflict with California law, the court must then determine

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906                                                                Page 3
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

whether California has a materially greater interest than the chosen state in the determination of the particular issue. If so, the choice of law shall not be enforced. These rules apply to consumer adhesion contracts that are otherwise appropriate.

(7) Parties § 6.3--Class Actions--Community of Interest and Common Questions--Action Involving Nonresident Parties--Application of California Law.

A forum state may apply its own substantive law to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause if the state has a significant **\*910** contact or significant aggregation of contacts to the claims of each class member such that application of the forum's law is not arbitrary or unfair. But even where its own law may be constitutionally applied, California follows a three-step governmental interest analysis to address conflict of laws issues and ascertain the most appropriate law applicable to the issues where the parties have no effective choice-of-law agreement. Under the first step, the proponent of the foreign law must identify the applicable rule of law in each potentially concerned state and must show that it materially differs from the law of California. If the trial court finds that the laws are materially different, it must determine what interest, if any, each state has in having its own law applied to the case. Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied must the trial court select the law of the state whose interests would be more impaired if its law were not applied. In making this comparison, the court must determine the relative commitment of the respective states to the laws involved and consider the history and current status of the states' laws and the function and purpose of those laws. These rules apply whether the dispute arises out of contract or tort.

(8) Parties § 6.3--Class Actions--Community of Interest and Common Questions--Action Involving Nonresident Parties--Burden of Proof.

In California, a party seeking class action certification bears the burden of establishing the propriety of class certification. In actions involving nonresident parties, the class action proponent must credibly demonstrate, through a thorough analysis of the applicable state laws, that state law variations will not overwhelm common issues and defeat predominance. Additionally, the proponent's presentation must be sufficient to permit the trial court, at the time of certification, to make a detailed assessment of how any state law differences could be managed fairly and efficiently at trial, for example,

through the creation of a manageable number of subclasses. Trial courts, in assessing the propriety of nationwide class certification, must consider these factors, as well as all the other factors relevant to certification, including the potential recovery of each individual claimant and whether the proposed class suit is the only effective way to redress the alleged wrongdoing or to prevent unjust advantage to the defendant. These procedures should ensure that nationwide class actions are certified only where they will result in substantial benefits both to the litigants and to the courts. **\*911**

COUNSEL

Stroock & Stroock & Lavan, Julia B. Strickland, Lisa M. Simonetti and Andrew W. Moritz for Petitioner.

O'Melveny & Myers, Martin S. Checov, Brian P. Brooks, John H. Beisner and William H. Satchell for the Product Liability Advisory Council, Inc., American Bankers Association, California Chamber of Commerce, California Bankers Association and Chamber of Commerce of the United States as Amici Curiae on behalf of Petitioner.

Severson & Werson, Jan T. Chilton, Mark Joseph Kenney, Michael J. Steiner and William L. Stern for Mortgage Bankers Association of America, California Mortgage Bankers Association, American Financial Services Association and California Financial Services Association as Amici Curiae on behalf of Petitioner.

Gibson, Dunn & Crutcher, Gail E. Lees, Kevin R. Nowicki and Thomas D. Bunton for ITT Residential Capital Corporation, ITT Residential Capital Servicing Corporation and ITT Bowest as Amici Curiae on behalf of Petitioner.

No appearance for Respondents.

Blumenthal Ostroff & Markham, Norman B. Blumenthal, David R. Markham, Sheldon A. Ostroff, Barron E. Ramos; Chavez & Gertler and Mark A. Chavez for Real Party in Interest.

Kirby McInerney & Squire, Alice McInerney, Jill M. Manning; Law Office of Jeffrey F. Keller, Jeffrey F. Keller; Law Office of Patrick O. Patterson, Patrick O. Patterson and Gretchen E. Miller for Roger Babcock et al., as Amici Curiae on behalf of Real Party in Interest.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906

Page 4

24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925

**(Cite as: 24 Cal.4th 906)**

**BAXTER, J.**

The trial court certified this case as a nationwide class action without determining the force and effect of contractual agreements that, according to the defendant, would require the application of different states' laws in the action. The Court of Appeal found certification was proper because the defendant had failed to show that the contractually selected laws would lead to different results. We conclude the certification order must be **\*912** vacated, for it was based upon an incomplete and erroneous analysis of factors relevant to certification.

Factual and Procedural Background

American Savings Bank, now Washington Mutual Bank, FA (hereafter ASB), originated home mortgage loans in California, Arizona, Colorado, and Texas, and purchased loans from other lenders throughout the United States. ASB's standard loan documents included a deed of trust that requires the mortgagor to maintain hazard insurance on the secured property and provides that if the mortgagor fails to do so, "then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property," and "[a]ny amounts [so] disbursed ... shall become additional debt" of the mortgagor, secured by the deed of trust. The deed of trust also contained a clause stating: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the [secured property] is located."

Jayne A. Briseno sued ASB on behalf of herself and all others similarly situated for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair business practice violations under California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), [FN1] unjust enrichment, and conversion. According to the second amended complaint, ASB maintained a practice of procuring expensive replacement insurance (forced order insurance) when mortgagors defaulted on their loan obligation to maintain appropriate policies of hazard insurance for their properties. The amount ASB charged the mortgagor for forced order insurance typically was two to five times more than the amount of the premium on the original lapsed policy would have been. The crux of the dispute is whether ASB victimized its borrowers by systematically overcharging for the replacement insurance coverage and secretly profiting through cash commissions or inkind services from the vendors of the replacement insurance.

FN1 ASB is not alleged to have violated the unfair business practices law of any other state; nor is relief sought under foreign state statutes that may be comparable to the UCL.

In 1998, Briseno moved to certify this case as a nationwide class action, comprised of at least 25,000 mortgagors located throughout the United States who were charged excessive premiums for forced order insurance since 1993, excluding those who received refunds of the entire premium. She argued, among other things, that California could constitutionally exercise jurisdiction over the claims of nonresident mortgagors and that California could apply its own substantive law unless ASB proved otherwise under **\*913** California conflict of laws rules. ASB responded that common questions of law do not predominate for a nationwide class because enforcement of the choice-of-law provision in each mortgagor's loan documents meant that the action would entail the application of the laws of all 50 states.

The trial court ordered certification of a nationwide class action without purporting to decide what law applies to the claims of the class members. After the Court of Appeal summarily denied ASB's petition for extraordinary relief, we granted ASB's petition for review and transferred the case back to the Court of Appeal with instructions to issue an alternative writ.

After complying with our directive, the Court of Appeal denied ASB's writ petition and discharged the alternative writ. The court affirmed the certification order, reasoning that "[a]t most the choice of law clause raises the potential that another state's law might apply." It concluded, in effect, that a defendant who opposes nationwide class certification on the basis of choice-of-law agreements has the burden of demonstrating that the contractually selected laws will lead to results different from California law and render a nationwide class action unsuitable. We granted ASB's petition for review.

Discussion

(1) Section 382 of the Code of Civil Procedure authorizes class suits in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members. (Linder v. Thrifty Oil Co. (2000) 23

24 Cal.4th 906                                                    Page 5
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27]; *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

To establish the requisite community of interest, the proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members (hereafter sometimes referred to as predominance). (See *Richmond v. Dart Industries, Inc.*, supra, 29 Cal.3d at p. 470.) In essence, this means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the *914 litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) A class action should be certified only if it will provide substantial benefits both to the courts and the litigants. (*Linder v. Thrifty Oil Co.*, supra, 23 Cal.4th at p. 435; *City of San Jose v. Superior Court*, supra, 12 Cal.3d at p. 460.)

(2) "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." (*Linder v. Thrifty Oil Co.*, supra, 23 Cal.4th at p. 435.) Nonetheless, "an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' " (*Id.* at p. 436.)

(3a) ASB contends that, where putative class members across the nation have contractually agreed in advance to application of their own state's law, the trial court must apply the choice-of-law analysis set forth in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*) when evaluating a certification motion. Here, ASB claims, both the trial court and the Court of Appeal impermissibly sidestepped *Nedlloyd*'s analysis and erroneously concluded that, even if class claims are subject to enforceable choice-of-law clauses, the clauses are of no significance to the certification decision unless their proponent demonstrates that the contractually designated law is different from California law and when applied will lead to a different result. ASB requests that we reverse the denial of its petition for a writ of mandate and remand this matter to the Court of Appeal with

instructions as to the appropriate analysis for the trial court to undertake.

This case presents two pivotal questions arising when certification of a nationwide or multistate class action is sought. First, what is the appropriate analysis for selecting applicable law in a class action where putative class members have contractually agreed to application of another state's law? Second, what analysis must be undertaken in the event litigation of the class action will necessitate application of the laws of multiple states? We address these questions in turn. [FN2]

> FN2 After briefing was completed in this matter, plaintiff "invited" us to take judicial notice of her recent dismissal of all causes of action save the one alleging violations of the UCL. Neither side has asked us to dismiss review or to limit review in light of such dismissal.

*A. Selection of applicable law*

(4) California has two different analyses for selecting which law should be applied in an action. When the parties have an agreement that another *915 jurisdiction's law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in *Nedlloyd*, supra, 3 Cal.4th 459, which addresses the enforceability of contractual choice-of-law provisions. Alternatively, when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law. As we shall explain, a trial court considering nationwide class certification might be required to utilize both analyses.

*1. Choice-of-law agreements*

(5) To date, most of the California decisions that have considered nationwide class action certification have not involved a contractual choice-of-law clause. Those decisions, however, perceive that a reasoned analysis regarding the applicable law is critical in actions seeking to assert claims on behalf of nonresidents. (E.g., *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 615 [236 Cal.Rptr. 605] (*Clothesrigger*); see *Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214, 229 [85 Cal.Rptr.2d 18] [although contractual clauses involved, certification reversed on alternative ground].) Discerning the applicable law is an important task in class actions, for if the claims of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906                                                                                    Page 6
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

nonresident class members will require adjudication under the laws of the members' home states, the trial court must ascertain the degree of complexity arising from the need to apply those laws in order to make an informed decision on certification. (*Clothesrigger, supra,* 191 Cal.App.3d at p. 619.) The trial court should deny certification if it determines that "such complexity results in common legal questions not predominating or makes nationwide class litigation unmanageable." (*Ibid.*; see *Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 7 [79 Cal.Rptr.2d 897] (*Canon U.S.A.*) [permitting resolution of such issues at the pleading stage]; *Osborne v. Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 655-658 [243 Cal.Rptr. 815]; *Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 157 [166 Cal.Rptr. 16].) Conversely, the court "may certify the nationwide class despite such complexity if it determines the legal questions are sufficiently similar to be manageable and all other requirements for certification are satisfied." (*Clothesrigger, supra,* 191 Cal.App.3d at p. 619.)

(6) We agree that the choice-of-law determination is of central importance to issues of predominance and manageability where certification of a nationwide class is sought. Accordingly, we conclude trial courts considering such certification generally should apply the analysis set forth in *Nedlloyd,* *916 supra, 3 Cal.4th 459,* to evaluate disputed claims that class causes of action are subject to enforceable choice-of-law agreements.

Pursuant to *Nedlloyd,* the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope. (See *Nedlloyd, supra,* 3 Cal.4th at pp. 468-470.) In *Nedlloyd* we found, as a matter of California law, that a clause negotiated by sophisticated business entities was phrased broadly enough to encompass the plaintiff's fiduciary duty claim, in addition to its claims for breach of contract and breach of the implied covenant of good faith and fair dealing. [FN3] (*Id.* at pp. 468-470.) As we explained, "[w]hen a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship." (*Id.* at p. 469.)

FN3 The clause, which appeared in a

shareholders' agreement between the parties, provided in relevant part: " 'This agreement shall be governed by and construed in accordance with Hong Kong law ....' " (*Nedlloyd, supra,* 3 Cal.4th at p. 463.) Although we observed that the scope of a choice-of-law clause in a contract is a matter that ordinarily should be determined under the law designated therein, we found it was appropriate to interpret the *Nedlloyd* clause pursuant to California law because the parties neither requested judicial notice of Hong Kong law on the point nor supplied evidence of the relevant aspects of that law. (*Nedlloyd, supra,* 3 Cal.4th at p. 469, fn. 7.)

If the trial court finds that the class claims fall within the scope of a choice-of-law clause, it must next evaluate the clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws (Restatement). [FN4] Under that approach, the court must first determine: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a ' materially greater interest than the chosen state in the determination of the particular issue ....' (Rest., § 187, subd. (2).) If California has *917 a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." [FN5] (*Nedlloyd, supra,* 3 Cal.4th at p. 466, fns. omitted.)

FN4 Restatement section 187, subdivision (2), should be applicable to most standard choice-of-law provisions. As noted in *Nedlloyd,* however, subdivision (1) of Restatement section 187 may instead apply where the parties incorporate into their contract by reference extrinsic material in the form of a designated law. (*Nedlloyd, supra,* 3 Cal.4th at p. 465, fn. 3.)

FN5 Restatement section 187, subdivision

24 Cal.4th 906                                                                           Page 7
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
(Cite as: 24 Cal.4th 906)

(2) does not necessarily require examination of the fundamental policy of the forum state (e.g., California here), but could in some instances necessitate consideration of the fundamental policy of a third state whose law would apply under the rule of Restatement section 188 in the absence of an effective choice of law. (*Nedlloyd, supra*, 3 Cal.4th at p. 466, fn. 5.) Here, as in *Nedlloyd*, both sides assume the proper focus is on California.

As *Nedlloyd* recognizes, the foregoing approach "reflect[s] strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses." (*Nedlloyd, supra*, 3 Cal.4th at p. 462.) Accordingly, if the proponent of the clause (here, the party opposing nationwide class certification) demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue. (See *id.* at pp. 468, 471 [upholding application of chosen law where party opposing the clause failed to make such showings].)

Amici curiae in support of Briseno argue that *Nedlloyd*'s analysis should not apply to choice-of-law provisions in consumer adhesion contracts. In their view, *Nedlloyd*'s test was designed to apply only to freely and voluntarily bargained-for choice-of-law agreements between equally powerful and sophisticated commercial entities.

Even though *Nedlloyd* was decided in the context of a negotiated arm's length transaction between sophisticated business entities, its analysis appears suitable for a broader range of contract transactions. California, we observe, has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate. (See *Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal.App.3d 99, 108 [186 Cal.Rptr. 740]; *Gamer v. duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 286-287 [135 Cal.Rptr. 230]; *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 995, fn. 6 [101 Cal.Rptr. 347].) More importantly, *Nedlloyd*'s analysis contains safeguards to protect contracting parties, including consumers, against choice-of-law agreements that are unreasonable or in contravention of a fundamental California policy. (*Nedlloyd, supra*, 3 Cal.4th at p. 466.) Under *918 Nedlloyd*, which adopted the Restatement approach and found the enforceability of choice-of-law clauses closely related to that of forum-selection clauses (*Nedlloyd, supra*, 3 Cal.4th at p. 464), the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that "substantial injustice" would result from its enforcement (Rest., § 187, com. (b), p. 562) [FN6] or that superior power was unfairly used in imposing the contract (see *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1679-1680 [16 Cal.Rptr.2d 417] [indicating that evidence of unfair use of bargaining power may defeat enforcement of a forum-selection clause contained in an adhesion contract]). In light of these protections, we conclude *Nedlloyd*'s analysis is properly applied in the context of consumer adhesion contracts.

FN6 Comment b to Restatement section 187 provides in full: "A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. A factor which the forum may consider is whether the choice-of-law provision is contained in an ' adhesion' contract, namely one that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. Common examples are tickets of various kinds and insurance policies. Choice-of-law provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent."

Finally, we address the Court of Appeal's suggestion that California businesses dealing with mass groups

24 Cal.4th 906                                                                                                    Page 8
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
(Cite as: 24 Cal.4th 906)

of consumers should not be permitted to rely on choice-of-law clauses as a means of avoiding involvement in a nationwide class action. The point is not well taken. "Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends–to sacrifice the goal for the going." (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462, fn. omitted; see *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 749 [38 Cal.Rptr.2d 650, 889 P.2d 970].) Consequently, an otherwise enforceable choice-of-law agreement may not be disregarded merely because it may hinder the prosecution of a multistate or nationwide class action or result in the exclusion of nonresident consumers from a California-based class action.

Of course, choice-of-law agreements have no effect in a class action if the trial court determines that they are unenforceable or that class claims fall outside their scope. Nonetheless, if the class action opponent continues to *919 urge application of foreign law to the claims of out-of-state class members, the trial court remains obligated to analyze the governmental interests of the various jurisdictions involved to determine whose law is more properly applied.

### 2. *Governmental interests and comparative impairment*

(7) In *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797 [105 S.Ct. 2965, 86 L.Ed.2d 628], the United States Supreme Court held that a forum state may apply its own substantive law to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause if the state has a " 'significant contact or significant aggregation of contacts' " to the claims of each class member such that application of the forum law is "not arbitrary or unfair." [FN7] (*Id.* at pp. 821-822 [105 S.Ct. at p. 2979]; *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.* (1993) 14 Cal.App.4th 637, 649-650 [17 Cal.Rptr.2d 713].) But even where its own law may be constitutionally applied, California follows a three-step "governmental interest analysis" to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement. (*Clothesrigger, supra,* 191 Cal.App.3d at pp. 612-616, 619; see generally *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 896 [72 Cal.Rptr.2d 73] [cases involving choice-of-law clauses present an exception to application of governmental interest approach]; *Stonewall Surplus*

*Lines Ins. Co. v. Johnson Controls, Inc., supra,* 14 Cal.App.4th at pp. 645-646.)

> FN7 In this court, ASB makes no claim that classwide application of California law would be constitutionally impermissible under *Phillips Petroleum Co. v. Shutts, supra,* 472 U.S. 797.

" '[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.' " (*Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313, 317-318 [128 Cal.Rptr. 215, 546 P.2d 719], quoting *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 581 [114 Cal.Rptr. 106, 522 P.2d 666] (*Hurtado*); cf. *Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157, 163, fn. 5 [148 Cal.Rptr. 867, 583 P.2d 721] [cautioning against an unduly literal reading of quoted statements and noting that courts may make their own determination of the policies and interests of the involved states].) Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California. The fact that two or more states are involved does not in itself indicate *920 there is a conflict of laws problem. (*Hurtado, supra,* 11 Cal.3d at p. 580.) Indeed, if the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable to class claims. (*Ibid.*; see *Bernhard v. Harrah's Club, supra,* 16 Cal.3d at p. 317.)

If, however, the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case. (*Hurtado, supra,* 11 Cal.3d at p. 580.) Despite materially different laws, "there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." (*Ibid.*; see *Bernhard v. Harrah's Club, supra,* 16 Cal.3d at p. 317.) This means the trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied. (See *Bernhard v. Harrah's Club, supra,* 16 Cal.3d at pp. 317-318; *In re Title U.S.A. Ins. Corp.* (1995) 36 Cal.App.4th 363,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906

Page 9

24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925

**(Cite as: 24 Cal.4th 906)**

372 [42 Cal.Rptr.2d 498].)

Only if the trial court determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be "more impaired" if its law were not applied. (*Bernhard v. Harrah's Club, supra,* 16 Cal.3d at p. 320; see also *Offshore Rental Co. v. Continental Oil Co., supra,* 22 Cal.3d at pp. 164-165.) In making this comparative impairment analysis, the trial court must determine "the relative commitment of the respective states to the laws involved" and consider "the history and current status of the states' laws" and "the function and purpose of those laws." (*Offshore Rental Co. v. Continental Oil Co., supra,* 22 Cal.3d at p. 166.) These rules apply whether the dispute arises out of contract or tort (*Application Group, Inc. v. Hunter Group, Inc., supra,* 61 Cal.App.4th at p. 896; cf. *Bernkrant v. Fowler* (1961) 55 Cal.2d 588, 594 [12 Cal.Rptr. 266, 360 P.2d 906]), and a separate conflict of laws inquiry must be made with respect to each issue in the case (*Application Group, Inc. v. Hunter Group, Inc., supra,* 61 Cal.App.4th at p. 896; *Beech Aircraft Corp. v. Superior Court* (1976) 61 Cal.App.3d 501, 518 [132 Cal.Rptr. 541]).

Amici curiae in support of ASB argue that the burdens contemplated in *Hurtado, supra,* 11 Cal.3d 574, should not apply when a nationwide class action is at issue. In their view, the law of the other states in which class members reside should presumably govern their claims unless the *proponent* of class certification affirmatively demonstrates that California law is more properly applied. To support this position, amici curiae point out that **\*921** nationwide class actions may be, and often are, used to resolve the claims of nonresidents who lack the minimum contacts in the forum state normally needed to support personal jurisdiction. (See *Phillips Petroleum Co. v. Shutts, supra,* 472 U.S. at pp. 806-814 [105 S.Ct. at pp. 2971-2975].) In such cases, they argue, California may not constitutionally weigh the scales in favor of applying its own law. We disagree.

As amici curiae acknowledge, and as already noted above, a forum state may constitutionally apply its own law to the claims of nonresident class members if the state has a " 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum's] law is not arbitrary or unfair." (*Phillips Petroleum Co. v. Shutts, supra,* 472 U.S. at pp. 821-

822 [105 S.Ct. at p. 2979].) Accordingly, so long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims. [FN8]

> FN8 A number of federal courts have approved nationwide or multistate class action certification for pendent state law claims where the *defendants* failed to show that foreign law is more properly applied to the claims of nonresident class members under California's governmental interest analysis. (E.g., *Harmsen v. Smith* (9th Cir. 1982) 693 F.2d 932, 946-947; *Roberts v. Heim* (N.D.Cal. 1987) 670 F.Supp. 1466, 1494; *In re Pizza Time Theatre Securities Litigation* (N.D.Cal. 1986) 112 F.R.D. 15, 20-21; *In re Computer Memories Securities Litigation* (N.D.Cal. 1986) 111 F.R.D. 675, 685; cf. *Martin v. Dahlberg, Inc.* (N.D.Cal. 1994) 156 F.R.D. 207, 216 [acknowledging the burdens upon the defendants but declining to certify a class based solely on state law claims].) Courts elsewhere have reached similar conclusions in applying the rules of their own states. (E.g., *In re ORFA Securities Litigation* (D.N.J. 1987) 654 F.Supp. 1449, 1462-1463 [applying New Jersey's conflict of laws rules, which were modeled after California's, and finding New Jersey law applicable to pendent class claims where defendants did not show substantial differences in state law doctrines]; *Lobo Exploration Co. v. Amoco Production* (Okla.Ct.App. 1999) 991 P.2d 1048, 1053-1054 [defendants failed to show why Oklahoma law would be inapplicable to class claims]; *Weatherly v. Deloitte & Touche* (Tex.Ct.App. 1995) 905 S.W.2d 642, 650.) Although we disagree with those decisions to the extent they suggest that disputes over applicable law need not be resolved at the time of certification, we find they properly illustrate the concept that constitutional limitations are not transgressed by forum state laws that require the class action opponent to show the applicability of foreign law.

In sum, in the absence of an effective choice-of-law agreement to the contrary, California law may be used on a classwide basis so long as its application is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906

Page 10

24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

not arbitrary or unfair with respect to nonresident class members (*Phillips Petroleum Co. v. Shutts, supra,* 472 U.S. at pp. 821-822 [105 S.Ct. at p. 2979]), and so long as the interests of other states are not found to outweigh California's interest in having its law applied (*Bernhard v. Harrah's Club, supra,* 16 Cal.3d at p. 320; *Clothesrigger, supra,* 191 Cal.App.3d at p. 614). **\*922**

### B. *Certification considerations where laws of multiple states found applicable in action*

As indicated, choice-of-law and conflict of laws issues are significant when certification of a nationwide class is sought. In the event a trial court determines that class claims will require adjudication under the laws of multiple states, the court must then ascertain whether variations exist among the applicable laws. Although the involvement of more than one state's law does not make a class action per se unmanageable, any variances among state laws must be examined to determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently.

(8) In California it is settled that the class action proponent bears the burden of establishing the propriety of class certification. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at p. 435; *Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) Although such burden clearly contemplates a demonstration of predominance and manageability (*Clothesrigger, supra,* 191 Cal.App.3d at p. 619; *Canon U.S.A., supra,* 68 Cal.App.4th at pp. 7-8; *Osborne v. Subaru of America, Inc., supra,* 198 Cal.App.3d at pp. 655-658; *Rose v. Medtronics, Inc., supra,* 107 Cal.App.3d at p. 157), there are few California decisions specifically addressing how the proponent may meet this burden.

The procedures articulated in the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) provide no aid on this particular issue. Therefore, we may look to the procedures governing federal class actions under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 23) for guidance. (*Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at p. 437; *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 376 & fn. 7 [149 Cal.Rptr. 360, 584 P.2d 497].)

Our survey of the relevant federal decisions, i.e., those involving multistate class actions under Rule 23(b)(3), [FN9] discloses that, as in California, it is

incumbent upon the class action proponent to prove each required element **\*923** for class certification, including predominance of common issues and manageability. (*In re American Medical Systems, Inc.* (6th Cir. 1996) 75 F.3d 1069, 1085-1086; see *Castano v. American Tobacco Co.* (5th Cir. 1996) 84 F.3d 734, 741-742; *Commander Properties Corp. v. Beech Aircraft Corp.* (D.Kan. 1995) 164 F.R.D. 529, 541; but see *Maywalt v. Parker & Parsley Petroleum Co.* (S.D.N.Y. 1993) 147 F.R.D. 51, 58 [manageability concerns regarding pendent state law claims found speculative since court declined to select applicable law at time of certification].) For a significant number of federal courts, this means the proponent must "creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.' " (*Walsh v. Ford Motor Co.* (D.C. Cir. 1986) 807 F.2d 1000, 1017 [257 App.D.C. 85], relying upon *In re School Asbestos Litigation* (3d Cir. 1986) 789 F.2d 996, 1010; *Weikel v. Tower Semiconductor Ltd.* (D.N.J. 1998) 183 F.R.D. 377, 401-403; *In re Jackson Nat. Life Ins. Co. Premium Litigation* (W.D.Mich. 1998) 183 F.R.D. 217, 223; *In re Ford Motor Co. Bronco II Product Liab. Lit.* (E.D.La. 1997) 177 F.R.D. 360, 368-369; see *Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996) 97 F.3d 1227, 1234-1235; *Castano v. American Tobacco Co., supra,* 84 F.3d at p. 741; *In re American Medical Systems, Inc., supra,* 75 F.3d at p. 1085; *Priest v. Zayre Corp.* (D.Mass. 1988) 118 F.R.D. 552, 558; but see *Barker v. FSC Securities Corp.* (W.D.Ark. 1989) 133 F.R.D. 548, 554-555 [pendent state claims certified where *defendants* failed to establish material state law differences]; *Longden v. Sunderman* (N.D.Tex. 1988) 123 F.R.D. 547, 555-556 [noting *defendant's* failure to show substantive variations in state fraud laws]; *Dekro v. Stern Bros. & Co.* (W.D.Mo. 1982) 540 F.Supp. 406, 418 [same].)

FN9 Rule 23(b)(3) provides that a class action is maintainable if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making these findings, the trial court considers: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906

Page 11

24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925

**(Cite as: 24 Cal.4th 906)**

class; *(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.*" (*Ibid.*, italics added.)

On this score, the presentation must be sufficient to permit the district court, at the time of certification, to make a detailed assessment of how the difficulties posed by the variations in state law will be managed at trial. (*Castano v. American Tobacco Co., supra, 84 F.3d at pp. 741-742; In re Jackson Nat. Life Ins. Co. Premium Litigation, supra, 183 F.R.D. at p. 223; Chin v. Chrysler Corp.* (D.N.J. 1998) *182 F.R.D. 448, 458; Tylka v. Gerber Products Co.* (N.D.Ill. 1998) *178 F.R.D. 493, 498; In re Stucco Litigation* (E.D.N.C. 1997) *175 F.R.D. 210, 216-217.*) For example, certification may be appropriate if the class action proponent shows that state law variations can be effectively managed through the creation of a small number of subclasses grouping the states that have similar legal doctrines. (See *Walsh v. Ford Motor Co., supra, 807 F.2d at p. 1017; Tylka v. Gerber Products Co., supra, 178 F.R.D. at p. 498; In re Telectronics Pacing Systems, Inc.* (S.D.Ohio 1996) *168 F.R.D. 203, 221.*) ***924**

A number of federal decisions also caution that if more than a few of the laws of the 50 states differ, the district court may face an impossible task of instructing a jury on the relevant law. (*In re American Medical Systems, Inc., supra, 75 F.3d at p. 1085; Chin v. Chrysler Corp., supra, 182 F.R.D. at p. 458.*) To meet such concerns, the district court possesses discretion to require the class action proponent to submit sample jury instructions and special verdict forms demonstrating how class causes of action could be presented to a jury for resolution " 'in a way that fairly represents the law of the 50 states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac.' " (*Chin v. Chrysler Corp., supra, 182 F.R.D. at p. 458; see In re Stucco Litigation, supra, 175 F.R.D. at p. 216.*) This call for a manageable set of jury instructions presupposes that even slight variations and nuances in applicable state laws may affect predominance and manageability. (*In re Stucco Litigation, supra, 175 F.R.D. at p. 216; see also Matter of Rhone-Poulenc Rorer Inc.* (7th Cir. 1995) *51 F.3d 1293, 1300; Fisher v. Bristol-Myers Squibb Co.* (N.D.Ill. 1998) *181 F.R.D. 365, 368; Tylka v. Gerber Products Co., supra, 178 F.R.D. at p. 498* [concluding that plaintiffs failed to meet their burden of demonstrating that the nuances of 50 consumer fraud statutes and 50 common laws are manageable];

cf. *In re Telectronics Pacing Systems, Inc.* (S.D.Ohio 1997) *172 F.R.D. 271, 291-294* [while even slight variations may be significant and relevant with respect to manageability issues, those that are insignificant or unimportant to the issues at stake should not preclude class action certification]. [FN10] )

FN10 We note that, while we generally agree with the reasoning parenthetically expressed for this last authority, we need not and do not intimate any views on the district court's conclusions regarding the significance or insignificance of the particular variations discussed or the propriety of the certification order in that case.

The foregoing decisions stress that a district court considering certification of a nationwide class cannot simply rely on counsel's assurances of manageability. (*Castano v. American Tobacco Co., supra, 84 F.3d at p. 742; In re Jackson Nat. Life Ins. Co. Premium Litigation, supra, 183 F.R.D. at p. 223; Chin v. Chrysler Corp., supra, 182 F.R.D. at p. 459; In re Telectronics Pacing Systems, Inc., supra, 168 F.R.D. at p. 221.*) Put another way, the court cannot accept "on faith" an assertion that variations in state laws relevant to the case do not exist or are insignificant; rather, the party seeking certification must affirmatively demonstrate the accuracy of the assertion. (*Castano v. American Tobacco Co., supra, 84 F.3d at pp. 741-742; Walsh v. Ford Motor Co., supra, 807 F.2d at p. 1016.*) Moreover, it is insufficient to merely refer the district court to densely worded articles, graphs, and charts pertaining to each state's laws. As one court explained, class action proponents ***925** "should not expect the court to ferret through, disseminate, and craft manageable schemes" from such materials when that burden "clearly rests" with the proponents. (*Tylka v. Gerber Products Co., supra, 178 F.R.D. at p. 498, fn. 3.*) The courts in several of our sister states are in accord. (E.g., *Ex parte Green Tree Financial Corp.* (Ala. 1998) *723 So.2d 6, 10-11* [borrowers failed to establish that state law variations would not swamp common issues and defeat predominance in action for breach of contract, breach of duty, civil conspiracy, negligence, and wantonness against lender for allegedly improper use of force-placed insurance]; *Carroll v. Cellco Partnership* (1998) *313 N.J.Super. 488 [713 A.2d 509, 518]* [criticizing trial court for glossing over potential state law differences and speculating on a hypothetical system to deal with factual differences]; *Duvall v. TRW, Inc.* (1991) *63*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906
Page 12
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

Ohio App.3d 271 [578 N.E.2d 556, 559-560] [plaintiff failed to sustain burden where he presented no analysis on state law variations regarding strict liability, negligence, breach of warranty, and punitive damages].)

In *Canon U.S.A.*, supra, 68 Cal.App.4th 1, the Court of Appeal held that a trial court may, at the pleading stage, consider whether certification of a nationwide class would require application of numerous different state rules of law and "whether California has a 'special obligation' to undertake" the massive burden of such litigation. [FN11] (*Id.* at p. 8.) Relying on two federal authorities, the court indicated that a party seeking certification bears the burden of demonstrating how subclasses could be formed to alleviate problems presented by state law variances. (*Ibid.*, relying upon *Walsh v. Ford Motor Co., supra*, 807 F.2d at pp. 1016-1017 and *In re Ford Motor Co. Ignition Switch Products* (D.N.J. 1997) 174 F.R.D. 332, 350.) The court issued a writ of mandate directing the trial court to vacate its order denying the defendants' motion to strike from the complaint all references to a nationwide class. The trial court was instructed to reconsider the motion after giving the class action proponents an opportunity to present "a more thorough analysis of the conflicting laws of the various states, and to show how subclasses can be created, or if they would be feasible, to maintain a class action." (*Canon U.S.A., supra*, 68 Cal.App.4th at pp. 8-9 & fn. 6; see *Norwest Mortgage, Inc. v. Superior Court, supra*, 72 Cal.App.4th at p. 229 [remanding with directions to undertake *Canon U.S.A.*'s analysis in the event plaintiffs sought certification of class with nonresident members and laws of other states were found controlling].) *926

> FN11 *Canon U.S.A.* concluded that, in deciding whether California has a special obligation to undertake the burden of a nationwide class action, courts should consider "whether the nationwide class would promote judicial economy in California courts, whether California claimants would be aided in their recovery by class litigation, and the extent of the connection the parties have with California." (*Canon U.S.A., supra*, 68 Cal.App.4th at p. 8.)

Like *Canon U.S.A.*, we favor adoption of the type of burdens articulated in the federal decisions above. Accordingly, we hold that a class action proponent must credibly demonstrate, through a thorough analysis of the applicable state laws, that state law

variations will not swamp common issues and defeat predominance. Additionally, the proponent's presentation must be sufficient to permit the trial court, at the time of certification, to make a detailed assessment of how any state law differences could be managed fairly and efficiently at trial, for example, through the creation of a manageable number of subclasses. [FN12] Trial courts, in assessing the propriety of nationwide class certification, must consider these factors, as well as all the other factors relevant to certification, including the potential recovery of each individual claimant and whether the proposed class suit is the only effective way to redress the alleged wrongdoing or to prevent unjust advantage to the defendant. (See *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 446; *Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755].) Adherence to these procedures should ensure that nationwide class actions are certified only where they will result in substantial benefits both to the litigants and the courts. (See *City of San Jose v. Superior Court, supra*, 12 Cal.3d at p. 459.)

> FN12 While we recognize that the submission of proposed instructions and special verdict forms would be extremely helpful in ascertaining whether a trial on nationwide class claims will be manageable, we decline to require such submissions in each and every case. Instead, we conclude the individual trial courts should retain discretion in the matter and should exercise that discretion to meet the needs of the particular circumstances before them.

Briseno argues that a defendant should not be able to defeat nationwide class certification without affirmatively showing the existence of outcome-determinative differences among applicable state laws as contemplated by *Hurtado, supra*, 11 Cal.3d at pages 580-581. We reject this argument for three reasons.

First, the showing required in *Hurtado, supra*, 11 Cal.3d 574, is relevant to the issue of which state's law is more appropriately applied to the claims of nonresident class members; it would serve no useful purpose *after* a trial court has decided to apply the laws of other states. Such a rule would, in effect, impermissibly relieve the class action proponent of the burden of establishing predominance and manageability.

Second, we are not convinced by those of Briseno's

24 Cal.4th 906                                                                    Page 13
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

authorities in which courts certified multistate class actions without determining the applicable law or delving into manageability issues. (E.g., *Longden v. Sunderman, supra*, 123 F.R.D. at pp. 555-556; *In re LILCO Securities Litigation* (E.D.N.Y. 1986) 111 F.R.D. 663, 670 [even if 50 states' law must be *927 applied to pendent state claims, decertification is an option if material variations render their adjudication unmanageable].) As discussed *ante*, in part A, a trial court cannot reach an informed decision on predominance and manageability without first determining whether class claims will require adjudication under the laws of other jurisdictions and then evaluating the resulting complexity where those laws must be applied. (*Clothesrigger, supra*, 191 Cal.App.3d at p. 619; see *Canon U.S.A., supra*, 68 Cal.App.4th at pp. 7-8; *Osborne v. Subaru of America, Inc., supra*, 198 Cal.App.3d at pp. 654-659; cf. *Rose v. Medtronics, Inc., supra*, 107 Cal.App.3d at p. 157.) That a trial court retains the power to consider decertification when a class action later proves to be unmanageable (see *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]) should not serve to lessen the court's initial responsibility to grant certification only where all of the requirements for certification have been met.

Third, several of Briseno's authorities do not apply the burden she proposes, but actually support the rule we adopt. (E.g., *In re Prudential Ins. Co. America Sales Litigation* (3d Cir. 1998) 148 F.3d 283, 315-316 & fn. 57 [agreeing with district court's conclusion that state law variations fell into a limited number of predictable patterns and did not render action unmanageable, but noting the manageability requirement may no longer be necessary where, as there, certification of a *settlement-only* class action was sought]; *In re School Asbestos Litigation, supra*, 789 F.2d at p. 1010 [expressing doubts, but deferring to district court's wide discretion regarding manageability of litigation].) In one case, a federal district court agreed that the application of various states' laws raises "a very real concern" regarding manageability of a class action at trial. (*In re Copley Pharmaceutical, Inc.* (D.Wyo. 1995) 161 F.R.D. 456, 465.) There, however, the court concluded that many of the state law nuances might be irrelevant in light of the particular defendant's admissions regarding product contamination and liability. (*Ibid.*) These authorities, like the ones we rely upon, hew to the principle that certification of a nationwide class is not a matter of right but is contingent upon a showing that all prerequisites for a class action are met.

### C. Conclusions

(3b) We conclude that the decision in this case to order certification of a nationwide class was premised upon the faulty legal assumption that choice-of-law issues need not be resolved as part of the certification process. In particular, the trial court should not have granted certification without first determining the effect of the choice-of-law agreements at issue as required by *Nedlloyd, supra*, 3 Cal.4th 459. *928

The trial court and the Court of Appeal also erred in concluding that, even assuming the enforceability of the choice-of-law agreements, nationwide class certification is appropriate because ASB did not demonstrate dispositive conflicts between California law and the law of other states. As explained *ante*, in part B, the party challenging certification is not required to make such a showing when the claims of putative class members must, by virtue of an advance consent, be resolved under the laws of other states. Rather, when an enforceable choice-of-law agreement is involved, the burden rests upon the party seeking nationwide class certification to identify any variations of applicable state law and to meaningfully demonstrate how a trial on the class causes of action can be conducted fairly and efficiently in light of those variations. Certification of a nationwide class is proper only where the class action proponent meets that burden *and* demonstrates that all other requirements for class certification are met (see *Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at p. 435; *Richmond v. Dart Industries, Inc., supra*, 29 Cal.3d at p. 470).

We emphasize that this opinion should not be read as expressing any views regarding the scope or enforceability of the choice-of-law provisions at issue, the existence or significance of differences between the various state laws, or the applicability of other states' laws in this case. These are all determinations that the trial court should make in the first instance. Upon making such determinations, the trial court should consider afresh whether all the prerequisites of a nationwide class action are present, including predominance and manageability at trial. [FN13]

> FN13 Both in the trial court and on appeal, Briseno and ASB have disputed whether and to what extent the unfair business practices statutes of the various states differ from each other. ASB points out that some but not all of the statutes exempt financial institutions and that some require proof of the plaintiff's reliance for liability. ASB also argues that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

24 Cal.4th 906                                                                 Page 14
24 Cal.4th 906, 15 P.3d 1071, 103 Cal.Rptr.2d 320, 01 Cal. Daily Op. Serv. 712, 2001 Daily Journal D.A.R. 925
**(Cite as: 24 Cal.4th 906)**

the statutes of limitations and the right to jury trial differ among states, that certain procedural preconditions apply in some states, and that remedies and legal standards under the different statutes vary with regard to the availability of actual, treble, and punitive damages. Without expressing any views on this dispute, we note that, *if* the trial court were to determine that the claims of out-of-state residents must be resolved under the unfair business practices laws of their own states, instead of California's UCL, then at present such claims appear to be outside the scope of Briseno's complaint. (See *ante*, fn. 1.)

Additionally we clarify that our opinion is intended to provide an analytical framework for evaluating the basic choice-of-law and conflict of laws issues that must be resolved when certification of a nationwide or multistate class action is sought; we have not undertaken to address all of the matters that may arise in connection with nationwide class action certification. For example, determinations regarding the applicable law may affect issues other than predominance and manageability, such as whether the representative **\*929** plaintiffs have claims or defenses typical of those of the class or whether the representative plaintiffs can fairly and adequately protect the interests of the entire class. On a final note, we caution trial courts that determinations of predominance and manageability may vary case by case, depending upon individual factors such as the number and nature of the legal theories and evidentiary issues presented in the case, as well as the size and scope of the proposed class. [FN14]

FN14 While our decision today generally requires trial courts to decide disputes regarding choice-of-law provisions before certifying a nationwide class action, we do not rule out the possibility that, on rare occasions, such disputes need not be resolved prior to certification. For example, it may be that issues regarding the applicability or enforceability of choice-of-law agreements need not be decided if the class action proponent establishes, in the first instance, that application of all contractually designated laws will not defeat predominance or manageability and that all other prerequisites for certification of a nationwide class are met. (See *ante*, pt. B.) In addition, our decision leaves open the option that disputes regarding choice-of-law

provisions may be resolved in a separate phase of the proceeding that precedes the certification process.

Disposition
The judgment of the Court of Appeal is reversed. The matter is remanded to that court with instructions to issue a peremptory writ of mandate directing the trial court to vacate its order of certification and to conduct further proceedings consistent with the views expressed herein.

George, C. J., Mosk, J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred. **\*930**

Cal. 2001.

WASHINGTON MUTUAL BANK, FA, Petitioner, v.  THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; JAYNE A. BRISENO, Real Party in Interest.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 13

Westlaw.

222 Fed.Appx. 589                                                                                                      Page 1
222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.))
**(Cite as: 222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.)))**

C
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)

United States Court of Appeals,
Ninth Circuit.
WESTERN INTERNATIONAL SYNDICATION
CORPORATION, Plaintiff-Appellee,
v.
GULF INSURANCE COMPANY, Defendant-
Appellant.
No. 05-55092.

Argued and Submitted Feb. 6, 2007.
Filed Feb. 26, 2007.

**Background:** Insured, who was sued for making misrepresentations concerning a business competitor's television program and for using competitor's trademarks, filed declaratory action against insurer in state court seeking defense and indemnity under commercial insurance policy. Insurer removed the action to federal court. The United States District Court for the Central District of California, R. Gary Klausner, J., determined that insurer had a duty to defend insured and that insurer could not avoid liability based on insured's late notice. Insurer appealed.

**Holdings:** The Court of Appeals held that:

(1) insured's alleged statements about competitor constituted disparagement under New York law, and thus insurer had duty to defend under personal injury provision of policy;

(2) policy's coverage exclusion for trademark issues did not excuse insurer from its duty to defend, under California law; and

(3) insured's failure to provide timely notice of underlying action did not excuse insurer from its duty to defend, under California law.
Affirmed.

West Headnotes

[1] Federal Courts ⬤➞409.1
170Bk409.1 Most Cited Cases
In diversity case from the Central District of California, federal appellate court would apply the same choice of law rules as would a California state court.

[2] Insurance ⬤➞2311
217k2311 Most Cited Cases
Insurer had duty to defend insured in lawsuit arising from its alleged statements suggesting that business competitor's television show would no longer be in existence, or that its production would be limited, since these statements constituted "disparagement" under New York law, and disparagement qualified as "personal injury" under the terms of insured's commercial insurance policy.

[3] Insurance ⬤➞2311
217k2311 Most Cited Cases

[3] Insurance ⬤➞2313(1)
217k2313(1) Most Cited Cases

[3] Insurance ⬤➞2922(1)
217k2922(1) Most Cited Cases
Under California law, exclusion in commercial insurance policy for personal injuries regarding trademark issues did not excuse insurer from its duty to defend insured in lawsuit brought by business competitor, even though majority of competitor's claims involved trademark issues, since competitor also alleged disparagement, which was covered under the policy.

[4] Insurance ⬤➞1091(4)
217k1091(4) Most Cited Cases
Laws of New York and California regarding whether late notice of underlying action allows an insurer to avoid its duty to defend differed, for purposes of conflict of laws analysis, where New York law provided that late notice voids coverage even without prejudice, while California law required prejudice.

[5] Insurance ⬤➞1091(4)
217k1091(4) Most Cited Cases
California, rather than New York, law governed question of whether insured's late notice of underlying action allowed insurer to avoid its duty to defend, since California was the forum state, insured

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

222 Fed.Appx. 589
222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.))
(Cite as: 222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.)))

was a California corporation with its primary place of business in California, the policy was executed in California, and factual allegations in the case did not relate to the rationale behind New York's "no-prejudice" rule so as to give rise to an interest significant enough to justify the application of foreign law.

[6] Insurance 🔑2919
217k2919 Most Cited Cases

[6] Insurance 🔑3168
217k3168 Most Cited Cases
Under California law, insured's failure to provide timely notice of underlying action did not excuse insurer from its duty to defend absent a showing of prejudice.
*591 Jeffrey Raskin, Esq., Morgan Lewis & Bockius, LLP, San Francisco, CA, for Plaintiff-Appellee.

Anderson McPharlin & Conners, LLP, Los Angeles, CA, for Defendant-Appellant.

Appeal from the United States District Court for the Central District of California; R. Gary Klausner, District Judge, Presiding. D.C. No. CV-04- 02349-RGK.

Before: FERGUSON, SILER [FN*], and HAWKINS, Circuit Judges.

FN* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

MEMORANDUM [FN**]

FN** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**1 In December 2002, the Apollo Theater Foundation ("Apollo") initiated a lawsuit ("Underlying Action") against Western International Syndication Corporation ("Western") in the Southern District of New York. Apollo alleged that Western had embarked on a systematic campaign of misconduct, *inter alia* making misrepresentations concerning Apollo's television program, "It's Showtime at the Apollo" or "Showtime at the Apollo" ("Apollo Show"), and using Apollo's trademarks in connection with a competing program. On March 8, 2004, Western notified Gulf Insurance

Company ("Gulf") [FN1] of the Underlying Action and requested defense and indemnity pursuant to a commercial lines insurance policy ("the policy") that Gulf had issued to Western. When Gulf refused to provide a defense, Western filed this declaratory action in state court, and Gulf then removed to federal court.

FN1. Defendant-Appellant Travelers Indemnity Company is Gulf's successor in interest by merger. This memorandum refers to both entities as "Gulf".

The District Court held, *inter alia,* that Gulf had a duty to defend Western against Apollo's deceptive acts and practices claim under New York law, *see* N.Y. Gen. Bus. Law § 349 (McKinney 1984), and that, because Gulf failed to show any prejudice, the insurer could not avoid liability based on Western's late notice. We affirm.

*STANDARD OF REVIEW & CHOICE OF LAW*
Where the underlying facts are undisputed, interpretation of an insurance policy is a matter of law. *Cort v. St. Paul Fire & Marine Ins. Co.,* 311 F.3d 979, 982 (9th Cir.2002). This Court reviews de novo the District Court's summary judgment decision, as well as substantive determinations of federal and state law. *Id.* at 983; *Dorr v. County of Butte,* 795 F.2d 875, 876-77 (9th Cir.1986).

[1] As this is a diversity case from the Central District of California, we apply the same choice of law rules as would a California state court. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). California law applies where no party has "suggested that the law of a foreign state should furnish the rule of decision." *Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666, 670 (1974) (internal punctuation omitted).

*DISCUSSION*
**I. The District Court Did Not Err in Ruling that Gulf Had a Duty to Defend Under the Personal Injury Provision of the Policy.**

[2] A court determines whether a liability insurer owes an insured a duty to *592 defend by comparing the factual allegations in the third-party complaint with the terms of the insurance policy. *See Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 176-77 (1966). Under the policy at issue, Gulf had a duty to defend Western against third-party

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

222 Fed.Appx. 589
222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.))
(Cite as: 222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.)))

Page 3

allegations of "personal injury," including that Western had, through oral or written publication, "disparage[d] a person's or organization's goods, products, or services." New York courts [FN2] have previously recognized as disparagement the intentional utterance of an injurious falsehood that causes the plaintiff to suffer actual damage. *Brignoli v. Balch Hardy & Scheinman, Inc.,* 645 F.Supp. 1201, 1208 (S.D.N.Y.1986) (citations omitted) (interpreting New York law); *see also* Restatement (Second) of Torts § 629 cmt. c (1977); Black's Law Dictionary 503 (8th ed.2004).

> FN2. While the interpretation of the insurance contract is governed by California law, the parties agree that the tort law of New York determines whether the alleged facts give rise to a potentially covered claim. *See AMB Indus., Inc. v. Zurich Am. Ins. Co.,* No. C 05-3480, 2006 WL 2595944, at * 19 (N.D.Cal. Sept.11, 2006) (citing *Fibreboard Corp. v. Hartford Accident & Indem. Co.,* 16 Cal.App.4th 492, 20 Cal.Rptr.2d 376, 384-86 (1993)).

**\*\*2** In the Underlying Action, Apollo alleged that Western requested extensions from the United States Patent and Trademark Office to oppose Apollo's trademark registration applications; that it did so solely for the purpose of disrupting the production financing of the Apollo Show; and that Western, for the purpose of placing a cloud on the title of the Apollo Show trademark, informed banking institutions that the ownership rights of the trademark were contested. According to Apollo, Western's actions succeeded in making it difficult for Apollo to obtain insurance necessary to secure production financing. Apollo further alleged that Western made "statements to television stations and broadcasters to the effect that ... the Apollo Show w [ould] not be distributed for the 2003/2004 broadcast season."

The statements allegedly made by Western suggested that the Apollo Show would no longer be in existence, or that its production would be substantially limited. They also were "intended by [their] publisher to be understood or [are] reasonably understood to cast doubt upon the existence or extent of [the Apollo's] property in ... intangible things, or upon their quality." *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.,* 22 A.D.2d 595, 257 N.Y.S.2d 884, 886 (N.Y.App.Div.1965) (citing Restatement (First) of Torts § 629 (1938)). The allegations therefore constitute disparagement. *See Atlantic Mut. Ins. Co. v. J. Lamb, Inc.,* 100 Cal.App.4th 1017, 123

Cal.Rptr.2d 256, 269 (2002); *Amerisure Ins. Co. v. Laserage Tech. Corp.,* 2 F.Supp.2d 296, 304 (W.D.N.Y.1998).

### *II. The District Court Did Not Err in Holding that the Trademark Exclusion Did Not Apply.*

[3] Insurance policy exclusions are narrowly construed, especially where the coverage portion of a policy would lead an insured to reasonably expect coverage. *MacKinnon v. Truck Ins. Exch.,* 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1213 (2003). The policy in this case excludes from coverage personal injuries regarding "[i]nfringement of copyright or trademark." While the vast majority of Apollo's claims do involve trademark issues, the allegations that Western made disparaging statements are distinct, and the cases cited by Gulf are inapposite. *Cf. \*593Indus. Indem. Co. v. Apple Computer,* 79 Cal.App.4th 817, 95 Cal.Rptr.2d 528, 538 (1999) (ruling that insurer could rely on trademark exclusion because "all the facts indicated" that any claims of false designation of origin and unfair competition "arose solely from the conduct by Apple amounting to trademark infringement"); *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.,* 332 F.3d 215, 223 (4th Cir.2003) (finding third-party complaint did not allege disparagement of insured's products except as the result of alleged trademark infringement).

Apollo alleges not only that Western contested Apollo's ownership rights but also that it informed banking institutions of this dispute, creating the false impression that Apollo's ownership was in doubt. Apollo also alleged that Western disseminated false information to advertisers regarding limited distribution of the Apollo Show. These factual allegations go beyond the elements of a trademark claim and exceed the scope of the trademark exclusion.

### *III. The District Court Did Not Err in Holding That Western's Claims Were Not Barred Despite Its Failure to Give Timely Notice to Gulf.*

**\*\*3** Finally, Gulf contends that, because Western failed to provide it with timely notice of the Underlying Action, Gulf has no duty to defend. The District Court found that Gulf failed to show actual prejudice as a result of the late notice, and Gulf does not challenge that finding, so the only question is whether late notice allows an insurer to avoid liability despite a lack of prejudice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

222 Fed.Appx. 589
222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.))
**(Cite as: 222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.)))**

Gulf insists that, under New York law, the failure to notify is fatal regardless of prejudice. Western maintains that California law governs and requires that prejudice be shown before a policy is voided. Unlike states that use a "most significant contacts" approach to conflicts of laws, California applies a three-step "governmental interest" test. *Offshore Rental Co. v. Cont'l Oil Co.,* 22 Cal.3d 157, 148 Cal.Rptr. 867, 583 P.2d 721, 723 (1978) (citing *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, 729 (1967) (en banc)). We therefore consider: (1) whether the states' laws differ; (2) if so, whether there is a true conflict; and (3) if such a conflict exists, which state's interests would be more impaired were the other state's law applied. *See, e.g., Estate of Darulis v. Garate,* 401 F.3d 1060, 1062 (9th Cir.2005).

*A. Do the Laws of New York and California Differ?*

[4] Under the "no-prejudice" rule in New York, if an insurance contract requires notice of an occurrence "as soon as practicable," failure to provide it generally voids coverage even in the absence of prejudice. *Argo Corp. v. Greater N.Y. Mut. Ins. Co.,* 4 N.Y.3d 332, 794 N.Y.S.2d 704, 827 N.E.2d 762, 764 (2005). California, on the other hand, requires that an insurer demonstrate prejudice in order for untimely notice to vitiate its liability. *Hynding v. Home Accident Ins. Co.,* 214 Cal. 743, 7 P.2d 999, 1002 (1932). The laws do indeed conflict. [FN3]

> FN3. The District Court held that the laws of New York and California no longer differ significantly, and it ended its conflict of laws inquiry at this stage. That decision minimized how entrenched is New York's no-prejudice rule. Even if recent rulings have chipped away at the no-prejudice rule, it continues to govern in cases such as this. *See, e.g., Argo,* 794 N.Y.S.2d 704, 827 N.E.2d at 765 (previous decisions upholding insurers' liability despite a lack of timely notice "did not abrogate the no-prejudice rule and should not be extended to cases where the carrier received unreasonably late notice of a claim.... The rationale of the no-prejudice rule is clearly applicable to a late notice of lawsuit under a liability insurance policy.")

*594 B. Is There a True Conflict?*

[5] We therefore proceed to step two of the governmental interest analysis, whether there is a true

conflict of interests. California is the forum state, and "California's general preference is to apply its own law." *Am. Bank of Commerce v. Corondoni,* 169 Cal.App.3d 368, 215 Cal.Rptr. 331, 333 (1985). Further, the insured is a California corporation that paid taxes and insurance premiums in California, it maintained its primary place of business in California, and it used a California agent to negotiate and purchase its insurance policy. Finally, the policy was executed in California and delivered to Western's place of business in the state.

New York, on the other hand, "can be said to have an interest if the policies underlying its [law] would be advanced when the law is applied to this transaction." *Rosenthal v. Fonda,* 862 F.2d 1398, 1402 (9th Cir.1988). One of the primary rationales for New York's no-prejudice rule is protecting insurers from fraud and collusion, but here there has been no collusion allegation, so this rationale cannot give rise to a true interest. *See Brandon v. Nationwide Mut. Ins. Co.,* 97 N.Y.2d 491, 743 N.Y.S.2d 53, 769 N.E.2d 810, 813-14 (2002). A second rationale behind New York's rule is facilitating settlements, *id.* at 813, but the record reflects that Western offered Gulf opportunities to participate in settlement discussions and Gulf declined.

**\*\*4** [6] Under the facts of this case, New York does not have an interest significant enough to justify the application of foreign law. Therefore, we need not reach the third step of the governmental interest test. California law governs, and, accordingly, Gulf's failure to demonstrate prejudice prevents it from avoiding liability on the basis of Western's late notice.

*CONCLUSION*
For the foregoing reasons, we **AFFIRM** the decision of the court below.

222 Fed.Appx. 589, 2007 WL 625264 (9th Cir.(Cal.))

END OF DOCUMENT

# TAB 14

**1646**.  A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.