# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**RELATED CASE ORDER**

A Motion for Administrative Relief to Consider Whether Cases Should be Related or a *Sua Sponte* Judicial Referral for Purpose of Determining Relationship (Civil L.R. 3-12) has been filed. The time for filing an opposition or statement of support has passed. As the judge assigned to the earliest filed case below that bears my initials, I find that the more recently filed case(s) that I have initialed below are related to the case assigned to me, and such case(s) shall be reassigned to me. Any cases listed below that are not related to the case assigned to me are referred to the judge assigned to the next-earliest filed case for a related case determination.

**C 04-01001 SBA**     **Lenscrafters, Inc. Et al v. Liberty Mutual Fire Insurance Company**

**C 07-02853 EMC**     **Lenscrafters, Inc. Et al v. Liberty Mutual Fire Insurance Company et al**

**I find that the above case is related to the case assigned to me. SBA**

**ORDER**

Counsel are instructed that all future filings in any reassigned case are to bear the initials of the newly assigned judge immediately after the case number. Any case management conference in any reassigned case will be rescheduled by the Court. The parties shall adjust the dates for the conference, disclosures and report required by FRCivP 16 and 26 accordingly. Unless otherwise ordered, any dates for hearing noticed motions are vacated and must be re-noticed by the moving party before the newly assigned judge; any deadlines set by the ADR Local Rules remain in effect; and any deadlines established in a case management order continue to govern, except dates for appearance in court, which will be rescheduled by the newly assigned judge.

Dated:_6/15/07          _____ *Saundra B Armstrong* _____

Judge Saundra B. Armstrong

-1-

## CERTIFICATE OF SERVICE

I certify that on the date stated below, I lodged a copy of this order with each judicial officer and I mailed a copy to each counsel of record or *pro se* party in the cases listed above.

**Richard W. Wieking, Clerk**

**DATED: _6/15/07**

By: *Lisa R. Clark*

**Deputy Clerk**

Copies to: Courtroom Deputies
                Case Systems Administrators
                Counsel of Record
Entered into Assignment Program: _____(date)

# EXHIBIT 2

RICHARD DeNATALE (Bar No. 121416)
CELIA M. JACKSON (Bar No. 124508)
JO ANN HOENNINGER (Bar No. 205222)
Heller Ehrman White & McAuliffe LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Attorneys for Plaintiffs
LENSCRAFTERS, INC., EYEXAM OF
CALIFORNIA, INC., and  EYEMED VISION CARE, LLC

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENSCRAFTERS, INC.; EYEXAM OF CALIFORNIA, INC.; and EYEMED VISION CARE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY and EXECUTIVE RISK SPECIALTY INSURANCE COMPANY,<br><br>Defendants. | Case No.:  CV-04-01001 SBA<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Lenscrafters, Inc., EYEXAM of California, Inc., and EyeMed Vision Care, LLC (collectively, the "Policyholders") allege as follows:

### INTRODUCTION

1.    This action arises out of the decisions of defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Executive Risk Specialty Insurance Company ("ERSIC") to defend the Policyholders under reservation of rights with respect to a putative class action lawsuit captioned *Melvin Gene Snow, et al. v. Lenscrafters, Inc., et al.*, San

1  Francisco Superior Court Case No. CGC-02-40554 (the "*Snow* Action"). Defendants have

2  a duty to defend the Policyholders in the *Snow* Action. Liberty Mutual is contractually

3  obligated to provide coverage to the Policyholders for the costs of defense and indemnity

4  for the *Snow* Action under certain Commercial General Liability policies issued to the

5  Policyholders. ERSIC is contractually obligated to provide coverage to the Policyholders

6  for the costs of defense and indemnity for the *Snow* Action under an Errors and Omissions

7  Liability policy issued to the Policyholders.

8      2.    The *Snow* Action alleges various wrongful acts in purported violation of,

9  among other things, the Consumer Legal Remedies Act (Civil Code Section 1750 *et seq.*)

10  and the California Confidentiality of Medical Information Act (Civil Code Section 56 *et*

11  *seq.*). The Policyholders have incurred substantial costs in defense of the *Snow* Action and

12  have made demand from Defendants for payment of such costs. Defendants have agreed to

13  defend under reservation of rights, but neither has yet reimbursed the Policyholders for

14  defense costs already incurred. Therefore, the Policyholders seek a declaration of the rights,

15  duties and responsibilities of the parties under Defendants' policies.

16                              **THE PARTIES**

17      3.    Plaintiff Lenscrafters, Inc. is an Ohio corporation with its principal place of

18  business in Ohio.

19      4.    Plaintiff EYEXAM of California, Inc., fka EyeMed, Inc., is a California

20  corporation with its principal place of business in California.

21      5.    Plaintiff EyeMed Vision Care LLC is a limited liability company of Delaware

22  with its principal place of business in Ohio.

23      6.    Defendant Liberty Mutual Fire Insurance Company is a Massachusetts

24  corporation with its principal place of business in Massachusetts.

25      7.    Defendant Executive Risk Specialty Insurance Company is a Connecticut

26  corporation with its principal place of business in Connecticut.

27

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT; DEMAND
FOR JURY TRIAL, CASE NO. CV 04-01001 SBA

## JURISDICTION

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 2201. There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

9.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, because the alleged events and/or omissions giving rise to this Complaint are alleged to have occurred in this District.

## FACTUAL ALLEGATIONS

### The Liberty Mutual Policies

10.      Liberty Mutual issued to the Policyholders the following Commercial General Liability policies (collectively, the "Liberty Mutual Policies"):

- Policy No. TB2-681-004130-038, effective February 1, 1998 to February 1, 1999;

- Policy No. RG2-681-004130-039, effective February 1, 1999 to February 1, 2000;

- Policy No. RG2-681-004130-030, effective February 1, 2000 to February 1, 2001;

- Policy No. RG2-681-004130-031, effective February 1, 2001 to February 1, 2002;

- Policy No. RG2-681-004130-032, effective February 1, 2002 to February 1, 2003; and

- Policy No. RG2-681-004130-033, effective February 1, 2003 to February 1, 2004.

Lenscrafters, Inc., EyeMed, Inc., and EyeMed Vision Care, LLC are each a named insured under the Liberty Mutual Policies. The material terms of the Liberty Mutual Policies relevant to this litigation are alleged in this paragraph and in paragraphs 11, 12 and 13. The Liberty Mutual Policies are not being attached here because of their bulk and because it

3

1    would be wasteful and burdensome for the Court and the parties.

2        11.    The Liberty Mutual Policies provide coverage, *inter alia*, for damages arising

3    out of "personal injury." The term "personal injury" is defined to include " injury. . .

4    arising out of . . . [the] [o]ral or written publication of material that violates a person's right

5    of privacy." Each of the Liberty Mutual Policies has limits of liability for Personal Injury

6    of $3 million for each occurrence and $6 million in the aggregate.

7        12.    The Liberty Mutual Policies also provide coverage for damages arising out of

8    "advertising injury." The term "advertising injury" is defined to include, among other

9    things, "publication of material that violates a person's right of privacy." Each of the

10   Liberty Mutual Policies has limits of liability for Advertising Injury of $3 million for each

11   occurrence and $6 million in the aggregate.

12       13.    Under the Liberty Mutual Policies, Liberty Mutual has the "duty to defend the

13   insured against any 'suit' seeking [personal or advertising injury] damages."

14       14.    The Policyholders have complied with all terms and conditions precedent of

15   the Liberty Mutual Policies, and are entitled to the benefit of insurance provided by them.

16   **The ERSIC Policy**

17       15.    ERSIC issued to EyeMed Vision Care, LLC a Managed Care Organization

18   Errors and Omissions Liability policy, Policy No. 8167-2076, effective November 12, 2001

19   to November 12, 2002 (the "ERSIC Policy"), which provides coverage to EyeMed, Inc.,

20   EyeMed Vision Care, LLC and Lenscrafters, Inc. The material terms of the ERSIC policy

21   relevant to this litigation are alleged in this paragraph and in paragraphs 16 and 17. The

22   ERSIC Policy is not being attached here because of its bulk and because it would be

23   wasteful and burdensome for the Court and the parties.

24       16.    The ERSIC Policy provides coverage for "any Loss which the Insured is

25   legally obligated to pay as a result of any Claim. . . ." The term "Loss" is defined to include

26   "Defense Expenses," meaning "reasonable legal fees and expenses incurred in the . . .

27   defense . . . of a Claim . . . ." The term "Claim" is defined as "any written notice received

28   by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful

4

1   Act." The term "Wrongful Act" is defined, *inter alia*, to mean "any actual or alleged act,

2   error or omission in the performance of, or any failure to perform, Medical Information

3   Protection by any Insured Entity or by any Insured Person acting within the scope of his or

4   her duties or capacity as such . . . ." The term "Medical Information Protection" is defined

5   as "maintaining the confidentiality of information regarding Medical Services and limiting

6   the release or use of such information in conformance with requirements of law." The

7   ERSIC Policy has limits of liability of $3 million for each Claim or Related Claims and $3

8   million in the aggregate.

9       17.    Under the ERSIC Policy, ERSIC has the "duty to defend any Claim made

10  against any Insured which is covered by this Policy, even if the allegations of such Claim

11  are groundless, false or fraudulent."

12      18.    The Policyholders have complied with all terms and conditions precedent of

13  the ERSIC Policy, and are entitled to the benefit of insurance provided by them.

14  **The *Snow* Action**

15      19.    The *Snow* Action was originally filed against Lenscrafters, Inc. and other

16  entities on March 12, 2002 on behalf of a putative class. A First Amended Complaint

17  ("FAC") was filed on or about May 22, 2002. A Second Amended Complaint ("SAC") was

18  filed on or about April 15, 2003 against Lenscrafters, Inc., EyeMed, Inc., EyeMed Vision

19  Care, Inc. and other entities. A true and correct copy of the SAC is attached hereto as

20  Exhibit A and is incorporated herein by this reference for informational purposes only and

21  without admitting the truth of its allegations.

22      20.    Among other things, the SAC alleges that the Policyholders disclosed private

23  medical information of the putative plaintiff class, in violation of the California

24  Confidential Medical Information Act, thus violating the privacy rights of the putative

25  plaintiff class. *See* SAC, ¶¶ 109-117. The original complaint and the FAC contained

26  similar allegations. The purported disclosures of private medical information is alleged to

27  have occurred during the period in which the Liberty Mutual Policies and the ERSIC Policy

28  were or are in effect. The claims asserted against the Policyholders in the *Snow* Action fall

5

1   within the scope of the coverage provided by the Liberty Mutual Policies and the ERSIC

2   Policy, thereby triggering the duty of the Defendants to defend and indemnify the

3   Policyholders.

4   **The Controversy With Liberty Mutual**

5       21.   On or about March 21, 2002, the Policyholders timely tendered the defense of

6   the *Snow* Action to Liberty Mutual.  The Policyholders demanded that Liberty Mutual

7   defend them in the *Snow* Action and  indemnify them in full for all legal liabilities that they

8   may incur in connection with that litigation.

9       22.   By letter dated May 29, 2002, Liberty Mutual denied coverage, claiming,

10   without properly considering the relevant allegations in the *Snow* Action complaint or

11   applicable language in the Liberty Mutual Policies, that the acts alleged in the *Snow* Action

12   complaint are outside the terms of the Liberty Mutual Policies.  In a letter dated June 28,

13   2002, the Policyholders requested that Liberty Mutual reconsider its position.  Nonetheless,

14   by letter dated July 29, 2002, Liberty Mutual reaffirmed its denial of coverage.

15       23.   On February 17, 2004, Liberty Mutual changed its position and agreed to

16   defend its Policyholders under full reservation of rights.  Liberty Mutual has not, however,

17   reimbursed its Policyholders for defense costs they have already expended, nor has it agreed

18   to pay the reasonable costs of defense on an ongoing basis.  Moreover, Liberty Mutual

19   alleges that it has the right to withdraw from the defense and seek reimbursement of defense

20   costs it has paid to its Policyholders for the *Snow* Action.

21       24.   The Policyholders have incurred substantial costs to defend the *Snow* Action.

22   A present controversy exists with respect to Liberty Mutual's duty to defend the

23   Policyholders in the *Snow* Action and with respect to the parties' respective rights and

24   obligations under the Liberty Mutual Policies, including the obligation of Liberty Mutual to

25   pay for defense costs and any indemnity costs incurred by the Policyholders in connection

26   with the *Snow* Action.

27   **The Controversy With ERSIC**

28       25.   On or about June 20, 2002, the Policyholders timely tendered the defense of

6

the *Snow* Action to ERSIC. The Policyholders demanded that ERSIC defend them in the *Snow* Action and indemnify them in full for all legal liabilities that they may incur in connection with that litigation.

26.    Shortly thereafter, ERSIC agreed to defends its Policyholders under a reservation of rights, but ERSIC has not reimbursed its Policyholders for defense costs they have already expended or agreed to pay the reasonable costs of defense on an ongoing basis. Moreover, ERSIC alleges that it has the right to withdraw from the defense and seek reimbursement of defense costs it has paid to its Policyholders for the *Snow* Action.

27.    The Policyholders have incurred substantial costs to defend the *Snow* Action. A present controversy exists with respect to ERSIC's duty to defend the Policyholders in the *Snow* Action and with respect to the parties' respective rights and obligations under the ERSIC Policies, including the obligation of ERSIC to pay for defense costs and any indemnity costs incurred by the Policyholders in connection with the *Snow* Action.

### FIRST CLAIM FOR RELIEF:
### DECLARATORY JUDGMENT RE DEFENDANTS' DUTY TO DEFEND

28.    Plaintiffs repeat and incorporate the allegations of paragraphs 1 through 29.

29.    Defendants each have a separate and individual duty to defend the Policyholders with respect to the *Snow* Action, including the obligation to pay the costs of the Policyholders' defense incurred or to be incurred in the future in connection with the *Snow* Action.

30.    Each defendant has refused to accept its duty to defend the Policyholders with respect to the *Snow* Action, except under reservation of rights.

31.    By reason of the foregoing, an actual and justiciable controversy presently exists between the Policyholders and Defendants concerning Defendants' duty to defend the Policyholders with respect to the *Snow* Action. Accordingly, the Policyholders seek a declaration that Defendants have a duty to defend the Policyholders with respect to the *Snow* Action.

7

**SECOND CLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT RE DEFENDANTS' DUTY TO INDEMNIFY**

32.    Plaintiffs repeat and incorporate the allegations of paragraphs 1 through 28.

33.    Defendants have a duty under the terms of their respective policies to indemnify the Policyholders in full for all legal liabilities they may incur in connection with the *Snow* Action.

34.    Defendants have each repudiated, failed to honor, and refused to accept their duty to indemnify the Policyholders in full for all legal liabilities they may incur in the future in connection with the *Snow* Action.

35.    By reason of the foregoing, an actual and justiciable controversy presently exists between the Policyholders and the Defendants concerning their duty to indemnify the Policyholders in full for all legal liabilities they may incur in connection with the *Snow* Action. Accordingly, the Policyholders seek a declaration that Defendants have an obligation under their respective policies to indemnify the Policyholders for all legal liabilities they may incur in the future in connection with the *Snow* Action.

**THIRD CLAIM FOR RELIEF:**
**BREACH OF CONTRACT RE DEFENDANTS' DUTY TO DEFEND**

36.    Plaintiffs repeat and incorporate the allegations of paragraphs 1 through 28.

37.    Defendants' separate and individual duty to defend arose when the claims asserted in the *Snow* Action were tendered to them. Defendants have breached their obligations to the Policyholders under their policies by failing to pay any costs of the Policyholders' defense incurred in connection with the *Snow* Action.

38.    As a direct and proximate result of Defendants' breach of contract, which is continuing to at least the date of this complaint, Defendants have deprived the Policyholders of the benefit of their policies for which substantial amounts in premiums were paid. As a direct and proximate result of Defendants' acts, the Policyholders have been damaged in an amount to be proved at trial, but that is in excess of the jurisdictional requirements of this Court.

8

1    WHEREFORE, the Policyholders request this Court to enter a judgment as follows:

2    1.    With respect to the First Claim for Relief, a declaration that Defendants each

3    have a separate and individual duty under the terms and conditions of their policies to

4    defend the Policyholders with respect to the *Snow* Action, including the obligation to pay

5    defense costs incurred or to be incurred in the future by the Policyholders in connection

6    with the *Snow* Action;

7    2.    With respect to the Second Claim for Relief, a declaration that Defendants

8    have a duty under the terms and conditions of their policies to indemnify the Policyholders

9    in full for all legal liabilities that may be incurred in connection with the *Snow* Action,

10   subject only to the limits of liability set forth in the Liberty Mutual Policies and the ERSIC

11   Policy;

12   3.    With respect to the Third Claim for Relief, damages according to proof at the

13   time of trial, plus interest;

14   4.    With respect to all Claims for Relief:

15        a.    Plaintiffs' costs of suit incurred herein; and

16        b.    for such other, further, and/or different relief as the Court may deem

17   just and proper.

18   DATED: July 26, 2004              HELLER EHRMAN WHITE & McAULIFFE LLP

19

20

21              By */s/ Richard DeNatale*
                     Richard DeNatale

22

23              Attorneys for Plaintiffs
                LENSCRAFTERS, INC., EYEXAM OF

24              CALIFORNIA, INC., and EYEMED VISION CARE,
                LLC

25

26

27

28

9

1

### DEMAND FOR JURY TRIAL

2        Plaintiffs Lenscrafters, Inc., EYEXAM of California, Inc., and EyeMed Vision Care,

3   LLC hereby demand trial by jury.

4

5   DATED:  July 26, 2004                    HELLER EHRMAN WHITE & McAULIFFE LLP

6

7

8                                           By /s/ Richard DeNatale
                                               Richard DeNatale
9
                                            Attorneys for Plaintiff
10                                          LENSCRAFTERS, INC., EYEXAM OF
                                            CALIFORNIA, INC., and EYEMED VISION CARE,
11                                          LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT; DEMAND
FOR JURY TRIAL, CASE NO. CV 04-01001 SBA

**EXHIBIT A**

LAW OFFICES OF
WALKUP, MELODIA, KELLY, WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION

650 CALIFORNIA STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94108-2615
(415) 981-7210

RICHARD H. SCHOENBERGER (State Bar #122190)
MATTHEW D. DAVIS (State Bar #141986)
KHALDOUN A. BAGHDADI (State Bar #190111)
ERIK T. ATKISSON (State Bar #205847)
ATTORNEYS FOR PLAINTIFFS

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

| | |
|---|---|
| MELVIN GENE SNOW, individually and on behalf of all others similarly situated; SABRINA HUGHES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LENSCRAFTERS, INC., an Ohio corporation; LUXOTTICA GROUP, S.p.A., an Italian corporation; THE UNITES STATES SHOE CORPORATION, an Ohio corporation; EYEMED, INC., a California corporation; EYEMED VISION CARE, LLC, a limited liability corporation; and DOES 1 through 200, inclusive, <br><br> Defendants. | Case No. CGC-02-405544 <br><br> **CLASS ACTION** <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** <br> 1. Deceptive Advertising Practices (Bus. & Prof. Code § 17500 *et seq.*); <br> 2. Unfair Competition (Bus. & Prof. Code § 17200 *et seq.*); <br> 3. Unfair Competition (Bus. & Prof. Code § 17200 *et seq.*); <br> 4. Consumer Legal Remedies Act (Civil Code § 1750 *et seq.*); and <br> 5. Violations of the Confidentiality of Medical Information Act (Civil Code § 56 *et seq.*) <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs are informed and believe and on that basis allege the following:

## I.    JURISDICTION

1.    This is a civil action seeking restitution, disgorgement of profits, injunctive relief and other equitable relief under the California Unfair Competition Law (Business and Professions Code §§ 17200 and 17500 *et seq.*); restitution, damages and injunctive relief under the Consumer Legal Remedies Act (Civil Code § 1750 *et seq.*); and damages for violations of the Confidentiality of Medical Information Act (Civil Code § 56 *et seq.*). This Court has subject matter jurisdiction as

1   the aggregate amount of the claims of all class members exceeds $25,000, and personal

2   jurisdiction over defendants under Code of Civil Procedure § 410.10, in that defendants reside

3   and/or do business in the State of California, or otherwise have the requisite minimum contacts

4   with the State such as to justify this Court exercising jurisdiction over them.

5   **II.    VENUE**

6         2.    Venue as to each defendant is proper in this judicial district, pursuant to Business

7   and Profession Codes § 17203, Civil Code § 1780, and Code of Civil Procedure §§ 395(a) and

8   395.5.

9   **III.    THE PARTIES**

10        **A.    Plaintiffs**

11        3.    Representative Plaintiff Melvin Gene Snow ("SNOW") is a resident of the County

12   of San Francisco, State of California. On or about November 5, 2001, an optometrist employed

13   and controlled by defendants examined SNOW, performed tests upon him and issued a

14   prescription for eyeglasses. SNOW purchased prescription eyewear from defendant LensCrafters,

15   Inc. that same day. SNOW was never given a copy of his prescription. The optometric

16   examination of SNOW and his purchase of eyewear occurred inside the LensCrafters store,

17   located at 100 Battery Street in San Francisco, California.

18        4.    Representative plaintiff Sabrina Hughes ("HUGHES") is resident of the County of

19   Santa Clara, State of California. On or about October 25, 2001, an optometrist employed and

20   controlled by defendants examined HUHGES, performed tests upon her and issued a prescription

21   for eyeglasses. HUGHES purchased prescription eyewear from defendant LensCrafters, Inc. that

22   same day. She was not given a copy of her prescription until after she made the purchase. The

23   optometric examination of HUGHES and her purchase of eyewear occurred inside the

24   LensCrafters store in the Valley Fair Mall in Santa Clara County, California.

25        **B.    Defendants**

26        5.    Luxottica Group, S.p.A. (the "LUXOTTICA GROUP") is an Italian corporation

27   doing business in California. The principal activities of the LUXOTTICA GROUP and its

28   subsidiaries include the design, manufacture and distribution of prescription frames and sunglasses

LAW OFFICES OF
WALKER, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

in the mid- and premium-price categories. The LUXOTTICA GROUP and/or its subsidiaries also own and operate LensCrafters, Inc., an optical retail chain with stores located throughout the United States, including California. The LUXOTTICA GROUP and/or its subsidiaries also own and operate specialized vision health care plans in California, including defendants EyeMed, Inc. and EyeMed Vision Care, LLC. The LUXOTTICA GROUP is not licensed as an optometrist in California.

6.    The United States Shoe Corporation ("UNITED STATES SHOE") is an Ohio Corporation doing business in California and is a wholly owned subsidiary of the LUXOTTICA GROUP. UNITED STATES SHOE is the parent corporation of one of more of the other defendant corporations, either directly or through subsidiaries. UNITED STATES SHOE is not licensed as an optometrist in California.

7.    LensCrafters, Inc. ("LENSCRAFTERS") is an Ohio Corporation doing business in San Francisco and throughout California. LENSCRAFTERS is a wholly owned subsidiary of the LUXOTTICA GROUP, UNITED STATES SHOE or one of their subsidiaries. LENSCRAFTERS describes itself as a "one-stop shop for eyeglasses" and owns and operates retail outlets throughout the United States, including at least 75 in California. LENSCRAFTERS is registered with the Medical Board of California as a "dispensing optician." LENSCRAFTERS is not licensed as an optometrist in California.

8.    EyeMed, Inc. ("EYEXAM") is a California corporation that during the relevant time period has also done business in California as "EyeMed LLC," "EyeMed Vision Care," "Eyexam 2000," "Eyexam2000," "Eyexam2000 of California, Inc.," "Eyexam 2000 of California, Inc." or a similar name. EYEXAM is licensed as a health care service plan under the provisions of the California Knox-Keene Health Care Service Plan Act of 1975 Health and Safety Code § 1340 et seq. (the "KNOX-KEENE ACT"). EYEXAM employs or contracts with optometrists to provide vision care benefits to its plan members. EYEXAM is a wholly owned subsidiary of the LUXOTTICA GROUP, UNITED STATES SHOE or one of their subsidiaries. EYEXAM is not licensed as an optometrist in California.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
• PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

9.    EyeMed Vision Care, LLC ("EVC") is a limited liability corporation that does business in California and that is a wholly owned subsidiary of LENSCRAFTERS. EVC is not licensed as an optometrist in California.

10.    The true names and capacities, whether individual, corporate, or otherwise, of DOES 1 through 200, inclusive, are presently unknown to plaintiffs, who therefore sue them by fictitious names. Plaintiffs shall amend the complaint to show the true names of each fictitiously named defendant when ascertained.

11.    Each defendant, whether named or unnamed, during all relevant times acted as an agent, alter-ego, co-conspirator or representative of every other defendant, whether named or unnamed.

## IV.    THE CLASS ALLEGATIONS

12.    The named plaintiffs bring the Second, Fourth and Fifth Causes of Action set forth herein both individually and on behalf of others similarly situated pursuant to Code of Civil Procedure § 382 and Civil Code § 1781. The class that plaintiffs seek to represent is composed of and defined as follows ("the Class"):

> All persons who, during the period from March 15, 1998 through the present, purchased eyeglasses and/or other vision-related products from a LENSCRAFTERS store in California after undergoing an examination by an optometrist who was both (1) employed by, under contract to, or associated with EYEXAM or an affiliate, and (2) located inside or adjacent to that LENSCRAFTERS store.

13.    This action has been brought and may properly be maintained as a class action pursuant to Code of Civil Procedure § 382 and Civil Code § 1781, in that there is an ascertainable class, a well-defined community of interest, the Class is so numerous as to make it impracticable to bring all of its members before the Court, the adjudication of this action as a class action is a superior method of resolving this controversy, and substantial benefits will accrue to members of the Class, the public and the Court.

14.    The number, identity and location of Class members can be readily ascertained from defendants' records and members of the Class can be provided with notice of the action based on those records.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
28TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

4

15.     There is a community of interest in that (a) common questions of law and fact in this action predominate over individual questions, (b) the claims of the Class representative are typical of the claims of other members of the Class, and (c) the Class representative will adequately represent the interests of the Class.

16.     **Commonality:** Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect individual members of the Class in that defendants have engaged in a common course of conduct in dealings with the Class and acted in a manner generally applicable to the entire Class. These common questions of law and fact include without limitation:

a.      Whether the conduct complained of constitutes unlawful, unfair or fraudulent business practices, in violation of the UCL, Business and Professions Code § 17200 *et seq.*;

b.      Whether defendants passed off services as those of another, in violation of the Consumer Legal Remedies Act ("CLRA"), Civil Code § 1770(a)(1);

c.      Whether defendants misrepresented their affiliation, connection, or association with another, in violation of the CLRA, Civil Code § 1770(a)(3);

d.      Whether defendants used representations that their services had sponsorship, approval, characteristics, or benefits which they did not have, or that a person has a status which he or she does not have, in violation of the CLRA, Civil Code § 1770(a)(5);

e.      Whether defendants represented that their services are of a particular standard, quality or grade, when they are of another, in violation of the CLRA, Civil Code § 1770(a)(7);

f.      Whether defendants intentionally or negligently caused the disclosure of confidential medical information pertaining to plaintiffs and members of the Class, in violation of the Confidentiality of Medical Information Act, Civil

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WEGHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

5

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

1   Code § 56 *et seq.*, entitling plaintiffs and members of the Class to the

2   damages specified there under;

3   g.   Whether plaintiffs and members of the Class have sustained damages, and if

4   so, the proper measure of damages;

5   h.   Whether plaintiffs and members of the Class should be awarded punitive

6   damages; and

7   i.   Whether plaintiffs and members of the Class are entitled to equitable relief,

8   and, if so, the nature of that relief.

9   17.   **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and

10  members of the Class sustained injuries and damages arising out of defendants' common course of

11  conduct in violation of the law as alleged herein. The injuries and damages of each member of the

12  Class were caused directly by defendants' wrongful conduct as alleged herein.

13  18.   **Adequacy:** Plaintiffs will fairly and adequately represent the interests of the Class.

14  They reside in California where the vast majority of the rest of the members of the Class are

15  located. They were subjected to defendants' unlawful and wrongful conduct in California. They

16  have no interests that are adverse to the interest of other members of the Class. Plaintiffs have

17  retained counsel who has substantial experience in the prosecution of complex class action

18  litigation.

19  19.   **Numerosity:** The members of the Class are so numerous that joinder of all

20  members is impracticable. While the exact number of Class members can only be ascertained

21  through discovery, plaintiffs believe that over 100,000 Californians belong to the EYEXAM

22  health care service plan owned and/or controlled by defendants, that defendants encourages these

23  health care service plan enrollees to visit optometrists inside LENSCRAFTERS stores, that most

24  or many of these plan members purchase eyewear at the associated LENSCRAFTERS store

25  following their eye examination, and that, as a result, there are at least tens of thousands of Class

26  members.

27  20.   **Superiority:** A class action is superior to other available means for the fair and

28  efficient adjudication of this controversy and will result in a substantial benefit to the Class, the

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

6

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

1   public and the Court. The likelihood of individual Class members prosecuting separate claims is

2   remote, and individual members of the Class do not have a significant interest in individually

3   controlling the prosecution of separate actions. Because the damages suffered by individual Class

4   members is relatively small, the expenses and burden of individual litigation would make it

5   difficult, if not impossible, for individual members of the Class to redress the wrongs done to

6   them. The cost to the judicial system of the adjudication of many individualized claims would

7   substantial whereas the litigation of these claims simultaneously as a class action will result in

8   substantial savings of judicial resources. Furthermore, the prosecution of separate actions by

9   individual Class members would create a risk of inconsistent and varying adjudications

10  concerning the subject of this action, which adjudications could establish incompatible standards

11  of conduct for defendants under the law alleged herein. Class treatment will permit a large number

12  of similarly situated persons to prosecute common claims in a single forum simultaneously,

13  efficiently and without unnecessary duplication of effort and expense that individual actions would

14  engender. Class treatment will enable the Class members to redress the wrongs done to them and

15  to serve the public interest by ensuring that defendants' conduct be punished and enjoined from

16  future repetition. Class treatment will thus result in the most fair and efficient adjudication of this

17  controversy, as well as conferring substantial benefits on the litigants, the public and the Court.

18      21.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the

19  management of this action that would preclude its maintenance as a class action.

20  **V.    THE GENERAL ALLEGATIONS**

21          **A.    California's Prohibition Against Opticians Practicing Optometry or
                    Controlling an Optometrist's Practice**

22      22.    The State of California regards optometry as a healing art and learned profession.

23  The State Board of Optometry licenses optometrists in California. To become licensed as an

24  optometrist, an individual must have at least three years of undergraduate education in a scientific

25  field and four years of optometry school culminating in a doctor of optometry degree. The

26  individual must then pass a test administered by the Board of Optometry. Upon admission to

27

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
• PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1    practice optometrists are allowed to correct refractive errors and detect eye disease. Most

2    optometrists also dispense ophthalmic products consisting of eyeglasses and contact lenses.

3        23.    In contrast to an optometrist, a dispensing optician, such as LENSCRAFTERS,

4    does not hold a professional license and does not have to possess a college degree. Rather, the

5    dispensing optician registers with the Medical Board of California and receives a certificate of

6    registration to do business in California. Opticians may fill prescriptions for glasses or contact

7    lenses issued by either an optometrist or an ophthalmologist.

8        24.    A prescription for eyeglasses is not available in California without an eye

9    examination conducted by an optometrist or ophthalmologist. While an optometrist under the

10   umbrella of his or her right to practice optometry may engage in the retail sales of eyeglasses, the

11   reverse is not equally true; a dispensing optician, such as LENSCRAFTERS, is not allowed to

12   engage in the practice of optometry. California law requires economic independence and

13   separation between those licensed to perform eye examinations (optometrists), and others only

14   authorized to sell and dispense lenses and frames (opticians and optical retailers). The rule

15   precluding opticians from practicing optometry flows from California's long-standing public

16   policy prohibiting unlicensed person from practicing any medical arts or exercising any type of

17   control over decisions made by licensed healing art practitioners. Any reservation of authority by

18   an either an optician or an eyewear company over an optometrist is against public policy and

19   illegal. California has never authorized dispensing opticians or optical retailers to overate "one-

20   stop" eye care shops.

21       25.    The State of California has enacted laws and regulations to protect the public by

22   ensuring that optometrists remain independent from the influence of the commercial optical

23   industry, including the following:

24           a.    Section 650 of the Business and Professions Code, which prohibits the

25               offer, delivery, receipt, or acceptance by a doctor of any rebate, refund,

26               commission, preference, patronage dividend, discount, or other

27               consideration, whether in the form of money or otherwise, as compensation

28               or inducement for referring patients.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

b.    Section 655 of the Business and Professions Code, which prohibits optometrists from having "any membership, proprietary interest, coownership, landlord-tenant relationship, or any profit-sharing arrangement in any form, directly or indirectly, with any" optician or eyewear company. Section 655 similarly prohibits any optician from having "any membership, proprietary interest, coownership, landlord-tenant relationship, or any profit-sharing arrangement in any form, directly or indirectly, with any" optometrist. Section 655 makes it a misdemeanor for anyone to participate in its violation.

c.    Section 2544 of the Business and Professions, which provides that if an assistant in the office of an optometrist performs certain tasks and procedures, such as preparing patients for examination, collecting preliminary patient data, and taking a patient history, then that assistant must be "under direct responsibility and supervision" of the optometrist.

d.    Section 2556 of the Business and Professions Code, which makes it unlawful for a dispensing optician "to advertise the furnishing of, or to furnish, the services of an optometrist," or to "directly or indirectly employ or maintain [an optometrist] on or near the premises used for optical dispensing."

e.    Section 3040 of the Business and Professions Code, which makes it unlawful for anyone not licensed as an optometrist to practice optometry, advertise the practice of an optometrist, or hold him or herself out to be an optometrist.

f.    Section 3128 of the Business and Professions Code, which makes it a misdemeanor for anyone not licensed as an optometrist to advertise by displaying a sign or otherwise or hold him or herself out to be an optometrist.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981 7210

g.  Section 3130 of the Business and Professions Code, which makes it unlawful to include in any advertisement relating to the sale of sunglasses, any words or figures that have a tendency to advertise the practice of optometry.

h.  Sections 3103 and 3160 of the Business and Professions Code, which prohibit an optometrist from accepting employment to practice optometry from a corporation unless that corporation is either a health care service plan licensed under the KNOX-KEENE ACT or a professional corporation registered under the Moscone-Knox Professional Corporation Act.

i.  Section 3166 of the Business and Professions Code, which provides: "An optometric corporation shall not do or fail to do any act the doing of which or the failure to do which would constitute unprofessional conduct under any statute, rule or regulation now or hereafter in effect. In conducting its practice it shall observe and be bound by such statutes, rules and regulations to the same extent as" an optometrist.

j.  Subdivision (f) of section 1395 of the Health of Safety Code, part of the KNOX-KEENE ACT, which states that except as specifically provided in the act, nothing in the act shall be construed to limit the effect of the laws governing professional corporations, as they appear in applicable provisions of the Business and Professions Code, upon health care service plans. Nothing in the KNOX-KEENE ACT limits the effect of sections 650, 655, 2544, 2556, 3040, 3128 and 3130 of the Business and Professions Code upon health care service plans.

k.  Section 1399.251 of Title 16 of the California Code of Regulations, which provides that it is unprofessional conduct for a registered dispensing optician to "advertise the furnishing of the services of an optometrist."

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

l.    Section 1514 of Title 16 of the California Code of Regulations, which

provides that when an optometrist rents or leases space commercial

premises all of the following conditions must be met:

    i.    The practice must be owned by the optometrist and in every phase

be under his/her exclusive control. The patient records shall be the

sole property of the optometrist and free from any involvement with

a person unlicensed to practice optometry.

    ii.    The rented space shall be definite and apart from space occupied by

other occupants of the premises.

    iii.    All signs, advertising, and display shall be separate and distinct from

that of the other occupants and have the optometrist's name and the

word "optometrist" prominently displayed in connection therewith.

    iv.    There shall be no legends as "Optical Department," "Optometrical

Department," "Optical Shoppe," or others of similar import,

displayed on any part of the premises or in any advertising.

    v.    There shall be no linking of the optometrist's name, or practice, in

advertising or in any other manner with that of the commercial

concern from whom he/she is leasing space.

m.    Section 1566 of Title 16 of the California Code of Regulations, which

requires optometrists to place a conspicuous notice in their office clearly

stating that federal law requires that a written copy of the spectacle

prescription be given to the patient.

26.    The laws and regulations described in paragraph 25 above insulate the optometrist

from non-health care commercial entities. The purpose of this insulation is to prohibit the

formation of business relationships between optometrists and such entities. The policy supporting

such prohibitions is that preservation of an unbroken relationship between the professional and the

patient is best achieved by shielding the professional from the risk of control by an unlicensed

person or entity. Among other things, these laws and regulations are intended to:

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

a.   Ensure that the practice of an optometrist licensed in California will not be controlled by a non-licensed entity;

b.   Ensure the continuity of the optometrist-patient relationship;

c.   Maintain the integrity of the optometric profession;

d.   Ensure that an unregulated or lightly-regulated entity will not interfere in the optometrist-patient relationship; and

e.   Eliminate confusion in the public as to the source of optometry services.

27.   California optometrists are also subject to section 456.2 of Title 16 of the Code of Federal Regulations, which states that it is "an unfair act or practice" for an optometrist to fail to provide to the patient one copy of the patient's prescription immediately after the eye examination is completed.

**B.   High profits are made on designer eyewear and specialty optics.**

28.   Consumers pay a premium for high-end "designer" eyewear brand names. The sale of designer eyewear generates substantial profits.

29.   Since prescription designer eyewear can be sold only to a patient with a prescription issued by either an optometrist or an ophthalmologist, there are tremendous financial incentives for eyewear companies and dispensing opticians to promote the sale of their products by entering into arrangements with optometrists that are prohibited by law, including some of the laws described in paragraph 25 above.

30.   The LUXOTTICA GROUP and/or its subsidiaries have during the relevant time period manufactured and/or owned the following lines of designer eyewear: Ray-Ban, Vogue, Persol, Arnette, Killer Loop, Revo, Sferoflex, Luxottica and T3. In addition, the LUXOTTICA GROUP and its subsidiaries during the relevant time period have licensed the following makes of eyewear: Anne Klein, Brooks Brothers, Byblos, Bvlgari, Chanel, Emporio Armani, Ferragamo, Genny, Giorgio Armani, Moschino, Sergio Tacchini, Ungaro and Web. The LUXOTTICA GROUP and its subsidiaries have sold its products to "millions of consumers in 115 countries in all five continents." The LUXOTTICA GROUP measures its annual sales in the billions of dollars and its annual profits in the hundreds of millions.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

C.    **The LUXOTTICA GROUP acquired LENSCRAFTERS in 1995 so as to have a "distribution network" for its products in the United States.**

31.    In or about 1995, the LUXOTTICA GROUP acquired LENSCRAFTERS as part of its plan of "vertical integration." The acquisition of LENSCRAFTERS allowed the LUXOTTICA GROUP to expand its "distribution network" of high-end and expensive eyewear to the largest market in the world, the United States. LENSCRAFTERS operates the largest optical retail chain in North America, with at least 864 stores and 11 percent of the optical retail market as of the year 2000. LENSCRAFTERS currently owns and operates at least 75 stores in California.

32.    In addition to selling frames made and licensed by the LUXOTTICA GROUP and its subsidiaries, LENSCRAFTERS offers a number of options that can be added – for an additional cost to the consumer – to the eyeglass prescription. LENSCRAFTERS sells some lenses and materials that are proprietary and available only through LENSCRAFTERS, such as "Invisibles" and "Featherwate PLUS." Comparable lenses and materials are available from opticians other than LensCrafters, but are known to those opticians by their generic names.

33.    Defendants also sell prescription and non-prescription sunglasses at the LENSCRAFTERS stores.

D.    **Defendants place optometrists under their control inside the LENSCRAFTERS stores.**

34.    Defendants have situated optometrists under their control inside LENSCRAFTERS stores in California. Over the past four or more years defendants have exerted increasing control over the optometrists' practice of their healing art and have intruded on their medical judgment. Defendants' strategy operates as follows:

    a.    Encourage all consumers to have an eye examination performed by the optometrists inside the LENSCRAFTERS store.

    b.    Create a LENSCRAFTERS store layout that places the optometrists inside the store, with little or no physical separation between the optometric area and the LENSCRAFTERS sales floor. Defendants intend that from the patients' perspective there be a "seamless experience" between their

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WRCHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

13

1    optometric examination and their subsequent purchase of

2    LENSCRAFTERS products.

3    c.    Instruct the optometrists to promote and prescribe as many of the

4        defendants' products as is possible.

5    d.    Instruct the optometrists and other employees working with optometric

6        patients to gather marketing and sales information from the patients under

7        the guise of taking medical information and performing eye examinations.

8    e.    Place the employees performing the duties of an optometric assistant under

9        the direct supervision and control of LENSCRAFTERS, rather than the

10       optometrists.

11   f.    Instruct the optometrists to perform a minimum quota of fee-generating

12       procedures on the patients.

13   g.    Instruct employees to control physical possession of the prescriptions so

14       that they either do not reach the patients' hands until after they have

15       purchased LENSCRAFTERS products, or are never given to them.

16   h.    Instruct employees to take the patients' prescription directly to the

17       LENSCRAFTERS lab immediately after the eye examinations.

18   i.    Instruct the optometrists to write the prescriptions to expire in one year,

19       even though the law allows the prescriptions to remain valid for a longer

20       period, so that the patients cannot fill the prescriptions elsewhere, and so

21       that the patients are likely to return to LENSCRAFTERS to refill the

22       prescription and purchase more eyewear in a year's time.

23   j.    Instruct employees to escort the patients (who in many cases has just had

24       their eyes dilated and may be disoriented) immediately following the

25       examination the few steps from the exam area to the LENSCRAFTERS

26       sales floor.

27   k.    Use the marketing and sales information that the patients provided during

28       the medical history interview and the optometric examination to convince

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1       the patient to purchase multiple pairs of high-end eyeglasses and expensive

2       lens options.

3           1.    Use information that the patients provided during the medical history

4                 interview and eye examination as part of a direct marketing campaign to

5                 elicit future LENSCRAFTERS purchases from those patients.

6   E.    **LENSCRAFTERS and the LUXOTTICA GROUP exercise *de facto* control**
         **over EYEXAM.**

7

8       35.    The LUXOTTICA GROUP, LENSCRAFTERS and/or other defendants have

9   created and structured EYEXAM so as to allow them to place optometrists under their control

10  inside LENSCRAFTERS stores. The optometrists placed inside the LENSCRAFTERS stores and

11  their assistants are employed by EYEXAM in name only. They are not independent. Instead, they

12  practice and work under the control, direction and influence of LENSCRAFTERS, the

13  LUXOTTICA GROUP and/or other defendants. As a result, the optometrists' medical

14  independence has been compromised and their patients – the members of the public and of the

15  Class – have been injured as a result.

16      36.    EYEXAM has had a six-member board of directors during the class period. During

17  the class period, one of those directors has also always been a vice-president of LENSCRAFTERS

18  and another director has also always been LENSCRAFTERS' in-house counsel based in Ohio.

19  During the class period two or three other directors were based in Italy and they include the chief

20  operating officer and the chief financial officer of the LUXOTTICA GROUP. The Italian directors

21  have rarely or never attended the EYEXAM board meetings. During the class period one or two of

22  the remaining directors have been based in New York and they rarely or never attended the board

23  meetings. As a result, during the class period the EYEXAM board meetings were usually

24  governed by a quorum of just two directors, they being the vice-president of LENSCRAFTERS

25  and LENSCRAFTERS in-house counsel.

26      37.    LENSCRAFTERS and EYEXAM have both registered the same corporate mailing

27  address with the California Secretary of State. That location, in Ohio, is LENSCRAFTERS'

28  corporate headquarters.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WRIGHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

38. During the class period the president of EYEXAM has also always been a vice president of LENSCRAFTERS.

39. LENSCRAFTERS provides all management, administrative, consulting, financial and personnel services to EYEXAM. Pursuant to a written agreement in effect at the start of the class period, LENSCRAFTERS provided services and "consultations" to EYEXAM. After plaintiffs filed the original complaint in this action, LENSCRAFTERS and EYEXAM executed a new written agreement. The person who signed that agreement on behalf of EYEXAM was also a vice president of LENSCRAFTERS at the time she signed the agreement. That agreement states that LENSCRAFTERS provides all "management, administrative, accounting, financial, legal, data processing, planning, consulting and similar services" to EYEXAM, including:

    a.    Locating, procuring, furnishing and equipping optometric offices for lease to EYEXAM.

    b.    General ledger, accounting and financial consulting.

    c.    Human resources and personnel, including the use of "shared" employees.

    d.    In-house legal counsel, including advice relating to regulatory compliance, business transactions and government relations.

    e.    Merchandising and marketing.

    f.    Loss prevention.

    g.    Payroll, including check processing, tax deposits, tax filings and management reporting.

    h.    Internal information systems.

    i.    Risk and insurance management.

40. LENSCRAFTERS recruits optometrists and employees for EYEXAM.

41. Defendants instruct their employees, including EYEXAM's optometrists and employees, to participate in the "One Voice" program. That program commingles the employees, the retail and office space, and the management of LENSCRAFTERS and EYEXAM.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

16

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

F.     **There is no or little physical separation or distinction between the LENSCRAFTERS store and the EYEXAM office inside that store.**

42.     LENSCRAFTERS purports to lease or sublease space within its stores to EYEXAM.

43.     The address of the LENSCRAFTERS store and the corresponding EYEXAM office are usually identical.

44.     The telephone numbers of the LENSCRAFTERS store and the associated EYEXAM office are usually similar.

45.     The LENSCRAFTERS stores that have corresponding EYEXAM offices follow a uniform look. The EYEXAM optometrists work and practice their healing art inside the LENSCRAFTERS store. There is almost no physical separation or distinction between the optometrists' work area and the LENSCRAFTERS sales floor. This is deliberate and intentional, as defendants strive to create a "seamless experience" for the patient and thereby make it easier to steer that patient from the optometric area and to the LENSCRAFTERS sales floor following the eye examination.

46.     The optometrist area is typically within 10 feet of the LENSCRAFTERS sales floor. Staff wearing white lab coats move freely between the LENSCRAFTERS sales floor, the LENSCRAFTERS lab, and the optometrist area. LENSCRAFTERS employees have access to the patients' optometric records.

G.     **Defendants encourage all consumers to have an exam performed by the optometrists inside the LENSCRAFTERS store because these examinations "drive" LENSCRAFTERS eyewear sales.**

47.     Defendants instruct the general managers of the LENSCRAFTERS stores that "the number one mechanism" they have to "drive" the sale of eyewear in the store is "eye health care." Defendants instruct the LENSCRAFTERS general managers that their employees should believe that the "number one most importing thing [the employees] can do that day" is to make sure that they "schedule everybody an eye health exam." Defendants instruct the LENSCRAFTERS store general managers that their employees must "really believe that an eye health examination is the right thing for every patient and customer." Defendants instruct their employees to tell

LAW OFFICES OF
WALKER, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1   LENSCRAFTERS customers that an eye examination at the LENSCRAFTERS location is "better

2   than anywhere else." Defendants encourage LENSCRAFTERS employees to believe that

3   LENSCRAFTERS has "the best doctors." Defendants instruct their employees to be "fanatical"

4   about the need for the customer to undergo an eye examination from the optometrists inside the

5   LENSCRAFTERS store. Defendants instruct their employees to "never" refer a customer to an

6   optometrist other than an optometrist inside LENSCRAFTERS. Defendants' goal is to convert

7   "everyone" to an optometric patient at LENSCRAFTERS.

8   **H.      Defendants prescribe and promote multiple LENSCRAFTERS products to
            patients.**

9

10        48.    Defendants instruct the optometrists working inside the LENSCRAFTERS store to

11  use their status as health care professionals to influence their patients to purchase eyewear from

12  LENSCRAFTERS.

13        49.    Defendants instruct the optometrists working inside the LENSCRAFTERS store to

14  write more than one eyewear prescription for each patient.

15        50.    Defendants instruct the optometrists working inside the LENSCRAFTERS store to

16  use their status as health care professionals to influence their patients to purchase multiple pairs of

17  prescription eyewear from LENSCRAFTERS.

18        51.    Defendants instruct the optometrists working inside the LENSCRAFTERS store to

19  use their status as health care professionals to influence their patients to purchase prescription and

20  non-prescription sunglasses from LENSCRAFTERS.

21        52.    Defendants instruct the optometrists working inside the LENSCRAFTERS store to

22  use their status as health care professionals to influence their patients to purchase eyewear from

23  LENSCRAFTERS that that is made with LENSCRAFTERS proprietary lenses and materials.

24        53.    Defendants instruct the optometrists working inside the LENSCRAFTERS store to

25  use a four-part prescription form. Defendants designed the four-part form to encourage the

26  optometric patients to purchase: (a) LENSCRAFTERS products; (b) multiple pairs of

27  LENSCRAFTERS eyewear; (c) eyewear made with LENSCRAFTERS' proprietary lenses and

28  materials; (d) LENSCRAFTERS sunglasses; and (e) LENSCRAFTERS contact lenses.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

18

1   Defendants instruct the optometrists to fill out at least two of the four possible prescriptions on

2   this form. Defendants intend for the form to overcome consumer resistance to making purchases

3   from LENSCRAFTERS.

4         54.   The four-part form lists LENSCRAFTERS proprietary lenses and materials.

5   Defendants instruct the optometrists to prescribe these LENSCRAFTERS proprietary lenses and

6   materials by checking a box next to that product's name. Similar and comparable lenses and

7   materials are available from opticians other than LENSCRAFTERS and are known to those

8   opticians by their generic names. Defendants utilize the LENSCRAFTERS proprietary product

9   names on their four-part prescription form, rather than the generic names, so as to discourage and

10   prevent the optometric patients from patronizing opticians other than LENSCRAFTERS.

11   Defendants know that if the patients take the four-part form to opticians other than

12   LENSCRAFTERS, then those opticians may be unable to interpret that form because of the

13   proprietary names.

14         55.   Defendants instruct the optometrists inside the LENSCRAFTERS store to steer

15   their patients to the LENSCRAFTERS sales floor following the eye examination. Defendants refer

16   to this practice as "transitioning." Defendants instruct the optometrists to maintain a minimum

17   "conversion rate," the rate at which their patients purchase products from LENSCRAFTERS.

18         56.   Defendants instruct the optometrists inside the LENSCRAFTERS stores that they

19   shall be held accountable for the sales at the associated LENSCRAFTERS stores.

20         57.   Defendants have migrated employees and systems away from EYEXAM and to

21   LENSCRAFTERS. Defendants "cross-train" LENSCRAFTERS employees to perform the

22   functions of EYEXAM optometric assistants, technicians and other employees. Employees who

23   perform the duties and functions of assistants to the optometrists work for LENSCRAFTERS.

24         58.   The optometrists working inside the LENSCRAFTERS store must request supplies

25   and materials from LENSCRAFTERS employees.

26         59.   The optometrists working inside the LENSCRAFTERS stores depend on

27   LENSCRAFTERS to provide optometric equipment and to service that equipment.

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

60.    Defendants created the position of an "optical specialist" during the class period. LENSCRAFTERS supervises the employees performing the function of, or holding the title or position of optical specialist, regardless of whether they are employed in name by EYEXAM. The optical specialists are not under the direct supervision and control of the optometrists.

61.    The optical specialists are laypersons. Defendants instruct the optical specialists to wear a white lab coat so that from the patients' perspective they appear to be part of the optometrists' medical staff.

62.    Defendants instruct the optical specialists to greet and interview the patients before the eye examination. Defendants instruct the optical specialists to tell the patients that they are assisting the optometrists. Defendants instruct the optical specialists to solicit and record the patients' medical history. Defendants instruct the optical specialists to obtain "lifestyle" information from the patients during the medical history for later use in selling and marketing defendants' products to the patients. Defendants instruct the optical specialists how to obtain this information. Defendants instruct the optical specialists to perform pre-testing on the patients and to perform certain optometric procedures on the patients.

63.    Defendants instruct the optical specialists to escort the patients to the optometrists' examination rooms. Defendants instruct the optical specialists to remain present during the optometric examinations and to "transcribe" for the optometrists during the examinations. Defendants instruct the optical specialists to fill out the four-part prescription forms for the optometrists. To the patients, it appears that the optical specialists are assisting the optometrists and taking down medical information.

64.    Defendants instruct the optical specialists to recommend that the optometrists prescribe LENSCRAFTERS products to the patients during the examination. Defendants instruct the optical specialists to hand the patients' prescriptions not to the patients, but to the LENSCRAFTERS laboratory, immediately following the examination.

65.    Defendants instruct the optical specialists to escort the patients to the LENSCRAFTERS sales floor following the eye examinations. Defendants instruct the optical specialists to sell LENSCRAFTERS products to the patients using the "lifestyle information" that

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

20

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

1  the optical specialists learned or overheard when taking the patients' medical history and sitting in

2  on the examinations.

3      66.    Defendants transfer to a database the information they elicit from the patients

4  during the medical history interviews and optometric examinations. Defendants use this

5  information and database to conduct a direct mail program to those patients for the purpose of

6  encouraging those patients to purchase additional products from LENSCRAFTERS.

7      **I.    Defendants charge the optometric patient additional fees.**

8      67.    Defendants offer optometric patients a "thorough eye exam" for a set price. In most

9  cases, an optometrist must dilate the patient's eyes to perform a thorough examination of that

10  patient's eyes. Defendants charge that patient an additional fee for the dilation. Accordingly, for

11  most patients a "thorough" eye examination costs more than the defendants' set price.

12      68.    Defendants charge the patients an additional fee for retinal photographs.

13      69.    Defendants set quotas for the optometrists working inside the LENSCRAFTERS

14  stores and instruct them to perform dilations and take retinal photographs for a minimum

15  percentage of their patients.

16      **J.    Defendants operate the EYEXAM health care service plan for the purpose of

17      promoting and selling their products.**

18      70.    For purposes of obtaining and maintaining EYEXAM's license as a health care

19  service plan under the KNOX-KEENE ACT, defendants report to State regulators that

20  EYEXAM's patients are limited to members who join the EYEXAM health care service plan by

21  paying an annual membership fee, which entitles the patient/members to one eye examination and

22  follow up care within that year. In practice, however, defendants do not adequately inform or

23  notify the patients that they are enrolling in or joining the EYEXAM health care service plan.

24  Defendants do not adequately inform or notify the patients that the fee they pay is a membership

25  fee. Defendants instead cause the patients to reasonably believe that the fee they are paying is for

26  an eye examination, as opposed to a health care service plan membership.

27      71.    Defendants intentionally downplay the fact that they are classifying the patient's

28  payment as a health care service plan membership fee (as opposed to an eye examination fee)

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

1   because that fact is inconsistent with defendants' goal of creating for that patient a "seamless

2   experience" between the optometric examination and the purchase of products from

3   LENSCRAFTERS. Defendants know that this information would undermine their goal of steering

4   the patient toward the purchase of LENSCRAFTERS products.

5   **VI.     THE CAUSES OF ACTION**

6                          <u>**FIRST CAUSE OF ACTION**</u>

7         **UNTRUE OR MISLEADING ADVERTISING – BUSINESS AND
            PROFESSIONS CODE § 17500.**

8
                          **(AGAINST ALL DEFENDANTS)**
9

10        72.     Plaintiffs hereby incorporate by reference paragraphs 1 through 11 and 22 through

11   71 herein, as though alleged fully in this Cause of Action.

12        73.     This cause of action is brought pursuant to the Unfair Competition Law at Business

13   & Professions Code § 17500 *et seq.*

14        74.     Plaintiffs bring this Cause of Action solely in their capacities as private attorneys

15   general pursuant to Business & Professions Code § 17535.

16        75.     Defendants intended to sell personal property and/or to perform services.

17        76.     Defendants disseminated advertising before the public in California that: (a)

18   contained statements that were illegal, untrue or misleading; (b) defendants knew, or in the

19   exercise of reasonable care should have known, was illegal, untrue or misleading; (c) concerned

20   the personal property or services or their disposition or performance; and (d) was likely to mislead

21   or deceive a reasonable consumer. The illegal, untrue and/or misleading statements and

22   representations made by these defendants include but are not limited to:

23             a.      Words and images that state or imply that LENSCRAFTERS provides

24                     optometric services, when in fact LENSCRAFTERS does not provide such

25                     services, is not licensed to provide such services, and is prohibited by law

26                     from either providing such services or maintaining an optometrist on

27                     premises.

28

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WILCHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA. 94108
(415) 981-7210

22

b.   Words or images that state or imply that the EYEXAM optometrists are "independent," when in fact the optometrists are under the influence and control of LENSCRAFTERS and other defendants.

c.   Words or images that state or imply that the EYEXAM optometrists are "next to" or "next door" to the LENSCRAFTERS store, when in fact defendants place the optometrists inside the LENSCRAFTERS store.

d.   Words or images that state or imply that a patient may receive a "thorough" eye examination for a set price, when in fact a thorough eye examination often requires the dilation of the eyes and defendants charge the patient an additional fee for that dilation.

e.   Words or images that state or imply that the patient is paying a fee for an eye examination when, in fact, defendants report to State regulators that the fee the patient pays is for that patient's membership in the EYEXAM health care service plan.

f.   Advertisements for the sale of sunglasses at LENSCRAFTERS that include "words or figures which have a tendency to advertise the practice of optometry" in violation of Business & Professions Code § 3130.

77.   Defendants advertise extensively in the LENSCRAFTERS store windows and inside the LENSCRAFTERS stores. These advertisements contain some or all of the illegal, false and/or misleading statements and representations as alleged herein.

78.   Defendants advertise extensively in California-based newspapers and magazines. These advertisements contain some or all of the illegal, false and/or misleading statements and representations as alleged herein.

79.   Defendants advertise extensively on local television stations in California. These advertisements contain some or all of the illegal, false and/or misleading statements and representations as alleged herein.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WILOIT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

80. Defendants advertise extensively in Yellow Pages throughout California. These advertisements contain some or all of the illegal, false and/or misleading statements and representations as alleged herein.

81. Defendants advertise by direct mail extensively in California. These advertisements contain some or all of the illegal, false and/or misleading statements and representations as alleged herein.

82. Defendants advertise on the Internet in California. These advertisements contain some or all of the illegal, false and/or misleading statements and representations as alleged herein.

83. Pursuant to Business & Professions Code §§ 17203 and 17535, plaintiffs, on behalf of the general public, seek restitution and the disgorgement of all earnings, profits, compensation and benefit obtained by defendants as a result by means of practices unlawful under Business & Professions Code § 17500 *et seq.*

84. Pursuant to Business & Professions Code §§ 17204 and 17535, plaintiffs seek an order of this Court enjoining defendants, and each of them, from continuing to make such illegal, misleading and/or untrue statements. The public will be irreparably harmed if such an order is not granted.

## SECOND CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES – BUSINESS AND PROFESSIONS CODE § 17200.

### (AGAINST ALL DEFENDANTS)

85. Plaintiffs hereby incorporate by reference paragraphs 1 through 71 herein, as though alleged fully in this Cause of Action.

86. This cause of action is brought pursuant to Unfair Competition Law at Business & Professions Code § 17200 *et seq.* Defendants' conduct constitutes unfair, unlawful and/or fraudulent business practices within the meaning of Business & Professions Code § 17200.

87. Plaintiffs bring this Cause of Action on behalf of themselves, the Class and on behalf of the public as private attorneys general pursuant to Business & Professions Code § 17204.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

24
2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

88. Pursuant to Business & Professions Code § 17203, plaintiffs and the members of the Class seek from defendants, and each of them, restitution and the disgorgement of all earnings, profits, compensation, benefits and other ill-gotten gains obtained by defendants as a result of defendants' conduct in violation of Business & Professions Code § 17200 *et seq.*

89. Pursuant to Business & Professions Code § 17204, plaintiffs and the members of the Class seek an order of this Court enjoining defendants, and each of them, from continuing to engage in the acts as set forth in this complaint, which acts constitute violations of Business & Professions Code § 17200 *et seq.* Plaintiffs, the Class and the public will be irreparably harmed if such an order is not granted.

## THIRD CAUSE OF ACTION

### UNLAWFUL BUSINESS PRACTICES – BUSINESS & PROFESSIONS CODE § 17200.

### (AGAINST ALL DEFENDANTS)

90. Plaintiffs hereby incorporate by reference paragraphs 1 through 11 and 22 through 30 herein, as though alleged fully in this Cause of Action.

91. This Cause of Action is brought pursuant to Unfair Competition Law at Business & Professions Code § 17200 *et seq.* Defendants' conduct constitutes unfair, unlawful and/or fraudulent business practices within the meaning of Business & Professions Code § 17200.

92. Plaintiffs bring this Cause of Action on behalf of the general public solely in their capacities as private attorneys general pursuant to Business & Professions Code § 17204.

93. Defendants own and/or operate health care service plans. These health care service plans have hundreds of thousands, if not millions, of members in California. These health care service plans allow plan members to visit optometrists who are listed on the plans' panels of approved provider optometrists. Defendants' health care service plans enter into agreements with otherwise independent optometrists in California whereby the optometrists become members of the plans' provider panels.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WEIGHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA  94108
(415) 981-7210

25

94.    Defendants own and operate health care service plans for the purpose of steering the plans' members toward LENSCRAFTERS and/or toward purchasing products made, licensed or distributed by the LUXOTTICA GROUP and/or its subsidiaries.

95.    In some instances, defendants offer a California optometrist membership on a plan provider panel on the condition that the optometrist agree: (1) to purchase "up front" a large number of frames made or licensed by the LUXOTTICA GROUP or its subsidiaries; and (2) to purchase annually a set quota of frames and products made or licensed by the LUXOTTICA GROUP or its subsidiaries. The optometrist who becomes a member of the provider panel in exchange for agreeing to defendants' conditions is likely to discontinue carrying frames made and/or licensed by defendants' competitors due to the lack of shelf space and financial considerations. This arrangement is likely to cause the optometrist to encourage his/her patient to purchase defendants' frames and products, even if the optometrist does not feel they are the best frames and products for that patient.

96.    Subdivision (c) of section 655 of the Business & Professions Code prohibits an optometrist from having any direct or indirect membership with a person who is engaged in the manufacture, sale or distribution to optometrists of "lenses, frames, optical supplies, optometric appliances or devices or kindred products." Any person who participates in a violation of Business & Professions Code § 655 is guilty of a misdemeanor. The LUXOTTICA GROUP and its subsidiaries are persons engaged in the manufacture, sale and distribution to optometrists of frames and optical products.

97.    Defendants participate in violating Business & Professions Code § 655 by making and encouraging arrangements whereby optometrists have an indirect membership with the LUXOTTICA GROUP and its subsidiaries as described in paragraphs 93 through 95 above.

98.    Pursuant to Business & Professions Code § 17204, plaintiffs seek an order of this Court enjoining defendants, and each of them, from continuing to own, operate, control or influence health care service plans that operate as described above, which acts constitute violations of section 17200 *et seq*. The general public will be irreparably harmed if such an order is not granted.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WICHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

# FOURTH CAUSE OF ACTION

## VIOLATION OF CONSUMER LEGAL REMEDIES ACT – CIVIL CODE § 1750

### (AGAINST ALL DEFENDANTS)

99.    Plaintiffs hereby incorporate by reference paragraphs 1 through 71 herein, as though alleged fully in this Cause of Action.

100.    This Cause of Action is brought pursuant to the Consumer Legal Remedies Act, Civil Code § 1750 *et seq.* ("CLRA").

101.    At all times herein mentioned, plaintiffs and Class members were consumers within the meaning of Civil Code § 1761(d).

102.    Defendants' policies, acts and practices were intended to result in the passing off services as those of another in that they caused plaintiffs and members of the Class to reasonably believe that LENSCRAFTERS employed the optometrists working inside the LENSCRAFTERS store who provided optometric services. By their wrongful conduct as alleged herein, defendants, and each of them, have created, engaged in, and/or participated in unfair practices in violation of section 1770(a)(1) of the Civil Code.

103.    Defendants' policies, acts and practices were intended to result in the misrepresentation of the affiliation, connection, or association with another in that they caused plaintiffs and members of the Class to reasonably believe that LENSCRAFTERS employed the optometrists working inside the LENSCRAFTERS store. By their wrongful conduct as alleged herein, defendants, and each of them, have created, engaged in, and/or participated in unfair practices in violation of section 1770(a)(3) of the Civil Code.

104.    Defendants' policies, acts and practices were intended to result in defendants making representations that the services had sponsorship, approval, characteristics, or benefits which they did not have, or that a person has a status which he or she does not have, in that they: (a) failed to adequately notify plaintiffs and the Class either that they were joining the EYEXAM health care service plan or that the fee they were paying was for membership in the EYEXAM health care service plan; (b) caused plaintiffs and the Class to reasonably believe that the fee they

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

27

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

1  paid was for an eye examination rather than membership in a health care service plan; and (c)

2  caused plaintiffs and the Class to reasonably believe that LENSCRAFTERS employed the

3  optometrists who provided optometric services. By their wrongful conduct as alleged herein,

4  defendants, and each of them, have created, engaged in, and/or participated in unfair practices in

5  violation of section 1770(a)(5) of the Civil Code.

6  105.   Defendants' policies, acts and practices were intended to result in defendants

7  making representations that the services are of a particular standard, quality or grade, when they

8  are of another in that they: (a) failed to adequately notify plaintiffs and the Class either that they

9  were joining the EYEXAM health care service plan or that the fee they were paying was for

10  membership in the EYEXAM health care service plan; and (b) caused plaintiffs and the Class to

11  reasonably believe that the fee they paid was for an eye examination rather than membership in a

12  health care service plan. By their wrongful conduct as alleged herein, defendants, and each of

13  them, have created, engaged in, and/or participated in unfair practices in violation of section

14  1770(a)(7) of the Civil Code.

15  106.   Defendants, and each of them, aided and abetted, encouraged and rendered

16  substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other

17  wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and

18  substantially assist the commission of these wrongful acts and other wrongdoings complained of,

19  each defendant acted with an awareness of its primary wrongdoing and realized that its conduct

20  would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and

21  wrongdoing.

22  107.   Pursuant to Civil Code § 1780(a), plaintiffs and the other members of the Class

23  seek actual damages, an order of this Court enjoining defendants from engaging in the methods,

24  acts or practices alleged herein, restitution of property, and punitive damages.

25  108.   More than thirty days prior to the amending this cause of action to seek damages,

26  plaintiffs, in compliance with section 1782 of the Civil Code, notified defendants in writing of

27  their violations of the CLRA and demanded that they correct the violations. Defendants failed to

28  remedy the violations before plaintiffs amended this count to request damages.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

28

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT – CIVIL CODE § 56 ET SEQ.**

**(AGAINST ALL DEFENDANTS)**

109. Plaintiffs hereby incorporate by reference paragraphs 1 through 71 herein, as though alleged fully in this Cause of Action.

110. This Cause of Action is brought pursuant to the Confidentiality of Medical Information Act, Civil Code § 56 *et seq.*, which states that no provider of health care or health care service plan shall disclose medical information regarding a patient of the provider of the health care or a subscriber of the health care service plan without first obtaining proper authorization. (Civil Code § 56.10)

111. Defendants instruct the optometrists inside the LENSCRAFTERS store and other personnel to obtain medical information from optometric patients, including members of the Class, during the patient history interview and the eye examination.

112. Defendants cause patients and members of the Class to disclose confidential medical information to in the presence of persons who are not under the direct supervision and control of the optometrists.

113. Defendants cause the confidential medical information they obtain from the patients and the members of the Class to be disclosed to LENSCRAFTERS for marketing and sales purposes.

114. Defendants cause and allow the medical records of the Class to accessed and reviewed by their employees who are not under the direct supervision and control of an optometrist.

115. Defendants cause and allow the medical records of the members of the Class to be accessed and reviewed for non-medical reasons.

116. By causing the disclosure and use of the medical information of plaintiffs and the Class, defendants violated the Confidentiality of Medical Information Act and are therefore liable for compensatory and punitive damages, in addition to attorney's fees and costs of suit.

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WELCH & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

117.    As a result of defendants' negligent release of the medical information of plaintiffs and the Class, plaintiffs and each Class member are entitled to nominal damages of one thousand dollars ($1,000.00) for each such release of confidential information, in addition to actual damages, although it is not necessary that plaintiffs and Class members show that they suffered or were threatened with actual damages in order to recover nominal damages as aforesaid.

## VII.    THE PRAYER FOR RELIEF

WHEREFORE, plaintiffs, individually, on behalf of the Class and on behalf of the public, pray for judgment as follows:

1.    That this action be certified as a class action, pursuant to Code of Civil Procedure § 382 and/or the Consumer Legal Remedies Act, Civil Code § 1781;

2.    That pursuant to Business and Professions Code §§ 17204 and 17535, all defendants, their officers, directors, principals, assignees, successors, agents, representatives, employees, subsidiaries, affiliates, and all persons, corporations and other entities acting by, through, under, or on behalf of said defendants, or acting in concert or participation with them, be permanently enjoined from directly or indirectly making any illegal, untrue or misleading statements in violation of Business and Professions Code §§ 17200 and 17500, including, but not limited to, the untrue or misleading statements alleged in this complaint;

3.    That pursuant to Business and Professions Code § 17204, all defendants, their officers, directors, principals, assignees, successors, agents, representatives, employees, subsidiaries, affiliates, and all persons, corporations and other entities acting by, through, under, or on behalf of said defendants, or acting in concert or participation with them, be permanently enjoined from directly or indirectly committing any violations of Business and Professions Code § 17200 *et seq.*, including, but not limited to, the violations alleged in this complaint;

4.    Ordering the disgorgement of all sums unjustly obtained from plaintiffs, the members of the Class and the public;

5.    Ordering defendants to make restitution to plaintiffs, the members of the Class and the public;

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

6.    Awarding plaintiffs and the members of the Class compensatory damages according to proof;

7.    Awarding plaintiffs and the members of the Class general damages according to proof;

8.    Awarding plaintiffs and the members of the Class economic damages according to proof;

9.    Awarding plaintiffs and the members of the Class nominal damages of at least $1,000 per person for violations of the Confidentiality of Medical Information Act;

10.    Awarding plaintiffs and members of the Class punitive and exemplary damages according to proof;

11.    Awarding prejudgment and post-judgment interest at the maximum legal rate;

12.    Awarding attorneys' fees according to proof;

13.    Awarding costs of suit herein; and

14.    All such other and further relief as the Court deems just.

Dated: April 3, 2003                         WALKUP, MELODIA, KELLY,
                                             WECHT & SCHOENBERGER


                                             _____
                                             MATTHEW D. DAVIS
                                             Attorney for Plaintiffs

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: April 3, 2003                         WALKUP, MELODIA, KELLY,
                                             WECHT & SCHOENBERGER


                                             _____
                                             MATTHEW D. DAVIS
                                             Attorney for Plaintiffs

LAW OFFICES OF
WALKUP, MELODIA, KELLY
WECHT & SCHOENBERGER
A PROFESSIONAL CORPORATION
650 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CA 94108
(415) 981-7210

2ND AMENDED COMPLAINT - CASE NO. CGC-02-405544