1  Terrence R. McInnis (#155416)
      (tmcinnis@rdblaw.com)
2  Siavash Daniel Rashtian (#228644)
      (drashtian@rdblaw.com)
3  ROSS, DIXON & BELL, LLP
   5 Park Plaza, Suite 1200
4  Irvine, California 92614-8529
   Telephone: (949) 622-2700
5  Facsimile: (949) 622-2739

6  Monique M. Fuentes (#205501)
      (mfuentes@rdblaw.com)
7  ROSS, DIXON & BELL, LLP
   2001 K Street, NW
8  Washington, DC 20006-1040
   Telephone: (202) 662-2000
9  Facsimile: (202) 662-2190

10 *Attorneys for Defendant, Counter-Claimant,*
   *Cross-Claimant and Cross-Defendant*
11 *Executive Risk Specialty Insurance Company*

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                            OAKLAND DIVISION

| | |
|---|---|
| 15 LENSCRAFTERS, INC., and EYEXAM OF CALIFORNIA, INC., | No. C07-02853 SBA |
| 16 | [Related Case No. C 04-01001 SBA] |
| 17 Plaintiffs, | **EXECUTIVE RISK SPECIALTY INSURANCE COMPANY'S COUNTERCLAIM AND CROSS-CLAIM** |
| v. | |
| 18 LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY and WESTCHESTER FIRE INSURANCE COMPANY, | |
| Defendants. | |
| 24 EXECUTIVE RISK SPECIALTY INSURANCE COMPANY, | |
| Counter-Claimant and Cross-Claimant, | |
| v. | |
| 28 LENSCRAFTERS, INC. and EYEXAM OF | |

852972 v 1                                    ERSIC's Counterclaim and Cross-Claim
                                                        (No. C 07 2853 SBA)

| | |
|---|---|
| 1 | CALIFORNIA, INC., |
| 2 | Counter-Defendants, |
| 3 | and |
| 4 | LIBERTY MUTUAL FIRE INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY and WESTCHESTER FIRE INSURANCE COMPANY |
| 5 | |
| 6 | |
| 7 | |
| 8 | Cross-Defendants. |

Defendant/Counter-Claimant/Cross-Claimant/Cross-Defendant Executive Risk Specialty Insurance Company ("ERSIC"), for its Counterclaim against Plaintiff/Counter-Defendants LensCrafters, Inc. and EYEXAM of California, Inc. (collectively referred to as the "Insureds"), and for its Cross-Claim against Liberty Mutual Fire Insurance Company ("Liberty"), United States Fire Insurance Company ("U.S. Fire"), Markel American Insurance Company ("Markel") and Westchester Fire Insurance Company ("Westchester") (collectively, the "Insurers" or "Cross-Defendants") alleges as follows:

## NATURE OF ACTION

1. This is an action by ERSIC seeking a declaration concerning the rights and obligations of the parties under insurance policies issued by Liberty, U.S. Fire, Markel, Westchester and ERSIC in connection with the lawsuit captioned *Snow, et al. v. LensCrafters, Inc., et al.*, No. CGC-02-40554 (San Francisco Super. Ct.) (the "*Snow* Action"). The Insureds are defendants in the *Snow* Action.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367, 28 U.S.C. § 2201(a), and Rule 13 of the Federal Rules of Civil Procedure. The claims at issue herein are so related to the claims asserted by Plaintiffs in this action, over which the Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), that they form part of the same case or controversy under Article III of the United States Constitution. This matter involves an actual controversy within the meaning of 28 U.S.C. § 2201(a).

3.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged events and/or omissions rise to the claims at issue in this counterclaim and cross-claim are alleged to have occurred in this District.

### PARTIES

4.     Counter-Claimant/Cross-Claimant ERSIC is a Connecticut corporation and has its principal place of business in the New Jersey.

5.     Upon information and belief, Cross-Defendant Liberty is a Massachusetts corporation and has its principal place of business in Massachusetts.

6.     Upon information and belief, Cross-Defendant U.S. Fire is a Delaware corporation with its principal place of business in New Jersey.

7.     Upon information and belief, Cross-Defendant Markel is a Virginia corporation with its principal place of business in New Jersey.

8.     Upon information and belief, Cross-Defendant Westchester is a New York corporation with its principal place of business in New Jersey.

9.     Upon information and belief, Counter-Defendant LensCrafters, Inc. ("LensCrafters") is an Ohio corporation with its principal place of business in Ohio.

10.    Upon information and belief, Counter-Defendant EYEXAM of California, Inc. ("Eyexam") is a California Corporation with its principal place of business in California.

### FACTUAL ALLEGATIONS

#### The Policies

11.    As set forth below, separate insurance policies were issued by Cross-Defendants and ERSIC under which LensCrafters and Eyexam are Insureds. These policies detailed below are not attached here because of their bulk and because it would be wasteful and burdensome for the Court and the Parties.

12.    Liberty issued to Luxottica the following Commercial General Liability Policies: (1) Policy No. TB2-681-004130-038, for the February 1, 1998 to February 1, 1999 Policy Period; (2) Policy No. RG2-681-004130-039, for the February 1, 1999 to February 1, 2000 Policy Period; (3) Policy No. RG2-681-004130-030, for the February 1, 2000 to February 1, 2001 Policy Period;

(4) Policy No. RG2-681-004130-031, for the February 1, 2001 to February 1, 2002 Policy Period; (5) Policy No. RG2-681-004130-032, for the February 1, 2002 to February 1, 2003 Policy Period; (6) Policy No. RG2-681-004130-033, for the February 1, 2003 to February 1, 2004 Policy Period; (7) Policy No. RG2-681-004130-034, for the February 1, 2004 to February 1, 2005 Policy Period; and (8) Policy No. RG2-681-004130-035, for the February 1, 2005 to February 1, 2006 Policy Period (collectively, the "Liberty Policies"). LensCrafters and Eyexam, as well as all other past and present defendants named in the *Snow* Action, are Insureds under the Liberty Policies.

13. Liberty Policy No. TB2-681-004130-038, for the February 1, 1998 to February 1, 1999 Policy Period, contains a $3 million limit of liability per person/organization under Coverage B (Personal and Advertising Injury), and a $6 million aggregate limit of liability. Each of the other Liberty Policies contains a $3 million limit of liability per occurrence, and a $6 million aggregate limit of liability.

14. ERSIC issued Managed Care Organization Errors and Omissions Liability Policy No. 8167-2076 to EyeMed Vision Care, LLC for the November 12, 2001 to November 12, 2002 Policy Period with a $3 million aggregate limit of liability (the "ERSIC Policy"). Defense expenses are part of, and not in addition to, the Policy's limits. LensCrafters and "Eyexam 2000 of California, Inc." were added as "Insureds" by endorsement. Upon information and belief, Eyexam 2000 of California, Inc. is the same entity as Eyexam.

15. The ERSIC Policy provides in Endorsement No. 11 that it is to be excess to other insurance, as follows:

> (G)    Other Insurance; Other Indemnification:
>
>     (1)    This Policy shall be excess of and shall not contribute with:
>
>         (a)    Commercial General Liability Insurance Policy No RG2-681-004130-031 issued by Liberty Mutual or any renewal or replacement thereof, but only with respect to **Managed Care Activities**;
>
>         (b)    any other existing insurance or self-insurance, unless such other insurance or self-insurance is specifically stated to be in excess of this Policy; and
>
>         (c)    any indemnification to which an **Insured** is entitled from any entity other than the **Insured Entity**.

> This Policy shall not be subject to the terms of any other policy of insurance or plan or program of self-insurance.

16. U.S. Fire issued to Luxottica the following excess policies: (1) Policy No. 553-058755-2, for the February 1, 1998 to February 1, 1999 Policy Period; (2) Policy No. 553-068740-7, for the February 1, 1999 to February 1, 2000 Policy Period; and (3) Policy No. 553-076092-8, for the February 1, 2000 to February 1, 2001 Policy Period (collectively, the "U.S. Fire Policies"). LensCrafters and Eyexam, as well as all other past and present defendants named in the *Snow* Action, are Insureds under the U.S. Fire Policies. Each of the U.S. Fire Policies has a $25 million limit of liability per occurrence and in the general aggregate in excess of the retained limit.

17. Markel issued excess policy No. CU-GA-1345-01 to Luxottica for the February 1, 2001 to the February 1, 2002 Policy Period (the "Markel Policy"). LensCrafters and Eyexam, as well as all other past and present defendants named in the *Snow* Action, are Insureds under the Markel Policy. The Markel Policy provides for a $15 million limit of liability per occurrence and in the general aggregate in excess of the retained limit.

18. Westchester issued to Luxottica the following excess policies: (1) Policy No. CUA-150963, for the February 1, 2002 to February 1, 2003 Policy Period; (2) Policy No. CUA-706488, for the February 1, 2003 to February 1, 2004 Policy Period; (3) Policy No. CUW-774410, for the February 1, 2004 to February 1, 2005 Policy Period; and (4) Policy No. CUW-785695, for the February 1, 2005 to February 1, 2006 Policy Period (collectively, the "Westchester Policies"). LensCrafters and Eyexam, as well as all other past and present defendants named in the *Snow* Action, are Insureds under the Liberty Policies. Each of the Westchester Policies has a $25 million limit of liability per occurrence and in the general aggregate in excess of the retained limit.

### The *Snow* Action

19. On March 12, 2002, a lawsuit captioned *Snow, et al. v. LensCrafters, Inc., et al.*, No. CGC-02-405544 (San Francisco Super. Ct.) (the "*Snow* Action") was brought on behalf of a putative class of Eyexam patients from March 15, 1998 to the present. After the filing of a

Second Amended Complaint, and after some defendants were dismissed, LensCrafters and Eyexam remain as defendants in the *Snow* Action.

20. The *Snow* Action asserts causes of action for, among other things, violations of the California Medical Information Act. The *Snow* Action alleges, *inter alia*, that the defendants violated patient privacy rights by disclosing confidential patient information. Specifically, plaintiffs in the *Snow* Action allege that confidential medical information a patient would reasonably expect to be shared only with medical staff was published by Eyexam personnel to LensCrafters and other non-medical personnel, without authorization, and used for marketing and other purposes.

### The Related Coverage Action

21. The Insureds filed an action captioned *LensCrafters, Inc., et al. v. Liberty Mutual Fire Insurance Co., et al.,* Case No. CV-04-01001 SBA (N.D. Cal.) (the "Coverage Action"), seeking declarations concerning ERSIC and Liberty's obligations to the Insureds for the *Snow* Action. ERSIC filed a counterclaim against the Insureds and a cross-claim against Liberty in the Coverage Action, seeking a declaration that the ERSIC Policy was excess to the Liberty Policies, and seeking equitable indemnity from Liberty for amounts ERSIC had incurred in the defense of the Insureds in the *Snow* Action.

22. On January 20, 2005, this Court entered an Order in the Coverage Action on the parties' cross-motions for summary judgment, finding that Liberty was obligated to defend the *Snow* Action under the Liberty Policies issued between 1998 and 2004 (six policies). Specifically, this Court determined that all of the alleged "disclosures of private medical information" asserted in the *Snow* Action were "publication[s] of material that violate[] a person's right of privacy," thereby triggering coverage under the Personal Injury Coverage Parts of the six Liberty Policies then at issue before the Court. *LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.,* No. C 04-1001 SBA, 2005 WL 146896, **8 and 11 (N.D. Cal. Jan. 20, 2005).

23. In October 2005, this Court further found that the ERSIC Policy was excess to the Liberty Policies then at issue, and that ERSIC was entitled to equitable indemnification from

Liberty for the defense costs ERSIC had expended on the *Snow* Action. Specifically, the Court ruled that:

> [T]he underlying allegations in the fifth cause of action of the <u>Snow</u> litigation . . . concern both Managed Care Activities and Medical Information Protection violations. As such, the Court finds that Section IV(G)(1)(a) of [ERSIC Policy] Endorsement No. 11 is applicable.
>
> \* \* \*
>
> The Court finds that ERSIC is entitled to judgment in its favor declaring the ERSIC Policy to be excess to the Liberty Policies.

*LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 2467748, at *11 (N.D. Cal. Oct. 6, 2005).

24.     On November 22, 2005, this Court entered an Amended Judgment in the Coverage Action in which this Court declared that "the 2001-2002 ERSIC Policy is excess to the Liberty policies with respect to the <u>Snow</u> action." On December 6, 2005, Liberty filed a notice of appeal. The appeal is still pending before the Ninth Circuit.

### **Current Controversy**

25.     The Insureds have requested that ERSIC, U.S. Fire, Markel and Westchester agree to settle the *Snow* Action for an amount that is within their combined policy limits. ERSIC, U.S. Fire, Markel and Westchester dispute Liberty's position on the limits available under the primary Liberty Policies to fund a settlement or judgment of the *Snow* Action – Liberty contending that there is only $3 million in total limits, while the other insurers contend that there is significantly more available limits under the primary Liberty Policies. On information and belief, U.S. Fire, Markel and Westchester also dispute the availability of coverage under their respective policies for any settlement or judgment in the *Snow* Action. Finally, U.S. Fire, Markel and Westchester further contend that if there is coverage afforded for the *Snow* Action under their respective policies, that coverage is excess to the coverage afforded under the ERSIC Policy, which ERSIC disputes.

26.     There is an actual, ripe and live controversy between the parties regarding the Insurers' rights, duties and obligations under their respective policies in connection with

indemnification for the Insureds for the *Snow* Action, and contribution between ERSIC and the other Insurers'.

## COUNT I

**(For a Declaration Regarding Liberty's Applicable Policy Limits)**

27. ERSIC repeats and incorporates by reference the allegations in paragraphs 1 through 26 of this Counterclaim and Cross-Claim.

28. This Court, in the Coverage Action, determined that the allegations of "disclosures of private medical information" asserted in the *Snow* Action were "publication[s] of material that violate[] a person's right of privacy" and so triggered coverage under the first six Liberty Policies' Personal Injury Coverage Part. The subsequent two Liberty Policies were issued on the same relevant terms as the first six Liberty Policies at issue in the Coverage Action. The *Snow* Action alleges damages involving Personal Injury that occurred during all eight Liberty Policies. Accordingly, coverage under the Personal Injury Coverage Part of all eight Liberty Policies is triggered by the *Snow* Action.

29. By their terms, the Liberty Policies are "primary" to any other insurance except in certain defined circumstances, which are inapplicable to the present circumstances. Liberty has a primary duty under the terms of the Liberty Policies to indemnify the Insureds for the *Snow* Action.

30. Liberty Policy No. TB2-681-004130-038, for the February 1, 1998 to February 1, 1999 Policy Period, contains a $3 million limit of liability per person/organization under Coverage B (Personal and Advertising Injury), and a $6 million aggregate limit of liability. Each of the other Liberty Policies contains a $3 million limit of liability per occurrence, and a $6 million aggregate limit of liability.

31. Liberty contends that, despite the fact that all eight Liberty Policies are triggered by the *Snow* Action, and despite the fact that the *Snow* Action alleges multiple occurrences and personal injuries to multiple persons, its duty to indemnify the Insureds for the *Snow* Action, if any, is limited to a single "per occurrence" limit of $3 million. ERSIC and the other Insurers dispute that Liberty's total applicable limit of liability for the *Snow* Action is $3 million.

32. ERSIC seeks a judgment declaring that Liberty has a primary duty to indemnify the Insureds for the *Snow* Action under the eight Liberty Policies, and further asks the Court to declare the total applicable limits of the Liberty Policies triggered by the *Snow* Action.

## COUNT II

### (For Equitable Indemnity – Against Liberty Only)

33. ERSIC repeats and incorporates by reference the allegations in paragraphs 1 through 32 of this Counterclaim and Cross-Complaint.

34. The Liberty Policies impose upon Liberty the duty to indemnify the Insureds in the *Snow* Action, up to the full amount of the applicable and available limits of the Liberty Policies.

35. The Insureds have demanded that ERSIC indemnify them for a settlement or judgment in the *Snow* Action before the amount of the applicable and available limits of the Liberty Policies has been judicially determined and exhausted through payment by Liberty.

36. As an excess insurer, ERSIC's duty to indemnify the Insureds under the ERSIC Policy is only triggered upon exhaustion of the applicable and available limits of the Liberty Policies.

37. Justice and equity require that any amounts paid by ERSIC to or on behalf of the Insureds for indemnity in the *Snow* Action, within and before the applicable and available limits of the Liberty Policies have been fully exhausted, be shifted entirely to Liberty, whose obligations to these Insureds is primary and whose position is equitably inferior to that of ERSIC.

38. By virtue of the foregoing, ERSIC is entitled to a judgment against Liberty for all amounts paid by ERSIC in reimbursement to its Insureds in the *Snow* Action, within and before the applicable and available limits of the Liberty Policies have been fully exhausted, which amounts are the primary liability of Liberty, plus interest thereon.

## COUNT III

### (For Declaratory Relief and Equitable Contribution from U.S. Fire, Markel and Westchester)

39. ERSIC repeats and incorporates by reference the allegations in paragraphs 1 through 38 of this Counterclaim and Cross-Claim.

40. As an excess insurer with respect to the *Snow* Action, as adjudicated by this Court in the Coverage Action, ERSIC's duty to indemnify the Insureds for the *Snow* Action is not triggered until the applicable Liberty Policies are exhausted.

41. The U.S. Fire, Markel and Westchester policies provide that they are excess to the policies identified in their respective Schedules of Underlying Insurance. One or more of the Liberty Policies are listed in each of the Insurers' respective Schedules of Underlying Insurance. The ERSIC Policy is not listed or identified as "Underlying Insurance" in any of the Insurers' respective Schedules of Underlying Insurance.

42. Under the terms of their respective policies, U.S. Fire, Markel and Westchester have a duty to indemnify the Insureds for the *Snow* Action upon exhaustion of the Liberty Policies identified in their respective Schedules of Underlying Insurance.

43. The policies issued by U.S. Fire, Markel and Westchester are not excess to the ERSIC Policy. To the extent any language in those policies purports to render those policies excess to the ERSIC Policy, such provisions conflict with the terms of the ERSIC Policy which render the ERSIC Policy excess to other available insurance, and as such, these conflicting clauses cancel each other out. Accordingly, the policies issued by ERSIC, U.S. Fire, Markel and Westchester share the same excess level of liability for the *Snow* Action – being triggered upon exhaustion of the applicable Liberty Policies.

44. Justice and equity require that any indemnification owed to the Insureds for the *Snow* Action should be shared equitably by and between ERSIC, U.S. Fire, Markel and Westchester upon exhaustion of the applicable Liberty Policies.

45. Accordingly, ERSIC is entitled to a judgment declaring and awarding the equitable apportionment and contribution due between and among ERSIC, U.S. Fire, Markel and Westchester for any settlement or judgment in the *Snow* Action, upon exhaustion of the applicable Liberty Policies.

WHEREFORE, ERSIC requests that the Court enter judgment in its favor:

1   A.   On Count I, a judgment declaring that Liberty has a primary duty to indemnify the Insureds for the *Snow* Action under the eight Liberty Policies, and further declaring the total applicable limits of the Liberty Policies triggered by the *Snow* Action.

B.   On Count II, a judgment against Liberty for all amounts paid by ERSIC in reimbursement to its Insureds in the *Snow* Action, within and before the applicable and available limits of the Liberty Policies have been fully exhausted.

C.   On Count III, a judgment declaring and awarding the equitable apportionment and contribution due between and among ERSIC, U.S. Fire, Markel and Westchester for any settlement or judgment in the *Snow* Action, upon exhaustion of the applicable Liberty Policies.

C.   Awarding ERSIC such additional declaratory and other such relief, including attorneys' fees, costs, and pre- and post-judgment interest, as shall be found to be just, proper, and/or equitable.

Date:  September 4, 2007                    Respectfully submitted,

ROSS, DIXON & BELL, LLP

_/s/ Terrence R. McInnis_
Terrence R. McInnis

and

Monique M. Fuentes
Siavash Daniel Rashtian

*Attorneys for Defendant, Counter-Claimant, Cross-Claimant and Cross-Defendant Executive Risk Specialty Insurance Company*