SQUIRE, SANDERS & DEMPSEY L.L.P.
Mark C. Goodman (Cal. State Bar No. 154692)
Amy E. Rose (Cal. State Bar No. 222167)
Ann J. Lee (Cal. State Bar No. 236501)
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492
Telephone: +1.415.954.0200
Facsimile: +1.415.393.9887
Email: mgoodman@ssd.com
Email: arose@ssd.com
Email: ajlee@ssd.com

Attorneys for Defendant
UNITED STATES FIRE INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

LENSCRAFTERS, INC.; and EYEXAM OF CALIFORNIA, INC.;

Plaintiffs,

vs.

LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY; and WESTCHESTER FIRE INSURANCE COMPANY,

Defendants.

Case No. C-07-2853 SBA
The Honorable Saundra B. Armstrong

**E-FILING**

**REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY**

Date: September 18, 2007
Time: 1:00 p.m.
Courtroom: 3

## I. INTRODUCTION

LensCrafters' opposition hinges on the hope that it can distract the Court with discussions of forum *non conveniens*-type considerations and the unripe claims it seeks to add to this lawsuit. Neither is relevant to this motion. The extent of this suit's "connection" to California (which LensCrafters has, in any event, grossly exaggerated) has no place in the *Brillhart* analysis and the Court cannot disregard the nature of this dispute -- a pure declaratory relief action over which its jurisdiction is discretionary -- and pretend that it includes any non-discretionary claims.

Although the Court has yet to rule on LensCrafters' Motion for Leave to File First Amended Complaint, that motion will have no impact on the Court's analysis of U.S. Fire's motion. Specifically, LensCrafters' proposed breach of contract and bad faith claims are not ripe, as LensCrafters does not (and cannot) allege damages as result of its insurers' alleged breach. LensCrafters' proposed complaint is based on the "new" fact that the *Snow* action could have been, but was not, settled on July 26. However, no amounts have been paid to settle the claim. LensCrafters cannot allege that the *Snow* action caused LensCrafters to pay any amounts that its insurers should have paid. LensCrafters alleges that it is, instead, in precisely the same position it was in on May 25 when it filed this action: It is being defended in the *Snow* action and has suffered no legally-cognizable damages to support its claims for breach of contract or bad faith.

Instead of considering LensCrafters' proposed complaint, the Court must analyze LensCrafters' ***operative*** complaint -- a complaint for declaratory relief. LensCrafters cannot genuinely dispute that this Court's jurisdiction over declaratory relief actions is discretionary and, sixty-five years ago, the United States Supreme Court articulated a presumption that district courts decline to exercise that jurisdiction where a parallel state action is already pending. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942). Because a parallel state action is pending in this case, the Court should presumptively dismiss or stay this action and permit the state court with jurisdiction over the claims and parties at issue here to decide the state law issues in dispute.



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

## II. DISCUSSION

### A. This Is A Classic *Brillhart* Abstention Case

*Brillhart* directs that a district court should presumptively decline its jurisdiction over declaratory relief actions where the same parties are litigating the same state law issues in state court. *Brillhart*, 316 U.S. at 494. LensCrafters disputes that (1) it seeks only declaratory relief in this action and (2) the New York Action includes the same parties as this lawsuit. Not so. The only claim that LensCrafters has alleged in this action is for declaratory relief. Accordingly, the Court's jurisdiction over this action is discretionary and should not be exercised because a state court is already deciding the same state law issues between the same parties.

#### 1. LensCrafters' Only Viable Claim Seeks Declaratory Relief

Notwithstanding LensCrafters' attempts at revising history, the only cause of action alleged in ***this*** lawsuit is a single claim for declaratory relief. In arguing that this case does not implicate the *Brillhart* presumption (*see* Opposition at 9-11) and in analyzing the *Brillhart* rationales, LensCrafters disregards the fact that it has not alleged any claims but declaratory relief and simply presumes that the Court will allow it to add unripe claims to defeat U.S. Fire's motion. (*See, e.g.*, Opposition at 10 fn. 4.) However, the Court certainly has not allowed any non-declaratory relief claims in this action -- nor should it. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (determining that futility of amendment alone justifies denial of leave to amend); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (refusing to grant leave to amend where the proposed amendment is legally insufficient, thereby rendering amendment futile). Accordingly, if LensCrafters' proposed complaint could not withstand a motion to dismiss, the Court should not permit amendment.

LensCrafters' proposed complaint purports to add claims for breach of contract and tortious breach of the implied covenant arising out of its insurers' refusal to fund the *Snow* settlement. Neither claim is viable absent allegations of damages. *Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 511 ("[A] breach of contract without damage is not actionable"); *see also* BAJI 10.85; CACI 303 (requiring a plaintiff to show, as one of the essential elements of a cause of action for breach of contract, "damages to plaintiff caused



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

by the breach"); *Emerald Bay Community Association v. Golden Eagle Ins. Co.*, 130 Cal.App.4th 1078, 1084 (2005) (holding that an insured cannot sustain a cause of action for bad faith absent breach of contract and resulting damages). Thus, in addition to alleging the existence of the contracts, its performance of those contracts and the insurers' breach of the contracts, LensCrafters must allege that the breach resulted in compensable damages. *See St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.* (2002) 101 Cal.App.4th 1038, 1060 ("An essential element of a claim for breach of contract is ***damages*** resulting from the breach") (original emphasis). It has not done -- and cannot do -- so here.

LensCrafters' conclusory statement that it "has been damaged" is belied by the factual allegations of its proposed complaint. LensCrafters admits that the *Snow* action has not settled. (Proposed FAC at ¶ 36 ("The mediation on July 26 was unsuccessful").) In fact, it is its insurers' ***failure*** to settle the *Snow* action that LensCrafters asserts gives rise to its new claims. (*Id.* at ¶ 38 ("Defendant insurers have breached their duty under the policies to settle the *Snow* Action by refusing to accept and fund a reasonable settlement within policy limits. Defendants' actions have exposed LensCrafters to further litigation and the risk of a judgment in excess of policy limits").) But "exposure" to further litigation (in which it is being defended by Liberty Mutual pursuant to the Court's prior order) and "the risk" of an excess judgment are not compensable contract damages. *Emerald Bay*, *supra,* 130 Cal.App.4th at 1084 ("[A]n insured needs to establish actual financial loss, not merely a potential that it may suffer a loss sometime in the future"). LensCrafters does not allege that it has sustained actual financial loss.[1] Because it fails to allege that it has had to pay anything in relation to the *Snow* action, LensCrafters cannot sustain claims for either breach of contract or bad faith. Its request for leave to add those unripe claims should be denied.

Because LensCrafters cannot allege any contract claims, the Court's jurisdiction is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-89 (1995) ("[D]istrict courts possess

---

[1] Nor can it: LensCrafters has not paid anything for a settlement or judgment in the *Snow* action and there is no certainty that it ever will. It is equally likely that LensCrafters will successfully defend the *Snow* action, in which case it would ***never*** suffer ***any*** financial loss as a result of its insurers' alleged breach of their insurance policies.



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"); *Brillhart*, 316 U.S. at 494. That discretionary jurisdiction presumptively should not be exercised where the same parties are litigating the same state law issues in state court. *Wilton*, 515 U.S. at 289; *Brillhart*, 316 U.S. at 494. *See also Government Employees Ins. Co. v. Dizol ("GEICO")*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court"); *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1370 (9th Cir. 1991) (determining that federal court's exercise of permissive jurisdiction was contrary to the exercise of sound judicial discretion and, on remand, ordering district court to dismiss action in favor of parallel state proceeding).

*Wilton, Brillhart, GEICO* and *Robsac* each involve, as this case does, a dispute between an insurer and an insured where one party sued for declaratory relief in federal court and the other in state court to resolve the same state law contract and insurance issues. In each case, the district court did -- or was subsequently reversed and ordered to -- decline to exercise jurisdiction.

LensCrafters attempts to distinguish this long line of on-point insurance-related abstention precedents on the basis that "[a]lmost as a rule, this principle has been applied in insurance cases to prevent insurance companies from racing to federal court to file declaratory relief actions in order to deprive the insured of a state law action, not the other way around." (Opposition at 16:11-14.) However, the *Brillhart* presumption is not a tool the United States Supreme Court crafted to prevent ***insurance companies*** from depriving their insureds of some non-existent "right" to their choice of forum. To the contrary, the *Brillhart* presumption stems from notions of federalism and federal deference to state courts where only state law issues are in dispute. It applies to prevent ***any party*** (not just insurance companies) from invoking federal jurisdiction over a state law dispute where a state court stands ready, willing and able to decide the identical issues. Because federal courts are courts of limited jurisdiction and federal jurisdiction over declaratory relief actions is discretionary, federal courts should decline to exercise jurisdiction when it would unnecessarily require determination of state law issues already pending before a

state court. *Wilton*, 515 U.S. at 289; *Brillhart*, 316 U.S. at 494; *GEICO*, 133 F.3d at 1225; *Robsac*, 947 F.2d at 1372.

**2. The Same Parties are Already Litigating the Same State Law Issues in the New York Action**

Faced with a purely declaratory action over which its jurisdiction is discretionary, the Court need only determine whether this suit involves the same state law issues already being litigated between the same parties in the New York Action. LensCrafters does not dispute that the two actions involve the identical legal dispute, which it concedes is governed by state law. (*See* Opposition at 13 fn.5 (claiming that identity -- not mere factual overlap -- of legal issues is required but not disputing that the two lawsuits at issue here are, in fact, identical).) Nor could it. *See Brillhart*, 316 U.S. at 283 (noting that the district court should examine "the scope of the pending state court proceeding and the nature of defenses open there" to ensure that the claims of the federal action "can satisfactorily be adjudicated in that proceeding"). There is no dispute that both actions allege the same underlying facts and seek a declaration regarding LensCrafters' insurers' obligations to indemnify the *Snow* claims. (*See and compare* RJN Ex. 1 *with* Complaint.)

Instead, LensCrafters argues that the two actions do not involve "the same parties" and that its exclusive jurisdiction stipulation with its primary insurers -- ERSIC and Liberty Mutual -- somehow leaves the New York court powerless to adjudicate the state law issues raised in U.S. Fire's complaint. (Opposition at 12.) Neither contention is well-founded: All necessary parties to this dispute are present in -- or can be easily added to -- the New York Action and, as LensCrafters well knows, parties cannot agree to federal jurisdiction where it is otherwise lacking or inappropriate. *See Industrial Addition Ass'n v. Commissioner*, 323 U.S. 310, 313 (1945).

Contrary to LensCrafters' assertion, the Ninth Circuit's *en banc* decision in *GEICO* did not change the appropriate analysis to determine whether "the same parties" are present in parallel state and federal actions. (*See* Opposition at 13, fn. 5.) All *GEICO* did was state the standard for determining whether the *Brillhart* presumption applies: If the same parties are already litigating the same state law issues in state court. 133 F.3d at 1225. As the Supreme Court explained, to ascertain whether "the same parties" are involved, the question for the district



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

court is "whether necessary parties have been joined [or] whether such parties are amendable to process in that [state] proceeding." *Wilton*, 515 U.S. at 283. Accordingly, the parties to this action need not be identical to those in the New York Action, as long as all necessary parties have been -- or can be -- joined there. *Id.*

The New York Action names all of the parties in this action -- and more -- with the exception of Executive Risk Specialty Insurance Company ("ERSIC").[2] The absence of ERSIC from the New York Action, however, does not prevent the Court from declining to exercise its jurisdiction in this action. ERSIC is undisputedly subject to jurisdiction in New York and can be easily added to the New York Action. (*See* Rose Decl., Ex. J at 5 fn. 5 (noting that the ERSIC policies at issue were negotiated and issued in New York).) Accordingly, under the *Brillhart* test, the fact that ERSIC has not yet been added to the New York Action does not change the fact that "the same parties" are litigating in both fora.

LensCrafters next claims that the New York court does not have personal jurisdiction over EYEXAM of California, Inc. (Opposition at 12, 14.) But neither the New York court nor this Court has made any such determination and the parties have not conducted discovery or the briefing needed to adjudicate that question. LensCrafters does not even set forth the necessary facts to analyze whether the New York court lacks jurisdiction over EYEXAM but only states, conclusorily, that it is not subject to that court's jurisdiction. (Opposition at 12.) LensCrafters' bare assertion, however, is not sufficient to establish that EYEXAM is not subject to jurisdiction in New York.

Even if the New York court could not exercise jurisdiction over EYEXAM, however, it can still fully adjudicate the issues in dispute, which is all that is required to trigger the *Brillhart*

---

[2] Although the presence of additional parties in the New York Action has no bearing on the *Brillhart* analysis, the fact that this action does not include, for example, the actual entity that purchased and is the primary named insured under the insurance policies in question -- New York-based Luxottica U.S. Holdings Corporation -- is relevant when analyzing which action is broader and offers a more complete setting for resolution of the claims at issue. (*See* Rose Decl., Exs. D-I.) LensCrafters' repeated assertions that Luxottica U.S. Holdings did not purchase the policies at issue are completely unsupported (*see* Opposition at 2) and belied by the plain text of the policies, which indicates that they were purchased by Luxottica U.S. Holdings in New York, through a New York broker. (Rose Decl., Exs. D-I.)



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

presumption. 515 U.S. at 283 (inquiring whether ***necessary parties*** have been or can be joined). EYEXAM is not a necessary party to the New York Action such that its absence would prevent a full adjudication of the issues raised in the lawsuit. Fed. R. Civ. Proc. 19(a) (examining whether a party's presence is necessary to (1) accord complete relief to the parties, (2) adequately protect the absent party's interests or (3) avoid the substantial risk of incurring multiple or inconsistent obligations).[3] As the Court is already aware, the *Snow* claims center on what the *Snow* plaintiffs perceive to be an unfair and/or unlawful vertically-integrated relationship between LensCrafters and EYEXAM. (Rose Decl., Ex. A.) The *Snow* complaint seeks injunctive relief and nominal damages for the alleged sharing of confidential medical information resulting from the co-location of EYEXAM and LensCrafters. (*Id*.) The New York Action seeks a declaration regarding U.S. Fire's obligation, if any, to indemnify the *Snow* claims under its policies and, to the extent it is so obligated, whether and how that obligation is apportioned among the other insurers under their policies. (RJN, Ex. 1.) Accordingly, the New York court will determine whether the *Snow* claims are covered by the insurance policies and whether the insurers owe a duty to indemnify the *Snow* action under their policies -- with or without EYEXAM's presence in the lawsuit.

Nor is EYEXAM's presence in the New York Action necessary to protect ***its*** interests. Fed. R. Civ. Proc. 19(a) (providing that a party is necessary where it claims an interest in the subject of the action and a judgment rendered in its absence may "***as a practical matter*** impair or impede its ability to protect that interest") (emphasis added). Practically speaking, the interests of LensCrafters and EYEXAM in the coverage litigation are such that LensCrafters would more than adequately represent EYEXAM's interests. *See Washington v. Daley*, 173 F.3d 1158, 1167-68 (9th Cir. 1999) (holding that an absent party is "adequately represented" by an existing party where the existing party is capable of, likely to and willing to make all of the absent party's arguments and does not add a "necessary element" to the proceedings not offered by the existing

---

[3] The possible need to obtain discovery from EYEXAM does not bear on whether its presence is necessary to the adjudication of the coverage dispute under Rule 19. *See, e.g., Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188-89 (2d Cir. 1999).



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

parties). LensCrafters and EYEXAM seek coverage for the same underlying claim under the same insurance policies and are represented by the same coverage counsel -- Heller Ehrman -- here and in New York. (*See and compare* Opposition *with* Jackson Decl., Ex. 7.) As potential co-obligors on any settlement or judgment in the *Snow* action, EYEXAM's interests in obtaining indemnity for the *Snow* claims are fully aligned with LensCrafters' and will be vigorously represented in the New York Action regardless of whether that court has jurisdiction over EYEXAM. *See Washington*, 173 F.3d at 1167-68 ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit"). Accordingly, EYEXAM's presence is not needed to ensure that its interest in being indemnified in the *Snow* action is fully protected.

Finally, EYEXAM's absence from the New York Action would not present any -- let alone a substantial -- likelihood of multiple or inconsistent obligations. If the New York court lacked jurisdiction over EYEXAM but the insurers were found to owe a duty to indemnify the *Snow* claims, any settlement or judgment would be funded to the extent of that obligation. EYEXAM would not need to separately obtain a determination of the insurers' obligations under their respective policies because any such obligation would already have been adjudicated and satisfied. Similarly, if the New York court determined that the *Snow* claims were not covered under the policies, EYEXAM would be estopped from challenging that determination in a subsequent proceeding. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (applying *res judicata* to bar subsequent litigation where there is: (1) an identity of facts in the original and subsequent actions, (2) a final judgment on the merits in the original action and (3) identity or privity between the parties to the original and subsequent action). Because its interests are aligned with LensCrafters', EYEXAM would be considered in privity by virtual or adequate representation and would not be allowed to re-litigate the coverage issues. *See Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (finding privity and precluding non-party from re-litigating issues where its interests were closely aligned with a party that virtually or adequately represented those interests). Accordingly, there is no potential that the parties to the New York Action will face multiple or inconsistent obligations if EYEXAM is not present in that action.





SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

The New York Action undisputedly involves the same state law issues raised by LensCrafters' declaratory relief claim in this lawsuit. All necessary parties are either already litigating those issues in the New York Action or can be easily added. Because the same state law issues and parties are present in the New York Action, this Court should presumptively decline to exercise its jurisdiction over this purely declaratory action.

**B. None Of LensCrafters' "Countervailing" Considerations Overcomes The Strong Presumption That This Court Should Defer To The New York Action**

LensCrafters mis-analyzes the *Brillhart* rationales and overstates the strength of the "other considerations" that the Court may take into account when applying the *Brillhart* presumption. (Opposition at 11.) The *Brillhart* Court identified three principle rationales underlying its presumption that, where the same parties are already litigating state law issues in state court, those issues "can better be settled in the proceeding pending in the state court:" Avoiding needless determination of state law issues by the federal court, discouraging forum shopping and promoting judicial efficiency.[4] 316 U.S. at 495. Although all three goals do not have to be implicated to decline jurisdiction, all three rationales support abstention here. *See Huth v. Hartford Ins. Co.*, 298 F.3d 800, 803-04 (9th Cir. 2002) (upholding district court's dismissal of reactive federal action where only one *Brillhart* rationale was furthered by the dismissal). The Ninth Circuit in *GEICO* noted that the Court ***may*** also consider various additional factors, none of which undermines the strong presumption in favor of abstention here. 133 F.3d at 1225 fn. 5. Ultimately, however, when faced with a case giving rise to the *Brillhart* presumption, "federal courts should generally decline to entertain reactive declaratory actions." *GEICO*, 133 F.3d at 1225.

[4] Contrary to LensCrafters' assertions, "whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court" is not a separate "factor." (Opposition at 13.) The Supreme Court determined that, where the same parties are already litigating the same issues in state court, the issues presumptively "can better be settled" in state court. 316 U.S. at 495. Only if the *Brillhart* rationales are not served by abstention should the Court deviate from the presumption that it should decline to exercise its discretionary jurisdiction in such cases.



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

### 1. Dismissing this Action Avoids Duplicative Litigation and the Needless Determination of State Law Issues

If the Court chooses to exercise jurisdiction here, it will ensure, not avoid, duplicative litigation between the parties and will have to needlessly decide issues of state law. Unlike this Court's jurisdiction over LensCrafters' action, the New York courts should not presumptively decline jurisdiction over U.S. Fire's declaratory relief action. There is little doubt, therefore, that the New York Action will proceed and the New York court will determine whether the insurers owe an obligation to indemnify the *Snow* action under state contract and insurance law. If this action proceeds, the Court will literally duplicate the efforts of the New York court, forcing the parties to litigate on two fronts and rendering unnecessary decisions under state law.

LensCrafters' only argument that this Court will not be "needlessly" determining state law issues rests upon the faulty premises that (1) its request for leave to add its unripe contract-based claims has been granted and (2) the New York Action does not involve the same parties as this action. (Opposition at 15.) LensCrafters' arguments are circular. Only if the prerequisites for the *Brillhart* presumption are established would the Court dismiss this action in favor of the New York Action. (*See* Sections II.A.1 and II.A.2, *supra*.) U.S. Fire does not dispute that, ***if*** this action were not a pure declaratory relief action involving the same parties and state law issues as the New York Action, *Brillhart* would not apply. (*Id*.) Apparently LensCrafters does not dispute that, if *Brillhart* does apply, the Court should decline to exercise jurisdiction to avoid needlessly adjudicating state law issues. (Opposition at 15.)

LensCrafters also does not dispute that the Court's failure to abstain will result in duplicative litigation, complete with the unacceptable risk of inconsistent rulings and of wasted resources. (*See* Motion to Dismiss at 20-21.) Instead, LensCrafters claims that -- despite the clear waste that would result from such duplication -- the Court should exercise its jurisdiction anyway because of its familiarity with the prior litigation over LensCrafters' primary insurers' duties to defend the *Snow* action. (Opposition at 15-16.) As a preliminary matter, that is not what *Brillhart* compels this Court to consider. The Court must determine whether its exercise of jurisdiction would create duplicative litigation. 316 U.S. at 495. If it does, as it does here,



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

dismissal is appropriate. *Id*.

But even if this Court's familiarity with some of the allegations of the underlying action and portions of some of the parties' policies (from a lawsuit that was closed almost two years ago now) were relevant to the *Brillhart* inquiry, the monumental waste of resources -- and the risk of inconsistent rulings -- that would result from duplicative litigation far outweighs whatever may be occasioned by litigating the duty to indemnify issues in a different court. LensCrafters' reliance on *American Cas. Co. v. Krieger*, 181 F.3d 1113 (1999) to suggest otherwise is misplaced. (Opposition at 16.) Critically, in *Krieger*, the state and federal actions did not involve the same state law issues and the federal action included claims over which the court could not decline to exercise jurisdiction. *Id.* at 1119. The *Brillhart* presumption, obviously, did not apply and there was ***no*** possibility of duplicative litigation. *Id.* The Ninth Circuit's *dicta* regarding the waste of resources that would result from dismissal stemmed from the fact that the federal action had already proceeded for ***years and was on the eve of trial*** when the defendants finally asked the court to dismiss in favor of the state court action. *Id.* This case is a far cry from *Krieger*: It not only presents the very real likelihood of duplicative litigation but was filed just three months ago and is not yet even "at issue."

### 2. None of LensCrafters' Arguments Regarding the Convenience of the Forum is Relevant to the Court's Determination Under *Brillhart*

LensCrafters properly points out (some of) the appropriate additional considerations this Court may take into account when evaluating whether to exercise jurisdiction under *Brillhart* but then promptly ignores them and undertakes an analysis of unrelated factors that have no place in the inquiry. (Opposition at 13.) Neither *Brillhart* nor *GEICO* ask whether the federal court has prior experience with disputes between the parties, whether the federal court sits in the "more convenient forum" or which court sits in a state with a "stronger interest" in or "connection to" the litigation.[5]

---

[5] In fact, no court has ever identified the "connections between th[e] dispute and th[e] forum" as a basis to "overcome" the *Brillhart* presumption. (Opposition at 11.) Nor would one. The *Brillhart* presumption is not concerned with geography (like the doctrine of forum *non conveniens*) but with federalism. The question is not which court is in a physical location that is most convenient for parties and witnesses but which court -- in a federalist system -- should declare relief in state law claims.



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

(Opposition at 13-14.) These questions are relevant to choice of law and forum *non conveniens* analyses, not to the issues of federalism raised by the *Brillhart* abstention doctrine.

What the Court ***may*** properly consider is "[1] whether the declaratory action will settle all aspects of the controversy; [2] whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or [4] whether the use of a declaratory action will result in entanglement between federal and state court systems." *GEICO*, 133 F.3d at 1225 fn. 5. Here, because the New York Action includes parties with potential interests in the adjudication of coverage issues under the policies that are not included in this action, the answer to the first question is possibly no. (*See* RJN, Ex. 1.) Due to the fact that this action is the mirror-image of the New York Action, it is not useful to further refine or clarify the legal relations at issue: The second action would only needlessly burden the parties with duplicative litigation. (*See and compare* RJN, Ex. 1 *with* Complaint.) Despite LensCrafters' attempted explanations for its procedural decisions (see Opposition at 16-17), the facts remain that ***it*** attempted to "agree" its way into federal court, ***it*** filed unripe claims for indemnity in 2004 to leverage that agreement and ***it*** filed this reactive federal action when a state court stood ready, willing and able to adjudicate the state law issues in dispute in this action. *See Robsac*, 947 F.2d at 1370 ("Whether the federal declaratory judgment action regarding insurance coverage is filed ***first or second***, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle") (emphasis added).[6] Finally, the exercise of jurisdiction over this declaratory relief action would entangle this Court and the New York court, as the duplicative nature of the litigation would lead to a substantial risk of inconsistent rulings or *ad hoc* deference of one court

[6] LensCrafters' assertions that U.S. Fire knew about LensCrafters' attempt to "agree" to federal jurisdiction, knew that its "contract claims were about to ripen" or was told that LensCrafters was about to file suit are false. (Opposition at 4.) LensCrafters knows that U.S. Fire was not aware of its stipulation, which LensCrafters raised for the first time in seeking to have this action deemed related to the prior duty to defend case. (*See* Motion at 19.) U.S. Fire could not have known that LensCrafters' breach of contract claims were "about to ripen," as those claims are still not ripe and may never be. (*See* Section II.A.1, *supra*.) Nor did LensCrafters ever alert U.S. Fire that it was about to file a suit for declaratory relief.



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

to the other instead of complete deference by this Court to the state court, as B*rillhart* compels.

The Ninth Circuit recognized that the "district court might also consider the convenience of the parties." *GEICO*, 133 F.3d at 1225 fn. 5. This does not authorize LensCrafters' full-scale forum *non conveniens* analysis (Opposition at 14) but permits the Court to inquire where the parties are located vis-à-vis the two courts. *Id.* Here, U.S. Fire is in New Jersey, Westchester is in New York, Markel is in Wisconsin, Liberty Mutual is in Connecticut, LensCrafters is in Ohio and EYEXAM is in California. (Complaint at ¶¶ 5-11.) Far from supporting the Court's exercise of jurisdiction, the "convenience" factor called for under *GEICO* undisputedly favors litigation of this dispute in New York.

Even if the Court entertained LensCrafters' improper arguments regarding the respective interests in and connections to the dispute and the location of relevant witnesses and documents, those considerations are grossly overstated and do not outweigh the strong presumption in favor of abstention. (Opposition at 1-4.) This case is not "all about California." (Opposition at 1.) It is "all about" interpretation of insurance policies under New York law. The *Snow* plaintiffs and employees of the 90 LensCrafters' locations at issue are not likely to play a role in determining whether the language of the policies actually extends coverage for the *Snow* claims. And this Court has already determined the superiority of New York's interest in regulating the conduct of insurers issuing policies in New York. *See Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d at 1158, 1166 (N.D. Cal. 2003) (holding that the fact that an underlying suit against the insured was adjudicated in California did not outweigh New York's "greater interest in regulating the conduct of the insurer, as well as protecting the insurer" and that "applying California law would abrogate the interests of . . . New York in the application of its law to a situation arising out of an insurance policy issued to a New York resident by an agent of the insurer located in New York") (citations omitted).

**3. New York Law Will Apply to the Contract Interpretation Issues**

LensCrafters and U.S. Fire agree on one thing -- this Court need not determine which state's law will apply before determining that it should defer to the prior-filed state court action. (Opposition at 17.) Whether the Court believes that New York or California law will apply to



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

this dispute, *Brillhart* directs that it should decline to exercise jurisdiction over these state law claims. Accordingly, even if the Court follows LensCrafters' misguided directive to simply "assume" that California law provides the rule of law for all issues, it should decline to exercise jurisdiction in this case. *Wilton*, 515 U.S. at 283.

It is worth noting, however, that the California Court of Appeal recently confirmed that California Civil Code section 1646 -- which states that a contract is to be interpreted according to the law and usage of the place it is to be performed if the contract "indicate[s] a place of performance" and according to the law and usage of the place it was made if the contract "does not indicate a place of performance" -- will determine the law governing the interpretation of an insurance policy. *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436 (2007). There is no legitimate dispute that the interpretation of insurance policies will play a predominant role in the resolution of this dispute. LensCrafters argues that the "place of performance" (*i.e.*, the place of the insured risk) is California. (Opposition at 19-20 (claiming that where an insurance policy covers risks that are in several states, the court will act as if separate policies were issued in the principal location of each risk).) The so-called "multiple-risk" approach for which it argues, however, does not blindly apply each state's law to a claim arising within its borders; it inquires into the possibility that the parties ***intended*** to create separate policies for risks located in separate states. *Stonewall Surplus Lines Inc. Co. v. Johnson Controls*, 14 Cal.App.4th 637, 647-48 (1993).

In *Stonewall*, the insured had manufacturing facilities in 18 states and the insurer issued amendatory endorsements for each of those states, indicating that the parties intended to create separate insurance contracts for each state in which an insured risk was located. *Id*. The court specifically noted that it was not suggesting that the "multiple-risk" approach would be appropriate in all cases where an insured's activities expose it to liability in a number of states, absent circumstances indicating the parties' ***intent*** that the insured's rights be controlled by the location of the insured event. *Id.* at 648 fn. 7. Similarly, in *Frontier*, the court determined that the parties intended California to be the location of the insured risk under the policy at issue because the insurer specifically issued amendatory endorsements for California claims arising from its insured's operations there. *Frontier*, 153 Cal.App.4th at 1461-62.



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

Here, there are no indications that Luxottica U.S. Holdings and U.S. Fire intended to create multiple policies covering more than 800 different LensCrafters locations around the U.S. and Canada under the laws of each state in which LensCrafters operates. To the contrary, the only amendatory endorsement included in the U.S. Fire policies is for New York State, indicating that the parties intended New York law to govern. The parties here did not intend, expect or understand the insured risk to be confined to California or to be present in every state in which LensCrafters sells eyewear. Under such circumstances, the Court would apply the second half of section 1646 -- the law and usage of the place the contract was "made" -- which is New York. Cal. Civ. Code § 1646; *Restatement Second of Conflict of Laws* § 188(2).

## III. CONCLUSION

The only real issue raised by this motion is whether the *Brillhart* analysis applies to this case -- a purely declaratory relief action. The Court is not required to pretend that this lawsuit involves other, unripe causes of action simply because LensCrafters has attempted to add those claims to avoid dismissal of this action. Instead, the Court can and should refuse to exercise jurisdiction in favor of the prior-pending New York Action, where the same parties are already litigating the same state law issues. The Court should (1) defer to the state court's resolution of state law claims, (2) avoid promoting duplicative litigation and needlessly determining state law issues and (3) refuse to sanction LensCrafters' attempts to improperly shop for -- and leverage "agreement" to -- the federal forum.

Dated: September 4, 2007

SQUIRE, SANDERS & DEMPSEY L.L.P.

By: */s/ Amy E. Rose*
Amy E. Rose

Attorneys for Defendant UNITED STATES FIRE INSURANCE COMPANY



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

# PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is One Maritime Plaza, Third Floor, San Francisco, California 94111-3492.

On September 4, 2007, I served the following document described as:

**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY**

☒ VIA THE UNITED STATES DISTRICT COURT ELECTRONIC FILING SERVICE on interested parties in this action as set forth below:

Richard DeNatale, Esq.
Celia M. Jackson, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Terrence R. McInnis, Esq.
Ross, Dixon & Bell, LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614
Telephone: (949) 622-2700
Facsimile: (949) 622-2739

Alex F. Stuart, Esq.
Willoughby, Stuart & Bening
Fairmont Plaza
50 West San Fernando, Suite 400
San Jose, CA 95113
Telephone: (408) 289-1972
Facsimile: (408) 295-6375

Robert D. Dennison, Esq.
Harris, Green & Dennison
5959 W. Century Blvd., Suite 1100
Los Angeles, CA 90045
Telephone: (310) 665-8656
Facsimile: (310) 665-8659
rdd@h-glaw.net

Chip Cox, Esq.
Long & Levitt
465 California Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 438-4413
Facsimile: (415) 397-6392
chipc@longlevit.com

Executed on September 4, 2007, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*/s/ Amy E. Rose*
Amy E. Rose

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. DISCUSSION .......... 2

A. This Is A Classic Brillhart Abstention Case .......... 2

1. LensCrafters' Only Viable Claim Seeks Declaratory Relief .......... 2

2. The Same Parties are Already Litigating the Same State Law Issues in the New York Action .......... 5

B. None Of LensCrafters' "Countervailing" Considerations Overcomes The Strong Presumption That This Court Should Defer To The New York Action .......... 9

1. Dismissing this Action Avoids Duplicative Litigation and the Needless Determination of State Law Issues .......... 10

2. None of LensCrafters' Arguments Regarding the Convenience of the Forum is Relevant to the Court's Determination Under Brillhart .......... 11

3. New York Law Will Apply to the Contract Interpretation Issues .......... 13

III. CONCLUSION .......... 15



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*American Casualty Co. v. Krieger*,
181 F.3d 1113 (1999) ........ 11

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ........ 2

*Brillhart v. Excess Insurance Co. of America*,
316 U.S. 491 (1942) ........ 1, 2, 4, 5, 9, 10, 11

*Continental Casualty Co. v. Robsac Industrial*,
947 F.2d 1367 (9th Cir. 1991) ........ 4, 5, 12

*Government Employees Insurance Co. v. Dizol* ("GEICO")
133 F.3d 1220 (9th Cir. 1998) ........ 4, 5, 9, 12, 13

*Huth v. Hartford Insurance Co.*,
298 F.3d 800 (9th Cir. 2002) ........ 9

*Industrial Addition Association v. Commissioner*,
323 U.S. 310 (1945) ........ 5

*Johnson v. Smithsonian Institute*,
189 F.3d 180 (2d Cir. 1999) ........ 7

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ........ 2

*Richards v. Jefferson County*,
517 U.S. 793 (1996) ........ 8

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002) ........ 8

*Van Winkle v. Allstate Insurance Co.*,
290 F.Supp.2d at 1158 (N.D. Cal. 2003) ........ 13

*Washington v. Daley*,
173 F.3d 1158 (9th Cir. 1999) ........ 7, 8

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ........ 3, 4, 5, 6, 7, 14



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

## STATE CASES

*Emerald Bay Community Association v. Golden Eagle Insurance Co.*, 130 Cal.App.4th 1078 (2005) ........ 3

*Frontier Oil Corp. v. RLI Insurance Co.*, 153 Cal.App.4th 1436 (2007) ........ 14

*Patent Scaffolding Co. v. William Simpson Construction Co.* (1967) 256 Cal.App.2d 506 (1967) ........ 2

*St. Paul Fire & Marine Insurance Co. v. American Dynasty Surplus Lines Insurance Co.*, 101 Cal.App.4th 1038 (2002) ........ 3

*Stonewall Surplus Lines Inc. Co. v. Johnson Controls*, 14 Cal.App.4th 637 (1993) ........ 14

## STATE STATUTES

Cal. Civ. Code § 1646 ........ 14, 15

## FEDERAL STATUTES

Fed. R. Civ. Proc. 19 ........ 7

## OTHER AUTHORITIES

*Restatement Second of Conflict of Laws* § 188 ........ 15



SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492