IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENSCRAFTERS, INC., et al., | No. C 07-2853 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket Nos. 25, 27] |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, et al., | |
| Defendants. | |

This matter comes before the Court on Defendant U.S. Fire Insurance Company's ("U.S. Fire") motion to dismiss or stay this action in favor of a pending New York state court action [Docket No. 25] and related request for judicial notice [Docket No. 27]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS U.S. Fire's request for judicial notice [Docket No. 27] and DENIES the motion to dismiss or stay [Docket No. 25].

**BACKGROUND**

**I.     The Snow Action**

In March 2002, Melvin Gene Snow filed a class action complaint in San Francisco Superior Court against LensCrafters, Inc., EYEXAM of California, Inc. ("EYEXAM") and several other entities (LensCrafters, Inc. and EYEXAM are referred to together as "LensCrafters."). *Melvin Gene Snow, et al. v. LensCrafters, Inc., et al.*, San Francisco Superior Court, Case No. CGC-02-40554 ("Snow Action"). The Snow Action arose from the business model used by LensCrafters, Inc. at its 90 stores in California and its business relationship with EYEXAM, a California-licensed health care plan. The complaint alleges that LensCrafters' business practices and its procedures for handling patient

information violate several California laws, including Business & Professions Code 655 (prohibiting certain business relationships between opticians and optometrists) and the California Confidentiality of Medical Information Act ("COMIA") (Cal. Civ. Code § 56, regulating disclosure of confidential medical information). The Snow plaintiffs seek to certify a California-only class of more than a million consumers who had their eyes examined by a California-licensed optometrist employed by EYEXAM and who purchased eyewear from LensCrafters on the same day. Schechter Decl., ¶¶ 1, 8; Rose Decl., Ex. 1. Presently, only LensCrafters and EYEXAM remain subject to any liability in Snow. Schechter Decl., ¶¶ 4-7.

## II. The 2004 Coverage Action In This Court

In March 2004, LensCrafters filed an insurance coverage action in this Court, *LensCrafters, Inc., et al. v. Liberty Mutual Fire Ins. Co., et al.*, Case No. C-04-01001 SBA ("the 2004 California Action"). The 2004 California Action presented claims for declaratory relief and breach of contract with respect to insurance coverage for the Snow Action. LensCrafters' two primary insurers, Liberty Mutual ("Liberty") and ERSIC, were defendants in the lawsuit. The 2004 California Action raised issues concerning both the duty to defend and the duty to indemnify for any damages that might be paid to the Snow plaintiffs. Jackson Decl., 4, 5 & Ex. 2.

In the 2004 California Action, this Court decided three sets of cross-motions for summary judgment regarding the duty to defend that were filed by LensCrafters, Liberty and ERSIC. The Court issued two main rulings: (1) that Liberty and ERSIC both have a duty to defend LensCrafters for the claims asserted in Snow, and (2) that Liberty's policy is primary to ERSIC's for the purposes of the Snow claims. Jackson Decl., ¶¶ 7, 8. Judgments were entered in November 2005 and are on appeal to the Ninth Circuit. *Id.*, ¶ 9.

LensCrafters' indemnity claims did not become ripe for resolution in the 2004 California Action. Thus, pursuant to the parties' stipulation, the Court ordered that the indemnity claims be dismissed without prejudice, with the following conditions: (1) any party could re-file indemnity claims when they ripened, (2) such action had to be filed in the Federal District Court for the Northern District of

2

California, and (3) the parties consented to exclusive jurisdiction and venue in this Court. *Id.*, ¶ 10 & Ex. 4.

### III.   The Filing Of The 2007 Coverage Action

The Snow Action was litigated from 2002 to early 2007. Defendant U.S. Fire and the other insurers attended meetings in San Francisco in January 2006, January 2007, and April 2007 to discuss the progress of the litigation and the prospects for settlement, as well as a mediation session in San Francisco in November 2005. Jackson Decl., ¶¶ 11, 14. On April 27, 2007, the parties to Snow, along with Liberty, U.S. Fire and the other insurers, attended a mediation in California at which significant progress was made towards settlement, but no deal was reached. *Id*., ¶ 12. According to LensCrafters, by the end of May 2007 it had become apparent that the insurers' positions on certain insurance issues, including whether the Snow claims are covered, whether the insurers have a duty to approve and fund a settlement, and how settlement funding should be allocated, were significant obstacles to settlement. *Id.*

On May 31, 2007, LensCrafters filed this action for declaratory relief. As required pursuant to this Court's earlier Order dismissing indemnity claims from the 2004 California Action, LensCrafters re-filed its indemnity claims in this Court. It sued both the two insurers that were defendants in the 2004 California Action and the other excess insurers: U.S. Fire, Markel, and Westchester. On June 15, 2007, the Court deemed this action to be related to the 2004 California Action. *See* Docket No. 10.

In June 2007, LensCrafters reached a settlement in the *Snow* Action, contingent on approval and funding by insurers. Jackson Decl., ¶ 13. On June 21, LensCrafters asked the insurers to accept and fund the settlement. *Id.* A further mediation session was scheduled for July 26, 2007 to finalize the settlement and obtain the insurers' consent and funding. The Superior Court handling Snow issued an order requiring the insurers to attend; U.S. Fire did not attend. *Id.* & Ex. 5. The insurers did not accept and fund the *Snow* settlement, and the *Snow* settlement has not been finalized.

Eleven days after the July 26, 2007 mediation session failed to finalize the settlement of *Snow*, LensCrafters moved to amend its Complaint in this action to add claims for breach of contract against

3

all insurers and claims for tortious breach of the covenant of good faith and fair dealing against U.S. Fire, Markel and Westchester. Jackson Dec., ¶ 17. The hearing on that motion is set for October 2, 2007. *Id.*

### IV.   U.S. Fire's New York Action

On May 24, 2007, one week before LensCrafters filed the 2007 California Action, U.S. Fire filed a declaratory relief action in New York state court, seeking a declaration that its policies do not cover the Snow Action, and seeking apportionment of any liability it has for Snow among a number of LensCrafters' insurers. U.S. Fire's suit names as defendants LensCrafters and EYEXAM, the two insureds seeking coverage for Snow. Jackson Decl., ¶16. It also names some of the other entities insured by the policies that do not face liability in *Snow*. U.S. Fire named three of the other insurers from which LensCrafters seeks coverage, but did not name ERSIC, a fourth insurer from which LensCrafters seeks coverage for *Snow*. *Id.*, ¶18.

LensCrafters has filed a motion in the New York court seeking dismissal or a stay of U.S. Fire's lawsuit on forum nonconveniens grounds. Jackson Decl., ¶ 22. In addition, EYEXAM has requested dismissal from the New York action based on lack of personal jurisdiction. *Id*., ¶¶ 21, 22. Luxottica U.S., U.S. Shoe and EyeMed also seek dismissal on the additional grounds that they are improperly joined and that there is no justiciable controversy as to them, because they do not seek coverage for Snow. *Id.* The New York Court has stayed discovery in that action and set a hearing on LensCrafters' motion for October 29, 2007.

### V.   U.S. Fire's Motion to Dismiss or Stay

U.S. Fire filed the instant motion to dismiss or stay this action on July 18, 2007, arguing that this Court should dismiss or stay this action in deference to the parallel proceedings U.S Fire initiated in New York, one week before LensCrafters filed this lawsuit in this Court. U.S. Fire argues that since each of the policies at issue were "negotiated between New York-based companies . . .in New York State and the policies were each issued in New York," this is fundamentally a New York state action and will involve the interpretation of New York contract law. Mot. at 3.

4

From 1998 to 2000, Luxottica, a New York-based subsidiary of Luxottica Group S.p.A., an eyewear conglomerate that controls LensCrafters, worked with a New York-based insurance broker, Blumencranz-Klepper-Wilkins, Ltd., to negotiate and purchase the relevant insurance policies from U.S. Fire. *See* Mot. at 3; Rose Decl., Ex. A at ¶¶ 5-9, 30-33, Ex. B. U.S. Fire alleges that Luxottica also "negotiated and purchased" its primary commercial general liability coverage from 1998 until at least 2006 in New York from Liberty Mutual, "which policies were also issued in New York," *see* Complaint at ¶ 16; Rose Decl., Exs. G-I at 1, and that Luxottica purchased primary Managed Care Organization Errors and Omissions Liability insurance for a number a years from Executive Risk Specialty Insurance Company ("ERSIC"), which was "negotiated and issued in New York." (*See* Rose Decl., Ex. J at 5, fn. 5.). U.S. Fire further alleges that Luxottica purchased an additional excess insurance from defendant Westchester Fire Insurance Company, a New York company. *Id.*

Thus, U.S. Fire argues, since the insurance policies were "negotiated and issued" in New York between primarily New York-based entities, the instant action, which currently only involves claims for declaratory relief, will needless duplicate the New York state proceedings and will needlessly decide issues of New York state law.

## LEGAL STANDARDS

As a general matter, the decision to retain jurisdiction over a declaratory judgment action lies within the sound discretion of the district court. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 278 (1995) (district court's decision to exercise jurisdiction "should be reviewed for abuse of discretion"); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 803 (9th Cir. 2002). Where a federal declaratory relief action based on diversity jurisdiction is commenced in reaction to or in anticipation of a state court action involving the same parties and state law issues, it is settled law that the federal court should abstain from exercising jurisdiction and dismiss the action in favor of the state court proceeding. *Wilton*, 515 U.S. at 289; *Brillhart*, 316 U.S. at 494.

As the Supreme Court explained in *Brillhart*, "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in

5

a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. Indeed, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495).

However, the pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). The *Brillhart* factors are simply "the philosophic touchstone" for the district courts. *Id.* The doctrinal teaching of *Brillhart* is that the district court: 1) should avoid needless determination of state law issues, 2) should discourage litigants from filing declaratory actions as a means of forum shopping, and 3) should avoid duplicative litigation. *Id.*

In addition to the *Brillhart* factors, courts may inquire: 1) whether the declaratory action will settle all aspects of the controversy; 2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory action is being sought merely for the purposes of "procedural fencing" or to obtain a 'res judicata' advantage; and 4) whether the use of a declaratory action will result in entanglement between the federal and state court systems. *Id.* at 1225 n. 5, *quoting American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir.1994) (J. Garth, concurring). Additionally, the district court might consider the convenience of the parties, and the availability and relative convenience of other remedies. *Id.*

**ANALYSIS**

**I.     LensCrafters' Motion To Amend**

As an initial matter, LensCrafters argues that since it has filed a motion seeking leave to amend its complaint in this action to add breach of contract and bad faith claims based on events that took place after the initial complaint was filed, the Court should deny the motion to dismiss or stay on the grounds that claims other than declaratory relief are at issue. *See* Docket No. 36. LensCrafters argues that in determining whether to apply the *Brillhart* doctrine here, the Court should takes into account

6

LensCrafters' request for leave to amend in light of the liberal policy permitting amendment. Under *Dizol*, federal courts have a "virtually unflagging" obligation to resolve non-declaratory relief claims, and when those claims are presented along with a declaratory relief claim, the court should retain jurisdiction over all of the claims. *Dizol*, 133 F.3d at 1225-1226.

Had LensCrafters amended its complaint prior to the filing of U.S. Fire's motion to dismiss, this argument might have had some force. However, the Court has not yet granted the motion to amend, which is noticed for hearing on October 2, 2007, and as such the amended complaint is currently only a theoretical entity. It would be inappropriate for the Court to analyze the *Brillhart* factors pretending that the amended complaint is the operative one, and, accordingly the Court will proceed with the analysis based on the operative, unamended complaint, which seeks solely declaratory relief.

## II.    The *Brillhart* Factors

### A.    The Same Issues For The Same Parties

As noted above, the *Brillhart* doctrine is applicable where there is a pending state court action that presents "the same issues" between the same parties." *Brillhart*, 316 U.S. at 495.  In considering whether "the same parties" are involved, the district court should inquire "whether necessary parties have been joined [or] whether such parties are amendable to process in that [state] proceeding." *Wilton*, 515 U.S. at 283. LensCrafters argues that the instant action is broader than the New York action in several respects.  First, LensCrafters argues that one of the two insureds seeking coverage, EYEXAM, is not subject to the New York court's jurisdiction, and has requested dismissal from the New York action. LensCrafters argues that EYEXAM conducts business exclusively in California, and has no New York operations. *See* Grossman Dec., ¶¶ 6, 7.  However, this jurisdictional dispute is beyond the purview of this Court, and the fact is that EYEEXAM is the same party in either case.

Second, U.S. Fire did not sue ERSIC in the New York action, although ERSIC issued a policy that potentially covers the *Snow* claims, as this Court ruled in the 2004 California Action, and therefore is, according to LensCrafters, a necessary party to this dispute.  U.S. Fire does not dispute that ERSIC is a necessary party, but argues that the absence of ERSIC from the New York Action does not prevent

the Court from declining to exercise its jurisdiction in because ERSIC is subject to jurisdiction in New York , "and can be easily added to the New York Action." (*See* Rose Decl., Ex. J at 5 fn. 5 (noting that the ERSIC policies at issue were negotiated and issued in New York)). U.S. Fire argues that under the *Brillhart* test, "the fact that ERSIC has not yet been added to the New York Action does not change the fact that 'the same parties' are litigating in both fora." Reply at 6.

U.S. Fire's argument is not entirely persuasive. ERSIC is not a party to the New York action; therefore, the New York lawsuit and the instant one do not involve the same parties, period. While ERSIC may be amenable to process in New York, it is undisputed that a necessary party is not involved in the New York Action. However, as noted in *Wilton*, the Court may consider whether a party is amendable to process when analyzing the *Brillhart* factors. 515 U.S. at 283. Given the considerations related to EYEEXAM and ERSIC, the "same party" analysis favors neither party.

### B. Needless Determination Of State Law Issues

The Supreme Court's first concern in *Brillhart* was to "avoid having federal courts needlessly determine issues of state law." " *Continental Cas. Co. v. Robsac Industries*, 947 F.2d 1367, 1371 (9th Cir. 1991) *overruled on other grounds by Dizol*, 133 F.3d 1220 (citing *Brillhart*, 316 U.S. at 1175-76). Both sides agree that this case involves the interpretation of state law issues, however, the parties vigorously dispute whether California or New York state law will apply to the relevant insurance contracts. This raises a novel issue with respect to the "needless determination of state law" analysis. Since, contrary to the typical *Brillhart* abstention scenario, the state law action has been filed in a different state than where federal district court resides, the analysis of this factor is somewhat different than the traditional case: if California law applies, this Court is better suited than a New York state court to determine the issues; of course, if New York law predominates, a New York court is better suited to resolve the issues.

Somewhat ironically, both sides urge this court to avoid engaging in a choice of law analysis, yet simultaneously devote substantial briefing to the issue. "LensCrafters and U.S. Fire agree on one thing -- this Court need not determine which state's law will apply before determining that it should

8

defer to the prior-filed state court action." Reply at 13. The parties are correct in their agreement: the Court cannot conduct a choice of law analysis here, as no specific conflict between New York and California law has been identified. *See Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162 (C.D. Cal. 2003) ("The fact that two states are involved does not itself indicate that there is a 'conflict of laws' or 'choice of law' problem.") (quoting *Hurtado v. Superior Court*, 11 Cal.3d 574, 580 (1974)) (internal citation omitted); *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc*., 14 Cal.App.4th 637, 645 (1993) (under California test, the first step is to identify an issue where there is a difference in the law of the states).

Since the Court is not in a position to determine which state's law applies to the insurance contracts at issue, the "needless determination of state law issues" analysis also favors neither side.

### C.    Forum Shopping

A key purpose of the *Brillhart* doctrine is to discourage the filing of declaratory relief actions as a means of forum shopping. *Dizol*, 133 F.3d at 1225. Here, each side accuses the other of forum shopping. In the prototypical *Brillhart* abstention case, the plaintiff files an action in state court, and the defendant then files a "reactive" declaratory relief action in federal court seeking a more favorable venue. In such a scenario, the presumption that federal courts should abstain in deference to the state court action is sound.  "[I]f a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction."  *Continental Cas.*,  947 F.2d at 1371.

LensCrafters argues that here, however, the typical *Brillhart* situation is turned on its head: U.S. Fire, knowing that LensCrafter was obligated, pursuant to Court order, to bring its declaratory relief action in this Court, filed a "preemptive" state law action in order to frustrate LensCrafter's attempts to gain relief. As for the timing of its 2007 action, LensCrafter alleges that this suit was filed one week later than U.S. Fire's action only because LensCrafters was "acting judiciously to try to resolve its dispute informally before reinstituting its indemnity action, while U.S. Fire raced to New York in an effort to avoid at all costs litigating before this Court." Opp. at 16-17.

U.S. Fire counters that LensCrafter's second-filed federal case is the archetypal "reactive"

9

lawsuit and was filed to frustrate U.S. Fire's state court action. However, U.S. Fire can point to nothing other than the fact that it filed first that indicates LensCrafters was engaged in forum-shopping. Indeed, LensCrafter was *required* to file its declaratory relief action in this Court pursuant to stipulation. U.S. Fire absurdly suggests that the 2005 stipulation was somehow a "reactive" attempt to preclude its 2007 state law case, however this is belied by the facts: LensCrafters actually originally filed its declaratory relief claims in 2004, which were ultimately dismissed as unripe. U.S. Fire's argument that this was somehow "reactive" to a non-existent suit does not merit discussion.

This factor favors LensCrafters. U.S. Fire was aware of the 2004 action and should have been reasonably apprised that LensCrafters would re-file its declaratory relief claims in this forum. The Court also notes that U.S. Fire lamely opposed the motion to relate the 2007 case to the 2004 case, which would have resulted in a trifurcation of the proceedings. This smacks precisely of the "procedural fencing" that *Brillhart* abstention is meant to discourage. *Dizol*, 133 F.3d at 1225, n. 5. To the extent that there is any forum shopping here, U.S. Fire is the shopper.

### D. Duplicative Litigation

The sole factor militating in favor of granting the motion to dismiss or stay is the avoidance of duplicative litigation. However, while, in the present posture, there appears to be two parallel actions, as LensCrafters notes, the New York action is in its nascent stages, and to date little substantive activity has taken place in it other than the filing of the complaint, answers, and cross-complaints, and the filing of LensCrafters' motion to dismiss or stay the case. *See* Jackson Decl., ¶ 19, 22. LensCrafter's motion to dismiss could potentially dispose of the New York action, and other essential parties have filed motions that would substantially alter the landscape of the New York case if granted. Indeed, the New York court may come to the same conclusion as this Court and dismiss the New York action in deference to the federal action. Thus, while the fact that there are two potentially parallel proceedings militates in favor of dismissing or staying the case, it is not enough to countervail the concerns related to forum shopping.

### III. Other Factors

The other salient factor in favor of denying the motion is "the convenience of the parties." *Dizol*, 133 F.3d at 1225 n. 5. As LensCrafters points out, the related case has been proceeding in this forum since 2004, and the underlying *Snow* action, from which the bulk of the facts and evidence will be drawn, relates exclusively to LensCrafter's business practices in connection with its 90 stores in California. The witnesses to those business practices are in California, and the alleged violations of patient privacy occurred here.

New York has no interest in the *Snow* Action, and no related litigation has yet taken place there. Simply put, this is a California case, and the Court should exercise its discretion to retain jurisdiction over LensCrafters' declaratory judgment action. *Brillhart*, 316 U.S. at 494.

### CONCLUSION

Accordingly, the motion to dismiss or stay [Docket No. 25] is DENIED. U.S. Fire's request for judicial notice [Docket No. 27] is GRANTED.[1]

IT IS FURTHER ORDERED THAT the Case Management Conference currently scheduled for September 18, 2007 at 1:00 p.m. shall be CONTINUED to December 6, 2007 at 2:30 p.m. The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than 10 days prior to the Case Management Conference that complies with the Standing Order For All Judges Of The Northern District Of California and the Standing Order of this Court. Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: 9/18/07

SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[1] U.S. Fire requests judicial notice of the complaint in the New York action. LensCrafters does not object to the granting of the request, but objects to U.S. Fires's characterization of the complaint as "parallel." This pointless objection is overruled.

11