1  ROBERT D. DENNISON, ESQ., Bar No. 127498
   GARY L. GREEN, ESQ., Bar No. 82218
2  HARRIS, GREEN & DENNISON
   A Professional Corporation
3  5959 West Century Boulevard, Suite 1100
   Los Angeles, California 90045
4  Tel: (310) 665-8656 Fax: (310) 665-8659
   robertdennison@h-glaw.net
5  garygreen@h-glaw.net

6  Attorneys for Defendant, Counter-Claimant and Cross-Claimant,
   **WESTCHESTER FIRE INSURANCE COMPANY**
7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 LENSCRAFTERS, INC.; and EYEXAM OF  ) CASE NO. C-07-2853 SBA
   CALIFORNIA, INC.,                  )
12                                    ) **E-FILING**
              Plaintiffs,             )
13                                    )
       vs.                            ) **WESTCHESTER FIRE INSURANCE**
14                                    ) **COMPANY'S MOTION TO DISMISS THE**
   LIBERTY MUTUAL FIRE INSURANCE      ) **SECOND AND THIRD CLAIMS FOR**
15 COMPANY; EXECUTIVE RISK SPECIALTY  ) **RELIEF OF PLAINTIFFS' FIRST**
   INSURANCE COMPANY; UNITED STATES   ) **AMENDED COMPLAINT**
16 FIRE INSURANCE COMPANY; MARKEL     ) [F.R.C.P. Rule 12(b)(6)]
   AMERICAN INSURANCE COMPANY; and    )
17 WESTCHESTER FIRE INSURANCE COMPANY,) Date:   January 29, 2008
                                      ) Time:   1:00 p.m.
18            Defendants.             ) Courtroom: 3
   _____) The Hon. Saundra Brown Armstrong
19                                    )
   AND RELATED COUNTER AND CROSS-    )
20 CLAIMS                             )
                                      )
21 _____)

22

23

24

25

26

27

28 ///

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ............................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

1. STATEMENT OF FACTS ........................................................ 1
2. ISSUES TO BE DECIDED ...................................................... 2
3. PERTINENT FACTUAL ALLEGATIONS ........................................ 2
4. DISCUSSION ................................................................. 5

   A. No Duty To Indemnify Arises Under An Excess Policy Unless And Until All Applicable Underlying Insurance Has Been Exhausted By Payment Of Settlements Or Judgments ................................. 5

   B. LensCrafters Fails To Allege Breach of Any Present Contractual Duty By Westchester Fire ........................................................ 8

   C. LensCrafters Fails To Allege The Requisite Element of Actual Damages ...... 9

   D. LensCrafters Fails To Allege A Claim For Breach of The Duty To Settle ..... 10

   E. Granting LensCrafters Further Leave To Amend Would Be Futile ........... 12

5. CONCLUSION ............................................................... 12

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*County of Santa Clara v. U.S.F.& G. Co.,*
    868 F.Supp. 274 (N.D. Cal. 1994) .................................................. 7, 10

*Iolab Corp. v. Seaboard Sur. Co.,*
    15 F.3d 1500 (9th Cir. 1994) ........................................................ 6-7

*Mercado v. Allstate Ins. Co.,*
    340 F.3d 824 (9th Cir. 2003) ........................................................ 11

*Moody v. Liberty Life Assurance Co.,*
    2007 U.S. Dist. LEXIS 32837 (N.D. Cal., April 19, 2007) ........................... 2

*Pacific Employers Ins. Co. v. Domino's Pizza, Inc.,*
    144 F.3d 1270 (9th Cir. 1998) ....................................................... 6

*Pareto v. FDIC,*
    139 F.3d 696 (9th Cir.1998) ....................................................... 3, 4

*Shwarz v. United States,*
    234 F.3d 428 (9th Cir. 2000) ........................................................ 3

*Transphase Systems, Inc. v. So. Cal. Edison Co.,*
    839 F.Supp. 711 (C.D. Cal. 1993) .................................................... 4

**STATE CASES**

*Brandt v. Superior Court,*
    37 Cal.3d 813 (1985) ................................................................ 11

*Community Redevelopment Agency v. Aetna Cas. & Surety Co.*
    50 Cal.App. 4th 329 (1996) ........................................................ 5, 6

*Continental Ins. Co. v. Lexington Ins. Co.,*
    55 Cal.App.4th 637 (1997) ........................................................... 6

*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.,*
    130 Cal.App.4th 1078 (2005) ...................................................... 9, 10

*Four Star Electric, Inc. v. F&H Construction,*
    7 Cal.App.4th 1375 (1992) ........................................................... 8

*General Star Indemnity Co. v. Superior Court,*
    47 Cal.App.4th 1586 (1996) .......................................................... 6

*Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A G.*
    3 Cal.3d 434 (1970) ................................................................. 9

*Hamilton v. Maryland Casualty Co.,*
    27 Cal.4th 718 (2002) ........................................................... 11, 12

# TABLE OF AUTHORITIES
(continued)

*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.*,
    59 Cal.App. 4th 6 (1997) .................................................... 11

*Louisville Title Ins. Co. v. Surety Title & Guar. Co.*,
    60 Cal. App. 3d 781 (1976) .................................................. 8

*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*
    126 Cal.App.3d 593 (1981) ......................................... 5, 6, 7, 10

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
    256 Cal.App.2d 506 (1967) ................................................... 9

*St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*,
    101 Cal.App.4th 1038 (2002) ................................................. 9

*Superior Gunite v. Ralph Mitzel, Inc.*,
    117 Cal.App.4th 301 (2004) .................................................. 8

*Transcontinental Ins. Co. v. Ins. Co. of the State of Pennsylvania*
    148 Cal.App. 4th 1296 (2007) ................................................ 5

*Travelers Cas. & Surety Co. v. Transcontinental Ins. Co.*
    122 Cal.App.4th 949 (2004) ................................................ 6, 7

**DOCKETED CASES**

*Snow v. LensCrafters, Inc., et al.*,
    San Francisco Superior Court Case No. CGC-02-40554 ................... 1-4, 8-12

**STATUTES AND RULES**

Fed. Rule Civ. Pro., Rule 12(b)(6) ............................................ 1, 2

Cal. Civ. Code §§56, et seq. ..................................................... 1

**MISCELLANEOUS**

Appleman, *Insurance Law and Practice* (1981) ................................. 7, 11

Croskey, Heeseman & Popik,
    *Cal. Practice Guide: Insurance Litigation* (The Rutter Group, 2003) ...... 7

Croskey, Heeseman & Popik,
    *Cal. Practice Guide: Insurance Litigation* (The Rutter Group, 1997) ..... 11

Schwarzer, Tashima & Wagstaffe,
    *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group, 1993) .. 4

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 29, 2008, at 1:00 p.m., in Courtroom 3 of the United States District Court, Northern District of California, located at 1301 Clay Street, 3rd Floor, Oakland, California, before the Honorable Saundra Brown Armstrong, Judge presiding, Defendant, Counter-Claimant and Cross-Claimant, WESTCHESTER FIRE INSURANCE COMPANY ("Westchester Fire") will and hereby does move, pursuant to Fed. Rule Civ. Pro., Rule 12(b)(6), for an Order dismissing the Second and Third Claims for Relief of the First Amended Complaint (the "FAC") filed by Plaintiffs, LENSCRAFTERS, INC. and EYEXAM OF CALIFORNIA, INC. (hereinafter collectively the "Plaintiffs" or "LensCrafters"). This Motion is made on the grounds that the Second and Third Claims for Relief of the FAC fail to state a claim upon which relief can be granted.

Accordingly, moving party, Westchester Fire moves for entry of the concurrently submitted Proposed Order dismissing the Second and Third Claims For Relief of the FAC and prohibiting Plaintiffs from further amending their Complaint to re-allege said claims unless and until the prerequisites to the relief Plaintiffs seek therein have been met. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, and upon all of the pleadings and papers on file herein, together with any oral argument to be made at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

1.  **STATEMENT OF FACTS**

This action is an insurance coverage dispute among LensCrafters and the Defendant insurers concerning Defendants' purported obligation to indemnify LensCrafters with respect to a lawsuit filed against LensCrafters, *Snow v. LensCrafters, Inc., et al.*, San Francisco Superior Court Case No. CGC-02-40554 ("*Snow*"). The *Snow* complaint seeks to certify a class of consumers and alleges that LensCrafters violated certain California statutes, including the California Confidentiality of Medical Information Act, Cal. Civ. Code §§56, et seq.

LensCrafters commenced this lawsuit on May 25, 2007. Plaintiffs' original complaint, as well as their FAC, alleged a First Claim for Relief for declaratory relief regarding the duty to indemnify with respect to the *Snow* action. Westchester Fire filed an Answer to LensCrafters' original complaint.

1

Further, Westchester Fire filed a counter-claim and a cross-claim, seeking a declaration that Westchester Fire has no duty to indemnify LensCrafters with respect to the *Snow* action, or alternately, if the Court finds a duty to indemnify, a declaration regarding allocation of liability among the other LensCrafters insurers.

The *Snow* action remains pending in the San Francisco Superior Court. The matter has not yet proceeded to trial, let alone to judgment. Notwithstanding, LensCrafters sought and was granted leave to file a First Amended Complaint (the "FAC") to add a Second Claim for Relief for breach of contract against the defendants based on an alleged duty to indemnify and settle the *Snow* Action and a Third Claim for Relief for breach of the implied covenant of good faith and fair dealing for alleged failure to settle the *Snow* action. LensCrafters filed its FAC adding those two claims for relief on October 2, 2007. Westchester Fire has responded to the FAC by bringing this Motion to Dismiss the latter two Claims for Relief under Fed. Rule Civ. Pro., Rule 12(b)(6).

## 2. ISSUES TO BE DECIDED

By this Motion to Dismiss, the Court is requested to address the following issues:

1. Does an excess insurer have any duty to settle or indemnify before all applicable underlying insurance has been exhausted?

2. Can an insured allege breach of a present contractual duty to settle where the insured has paid no settlement nor suffered entry of any adverse judgment, much less an excess judgment?

3. Can a plaintiff that admits that it has suffered no actual loss to date recover for alleged breach of a duty to indemnify?

4. Can a plaintiff recover for alleged tortious breach of an alleged duty to settle where, to date, no liability has been imposed and no court has ordered that damages be paid?

Moving party, Westchester Fire respectfully submits that under the well established California case law discussed, *infra*, these questions can only be answered in the negative.

## 3. PERTINENT FACTUAL ALLEGATIONS

With one significant exception applicable here (conclusory allegations, discussed, *infra*), in considering a Rule 12(b)(6) motion to dismiss, the Court accepts the allegations in the complaint as true. *Moody v. Liberty Life Assurance Co.*, 2007 U.S. Dist. LEXIS 32837, *7 (N.D. Cal., April 19, 2007),

2
WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS FOR
RELIEF OF PLAINTIFFS' FIRST AMENDED COMPLAINT   Case No. C-07-2853 SBA

citing *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) and *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998). Here, the FAC <u>admits</u> the following facts (all paragraph, page and line references are to the FAC):

- Westchester Fire issued an excess umbrella policy for the period 2/1/ 2001- 2/1/2002, which is alleged to be "excess to the Markel Policy [and] follows form to that policy..." (¶ 24; p.6:24-25) which, in turn, is alleged to be excess of an underlying Liberty Mutual policy (¶ 23; p.6:14-20), the latter being described as one of several commercial general liability policies (¶ 16; p. 4:9-26).

- Westchester Fire issued four commercial umbrella policies for consecutive annual periods from 2/1/2002 to 2/1/2006, which are "in excess of the retained limit per occurrence and in the aggregate." (¶25; p. 1-10).

Conspicuously absent from the FAC, however, is any allegation that either the insurance underlying the Westchester Fire Excess Umbrella Policy (e.g., the Markel and Liberty Mutual policies for 2/1/01-2/1/02) or the "retained limit" underlying each of the four Westchester Fire commercial umbrella policies have been exhausted to date by payment of settlements or judgments (or otherwise).

The FAC further admits the following in its general allegations, incorporated by reference into the Second and Third Claims for Relief which are the subject of this Motion:

- LensCrafters' claims for indemnity alleged in a prior coverage action against Liberty Mutual brought in the within District Court (Case No. C 04-1001 SBA; ¶30, p. 8:7-13) "were dismissed without prejudice on the grounds that they were **unripe** for adjudication at that time **because the *Snow* Action was still being litigated**" (¶ 32; p. 8:19-21; emphasis added).

- Notwithstanding the above admission as to past lack of ripeness "because the *Snow* Action was still being litigated" (*Id.*), the FAC has added such indemnity claims while at the same time admitting that the *Snow* Action is still being litigated as of this very date. See, e.g. ¶ 27, p. 7:21-22 (referring to the Second Amended Complaint in *Snow* as "the current operative complaint"); ¶ 37, p. 9:16-19 (alleging that the defendants' purported actions "has prevented the settlement of the *Snow* Action."); and ¶ 38, p. 9:25-26 (alleging LensCrafters is being "exposed to further litigation...").

- No final settlement in *Snow* has been reached, much less paid to date, by LensCrafters (or by any other party). See, e.g., ¶ 35, p. 9:6-7 (alleging that a further mediation session in *Snow* was held

3

on July 26, 2007) and ¶ 36, p.9:10 (alleging that "The mediation on July 26 was unsuccessful."); see also ¶ 37, p. 9:16-19 (alleging that the Defendants' purported actions have "prevented the settlement of the *Snow* Action."), ¶ 34, p.10:26-p.11:3 (describing the purported settlement as being "contingent on approval and funding by the defendants") and ¶ 36, p. 9:10-12 (alleging that the "defendants refused to do so.").

•     No judgment, much less any judgment in excess of policy limits, has been entered to date against LensCrafters in the *Snow* Action. See, e.g., ¶ 38,.p.9:25-26 (alleging LensCrafters faces "further litigation and the **risk** of a judgment in excess of policy limits" (emphasis added), rather than actual entry of any adverse judgment).

In its Second Claim for Relief, LensCrafters sets forth a vague and conclusory allegation that defendants have allegedly "deprived LensCrafters of the benefit of their policies, for which substantial amounts in premiums were paid" and concludes that based thereon "LensCrafters has been damaged in an amount that is to be proved at trial."(¶ 45, p. 11:5-8). However, as explained by *Transphase Systems, Inc. v. So. Cal. Edison Co.*, 839 F.Supp 711, 718 (C.D. Cal. 1993):

> "Although the Court must assume that the allegations in a plaintiff's complaint are true when considering defendants' motion to dismiss [citation omitted], the Court does not 'need to accept as true conclusory allegations ... or unreasonable inferences.' Schwarzer, Tashima and Wagstaffe, Federal Civil Procedure Before Trial, §9:221 at page 9-14."

See also *Pareto v. FDIC, supra,* 139 F.3d at 699 ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss [citations].")

In particular, the *Transphase* Court compared and contrasted plaintiff's conclusory allegation at issue there (the defendants' market power in the relevant product market in an anti-trust case) with plaintiff's specific factual allegations directly contradicting the former (that the defendant utilities basically did nothing to supply the resources at issue to the relevant product market). *Id.*, 839 F.Supp. at 718. The *Transphase* court thereby concluded that the complaint failed to plead an actionable claim under the federal anti-trust statues at issue. *Id.*

Here, Plaintiffs' conclusory allegation that they have been "damaged" by (allegedly) being deprived of "the benefit of their policies" (¶ 45 of the FAC, *supra*) must be compared and contrasted

with their specific factual allegations, which directly contradict the former. As aforesaid, the FAC fails to allege that LensCrafters has suffered an adverse judgment, much less any judgment in excess of its policies' limits, or that it has paid any settlement to date. See discussion of ¶¶s 34-38 of the FAC, *supra*.

As further discussed, *infra*, these factual admissions, contradictions by specific allegations of conclusory allegations, and omissions of fact render LensCrafters' FAC fatally defective.

4. **DISCUSSION**

   A. **No Duty To Indemnify Arises Under An Excess Policy Unless And Until All Applicable Underlying Insurance Has Been Exhausted By Payment Of Settlements Or Judgments**

There is a very significant difference in California as to the duties of primary versus excess insurers. As explained by *Transcontinental Ins. Co. v. Ins. Co. of the State of Pennsylvania*, 148 Cal.App. 4th 1296, 1304 (2007), citing *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.App.3d 593, 597-598 (1981): "'Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. ...... [¶¶] "Excess" or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.'" [italics & fn. omitted]

The court in *Community Redevelopment Agency v. Aetna Cas. & Surety Co.*, 50 Cal.App. 4th 329, 339 (1996) cited *Olympic Ins. v. Employers Surplus Lines, supra*, as "The leading California case" as to the differences between primary and excess policies. The *Community Redevelopment* Court, 50 Cal.App.4th at 339, explained that in *Olympic Insurance*:

> The court held that since *all* of the primary insurance had not been exhausted by the settlement, the excess insurer had no obligation to provide a defense **or contribute to the settlement**. It did not matter that the primary policy to which the secondary policy had been specifically excess had itself been exhausted. "A secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted. *This principle holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy.*"
> (*Id.*, at p. 600 [original italics by the *Community Redevelopment* Court; all other emphases added].)

5

See also *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994), quoting *Olympic Insurance, supra,* 126 Cal.App.3d at 599 ("'Liability under [an excess] policy will not attach until all primary insurance is exhausted ...'").

For purposes of analysis of the exhaustion of underlying insurance requirement, "umbrella" and "excess" policies are functionally treated the same. As explained by *Continental Ins. Co. v. Lexington Ins. Co.*, 55 Cal.App.4th 637, 647 (1997), "Where an umbrella policy is involved, a leading commentator has written: '[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in any manner, or escape clauses.' 8A Appleman, *Insurance Law and Practice* §4909.85, at 453-54 (1981)." Moreover, as explained by *Community Redevelopment, supra,* 50 Cal.App. 4th at 339: "It is settled under California law that an excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise, until *all* of the primary insurance has been exhausted (see *Iolab Corp. v. Seaboard Sur. Co.* (9th Cir. 1994) 15 F.3d 1500, 1504.)" (Original italics.)

As aforesaid, the FAC alleges that Westchester Fire issued an excess umbrella policy, excess to Markel's policy, which, in turn is alleged to be excess of a Liberty Mutual Policy (FAC ¶¶ 24, 23, and 16, *supra*). The FAC also alleges that Westchester Fire issued commercial umbrella policies, each excess of a "retained limit" (albeit unspecified). The FAC alleges that during each of the policy periods that the Westchester Fire umbrella policies were in effect (from 2/1/2002 to 2/1/2006; FAC ¶ 25, *supra*), another carrier, Liberty Mutual had issued commercial general liability policies, with identical policy periods. See FAC ¶ 16, p.4:19-26. Thus, it is clear from reading these allegations together that there was underlying primary insurance beneath each of the Westchester Fire umbrella policies.

But even assuming, *arguendo*, that Plaintiffs's allegation of a "retained limit" beneath each Westchester Fire umbrella policy was meant to refer to a self-insured retention ("S.I.R."), as opposed to an underlying policy, courts have recognized that a policy issued above an S.I.R. is considered to be an excess policy. See, e.g., *Pacific Employers Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276-1277 (9th Cir. 1998), applying California law; *General Star Indemnity Co. v. Superior Court*, 47 Cal.App.4th 1586, 1593 (1996).

As explained by *Travelers Cas. & Surety Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949,

6

WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS FOR RELIEF OF PLAINTIFFS' FIRST AMENDED COMPLAINT   Case No. C-07-2853 SBA

952, Fn. 3 (2004), "'Primary coverage is "exhausted" when the primary insurers pay their policy limits in settlement or to satisfy a judgment against the insured.' [citing Croskey et al., *Cal. Practice Guide: Insurance Litigation* (The Rutter Group 2003) ¶¶ 8:86, pp.8-44 & 8-45]." Exhaustion of underlying insurance may also be achieved by payment of a settlement by the underlying insurers. See *County of Santa Clara v. U.S.F.& G. Co.*, 868 F.Supp. 274, 278 (N.D. Cal. 1994) ("In order to constitute a valid exhaustion of primary coverage ... the payment must be made to satisfy an obligation arising out of either an adjudication or a compromise of a third party claim.").

As explained by *County of Santa Clara v. U.S. Fid. & Guar. Co.*, *supra*, 868 F. Supp. at 277, California law is clear that "'[all] primary insurance must be exhausted before liability attaches under a secondary policy'", citing *Iolab, supra,* 15 F.3d at 1505, quoting *Olympic Ins. v. Employers Surplus Lines, supra,* 126 Cal. App. 3d at 599. *County of Santa Clara* further explained that primary insurance underlying an excess policy can only be properly exhausted by payment of a settlement or judgment that actually resolves the third party claim ( "primary insurer validly exhausts its indemnity limits when it pays a settlement or judgment resolving third party claims.'" *Id.*, at 277). *County of Santa Clara* further recognized that it is only when such underlying insurance is properly exhausted that any duty of an excess carrier may be triggered. *Id.* ("the **payment** of the settlement or judgment then triggers excess coverage"; emphasis added). Significantly, LensCrafters does not and cannot truthfully allege that there has been any payment of the contingent "settlement", much less any payment exhausting underlying insurance required in order to trigger any claimed duty under the Westchester Fire excess umbrella or umbrella policies.

Accordingly, no duty has yet arisen either under Westchester Fire's excess umbrella policy or its umbrella policies. As was explained over 25 years ago, "liability under a secondary policy will not attach until all primary insurance is exhausted...". *Olympic Ins. v. Employers Surplus Lines, supra,* 126 Cal.App.3d at 600. LensCrafters' attempt to fasten liability upon an excess carrier, Westchester Fire, in the absence of any allegation that any, let alone all of the underlying insurance has been exhausted, must therefore fail.

//
//

7

WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS FOR RELIEF OF PLAINTIFFS' FIRST AMENDED COMPLAINT   Case No. C-07-2853 SBA

### B. LensCrafters Fails To Allege Breach of Any Present Contractual Duty By Westchester Fire

LensCrafters' FAC alleges, in paragraph 41 of the second count, that the Defendants breached "their duty to indemnity LensCrafters by refusing to agree to fund the settlement of the *Snow* Action." As discussed, *supra*, the FAC has failed to allege the requisite element of an excess carrier's duty, namely exhaustion of all applicable underlying insurance. But even assuming, *arguendo*, LensCrafters had been able to truthfully allege same (which it cannot), their FAC would still be fatally defective as it fails to allege another requisite element for a breach of indemnity claim - an actual loss.

As explained by *Four Star Electric, Inc. v. F&H Construction*, 7 Cal.App.4th 1375, 1379 (1992), the elements of a breach of contract of indemnity are "the parties' contractual relationship, the indemnitee's performance of that portion of the contract which gives rise to the indemnification claim, the facts showing a loss within the meaning of the parties' indemnification agreement, and the amount of damages sustained". In particular, a claim for indemnity is not ripe unless and until the liability is incurred - i.e, entry of a judgment or actual payment of a settlement. As aforesaid, LensCrafters fails to allege the latter, alleging only that it faces "the **risk** of a judgment in excess of policy limits (FAC ¶ 38, p.9:25-26; emphasis added). In a decision that could just as easily have addressed LensCrafters argument (that "risk" of liability supposedly equates with actual loss), the Court in *Superior Gunite v. Ralph Mitzel, Inc.,* 117 Cal.App.4th 301, 312-313 (2004) stated:

> One might argue if the requirement to pay is a probability, that liability might be included in damages. Yet, our Supreme Court has noted, in the context of indemnity, that an indemnitor is not obligated for a claim made against an indemnitee until the indemnitee has incurred an actual loss by having paid the claim. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 110) [other citations and internal quotes omitted].

The *Superior Gunite* Court, 117 Cal.App.4th at 312, also observed that "California law suggests that the mere possibility that one will be required to pay damages to a third party does not warrant even nominal damages" for an alleged breach of contract. See also, *Louisville Title Ins. Co. v. Surety Title & Guar. Co.*, 60 Cal. App. 3d 781, 811 (1976) ("Although it is true that the word 'claim' connotes an assertion of a legal right and includes within its meaning a money demand, an indemnitor is not liable

for a claim made against the indemnitee until the indemnitee suffers actual loss by being compelled to pay the claim. [Citations omitted.]."); *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A G*, 3 Cal.3d 434, 447 (1970) ("an indemnitor is not liable for a claim made against the indemnitee until the indemnitee suffers actual loss by being compelled to pay the claim [citations omitted].")

Here, LensCrafters does not and cannot allege actual loss from "being compelled to pay the claim" (*Id.*). No judgment has yet been entered in the *Snow* action nor has any settlement been actually paid, as LensCrafters readily admits in its FAC. See, e.g., ¶ 38 of the FAC admitting that an actual judgment has not yet been entered against LensCrafters, and alleging, instead, that LensCrafters faces "further litigation" and "the <u>risk</u> of a judgment..."(emphasis added); ¶ 3 of the FAC admitting that the "settlement" is "<u>contingent</u> on approval <u>and funding</u> by defendants" (emphasis added). Further, LensCrafters fails to allege in its FAC that it, or anyone else, has paid the contingent "settlement" to date.

Neither a "contingent" settlement nor the "risk" of a future judgment constitute an extant, actual loss which would support a breach of contract claim under the authorities cited, *supra*. As such, the Second Claim for Relief, and the Third Claim for Relief upon which it is premised, must fail.

C.   **LensCrafters Fails To Allege The Requisite Element of Actual Damages**

In *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*, 130 Cal.App.4th 1078, 1088 (2005) the court recognized that an insured cannot maintain a cause of action for breach of contact absent resulting damages. See also *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal.App.2d 506, 511 (1967) ("A breach of contract without damages is not actionable [citation omitted].") Absent an allegation of actual monetary loss, LensCrafters cannot maintain a claim for breach of contract. See *St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins*. Co., 101 Cal.App.4th 1038, 1060 (2002) ("An essential element of a claim for breach of contract is damages *resulting from the breach* [original italics; citations omitted].") Because it cannot allege that it incurred any damages, as it has not paid anything to settle the Snow Action, even if LensCrafters had adequately alleged breach of a current contract obligation, its claim for breach of contract would still fail.

The only purported "damages" LensCrafters alleges in support of its Second Claim for Relief for

alleged breach of contract is that its insurers have allegedly deprived LensCrafters of "the benefit of their policies, for which substantial amounts in premiums were paid" and it "has been damaged in an amount that is to be proved at trial." (¶ 45 of the FAC). These conclusory allegations of damages are contradicted by LensCrafters' factual allegations, which admit that there has been no finding of liability against LensCrafters to date (only that it faces the "risk of a judgment ..."; ¶ 38 of the FAC, p. 9:25-26), and that the *Snow* action has not settled and remains pending (see ¶ 37 of the FAC, p. 18-19, alleging that Defendants have "prevented the settlement of the *Snow* Action...").

In particular, the mere "risk" of a future judgment is not a legally compensable item of "damage". See, e.g., *Emerald Bay Community Assn.*, *supra,* 130 Cal.App.4th at 1096 ("plaintiff needed to establish actual financial loss, not merely a potential that it may suffer a loss sometime in the future [citations omitted].")

LensCrafters attempts to remedy the absence of any factual allegations of actual loss in its FAC by raising the contention, in the Revised Case Management Conference ("CMC") statement that it is supposedly incurring additional litigation costs in the *Snow* action. However, these allegations do not appear in the FAC. Morever, as an excess insurer, Westchester Fire's policies are not triggered in the first instance as LensCrafters has failed to allege the exhaustion of underlying insurance, which is a prerequisite to triggering any duty under an excess policy. See *County of Santa Clara, supra,* 868 F. Supp. at 277; *Olympic Ins. Co., supra,* 126 Cal. App. 3d at 600.

LensCrafters does not and cannot allege any facts showing actual loss from alleged breach of contract in its FAC. As such, its claim for breach of contract is fatally defective.

D.    **LensCrafters Fails To Allege A Claim For Breach of The Duty To Settle**

LensCrafters alleges as part of its Second Claim for Relief a purported breach of the duty to settle. LensCrafters has also alleged a Third Claim For Relief in its FAC for alleged "bad faith" failure to settle. LensCrafters asserts these claims even though LensCrafters admits in its own FAC that the *Snow* action has not proceeded to trial and that no excess judgment has been entered to date. See, e.g. ¶ 38 of the FAC (incorporated into the Second and Third Claims for Relief) which alleges that "Defendants actions have exposed LensCrafters to *further* litigation and the *risk* of a judgement in excess of policy limits." (Emphases added). In other words, the premise for LensCrafters claims for alleged breach a duty

10

WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS FOR RELIEF OF PLAINTIFFS' FIRST AMENDED COMPLAINT   Case No. C-07-2853 SBA

to settle is the mere possibility of a future excess judgment, and not the entry of any actual excess judgement. This admission renders these Claims in the FAC defective. Moreover, as LensCrafters cannot truthfully allege that *Snow* has proceeded to an actual trial followed by entry of an excess judgment, the defect is fatal.

The entry of an actual (as opposed to a hypothetical) judgment in excess of policy limits following an actual trial on the merits is a prerequisite in California to bringing an action for breach of an insurer's duty to settle. See, e.g., *Hamilton v. Maryland Casualty Co.*, 27 Cal.4th 718, 725 (2002). The reason for this rule is that entry of an excess judgment following trial is required to establish the insurer's liability to the injured party and the amount of damages before any alleged "bad faith failure to settle" action may be brought against the insurer. As explained by *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.*, 59 Cal.App. 4th 6, 13 (1997):

> "Croskey et al., California Practice Guide: Insurance Litigation (The Rutter Group 1997) p. 12:334 rev. # 1, 1996, explains this requirement as follows: "The excess judgment is necessary to establish both the insured's liability to the injured party and the amount thereof for damages purposes in the subsequent 'bad faith' action against the insurer. After all, the insurer's refusal to settle may prove correct if a defense verdict is obtained or plaintiff's verdict comes in for less than policy limits."

See also *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 827 (9th Cir. 2003, applying California law). (recognizing that only if a trial results in an excess judgment would the insured have the remedy of pursuing an action against the insurer for alleged failure to settle.)

Moreover, the FAC is utterly silent as to any defense costs having been paid by LensCrafters in the underlying *Snow* Action as a result of any alleged failure to settle. The only even remotely related allegation LensCrafters makes as to attorneys' fees is in ¶ 52 of the Third Claim for Relief (for alleged tortious breach), which is in reference to so-called *Brandt*[1] fees incurred for "obtaining coverage under defendants' policies" (*Id.*, at p.14:3-4 of the FAC). However, there is no mention of *Brandt* fees or any other attorneys fees ***as damages*** alleged in the Second Claim for Relief for alleged breach of contract. Further, Plaintiffs cannot bootstrap such *Brandt* fees to state a claim for tortious breach of the duty to

---

[1] *Brandt v. Superior Court*, 37 Cal.3d 813 (1985).

11

settle in their Third Claim for Relief where the requisite element of such a claim does not exist - i.e., lack of an excess judgment entered to date, as discussed, *supra*. As LensCrafters does not allege, and cannot truthfully allege the entry of an excess judgment following actual trial in *Snow*, LensCrafters' Second Claim for Relief, insofar as based on alleged contractual breach of a duty to settle, and its Third Claim for Relief for alleged tortious breach of such duty are defective as a matter law.

### E. Granting LensCrafters Further Leave To Amend Would Be Futile

As discussed, *supra*, entry of a judgment in excess of an insureds' coverage limits following actual trial is a pre-requisite to bringing a "bad faith" failure to settle case. *Hamilton, supra*, 27 Cal.4th at 725. LensCrafters cannot truthfully allege that the *Snow* action has proceeded to an actual trial, much less that an excess judgment resulted. To the contrary, LensCrafters admits in its FAC that the *Snow* action remains pending and that no judgment, excess or otherwise, has been entered to date (see, e.g., paragraph 38 of the FAC, referring to "further litigation" in *Snow* and "the *risk* of a judgment in excess of policy limits; emphasis added).

As such, any further amendment to the Second and Third Claims For Relief for, respectively, alleged breach of contract and breach of the implied covenant of good faith and fair dealing would be futile, as there is no legal basis for same at the present time.

### 5. CONCLUSION

For all of the reasons stated above, Westchester Fire respectfully urges the Court to grant the within Motion to Dismiss the Second and Third Claims for Relief of Plaintiffs' FAC, without leave to Plaintiffs to further amend their Complaint to re-allege said claims unless and until the prerequisites to the relief Plaintiffs seek, discussed, *supra*, have been met.

Respectfully submitted.

DATED: October 19, 2007

HARRIS, GREEN & DENNISON
A Professional Corporation

By /s/ Gary Green
ROBERT D. DENNISON, ESQ.
GARY L. GREEN, ESQ.
Attorneys for Defendant, Counter-Claimant and Cross-Claimant, WESTCHESTER FIRE INSURANCE COMPANY

12

WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS FOR RELIEF OF PLAINTIFFS' FIRST AMENDED COMPLAINT   Case No. C-07-2853 SBA

## PROOF OF SERVICE

I, SHIRLEY AOKI, am employed in the aforesaid county, State of California: I am over the age of 18 years and not a party to the within action: my business address is 5959 West Century Boulevard, Suite 1100, Los Angeles, California 90045.

On October 19, 2007, I served the following document described as:

**WESTCHESTER FIRE INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AND THIRD CLAIMS FOR RELIEF OF PLAINTIFFS' FIRST AMENDED COMPLAINT [F.R.C.P. Rule 12(b)(6)]**

**VIA THE UNITED STATES DISTRICT COURT ELECTRONIC FILING SERVICE** on interested parties in this action set forth below:

| | |
|---|---|
| Richard DeNatale, Esq.<br>Celia M. Jackson, Esq.<br>Heller Ehrman LLP<br>333 Bush Street<br>San Francisco, CA 94104-2878<br>Tel.: (415) 772-6000 Fax: (415) 772-6268<br>Email: richard.denatale@hellerehrman.com<br>celia.jackson@hellerehrman.com | Attorneys for Plaintiffs, Lenscrafters, Inc.,<br>Eyexam of California, Inc. |
| Terrence R. McInnis, Esq.<br>Ross, Dixon & Bell, LLP<br>5 Park Plaza, Suite 1200<br>Irvine, CA 92614<br>Tel.: (949) 622-2700 Fax: (949) 622-2739<br>Email:nexley@rdblaw.com | Attorneys for Defendant,<br>Executive Risk Specialty Insurance Company |
| Alex F. Stuart, Esq.<br>Willoughby, Stuart & Bening<br>Fairmont Plaza<br>50 West San Fernando, Suite 400<br>San Jose, CA 95113<br>Tel.: (408) 289-1972 Fax: (408) 295-6375<br>Email: afs@wshaw.net | Attorneys for Defendant,<br>Liberty Mutual Fire Insurance Company |

## SERVICE LIST CONTINUED

Mark Craig Goodman, Esq.  
Amy Rose, Esq.  
Squire, Sanders & Dempsey, L.L.P.  
One Maritime Plaza, Suite 300  
San Francisco, CA 94111-3492  
Tel.: (415) 954-0289  Fax: (415) 393-9887  
Email: mgoodman@ssd.com  
arose@ssd.com  

Attorneys for Defendants,  
U.S. Fire Insurance Company

Chip Cox, Esq.  
Attorney at Law  
465 California Street, Suite 500  
San Francisco, CA 94104  
Tel.: (415) 397-2222  Fax: (415) 397-6392  
Email: chipc@longlevit.com  

Attorney for Defendant,  
Markel American Insurance Company

 

    Executed on October 19, 2007, at Los Angeles, California. I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Shirley Aoki*  
SHIRLEY AOKI