RICHARD DeNATALE (California Bar No. 121416)
CELIA M. JACKSON (California Bar No. 124508)
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
Email:  richard.denatale@hellerehrman.com
Email:  celia.jackson@hellerehrman.com

Attorneys for Plaintiffs
LENSCRAFTERS, INC. and EYEXAM OF
CALIFORNIA, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENSCRAFTERS, INC. and EYEXAM OF CALIFORNIA, INC.,<br><br>              Plaintiffs,<br><br>     v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>              Defendants,<br><br>AND RELATED COUNTER- AND CROSS-CLAIMS. | Case No.:  C-07-2853 SBA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL AMERICAN INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY AND WESTCHESTER FIRE INSURANCE COMPANY**<br><br>Date:  January 29, 2008<br>Time:  1:00 p.m.<br>Courtroom:  3<br>The Hon. Saundra Brown Armstrong |

**Table of Contents**

Page

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

    A. The Snow Action And The Settlement Proposal ........................................... 2

    B. The Events Leading To Insurers' Breach Of The Insurance Contracts ...................... 2

    C. The Procedural History Leading To Insurers' Motion To Dismiss ............................ 3

III. THE APPLICABLE LEGAL STANDARDS ................................................................ 4

    A. Under Federal Law, The Court Must Deny Insurers' Motions To Dismiss As Long As The Complaint Potentially Sets Forth A Claim For Relief ........................ 4

    B. The Federal Rules Require Only That A Complaint Provide Notice To The Defendant Of The Claim At Issue ................................................................... 5

    C. The Duty To Settle Arises From The Covenant Of Good Faith And Fair Dealing Implied In Every Insurance Policy, Including Excess Policies ............................................ 5

IV. LENSCRAFTERS HAS SUFFICIENTLY PLEADED A CLAIM FOR BREACH OF CONTRACT REGARDING INSURERS' DUTY TO SETTLE ........................................................................................................................ 6

    A. LensCrafters Has Pleaded Each Necessary Element For A Breach Of Contract Claim ................................................................................................. 6

    B. No Special Exemptions To the Pleading Rules Apply To The Duty To Settle .......................................................................................................... 8

    C. Insurers Breached Their Duty To Settle When They Refused To Approve And Fund The Snow Settlement ......................................................... 9

    D. Insurers' Motion To Dismiss Is Based On Improper Speculation About LensCrafters' Damages ........................................................................... 11

V. LENSCRAFTERS HAS SUFFICIENTLY PLEADED A CLAIM FOR TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ............................................................................................................... 13

VI. CONCLUSION ............................................................................................................ 14

i

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

**Table of Authorities**

**Cases**

*Archdale v. American Int'l Specialty Lines Ins. Co.*,
 154 Cal.App.4th 449 (2007) .......................................................................................... 6

*Austin v. Terhune*,
 367 F.3d 1167 (9th Cir. 2004) ...................................................................................... 5

*Barney v. Aetna Cas. & Sur. Co.*,
 185 Cal.App.3d 966 (1986) ........................................................................................ 10

*Bautista v. Los Angeles County*,
 216 F.3d 837 (9th Cir. 2000) ........................................................................................ 5

*Bell Atlantic Corp. v. Twombley*,
 __ U.S. __, 127 S.Ct. 1955 (2007) ........................................................................... 4, 8

*Bodenhamer v. Superior Court*,
 192 Cal.App.3d 1472 (1987) ...................................................................................... 10

*Bullis v. Security Pac. Nat'l Bank*,
 21 Cal.3d 801 .............................................................................................................. 7

*Calich v. Allstate Ins. Co.*,
 2004 WL 626143 (Ohio App. Ct. March 31, 2004) .................................................... 11

*Camelot by the Bay Condominium Owner's Ass'n, Inc. v. Scottsdale Ins. Co.*,
 27 Cal.App.4th 33 (1994) ........................................................................................... 10

*Crisci v. Security Ins. Co. of New Haven, Conn.*,
 66 Cal.2d 425 (1967) ............................................................................................ 6, 12

*Corsican Prods. v. Pitchess*,
 338 F.2d 441 (9th Cir. 1964) ........................................................................................ 4

*Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.*,
 227 Cal.App.3d 563 (1991) .................................................................................. 6, 8, 9

*Dion LLC v. Infotek Wireless, Inc.*,
 Slip Copy, 2007 WL 3231738 (N.D. Cal. Oct. 30, 2007) ............................................ 5

*Dixon Mobil Homes, Inc. v. Walters*,
 48 Cal.App.3d 964 (1975) ............................................................................................ 7

*Dura Pharmaceuticals, Inc. v. Broudo*,
 544 U.S. 336 (2005) ..................................................................................................... 4

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
 135 Cal.App.4th 958 (2006) ......................................................................................... 8

*Gilligan v. Jamco Dev. Corp.*,
 108 F.3d 246 (9th Cir. 1997) ........................................................................................ 4

*Guebara v. Allstate Ins. Co.*,
    237 F.3d 987 (9th Cir. 2001)................................................................................................ 14

*Hamilton v. Maryland Cas. Co.*,
    27 Cal.4th 718 (2002) ..................................................................................................... 6, 11

*Isaacson v. California Ins. Guarantee Assn.*,
    44 Cal.3d 775 (1988) ........................................................................................................... 11

*J.B. Aguerre, Inc. v. American Guarantee & Liab. Ins. Co.*,
    59 Cal.App.4th 6 (1997) ..................................................................................................... 10

*Johansen v. California State Auto. Ass'n Inter-Insurance Bureau*,
    15 Cal.3d 9 (1975)............................................................................................................ 5, 6

*Jordan v. Allstate Ins. Co.*,
    148 Cal.App.4th 1062 (2007).............................................................................................. 6

*Karseal Corp. v. Richfield Oil Corp.*,
    221 F.2d 358, (9th Cir. 1955) ............................................................................................. 8

*Kelley v. British Commercial Ins. Co.*,
    221 Cal.App.2d 554 (1963) .............................................................................................. 6, 8

*Larraburu Bros., Inc. v. Royal Indem. Co.*,
    604 F.2d 1208 (9th Cir. 1979) ................................................................................. 10, 11, 12

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
    507 U.S. 163 (1993) ............................................................................................................. 5

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................................... 5

*Love v. Fire Ins. Exch.*,
    221 Cal.App.3d 1136 (1990)............................................................................................. 14

*Mercado v. Allstate Ins. Co.*,
    340 F.3d 824 (9th Cir. 2003) ............................................................................................. 11

*Neal v. Farmers Ins. Exchange*,
    21 Cal.3d 910 (1978).......................................................................................................... 12

*Ohio Bar Liab. Ins. Co. v. Hunt*,
    152 Ohio App. 3d 224 (2003) ............................................................................................ 11

*Peters v. Fair*,
    427 F.3d 1035 (6th Cir 2005)............................................................................................... 5

*Phoenix Ins. Co. v. United States Fire Ins. Co.*,
    189 Cal.App.3d 1511 (1987)................................................................................................ 9

*Reichert v. General Ins. Co. of Am.*,
    68 Cal.2d 822 (1968)............................................................................................................ 9

iii

*Schwartz v. State Farm Fire & Cas. Co.*,
    88 Cal.App.4th 1329 (2001) .................................................................................................. 9

*Tan Jay Int'l, Ltd. v. Canadian Indem. Co.*,
    198 Cal.App.3d 695 (1988) .................................................................................................. 13

*United States v. City of Redwood City*,
    640 F.2d 963 (9th Cir. 1981) ................................................................................................. 4

*Valentine v. Aetna Ins. Co.*,
    564 F.2d 292 (9th Cir. 1977) ................................................................................................. 8

*Wyler Summit P'ship v. TBS, Inc.*,
    135 F.3d 658 (9th Cir. 1998) ................................................................................................. 4

**Statutes**

Cal. Civ. Code § 56 ........................................................................................................................ 2

Cal. Civ. Code § 3300 .................................................................................................................. 12

Cal. Civ. Code § 3333 .................................................................................................................. 12

Fed. R. Civ. P. 8(a) ................................................................................................................... 4, 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 4

**Other Authorities**

4 Witkin Cal, Procedure (4th ed. 1997) Pleading, § 476 ............................................................... 7

iv

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED
BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

## I. INTRODUCTION

Plaintiffs (together, LensCrafters) are defendants in the *Snow* action, a putative class action lawsuit that has been pending for nearly six years. The potential class in *Snow* consists of more than 1.3 million members, each of whom seeks (among other things) a $1,000 nominal damages award against LensCrafters. A judgment of even a fraction of this size impacts the coverage provided by the excess insurers—Markel American Insurance Company ("Markel"), United States Fire Insurance Company ("U.S. Fire") and Westchester Fire Insurance Company ("Westchester") (collectively "Insurers").

Several months ago, LensCrafters and the *Snow* plaintiffs negotiated a settlement-in-principle of the *Snow* case, contingent on approval and funding by LensCrafters' insurers. The primary insurers—Liberty Mutual and ERSIC—have agreed that the settlement is reasonable and offered their policy limits to fund the settlement. But additional amounts are required from the excess insurers to fund the settlement in its entirety. As alleged in the First Amended Complaint ("FAC"), Insurers have refused to contribute, thereby breaching their duty to settle and causing ongoing harm to LensCrafters.

Yet Insurers contend that LensCrafters is powerless to seek redress for their breaches, claiming that LensCrafters' newly pleaded claims are not ripe for adjudication. The Court should deny Insurers' motions. The FAC states the necessary elements for claims of breach of the duty to settle and tortious breach of the covenant of good faith and fair dealing. In their motions, Insurers try to pierce the allegations of the FAC to argue, for example, that LensCrafters has suffered no damages as a result of Insurers' failure to settle the *Snow* action, or that they have not breached any duty, or that exceptions to the general rules of pleading apply to claims for breach of the duty to settle. But such factual issues should be the subject of discovery, and then tested through motions or trial before a jury. Insurers may not simply quash LensCrafters' claims at the outset of this case, and thereby insulate themselves from their refusal to settle and the consequential damages they have caused to LensCrafters.

California law is clear that excess insurers owe a duty to settle. Because, as alleged in the FAC, that duty has been breached and LensCrafters has suffered damages as a result, LensCrafters

1

has a ripe claim. In the Second Claim for Relief, LensCrafters has pleaded a cause of action for breach of contract for Insurers' failure to accept a reasonable settlement of the *Snow* case in violation of the implied covenant of good faith and fair dealing. In the Third Claim for Relief, LensCrafters has pleaded a cause of action in tort arising out of the same events. Both claims are sufficiently pleaded under the notice pleading rules that apply in federal court and are ripe for adjudication.

## II. STATEMENT OF FACTS

### A. The *Snow* Action And The Settlement Proposal

The *Snow* action was filed as a purported class action lawsuit in March 2002. FAC, ¶ 27. Plaintiffs' complaint arises from a "co-location" model used by LensCrafters, Inc. and EYEXAM of California, Inc. in more than 90 stores located in California. Plaintiffs seek to certify a California-only class of consumers who had their eyes examined by an optometrist employed by EYEXAM and then purchased eyewear from LensCrafters, Inc. on the same day. Jackson Dec., ¶ 3. Plaintiffs allege, among other things, that LensCrafters disclosed their confidential medical information in violation the California Confidentiality of Medical Information Act ("COMIA"), Cal. Civ. Code§ 56 *et seq*. FAC, ¶ 28; Jackson Dec., ¶ 4. COMIA provides for a nominal damages remedy of $1,000 for each violation. Jackson Dec., ¶ 4.

The parties to the *Snow* action have litigated that case for nearly six years. In early 2007, the parties began serious settlement discussions with the assistance of the Hon. Edward A. Infante (Ret.) and the Hon. Ronald M. Sabraw (Ret.), both of whom have acted as mediators at multiple mediation sessions. Jackson Dec., ¶¶ 5-7; FAC, ¶ 34. As a result of these intensive, arms-length negotiations, in June 2007 the parties to the *Snow* case reached a settlement-in-principle that was expressly conditioned on LensCrafters' insurers approving and funding the settlement. FAC, ¶ 34; Jackson Dec., ¶ 5.

### B. The Events Leading To Insurers' Breach Of The Insurance Contracts

On June 21, 2007, LensCrafters communicated the terms of the settlement to its insurers. Jackson Dec., ¶ 6. For the last several months, LensCrafters has been negotiating with the Insurers to obtain approval and funding for the settlement. *Id.,* ¶ 7. The primary insurers—Liberty Mutual

2

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

and ERSIC—have agreed that the proposed settlement is reasonable and have offered to contribute their limits of liability. *Id.* But additional funds are needed from the excess insurers—U.S. Fire, Markel, and Westchester—to pay for the settlement. *Id.* To date, these Insurers have refused to accept the proposed settlement and provide the necessary funding. *See* FAC, ¶ 36; Jackson Dec., ¶ 7. The settlement has been stalled for several months, and LensCrafters continues to be embroiled in expensive and time-consuming litigation. Jackson Dec., ¶ 7.

### C. The Procedural History Leading To Insurers' Motion To Dismiss

After LensCrafters filed its original complaint, U.S. Fire moved to dismiss this action in its entirety in favor of a coverage action it had preemptively filed in New York. The Court denied U.S. Fire's motion on September 18, 2007, on grounds that U.S. Fire had engaged in "'procedural fencing'" by filing in New York and that this case was a "California case" with "New York [having] no interest in the *Snow* Action." *See* Order [Docket Nos. 25, 27] at 10-11.

In the meantime, LensCrafters moved to dismiss U.S. Fire's New York action on grounds of *forum non conveniens*. The New York court granted LensCrafters' motion, agreeing with this Court (and citing liberally to this Court's Order) that "there is no question that this New York action is clearly a tactical preemptive filing to avoid resolution of this dispute in California" and that "there is absolutely no basis for this declaratory judgment action to have been brought in New York, other than blatant forum shopping to avoid the California federal court . . . ." Jackson Dec., Ex. 1 at p. 2.

LensCrafters' initial complaint alleged a single claim for declaratory relief regarding Insurers' duties to provide coverage for the claims asserted in the *Snow* case. Subsequently, when Insurers refused LensCrafters' request that they approve and fund the *Snow* settlement and thereby breached their duty to settle, LensCrafters sought to amend its complaint to add new claims. In July 2007, LensCrafters sought insurers' consent to file a first amended complaint. U.S. Fire refused to stipulate to the filing of the FAC, thereby forcing LensCrafters to incur the expense of filing a motion for leave for amend. Jackson Dec., ¶ 8. LensCrafters filed that motion on August 6, 2007; U.S. Fire and Westchester opposed the motion. On September 28, 2007, the Court granted LensCrafters' motion for leave to amend the complaint, stating that the motion was timely and the

3

amendment would not prejudice Insurers. LensCrafters filed the FAC on October 2, 2007.

The FAC added two new, albeit related, claims for relief, which Insurers now move to dismiss. The Second Claim for Relief alleges breach of the Insurers' duty to indemnify LensCrafters and duty to settle the *Snow* action. The Second Claim alleges that Insurers have a duty to accept a reasonable settlement; that the settlement reached between LensCrafters and the *Snow* plaintiffs was reasonable in light of LensCrafters' potential liability; that Insurers breached the duty to settle by refusing to accept and fund the *Snow* settlement; and that, as a result of Insurers' breach, LensCrafters has suffered, and continues to suffer, damages. The Third Claim for Relief alleges tortious breach of the covenant of good faith and fair dealing, also related to (among other things) Insurers' failure to approve and fund the *Snow* settlement. As we explain below, LensCrafters had sufficiently pleaded both claims.

## III.  THE APPLICABLE LEGAL STANDARDS

### A.  Under Federal Law, The Court Must Deny Insurers' Motions To Dismiss As Long As The Complaint Potentially Sets Forth A Claim For Relief

The legal standards on a motion to dismiss are well established. To avoid dismissal under the Federal Rules of Civil Procedure, Rule 12(b)(6), a complaint must provide "only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (quoting Fed. R. Civ. P. 8(a)). The question is not whether the plaintiff will ultimately prevail, but whether plaintiff is entitled to put forward evidence to support the claim. *Gilligan*, 108 F.3d at 249. Under this standard, a complaint should not be dismissed as long as it plausibly states an entitlement to relief and unless there is "no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support [the claim]." *Bell Atlantic Corp. v. Twombley*, __ U.S. __, 127 S.Ct. 1955, 1967 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). For this reason, "it is only the extraordinary case in which dismissal is proper." *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (citing *Corsican Prods. v. Pitchess*, 338 F.2d 441, 442 (9th Cir. 1964)).

On a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. TBS, Inc.*,

135 F.3d 658, 661 (9th Cir. 1998). For this reason, factual challenges to a plaintiff's complaint are irrelevant and have no bearing on the sufficiency of a complaint to withstand a 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[1]

### B. The Federal Rules Require Only That A Complaint Provide Notice To The Defendant Of The Claim At Issue

It is well established that the federal pleading standard is "notice pleading." Federal Rule of Civil Procedure, Rule 8(a), states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained that "the rule mean[s] what it sa[ys] . . . ." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993); *Lee,* 250 F.3d at 679. As this court recently noted: "In federal court, '[p]leadings need suffice only to put the opposing party on notice of the claim. . . Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.'" *Dion LLC v. Infotek Wireless, Inc.*, Slip Copy, 2007 WL 3231738, at *3 (N.D. Cal. Oct. 30, 2007) (quoting *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)). On a breach of contract claim, a plaintiff need not prove the elements of its claim prior to the evidentiary stages of the lawsuit; rather, "a pleading need only provide 'the bare outlines of [a] claim' within the federal notice pleading framework under Federal Rule of Civil Procedure 8(a)." *Id.* (quoting *Bautista v. Los Angeles County*, 216 F.3d 837, 843 (9th Cir. 2000)). The pleadings in this case satisfy federal pleading rules and are sufficient to put Insurers on notice of the claims.

### C. The Duty To Settle Arises From The Covenant Of Good Faith And Fair Dealing Implied In Every Insurance Policy, Including Excess Policies

The gravamen of LensCrafters' newly pleaded claims is Insurers' duty to settle. An insurer has a duty to accept a reasonable settlement with respect to a claim against its insured.[2] That duty

---

[1] Westchester goes so far as to assert that its motion to dismiss should be granted with prejudice. But where a claim is dismissed because it is not ripe for adjudication the dismissal must be without prejudice. *See Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir 2005) (where claim was not ripe, it "should have been dismissed without prejudice, thereby allowing the plaintiff to reassert this claims, should it become ripe in the future") (citation omitted)).

[2] ["T]he only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the

5

arises from the implied covenant of good faith and fair dealing, which is inherent in every contract of insurance. *See, e.g., Jordan v. Allstate Ins. Co.,* 148 Cal.App.4th 1062, 1071 (2007) ("'A covenant of good faith and fair dealing is implied in every insurance contract'"). "[T]he implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty[.]" *Crisci v. Security Ins. Co. of New Haven, Conn.,* 66 Cal.2d 425, 429 (1967); *see also Hamilton v. Maryland Cas. Co.,* 27 Cal.4th 718, 724 (2002) ("From the covenant of good faith and fair dealing implied by law in all contracts, and from the liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits."). A breach of the covenant of good faith and fair dealing "'sounds in both contract and tort.'" *Johansen,* 15 Cal.3d at 18.

Both primary *and excess* insurers have an obligation to accept a reasonable settlement: "Any insurer, whether excess or primary, in conducting settlement negotiations, is subject to an implied duty of good faith and fair dealing which requires it to consider the interests of the insured equally with its own and evaluate settlement proposals as though it alone carried the entire risk of loss." *Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.,* 227 Cal.App.3d 563, 578 (1991). Moreover, where a settlement cannot be achieved without the contribution of an excess insurer, and the excess insurer has been made aware of that fact, and therefore can control the settlement—as in the case of the *Snow* settlement—the excess insurer is "obviously under a duty to exercise good faith toward its insured in considering any offer of compromise within the limits of the policy." *Kelley v. British Commercial Ins. Co.,* 221 Cal.App.2d 554, 565 (1963).

## IV. LENSCRAFTERS HAS SUFFICIENTLY PLEADED A CLAIM FOR BREACH OF CONTRACT REGARDING INSURERS' DUTY TO SETTLE

### A. LensCrafters Has Pleaded Each Necessary Element For A Breach Of Contract Claim

Under California law, all that is required to plead a claim for breach of contract is: "a

---

ultimate judgment is likely to exceed the amount of the settlement offer." *Johansen v. California State Auto. Ass'n Inter-Insurance Bureau,* 15 Cal.3d 9, 16 (1975). "The existence of a coverage dispute, however meritorious the insurer's position, is simply not a proper consideration in deciding whether to accept an offer to settle the claim against the insured." *Archdale v. American Int'l Specialty Lines Ins. Co.,* 154 Cal.App.4th 449, 464-65 (2007).

6

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

pleading of (a) the contract; (b) plaintiff's performance or excuse for nonperformance; (c) defendant's breach; and (d) damage to plaintiff." *See* 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570 (internal citations omitted).[3] As described below, LensCrafters' Second Claim for Relief sufficiently pleads each required element:

**Pleading the contract:** LensCrafters had pleaded the essential elements of the insurance contracts at issue. *See* FAC ¶¶ 20-26 (pleading the material terms of Insurers' policies); ¶ 44 (pleading the covenant of good faith and fair dealing implied in the insurance contracts).

**Pleading plaintiffs' performance of the contract:** LensCrafters has pleaded its performance of its duties under the contracts. *See* FAC, ¶ 15 ("LensCrafters has complied with all terms and conditions precedent of defendants' policies and is entitled to the benefit of insurance provided by them.").

**Pleading breach of the contract:** The FAC sufficiently pleads Insurers' breach:

> LensCrafters has negotiated a reasonable settlement with the plaintiffs in the *Snow* Action, contingent on approval and funding by defendants. At a mediation on July 26, 2007, LensCrafters asked defendants to accept and fund that settlement to resolve the *Snow* Action and to limit LensCrafters' exposure to a judgment in excess of the settlement amount. Defendants refused. Defendants thereby breached their duty to LensCrafters by failing to indemnify LensCrafters and accept the settlement.

FAC, ¶ 44.

**Pleading damages:** LensCrafters has sufficiently pleaded damages to overcome Insurers' motions to dismiss. *See* FAC, ¶ 45 ("As a direct and proximate result of defendants' acts, LensCrafters has been damaged in an amount that is to be proved at trial and that is in excess of the jurisdictional requirements of this Court."). Under the notice pleading standards discussed above,

---

[3] Westchester and U.S. Fire cite exclusively to California law. Markel includes a truncated choice of law analysis based on California's choice of law rules (Markel Memo. at 5), and then cites to both Ohio and California law. *Id.* at 6-10. But Markel never gets past the first step of its choice of law analysis because "[t]he first consideration is whether the laws of the different states conflict." *Id.* at 5 (citation omitted). Markel concludes that "Ohio and California law are in substantial agreement . . . ." *Id.* at 10. Based on this conclusion, it is unclear why Markel cites Ohio law, because in the absence of a conflict, this Court must apply the law of the forum. *See Dixon Mobil Homes, Inc. v. Walters*, 48 Cal.App.3d 964, 972 (1975) ("The law of the forum will be displaced only if there is a compelling reason for doing so.") (citation omitted) *overruled on other grounds by Bullis v. Security Pac. Nat'l Bank*, 21 Cal.3d 801, 815 n.18. Similarly, Markel's reference to New York law is misplaced. Markel Memo. at 6 n.1. In any event, as discussed below, the Ohio cases cited by Markel are factually distinguishable and therefore inapposite, on the same basis as the California cases cited by Markel. *See infra* at footnote 6.

7

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

this general claim of damages is sufficient. *See Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358, 362 (9th Cir. 1955) (damages "may be pleaded generally").[4]

### B. No Special Exemptions To the Pleading Rules Apply To The Duty To Settle

As shown above, LensCrafters has pleaded each necessary element of a cause of action for breach of the duty to settle in its Second Claim for Relief. Nonetheless, Insurers argue that certain exceptions to the pleading requirements apply to this type of claim and that therefore LensCrafters' claims are not ripe for adjudication. These arguments fail.

U.S. Fire argues that because it is an excess insurer and was not active in the defense of the underlying *Snow* action, it owes no duty of good faith toward its insured with respect to settlement. U.S. Fire Memo. at 8-9. *Kelley*, however, rejected this exact argument, calling it "untenable." 221 Cal.App.2d at 569; *see also Fuller-Austin Insulation Co. v. Highlands Ins. Co.,* 135 Cal.App.4th 958, 986 (2006) ("an excess insurer, although not contractually obligated to take an active part in the defense of an insured, still owes its insured a duty of good faith when faced with an offer of settlement that exhausts the underlying policy limits"). Thus, contrary to U.S. Fire's claim, an excess insurer has a duty to accept a reasonable settlement within policy limits. This is particularly true where a settlement of the underlying case exceeds the limits of the primary policy and cannot be achieved without the participation of the excess insurer.

Indeed, *Diamond Heights* pointed out the difficulties that would occur if excess insurers were under no obligation to accept a reasonable settlement and therefore had "the absolute right to veto arbitrarily a reasonable settlement." 227 Cal.App.3d at 580. First, it would "force the primary insurer to proceed to trial, bearing the full costs of defense." *Id.* Second, it would impose a "burden" of continued litigation on the parties to the underlying suit. *Id.* Finally, it would "'imperil[] the public and judicial interest in fair and reasonable settlement of lawsuits[.]'" *Id.* at 581 (citing *Valentine v. Aetna Ins. Co.,* 564 F.2d 292, 297 (9th Cir. 1977)). The *Diamond Heights*

---

[4] *Bell Atlantic Corp.*, __ U.S. __, 127 S.Ct. 1955, 1964-64 (2007), a case cited by U.S. Fire, does not hold to the contrary. *Bell Atlantic*'s discussion about pleading facts was in reference to the conspiracy element required to allege an antitrust claim, not to damages. *Bell Atlantic*, 127 S. Ct. at 1064 and 1065 n.3 (holding that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice). Such concerns are inapplicable to the damages element of a claim.

8

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

court refused to countenance an attempt by an excess insurer to hold the parties hostage to its unwillingness to settle a case:

> In a case where probable liability far exceeds primary policy limits and invades excess limits, the excess insurer, if given the authority, might object to reasonable settlements simply because all costs of litigation would be borne by the primary insurer, and the amount of potential liability if the case proceeded to trial might not be substantially greater than the amount to be paid in settlement. The excess insurer would get a "free ride" at the expense of the primary insurer to the detriment of all other parties involved.

*Id.* at 582; *see also Fuller-Austin,* 135 Cal.App.4th at 738 ("It would impose an unnecessary burden on primary insurers and parties to an underlying action to hold that an excess insurer has an absolute right to withhold its consent to a settlement, while at the same time decline to participate in the action.").[5]  Thus, under California law, Insurers owe LensCrafters a duty to settle.

### C. Insurers Breached Their Duty To Settle When They Refused To Approve And Fund The *Snow* Settlement

Under California law, "[g]enerally speaking, a cause of action for breach of contract accrues at the time of the breach." *Reichert v. General Ins. Co. of Am.,* 68 Cal.2d 822, 831 (1968).  Here, Insurers' breach occurred at the time they refused to accept and fund the proposed settlement in *Snow*.  At that time, the claims for breach of the duty to settle became ripe.

Again, Insurers try to invoke special pleading rules and argue that a claim for breach of the duty to settle is not ripe until an excess judgment is entered against the insured.  *See* U.S. Fire Memo. at 10-11; Markel Memo. at 6-11; Westchester Memo. at 10-12.  Under some circumstances, a cause of action for breach of the duty to settle may accrue at a later time.  For example, the cause of action may accrue at the time an excess judgment is entered where the basis of the insured's damages claim is the amount of the excess judgment—although even this is not settled under

---

[5] Westchester argues at length that LensCrafters must exhaust its primary coverage before Insurers have a duty to settle.  Westchester Memo. at 5-7.  But an excess insurer's duties under the covenant of good faith and fair dealing arise even before exhaustion of the primary policy may trigger their coverage.  *See Schwartz v. State Farm Fire & Cas. Co.,* 88 Cal.App.4th 1329, 1336 (2001) (finding that the trial court had erred when it found that the insurer owed no duty to the insureds under the covenant of good faith and fair dealing until the underlying insurance had been exhausted); *Phoenix Ins. Co. v. United States Fire Ins. Co.,* 189 Cal.App.3d 1511, 1529 (1987) (holding excess insurer liable to contribute to a settlement despite insurer's claim that primary coverage had not been exhausted).  In any event, the primary insurers here, Liberty and ERSIC, have agreed to fund the *Snow* settlement up to the limits of their policies.

9

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR RELIEF FILED BY MARKEL, U.S. FIRE AND WESTCHESTER, CASE NO. C 07-2853 SBA

California law.  *Compare J.B. Aguerre, Inc. v. American Guarantee & Liab. Ins. Co.,* 59 Cal.App.4th 6, 13 (1997) (where insurer's bad faith "lies in exposing the insured to a judgment for more money than the insurer is bound to indemnity . . . case law requires a judgment in excess of the policy limits as an element of the claim") (emphasis deleted), *with Camelot by the Bay Condominium Owner's Ass'n, Inc. v. Scottsdale Ins. Co.,* 27 Cal.App.4th 33, 48 (1994) ("[T]here is no explicit requirement for bad faith liability that an excess judgment is actually suffered by the insured, since the reasonableness analysis of settlement decisions is performed in terms of the probability or risk that such a judgment may be forthcoming in the future [citation].  However, the actual excess judgment, if any, is highly relevant in an bad faith damages determination.") *and Larraburu Bros., Inc. v. Royal Indem. Co.*, 604 F.2d 1208, 1214 (9th Cir. 1979) ("to say that a subsequent verdict within policy limits always exonerates an insurer for the consequences of an earlier failure to settle seems to us an unwarranted restriction on the insurer's duty to the insured under California law").

Regardless, where "unreasonable insurer settlement conduct caused harm different from exposure to excess liability," *J.B. Aguerre,* 59 Cal.App.4th at 13, an excess judgment is ***not*** required.  In *Bodenhamer v. Superior Court,* 192 Cal.App.3d 1472 (1987), for example, the Court of Appeal rejected ***as a matter of law*** that an excess judgment was a prerequisite of the insured's bad faith claim where the insured contended that the insurer had delayed in settling claims and thereby caused a loss of good will to the insured's business. *Id.* at 1479.  Similarly, in *Barney v. Aetna Cas. & Sur. Co.,* 185 Cal.App.3d 966 (1986), the court allowed a claim for the insurer's breach of the covenant of good faith and fair dealing to proceed despite the absence of an excess judgment where the insured alleged that the insurer's settlement of a claim interfered with her ability to seek redress from the tortfeasor. *Id.* at 977-78 ("The effect upon the insured and the insured's reasonable expectations is the same whether the detriment is in the form of liability in excess of policy limits, as in the more typical cases, or in the form of derogation of a collateral right, as in the instant case."); *cf. Larraburu,* 604 F.2d at 1214 ("It is the unreasonable failure to settle the claim, not simply the failure to pay all of the ultimate judgment, which is the breach of the

insurer's duty and causes injury.").[6]

Similarly, and for analogous reasons, an excess judgment is not required for a bad faith claim related to the duty to settle where an insurer is willing to contribute some but not all of a demanded settlement. Under these circumstances, "the insured may conclude a favorable settlement by contributing the deficit itself and, assuming the insurer's breach be proven, recover the payment in a subsequent action for breach of the covenant of good faith and fair dealing." *Hamilton,* 27 Cal.4th at 732 (citing *Isaacson v. California Ins. Guarantee Ass'n,* 44 Cal.3d 775, 793 (1988)).

In order for Insurers to prevail on their motions to dismiss, they must prove that ***under no circumstances*** can LensCrafters state a claim for breach of Insurers' duty to settle. They cannot do this. As currently pleaded, LensCrafters' complaint pleads all the requisite elements and apprises Insurers of the claims against them. Questions of fact related to the settlement—for example, whether it is reasonable and what other parties are contributing—can be explored through the discovery process. But it would be inappropriate to dismiss these claims at this stage and thereby prevent LensCrafters from seeking redress for Insurers' failure to settle the *Snow* case.

### D. Insurers' Motion To Dismiss Is Based On Improper Speculation About LensCrafters' Damages

Insurers also argue that LensCrafters has not suffered any damages as a result of Insurers'

---

[6] Insurers rely almost exclusively on cases in which the insurer refused a settlement within policy limits, and the insured then settled the case and assigned their claims against the insurer to the injured third party. *See* U.S. Fire Memo. at 11; Westchester Memo. at 11; Markel Memo. at 8. In this situation, the courts were concerned about the possibility of collusion and sham settlements. These courts thus focused on whether a third party may bring a claim based upon a settlement rather than a judgment that was in excess of policy limits. *See, e.g., Hamilton*, 27 Cal.4th at 725; *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 827 (9th Cir. 2003). Given those factual situations, and the underlying policy concern, courts, unsurprisingly, have held that a settlement was insufficient and that a judgment in excess of policy limits was necessary where the damages sought were the amount of the excess judgment. Here, such concerns do not exist and—in any event—would be factual issues that cannot be resolved at the pleading stage.

Markel also cites to Ohio cases for the same proposition, *see* Markel at 6-8, but these cases likewise involve an assignment of the claim as part of a settlement agreement, with the resulting possibility for collusion and sham settlement. *See, e.g. Calich v. Allstate Ins. Co.*, 2004 WL 626143 (Ohio App. Ct. March 31, 2004). The one Ohio case cited by Markel where potential collusion was not an issue held that an excess judgment ***was not*** a predicate for an insured's bad faith action against its insurer. *Ohio Bar Liab. Ins. Co. v. Hunt*, 152 Ohio App. 3d 224, 232 (2003).

11

failure to settle the *Snow* case. Insurers appear to argue that damages for breach of the duty to settle are limited to the amount of any excess judgment rendered against the insured. *See* Westchester Memo. at 11. But an excess judgment is not the only type of damages recoverable on a claim for breach of the covenant of good faith and fair dealing. Under California law, LensCrafters is entitled to be compensated for **all consequential damages** that flow from Insurers' breach. *See Larraburu,* 604 F.2d at 1215 ("Damages in refusal to settle suits are not confined to the amount of the excess judgment.").

As discussed above, an insurer's duty to settle is part of the implied covenant of good faith and fair dealing inherent in every insurance contract. Claims for breach of the duty to settle sound in both contract and tort, and California law allows an insured to recover both contract and tort damages. The measure of damages for breach of contract under California law is "the amount which will compensate the aggrieved party for **all the detriment** proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300 (emphasis added). The measure of damages for a tort is "the amount which will compensate for **all the detriment** proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333 (emphasis added). Thus, California law explicitly allows parties to collect all consequential damages flowing from either a breach of contract or a tort.

In accordance with these general principles, the consequential damages for an insurer's breach of its duty to settle include all amounts for which an insured is ultimately liable on a covered claim. *See Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 925 (1978) (for breach of the duty to settle, insured entitled to recover as compensation "damages proximately resulting from the breach—such as consequent economic loss or emotional distress, for example"); *Larraburu,* 604 F.2d at 1215 ("An unreasonable refusal to accept a settlement offer causes the insurer to be liable for consequential damages, such as mental suffering or economic loss . . . ."); *Crisci,* 66 Cal.3d at 432-44 (allowing insured to recover damages for mental suffering for insurer's breach of duty to settle). The amount of an excess judgment may be one item of damages; but it is not the only damages available when an insurer breaches its duty to settle.

Moreover, Insurers have cited no authority that requires an insured to wait and suffer the

12

full extent of possible damages before bringing a claim for relief. In the duty to defend context, for example, courts have held exactly the opposite. *See Tan Jay Int'l, Ltd. v. Canadian Indem. Co.*, 198 Cal.App.3d 695, 704-05 (1988) (noting that "an insured does not have to wait until a final judgment has been entered against him by a third party to claim that he has been damaged by the failure of his insurer to honor the duty to defend and indemnify." (citation omitted)).

In its FAC, LensCrafters is not seeking recovery for amounts of a judgment in excess of policy limits, for the obvious reason that LensCrafters has not yet suffered those damages. But that does not mean that LensCrafters has suffered no damages. To the contrary, LensCrafters has been damaged by Insurers' breach and continues to suffer monetary losses related to its continued involvement in the *Snow* action. As LensCrafters has explained elsewhere, and as Insurers well know, these damages include the significant portion of the ongoing *Snow* defense fees that LensCrafters itself is paying. *See* Jackson Dec., ¶ 9. Because Insurers were aware of the circumstances leading to LensCrafters' choice of defense counsel and the payment arrangements, it was entirely foreseeable to them that a breach of their duty to settle would damage LensCrafters in this fashion.

Insurers' contention that these ongoing defense expenditures "were voluntarily incurred by LensCrafters" (Markel Memo. at 10; U.S. Fire Memo. at 12) begs the question about the recoverability of such costs and cannot be resolved on this motion, since the allegedly "voluntary" nature of such payments is a factual question. Indeed, LensCrafters has no obligation to set forth any specific type of damages in the FAC; it has sufficiently alleged damages for purposes of defeating Insurers' motions to dismiss—particularly when the damages allegations are construed in the light most favorable to LensCrafters, as required for this motion. Insurers can inquire about the nature of LensCrafters' damages during the discovery process.

## V. LENSCRAFTERS HAS SUFFICIENTLY PLEADED A CLAIM FOR TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Finally, Insurers argue that LensCrafters' claim for tortious breach of the covenant of good faith and fair dealing fails for the same reasons discussed above. U.S. Fire specifically argues that a claim for tortious breach of the covenant of good faith and fair dealing cannot be sustained in the

13

absence of a ripe breach of contract claim. *See* U.S. Fire Memo. at 12-13. As explained above, however, LensCrafters has pleaded a ripe cause of action for breach of contract regarding Insurers' duty to settle.

To plead the elements of a cause of action for bad faith breach of the covenant of good faith and fair dealing, LensCrafters is required to allege only that "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1151 (1990)).

LensCrafters has properly pleaded these elements in its Third Claim for Relief. The Third Claim for Relief alleges that each of the Insurers have acted in various ways to deny LensCrafters the benefits of the policies to which it is entitled. For example, LensCrafters alleges that each Insurer has "[w]rongfully and unreasonably den[ied] coverage for the *Snow* Action." FAC, ¶¶ 48(a), 49(a), 50(a). LensCrafters further alleges that each Insurer has "[f]ail[ed] to accept a reasonable settlement of the *Snow* Action within policy limits." *Id.,* ¶¶ 48(c), 49(b), 50(b). LensCrafters also alleges that the conduct of Insurers was unreasonable. *See Id.,* ¶ 51 ("U.S. Fire, Markel and Westchester . . . acted unreasonably in committing the wrongful acts alleged above for the purpose of withholding from LensCrafters the rights and benefits to which it is entitled under these defendants' policies."). Thus, LensCrafters has sufficiently pleaded a cause of action for tortious breach of the covenant of good faith and fair dealing.

## VI.  CONCLUSION

For the reasons stated above, the Court should deny Insurers' motion to dismiss the Second and Third Claims for Relief.

DATED: January 8, 2008              Respectfully submitted,

HELLER EHRMAN LLP

By  */s/ Richard DeNatale*
   Richard DeNatale

Attorneys for Plaintiffs
LENSCRAFTERS, INC. and EYEXAM OF
CALIFORNIA, INC.