1   **ROBERT D. DENNISON, ESQ., Bar No. 127498**
    **GARY L. GREEN, ESQ., Bar No. 82218**
2   **HARRIS, GREEN & DENNISON**
    **A Professional Corporation**
3   5959 West Century Boulevard, Suite 1100
    Los Angeles, California 90045
4   Tel: (310) 665-8656 Fax: (310) 665-8659
    robertdennison@h-glaw.net
5   garygreen@h-glaw.net

6   Attorneys for Defendant, Counter-Claimant and Cross-Claimant,
    **WESTCHESTER FIRE INSURANCE COMPANY**

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11  LENSCRAFTERS, INC.; and EYEXAM OF  )  CASE NO. C-07-2853 SBA
    CALIFORNIA, INC.,                  )
12                                     )  **E-FILING**
                   Plaintiffs,         )
13                                     )
          vs.                          )  **WESTCHESTER FIRE INSURANCE**
14                                     )  **COMPANY'S REPLY TO PLAINTIFFS'**
    LIBERTY MUTUAL FIRE INSURANCE      )  **OPPOSITION TO MOTION TO DISMISS**
15  COMPANY; EXECUTIVE RISK SPECIALTY  )  **THE SECOND AND THIRD CLAIMS FOR**
    INSURANCE COMPANY; UNITED STATES FIRE )  **RELIEF OF PLAINTIFFS' FIRST**
16  INSURANCE COMPANY; MARKEL AMERICAN )  **AMENDED COMPLAINT**
    INSURANCE COMPANY; and WESTCHESTER )  **[F.R.C.P. Rule 12(b)(6)]**
17  FIRE INSURANCE COMPANY,            )
                                       )  Date: January 29, 2008
18                 Defendants.         )  Time: 1:00 p.m.
    _____)  Courtroom: 3
19                                     )  The Hon. Saundra Brown Armstrong
    AND RELATED COUNTER AND CROSS-     )
20  CLAIMS                             )
                                       )
21  _____)

22

23

24

25

26

27

28  ///

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.    INTRODUCTION**

Plaintiffs' opposition to this Motion to Dismiss is fatally flawed.

According to the allegations of the First Amended Complaint ("FAC"), particularly as concerns Westchester, the applicable insuring agreement is the subject Westchester policies provide that Westchester "will pay ... those sums ..." which the insured (Plaintiffs) "becomes legally obligated to pay as damages... because of 'personal injury' ... ."  As stated in a very recent California Court of Appeal decision interpreting virutually identical policy language, "settlement costs [negotiated within the context of a court suit] are not damages, and thus are not within the [excess] policies' indemnity obligations" because such are not "money ordered by a court." *Aerojet-General Corporation v. Commercial Union Ins. Co.* (2007) 155 Cal.App.4th 132, 143-144, citing *County of San Diego v. Ace Property & Cas. Ins. Co.* (2005) 37 Cal.4th 406, 423.  Absent a duty to indemnify, Plaintiffs cannot properly allege a breach of that duty.

Among the additional flaws in Plaintiffs' opposition to this Motion to Dismiss the second and third causes of action of the FAC is that Plaintiffs' claim for such damages is not ripe.  In other words, Plaintiffs' claim for damages has not matured into a legally cognizable claim for relief in the form of damages for alleged breach of the duty to indemnify or settle.  Plaintiffs have not become **"legally obligated to pay"** any sums **"as damages"** within the meaning of the insuring agreement of the subject policies. (Emphasis added.) "It is clear that **mere possibility, or even probability, that an event causing damage will result from a wrongful act does not render the act actionable [citations].**" (*Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924]; *Pacific Pine Lumber Co. v. Western Union Telegraph Co.* (1899) 123 Cal. 428 [56 P. 103].) *Doser v. Middlesex Mutual Ins. Co.* (1980) 101 Cal. App. 3d 883, 892. (Emphasis added.)s

Furthermore, the duty to indemnify (the Second Claim for Relief) also is not ripe. The **question of whether an insurer has a duty to indemnify the insured on a particular claim is ripe for consideration only if the insured has already incurred liability in the underlying action.** *Armstrong World Indus. v. Aetna Cas. & Sur. Co.* (1996) 45 Cal. App. 4th 1, 108. (Emphasis added.) Furthermore, "Until judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable." (*Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 788 [84 Cal. Rptr. 2d 43], fn. omitted; *Hamilton, supra,*

1

1    27 Cal.4th at p. 727.) "[T]here is no assurance that the insured will suffer any damage from the insurer's breach

2    of its implied obligation to accept a reasonable settlement offer" until judgment is entered against the insured after

3    a trial. (*Wolkowitz v. Redland Ins. Co., supra*, 112 Cal.App.4th at p. 163.)" *RLI Ins. Co. v. CNA Casualty of*

4    *California* (2006) 141 Cal. App. 4th 75, 82.

5          Plaintiffs make no such allegation. The claims for relief are based strictly on a *possible* settlement of the

6    underlying action.  There is no final settlement to which Plaintiffs are bound in the underlying action.

7          Additionally, Plaintiffs' general prayer for "damages according to proof" on the second and third claims for

8    relief is insufficient even under literal Federal pleading standards. "The gravamen of this species of insurer bad faith

9    [unwarranted refusal to settle within policy limits] lies in exposing the insured to a judgment for more money than

10   the insurer is bound to indemnify, and accordingly, case law requires a judgment in excess of policy limits as an

11   element of the claim. (*Finkelstein v. 20th Century Ins. Co.* (1992) 11 Cal. App. 4th 926, 929 [14 Cal. Rptr. 2d

12   305]; *Doser v. Middlesex Mutual Ins. Co.* (1980) 101 Cal. App. 3d 883, 891-892 [162 Cal. Rptr. 115].)" *J.B.*

13   *Aguerre v. Am. Guar. & Liab. Ins. Co.* (1997) 59 Cal. App. 4th 6, 13.

14         Moreover, as there is no excess judgment against Plaintiffs their allegations seeking "special damages" are

15   deficient.  See *supra*.

16   **2.    AS PLAINTIFF'S CLAIMS FOR RELIEF ARE NOT PREMISED UPON "MONEY
     ORDERED BY A COURT," THERE CANNOT BE A VALID CLAIM FOR BREACH OF THE DUTY**

17   **TO INDEMNIFY UNDER THE ALLEGED TERMS OF THE WESTCHESTER POLICIES**

18         It warrants repeating the following facts which are conspicuously missing from the FAC. There is <u>no excess</u>

19   <u>judgment</u> against Plaintiffs.  <u>There is no settlement</u>.

20         Nevertheless, even if there were a settlement between the claimants and LensCrafters in the *Snow* Action,

21   under the terms of the Westchester policies as alleged, and the holding in *Aerojet-General Corporation v.*

22   *Commercial Union Ins. Co., supra*, 155 Cal.App.4th 132, 143-144, there is no duty to indemnify and thus no

23   breach of that duty can be pled.

24         The essential pertinent facts of the *Aerojet* decision are set forth at 136, as follows:
     Plaintiff Aerojet filed this action for breach of contract and declaratory relief against certain excess

25   carriers seeking indemnification for the costs of remediating groundwater contamination near its
     former facility in Azusa. The complaint alleges that in 2000 and 2001 various water entities filed

26   law suits alleging that Aerojet was liable for CERCLA response costs and other costs arising out
     of the alleged contamination of groundwater in the San Gabriel Valley. Aerojet gave defendants

27   notice of each lawsuit, but no excess carrier accepted Aerojet's tender of defense or indemnity.

28

**WESTCHESTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS Case No. C-07-2853 SBA**

1    The water entity lawsuits were all settled in March 2002 and were subsequently dismissed in
     September 2002. The settlement agreement obligates Aerojet to pay approximately $175 million,
2    which exceeds the total amount of its primary and excess insurance coverage for each year in the
     period of 1958—1970. Aerojet demanded payment pursuant to its policies; excess carriers all
3    denied liability.

4         The question before the *Aerojet* court was "whether settlement costs negotiated *within* the context of a

5    court suit are 'damages'." *Id.* at 143. The policy language which the *Aerojet* court addressed its analysis was the

6    terms of the "insuring agreement," which in that instance, and with slight variation, "required the insurer to indemnify

7    Aerojet for 'all sums which the Assured shall become legally obligated to pay, or by final judgment be adjudged

8    to pay, to any person or persons as damages ... .'" *Id.* at 137. This language is essentially identical to the

9    allegations of the FAC as to the Westchester policies, which allege in ¶¶ 24 (by reference to ¶17) and 26, that

10   Westchester "will pay on behalf of the 'Insured' those sums ... which the 'Insured' by reason of liability imposed

11   by law ... shall become legally obligated to pay as damages for: 'Personal Injury' ... ."

12        The *Aeroject* court held that "the settlement costs incurred by Aerojet are not damages, and thus are not

13   within the policies' indemnity obligations." *Id.* at 143. Further the court noted that "there is no language in these

14   policies suggesting indemnity is owed for anything other than damages." *Id.* As the *Aeroject* court noted "the

15   record contains no order by the court directing Aerojet to pay damages" and, "[a]ccordingly, the settlement costs

16   are outside the scope of the indemnity coverage in defendants' policies." *Id.* at 144.

17        Of further importance is to note how the court addressed Aerojet's argument that such a holding would

18   "[defeat] the public policy favoring settlements, where the court declared:

19        Whatever merit there may be to conflicting social and economic considerations, they have nothing
          whatsoever to do with our interpretation of the unambiguous contractual terms. (*Foster-Gardner*,
20        *supra*, 18 Cal.4th at p. 888.) **If contractual language in an insurance contract is clear and
          unambiguous, it governs, and we do not rewrite it "for any purpose."** (*Powerine I, supra*,
21        24 Cal.4th at pp. 967, 968.)  (Emphasis added.)

22        The *Aerojet* court therefore affirmed the trial court's grant of summary judgment in favor of the insurers

23   sued therein on the ground that there was no breach of the duty to indemnify under the terms of the policies at issue.

24   Here, Plaintiffs cannot even allege a settlement, let alone wished-for settlement. As such, Plaintiffs cannot allege

25   a breach of the duty to indemnify because there is no allegation that a court ordered the payment of money by

26   Westchester and the duty to indemnify does not extend to a settlement negotiated within the context of a court suit

27   because such are not "damages" under the Westchester policy.

28

3

**WESTCHESTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS Case No. C-07-2853 SBA**

1　**3.　PLAINTIFFS DO NOT PLEAD RESULTING DAMAGES WHICH ARE ESSENTIAL TO A**
　　**CLAIM FOR RELIEF BASED UPON BREACH OF A DUTY TO SETTLE**

2

3　　　　"An **essential element of a cause of action for breach of the implied covenant based on the refusal**

4　**to settle is resulting damages**. (*Hamilton, supra*, 27 Cal.4th at p. 726.) Damages ordinarily include the entire

5　amount of a judgment after trial, including the amount in excess of policy limits but excluding any punitive damages.

6　(Id. at p. 725; *PPG Industries, Inc. v. Transamerica Ins. Co.*, *supra*, 20 Cal.4th at pp. 313, 315; *Comunale*

7　*v. Traders & General Ins. Co.*, *supra*, 50 Cal.2d at p. 661.)  *Wolkowitz v. Redland Ins. Co.* (2003) 112 Cal.

8　App. 4th 154, 163.  (Emphasis added.)

9　　　　Plaintiffs attempt to remedy the absence of any factual allegations of actual loss in their FAC by raising the

10　contention that their damages consist of litigation costs in the *Snow* Action.  However, these allegations of resulting

11　damages do <u>not</u> appear in the FAC and cannot be considered by this court in ruling on this Motion to Dismiss.

12　Plaintiffs may not rely upon and the "court cannot consider material outside the complaint (e.g., facts presented in

13　briefs, affidavits or discovery materials)." Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro.

14　Before Trial (The Rutter Group 2007), 9:211, p. 9-61, citing *Arpin v. Santa Clara Valley Transp. Agency*, 261

15　F.3d 912, 925 (9th Cir. 2001).

16　　　　Moreover, any such claimed "damages" would not be incurred as a result of a court imposing a "legal

17　obligation to pay" as Plaintiffs allege the excess policies provide.

18　　　　Furthermore, Plaintiffs cannot rely on general allegations of resulting damages to support "special damages."

19　As stated above in *Wolkowitz*, damages for breach of the implied covenant based on a refusal to settle are

20　predicated upon entry of a judgment after trial, and based upon the amount of the judgment in excess of policy

21　limits.  As Plaintiffs concede in their opposition, **there is no excess judgment**.

22　　　　Further, Plaintiffs must plead resulting damages with specificity, which they have not done so.  Under

23　Federal Pleading standards, specifically, FRCP 9(g), when special damages are being claimed, they must be

24　specifically pled. "Special damages" are those "damages that are unusual for the type of claim in question–that are

25　not the natural damages associated with such a claim." *Avitia v. Metropolitan Club of Chicago* (7th Cir. 1995)

26　49 F.3d 1219, 1226.  To satisfy this requirement, Plaintiffs must allege actual damages with "particularity," as well

27　as specify facts showing such damages were the natural and direct result of defendant's conduct. *Browning v.*

28

4

**WESTCHESTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'**
**OPPOSITION TO MOTION TO DISMISS Case No. C-07-2853 SBA**

1    *Clinton*, 292 F.3d 235, 245-246 (DC Cir. 2002). Plaintiffs have failed to sufficiently plead special damages and

2    thus their claim for relief is fatal on this basis and should be dismissed.

3    **4.**    **PLAINTIFFS RELIANCE ON *DIAMOND HEIGHTS* AND *FULLER-AUSTIN* DOES NOT SUPPORT AN ACTIONABLE CLAIM BASED UPON AN ALLEGED REFUSAL TO**

4    **PARTICIPATE IN A PROPOSED SETTLEMENT AND IS UNAVAILING**

5    Plaintiffs assert that the California decisions of *Kelley v. British Commercial Ins. Co.* (1963) 221

6    Cal.App.2d 554, *Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.* (1991) 227 Cal.App.3d 563 and

7    *Fuller-Austin Insulation Co. v. Highlands Ins. Co.* (2006) 135 Cal.App.4th 958, provide support for an

8    actionable claim for relief for an insurer's unwarranted refusal to settle. Such reliance is misplaced.

9    In *Kelley*, the facts are clearly distinguishable from the allegations of the FAC. Unlike the instant action,

10    *Kelley* arose out of an action against an excess liability insurance company for failure to settle a claim within the

11    limits of its excess policy following a trial and verdict of a personal injury lawsuit. The insured assigned his excess

12    policy and cause of action for breach of contract to the prevailing plaintiff. The insured had a $5,000 primary policy

13    and a $20,000 excess policy. The verdict was for $40,000. In *Kelley*, before the matter went to trial, the primary

14    insurer tendered its limits and offered to allow the excess carrier to assume the defense, which was declined. *Id.*

15    at p. 563.

16    In *Diamond Heights*, a primary insurer sued an excess insurer seeking contribution toward a stipulated

17    judgment. In the settled action, an insured developer had been sued for construction defects. Its primary insurer

18    provided a defense and notified the excess insurer that settlement demands exceeded primary coverage and that

19    it was likely primary policy limits would be exhausted. (*Id.* at pp. 569-570, 574.) The excess insurer responded

20    by investigating the case, and thereafter reserving its rights under the policy. (*Id.* at p. 575.) A few months later,

21    defense counsel notified the excess insurer that both its assessment of the repair work and the plaintiffs' settlement

22    demand exceeded primary policy limits, and sought information on the excess insurer's position. Though Central

23    offered to contribute a nominal sum toward settlement, the matter settled on the first day of trial, without the excess

24    insurer's contribution and with its objection to the settlement on the record. (*Ibid.*)

25    *Diamond Heights* held that "a primary insurer may negotiate a good faith settlement of a claim in an amount

26    which invades excess coverage, and the primary insurer may enter into such settlement binding upon the excess

27    insurer without the excess insurer's consent," notwithstanding a policy provision requiring consent. *Id.* at 580. In

28

**WESTCHESTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'**
**OPPOSITION TO MOTION TO DISMISS Case No. C-07-2853 SBA**

1   Plaintiffs' FAC there are no allegations of a purported settlement binding on Westchester; only a desire to settle.

2   Furthermore, the *Diamond Heights* court "did not hold that an excess insurer breaches its policy when it

3   rejects a reasonable settlement and simultaneously declines to undertake the defense." *Fuller-Austin Insulation*

4   *Co. v. Highlands Ins. Co.*, *supra*, 135 Cal.App.4th 958, 988. Instead, it discussed the corresponding rights as

5   between the primary and excess insurers when the primary insurer desired to settle a claim without trial, even if it

6   invaded the excess layer over the objection of the excess insurer. It held that, under certain circumstances, the

7   primary insurer need not obtain the excess insurer's consent to negotiate a good faith settlement of a claim in an

8   amount which invades excess coverage nor is it barred from entering into a settlement that invades the excess layer

9   of coverage over the objection of the excess insurer. *Diamond Heights*, *supra*, at 580-582. In accord, *Fuller-*

10  *Austin*, *supra*, at 988 (an excess insurer is not without means of avoiding a proposed settlement or challenging the

11  final settlement).

12  As to the *Fuller-Austin* decision, like the *Diamond Heights* decision, *Fuller-Austin* differs significantly

13  from the FAC in that it involved an actual settlement. Like *Diamond Heights*, the decision was concerned with

14  the corresponding rights that an excess insurer has to contest a settlement to which it did not consent and which

15  invades the excess coverage, and whether it may be bound by such a settlement agreement. The *Fuller-Austin*

16  court noted certain insurance treatises by quoting therefrom at 988, as follows:

17      [A]n excess insurer is not without means of avoiding a proposed settlement or challenging final
        settlement since the excess insurer may voluntarily waive a policy provision indicating that the
18      excess insurer is not to be called upon to assume charge of settlement or defense, and may agree
        to undertake the defense (once the primary insurer tenders its full policy limits) and either conduct
19      its own settlement negotiations or take the action to trial, or the excess insurer may challenge the
        settlement on the ground of unreasonableness or that it is product of collusion between the primary
20      insurer and the insured.

21  Lastly, neither the *Diamond Heights* nor *Fuller-Austin* decisions address when an excess insurer's alleged

22  refusal to settle is actionable.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

6

**WESTCHESTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO DISMISS Case No. C-07-2853 SBA**

1    **5.**     <u>**CONCLUSION**</u>

2       Therefore, it is respectfully urged that this court grant the Motion to Dismiss the Second and Third Claims

3   for Relief of Plaintiffs' FAC.

4

5   DATED:   January 15, 2008              HARRIS, GREEN & DENNISON

                                        A Professional Corporation

6

7

8                             By: _____

9                                 GARY L. GREEN

                                 Attorneys for Defendant, Counter-Claimant

10                             and Cross-Claimant,

                                 WESTCHESTER FIRE INSURANCE COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1

## PROOF OF SERVICE

2

3      I,   SHIRLEY AOKI, am employed in the aforesaid county, State of California: I am over the age
of 18 years and not a party to the within action: my business address is 5959 West Century Boulevard,
Suite 1100, Los Angeles, California 90045.

4

5      On January 15, 2008, I served the following document described as:

6   **WESTCHESTER FIRE INSURANCE COMPANY'S MOTION REPLY TO PLAINTIFFS'**

7   **OPPOSITION TO MOTION  TO DISMISS THE SECOND AND THIRD CLAIMS FOR RELIEF**
**OF PLAINTIFFS' FIRST AMENDED COMPLAINT [F.R.C.P. Rule 12(b)(6)]**

8

9      **VIA THE UNITED STATES DISTRICT COURT ELECTRONIC FILING SERVICE** on
interested parties in this action set forth below:

10

11   Richard DeNatale, Esq.                         Attorneys for Plaintiffs, Lenscrafters, Inc.,
     Celia M. Jackson, Esq.                         Eyexam of California, Inc.

12   Heller Ehrman LLP

13   333 Bush Street
     San Francisco, CA  94104-2878

14   Tel.: (415) 772-6000 Fax: (415) 772-6268
     Email: richard.denatale@hellerehrman.com

15   celia.jackson@hellerehrman.com

16

17   Terrence R. McInnis, Esq.                      Attorneys for Defendant,
     Ross, Dixon & Bell, LLP                        Executive Risk Specialty Insurance Company

18   5 Park Plaza, Suite 1200
     Irvine, CA 92614

19   Tel.: (949) 622-2700 Fax: (949) 622-2739
     Email:nexley@rdblaw.com

20

21

22   Alex F. Stuart, Esq.                           Attorneys for Defendant,
     Willoughby, Stuart & Bening                    Liberty Mutual Fire Insurance Company

23   Fairmont Plaza
     50 West San Fernando, Suite 400

24   San Jose, CA 95113
     Tel.: (408) 289-1972 Fax: (408) 295-6375

25   Email: afs@wshaw.net

26

27

28

1

## SERVICE LIST CONTINUED

2

3  Mark Craig Goodman, Esq.                    Attorneys for Defendants,
4  Amy Rose, Esq.                              U.S. Fire Insurance Company
   Squire, Sanders & Dempsey, L.L.P.
5  One Maritime Plaza, Suite 300
   San Francisco, CA 94111-3492
6  Tel.: (415) 954-0289 Fax: (415) 393-9887
7  Email: mgoodman@ssd.com
   arose@ssd.com

8

9  Chip Cox, Esq.                              Attorney for Defendant,
   Attorney at Law                             Markel American Insurance Company
10 465 California Street, Suite 500
   San Francisco, CA 94104
11 Tel.: (415) 397-2222 Fax: (415) 397-6392
   Email: chipc@longlevit.com
12

13

14      Executed on January 15, 2008, at Los Angeles, California. I certify (or declare) under penalty of
   perjury under the laws of the State of California that the foregoing is true and correct.
15

16

17                                    _Shirley Aoki_____
18                                    SHIRLEY AOKI

19

20

21

22

23

24

25

26

27

28