1  RICHARD DeNATALE (California Bar No. 121416)
   CELIA M. JACKSON (California Bar No. 124508)
2  Heller Ehrman LLP
   333 Bush Street
3  San Francisco, CA  94104-2878
4  Telephone: (415) 772-6000
   Facsimile: (415) 772-6268
5  Email:  richard.denatale@hellerehrman.com
   Email:  celia.jackson@hellerehrman.com
6
7  Attorneys for Plaintiffs
   LENSCRAFTERS, INC. and EYEXAM OF
8  CALIFORNIA, INC.

9
                IN THE UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| LENSCRAFTERS, INC. and EYEXAM OF CALIFORNIA, INC.,<br><br>                        Plaintiffs,<br><br>    v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>                        Defendants,<br><br>AND RELATED COUNTER- AND CROSS-CLAIMS. | Case No.:  C-07-2853 SBA<br><br>**DECLARATION OF CELIA M. JACKSON IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS *WITHOUT PREJUDICE* CLAIMS AGAINST LIBERTY MUTUAL FIRE INSURANCE COMPANY, EXECUTIVE RISK SPECIALTY INSURANCE COMPANY AND WESTCHESTER FIRE INSURANCE COMPANY**<br><br>Date: April 8, 2008<br>Time: 1:00 p.m.<br>Courtroom: 3<br>The Hon. Saundra Brown Armstrong |

I, Celia M. Jackson, declare:

1.   I am an attorney in the law firm of Heller Ehrman LLP, counsel of record for Plaintiffs LensCrafters, Inc. and EYEXAM of California, Inc. (together, "LensCrafters") in this action. I have personal knowledge of the matters stated in this declaration, and if I were asked to testify regarding these matters, I could competently do so.

2.   This lawsuit involves a dispute between LensCrafters and defendant insurers regarding indemnity coverage for a class action lawsuit entitled *Melvin Gene Snow, et al. v. LensCrafters, Inc., et al.*, San Francisco Superior Court Case No. CGC-02-40554 ("*Snow*"). The *Snow* action has been pending for nearly six years. After a year of intensive negotiations, however, including multiple mediation sessions with the Hon. Edward A. Infante (Ret.) and the Hon. Ronald M. Sabraw (Ret.), the parties in *Snow* were able to achieve a settlement. The settlement agreement covers a class of more than one million consumers and will provide a combination of cash and discount vouchers to class members.

3.   The parties presented the *Snow* settlement to the Hon. Richard A Kramer, who is presiding over the *Snow* case, on February 4, 2008. On that date, the court granted preliminary approval of the *Snow* settlement. The final approval hearing is scheduled for July 11, 2008.

4.   As part of the settlement negotiations with the *Snow* plaintiffs, LensCrafters reached settlement agreements with three of its insurers: Liberty Mutual Fire Insurance Company, Executive Risk Specialty Insurance Company and Westchester Fire Insurance Company. These insurers consented to the *Snow* settlement and each insurer agreed to provide funding for the settlement. Liberty and ERSIC's contributions have exhausted their policy limits. Defendants Markel American Insurance Company and United States Fire Insurance Company refused to participate in the settlement.

5.   The settlement agreements between LensCrafters and the settling insurers contain mutual releases. LensCrafters has also agreed to file dismissals without prejudice of its claims against these insurers immediately upon preliminary approval of the *Snow* settlement. These dismissals will become with prejudice if and when the *Snow* settlement receives final approval.

6.   On February 15, 2008, I circulated a draft of a stipulation to dismiss LensCrafters'

1

1 | claims against Liberty, ERSIC and Westchester to all defendants.  After negotiations over the
2 | language of the stipulation, all defendants other than Markel agreed within a few days to execute
3 | the stipulation.  Since then, I have made several attempts by telephone and email to obtain Markel's
4 | consent to the stipulation, but Markel has not provided it.  On February 20, 2008, I telephoned Chip
5 | Cox, Markel's counsel, to discuss the stipulation, but he was not in his office.  I then sent him an
6 | email requesting Markel's consent.  On February 21, Mr. Cox responded by email and informed me
7 | that he "hope[d]" to have his client's consent to sign the stipulation by February 22.  On February
8 | 22, I sent Mr. Cox an email stating that I needed Markel's consent no later than February 25.  As of
9 | the date of this filing, I have received no response to this email.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of February 2008 in San Francisco, California.

             ____/s/_Celia M. Jackson_____
                  Celia M. Jackson