1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Goodman (Cal. State Bar No. 154692)
2  David A. Gabianelli (Cal. State Bar No. 158170)
   Amy E. Rose (Cal. State Bar No. 222167)
3  Andrew L. Chang (Cal. State Bar No. 222309)
   One Maritime Plaza, Suite 300
4  San Francisco, CA  94111-3492
   Telephone:  +1.415.954.0200
5  Facsimile:  +1.415.393.9887
   Email:  mgoodman@ssd.com
6  Email:  dgabianelli@ssd.com
   Email:  arose@ssd.com
7  Email:  achang@ssd.com

8  Attorneys for Defendant
   UNITED STATES FIRE INSURANCE COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**(OAKLAND DIVISION)**

| | |
|---|---|
| LENSCRAFTERS, INC.; and EYEXAM OF CALIFORNIA, INC.; | Case No. C-07-2853 SBA<br>The Honorable Saundra B. Armstrong |
| Plaintiffs, | **E-FILING** |
| vs. | **UNITED STATES FIRE INSURANCE COMPANY'S OPPOSITION TO LENSCRAFTERS' MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE** |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY; EXECUTIVE RISK SPECIALTY INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY; MARKEL AMERICAN INSURANCE COMPANY; and WESTCHESTER FIRE INSURANCE COMPANY, | |
| Defendants. | **DATE:**  April 15, 2008<br>**TIME:**  1:00 p.m.<br>**CTRM:**  3 |

## I. INTRODUCTION

LensCrafters has not alleged -- and cannot yet allege as a matter of law -- a valid claim for breach of contract or breach of the covenant of good faith and fair dealing. In fact, these claims may never arise. Nevertheless, LensCrafters attempts to use the potentiality of these claims as a basis to delay the upcoming Case Management Conference for ninety (90) days. Despite LensCrafters' conclusory assertions, however, these claims will likely never become viable. In any event, it is not appropriate to delay case management of existing claims until other claims potentially ripen.

The sole claim in this lawsuit is one for declaratory judgment. The purpose of a declaratory judgment action is to obtain a judicial determination of contractual duties and obligations **before** a breach of law or contract has occurred. LensCrafters seeks to delay that determination to await the potential accrual of its breach and bad faith claims, which goal is fundamentally at odds with the very purpose of declaratory relief. At the upcoming Case Management Conference, the parties and the Court should focus on identifying, managing and setting a timeline for prompt resolution of the issues raised by this lawsuit as it is currently framed. The conference should go forward as ordered.

Even if LensCrafters had articulated a legitimate rationale for continuing the initial Case Management Conference in this case, the assertion that its breach claims will automatically accrue on July 11, 2008 is both legally and factually incorrect. (*See* LensCrafters' Motion to Continue April 23, 2008 Case Management Conference "Motion" at 1:23-26 and 5:4-7.) First, LensCrafters reaches this conclusion by claiming that the amount of the settlement in the *Snow* Action will be known on July 11, 2008. Not so. As LensCrafters points out in its moving papers, the claims deadline is August 4, 2008. Even providing a minimal amount of time for claims management, the monetary impact of the settlement will not be known until sometime in late-August, at the earliest.

Second, LensCrafters contends that its claims will necessarily accrue upon finalization of the settlement because its primary insurance has exhausted. (Motion at 3:12-15.) This is also incorrect. There has been no factual determination that LensCrafters' primary insurance has exhausted by payment of the full "per occurrence" limits of such policies. Exhaustion must be determined by this Court before U.S. Fire's policies are even potentially triggered and, therefore,

- 1 -

1 before any claim for breach may accrue. Simply put, there is no indication that this case will be in
2 any materially different posture on July 11, 2008 than it is today.

3 This Court should proceed without delay, as it ordered on February 11, 2008, in conducting
4 a Case Management Conference on April 23. The parties should be ordered to meet and confer and
5 formulate a case management plan that will resolve the issues raised by LensCrafters' declaratory
6 judgment claim. These issues include: (1) proving up the terms and conditions of the insurance
7 contracts at issue; (2) interpreting the meaning of the terms and conditions of those policies; and (3)
8 applying the facts of this case to the policies as interpreted by the Court. The overwhelming
9 majority of authority suggests that an insurance coverage declaratory judgment action is properly
10 phased to address these types of issues. The Court and the parties should proactively discuss these
11 matters now.

## II. DISCUSSION

### A. Continuing The Case Management Conference For Ninety Days Serves No Purpose

#### 1. The Issues Raised by LensCrafters' Initial Declaratory Relief Claim Should be Identified and Resolved

LensCrafters initially brought this action seeking "a declaration of the rights, duties and responsibilities of the parties under defendants' insurance policies" for the claims alleged in the *Snow* Action pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201, *et seq*. (First Amended Complaint ("FAC") at ¶¶ 4, 12.) Then, by amendment, LensCrafters attempted to plead claims for an alleged breach of a duty to settle the underlying *Snow* Action. This Court dismissed these additional claims as unripe based on *Hamilton v. Maryland Cas. Co.*, 27 Cal.4th 718, 725 (2002). (February 11, 2008 Order Dismissing Second and Third Claim for Relief ("February 11 Order") at 5:1-6:17 (Docket 115).)

The Court's ruling brings the litigation back to the sole claim with which it started almost a year ago: LensCrafters' claim for declaratory judgment. A claim for declaratory relief:

> is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication *without waiting until an adversary should see fit to begin an action after the damage has accrued*. It relieves potential defendants "from the Damoclean threat of

- 2 -

impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." **It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty** and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants. (Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d*, § 2751 WestGroup 1998 (citations omitted) (emphasis added).)

The parties should turn their attention to identifying the issues raised by the declaratory relief claim and focus on outlining the most efficient and expedient manner in which to resolve those issues. Instead, LensCrafters seeks to delay all further proceedings, except minimal document discovery, in order to try to maintain claims for breach.

But LensCrafters' plan to postpone case management flies in the face of the purpose of a declaratory judgment action, which is to ascertain the rights and obligations of the parties "to avoid incurring liability for future acts by obtaining judgment in advance of performance of the act at issue" and to "promote judicial efficiency by avoiding multiplicity of actions between the parties." *Pratt v. Wilson* 770 F. Supp. 539, 545 (E.D. Cal. 1991) (citing *Societe de Conditionnement v. Hunter Eng. Co., Inc.* 655 F.2d 938, 943 (9th Cir. 1981)). LensCrafters' request will prevent the defendants from taking advantage of the very certainty and "anticipatory" dispute resolution that declaratory relief is meant to provide.

LensCrafters should not be permitted to manipulate the timing of these proceedings to try to create ripe breach claims. A timely Case Management Conference -- focused on the creation of a case management plan that allows for the efficient admission of the policies into evidence, the interpretation of the disputed policy language and application of the facts of this case to the pertinent language -- is the usual and most efficient way to proceed.

### 2. Even if LensCrafters Had Identified an Appropriate Reason to Delay Case Management, Its Claims Will Not Ripen by July 2008

LensCrafters' proposal to postpone case management until after the final approval hearing in the underlying *Snow* Action would do nothing to further the goals and purpose of this declaratory relief action. Moreover, the dismissed breach claims will not accrue on July 11, 2008, so waiting 90 days makes no sense.

- 3 -

In its February 11 Order, the Court relied on the pronouncement in *Hamilton, supra*, 27 Cal.4th at 725, that a claim for breach of the duty to settle does not accrue until a judgment or settlement in excess of limits has, in fact, been entered (*i.e.*, establishing actual, not merely potential, damages). (February 11 Order at 5:1-6:17.) The Court specifically held that the requirement of actual damages in *Hamilton* is necessary because a contrary rule would permit LensCrafters to assert a claim of breach, when it may ultimately suffer no damages in excess of the underlying insurance. (*Id*. at 6:6-9.) Until damages in excess of limits have been established, "[t]he mere ***possibility*** of future damages is simply not sufficient in this context for a claim to accrue." (*Id*. at 6:10.) Accordingly, one of the fundamental issues in this declaratory relief action is whether the primary insurers' limits of liability have exhausted through payment of the final settlement amount. Resolution of this issue will necessarily govern whether any obligation is owed by LensCrafters' excess insurers, including U.S. Fire.

To establish that it has sustained damages to support claims for breach of contract and bad faith, LensCrafters must demonstrate the exact amount of the underlying *Snow* settlement and the "number of occurrences" that the *Snow* Action represents for purposes of applying the limits of primary insurance. Primary insurance, including the Liberty Mutual policies at issue here, often has limits that apply "per occurrence." Thus, the "number of occurrences" must be determined to know how many "per occurrence" limits the primary insurance must pay before exhaustion of all primary insurance occurs. Neither (1) the total amount of the *Snow* Settlement, nor (2) the total number of "per occurrence" limits of primary insurance applicable to the settlement needed to determine exhaustion, will be known in July 2008.

        a.    **The Total Cost of the *Snow* Settlement Will Not Be Known in July 2008**

As LensCrafters' own papers acknowledge, it is unlikely that the July 11 final approval hearing will actually result in "final approval" of the proposed settlement. Instead, "final approval" will necessarily be delayed by any objections made by class members. (Motion at 3:23-25.) Any appeals by those objectors will only further delay the settlement approval process and the settlement will not become final until all appeals have been resolved. (*Id*.) Thus, it is

- 4 -

most probable that the *Snow* Settlement will not be final by July 11 and that LensCrafters will again seek to delay the Case Management Conference, additional discovery, trial setting and dispositive motions three months from now.

Further, final approval of the *Snow* Settlement is not determinative of the accrual of LensCrafters' claims. As the Court already articulated, what is relevant is the total amount ***paid*** to settle the *Snow* claims and whether that amount is in excess of policy limits. (*See* February 11 Order at 5:1-6:17.) But the parties will not know the final settlement amount for the *Snow* Action on July 11 because the period for class members to submit claims does not even close until August 4, 2008. (Motion at 3:7.) Claims management and processing after August 4 will further delay any determination of the amount necessary to fully fund the *Snow* Settlement until at least mid-to-late August. Absent a final dollar figure, the parties cannot know whether the claims even potentially implicate the excess layer. Until the parties know whether the *Snow* Settlement exceeds the limits of LensCrafters' primary insurance, its excess carries cannot even potentially owe a duty to LensCrafters. Putting the Case Management Conference over 90 days will serve no purpose whatsoever -- even under Kelly-Moore's rationale -- in light of this timing.

### b. **Exhaustion of Primary Insurance Will Not Be Established by July 2008**

The other threshold fact that must be known before a claim of breach can be brought against any excess insurer is whether all primary insurance has been properly exhausted. LensCrafters currently seeks declaratory relief as to whether U.S. Fire and the other defendants owe a duty to indemnify the settlement in the underlying *Snow* Action and, if so, "which policies must pay and in what amounts." (FAC at ¶ 41.) In its motion to continue the Case Management Conference, however, LensCrafters now asserts that the limits of all applicable primary insurance have been exhausted. (Motion at 3:13-15.) This assertion is unsupported by any factual showings. Exhaustion of primary insurance has not been litigated, nor established (and, as of this Court's February order, could not even have been alleged). In fact, exhaustion was specifically identified by all parties as one of the key issues to be determined in this litigation. (*See* September 9, 2007 Revised Joint Case Management Statement at 5.) Until exhaustion is

- 5 -

established, no claim for breach of contract lies.

This Court's determination of certain foundational policy interpretation issues, such as the "number of occurrences" at issue in the underlying *Snow* Action, will potentially resolve the alleged liability of all the excess defendants by, for example, establishing that the *Snow* Action settlement is entirely within the primary insurers' limits of liability. As described more fully below, an appropriate case management plan will provide mechanisms for the efficient resolution and interpretation of such foundational issues. (*See Manual for Complex Insurance Coverage Litigation* ("*Manual*") (Aspen 2007) at § 2.06[b][7] ("[I]f certain issues require only limited discovery to make them ripe for summary adjudication, the parties should consider the benefits of completing such discovery early in the case. This permits them to proceed to dispositive motions on these issues, which may narrow or even dispose of the case").) After such determinations are made, then and only then must the parties and the Court consider any claims for breach of contract or bad faith, if any even potentially exist at that time.

**B.     The Parties Should Meet And Confer To Provide A Joint Case Management Plan As Ordered**

Early case management focus on LensCrafters' declaratory relief claim is appropriate. In addition to those issues set forth in this Court's Standing Order governing the Joint Case Management Statement, U.S. Fire suggests that the Court order the parties to meet and confer regarding particular issues of policy interpretation that need to be resolved in this case. Managing insurance coverage cases in this manner is recommended and outlined in the *Deskbook on the Management of Complex Civil Litigation* prepared by the California Judicial Council's Complex Civil Litigation Task Force. (*See* Judicial Council of California, *Deskbook on the Management of Complex Civil Litigation* ("*Deskbook*") (2007).) Similar guidance is provided by the Task Force of the Committee on Insurance Coverage Litigation of the American Bar Association. (*See Manual*.[1])

///

---

[1] For ease of reference, relevant portions of the *Deskbook* are attached hereto as Exhibit A. Relevant portions of the *Manual* are attached hereto as Exhibit B.

### 1. Voluntary Exchange of Policy Information

The *Deskbook* recommends that LensCrafters first provide the defendants with copies of all relevant policies and endorsements located by the insured.[2] (*See Deskbook* at § 3.31[2]; *see also Manual* at § 2.02[c].)  The defendants would then confirm in writing whether they dispute that any of the policies are accurate and complete and provide any additional policies, endorsements or supplements they believe are relevant to the policies at issue. (*Deskbook* § 3.31[2].)  The parties should then stipulate as to those portions they agree are correct and accurate and identify any disputes that may exist. (*Id.*)  U.S. Fire does not believe that there will be a substantial dispute, if any, over the accuracy or completeness of the policies at issue here. This voluntary exchange would benefit case management by allowing the parties to quickly identify any discrepancies between the policies that may affect the coverage analysis or the scope of discovery.

### 2. Later-Discovered Policy Information and Discovery

A case management order should include a provision requiring the parties to immediately produce any later-discovered documents regarding policy information or language. (*Id.* at § 3.31[4].)  This provision will help ensure that both the parties and the Court are aware of any developments that may affect the foundational issue of policy interpretation.

### 3. Initial Discovery

The *Deskbook* suggests the parties stipulate to the exchange of certain categories of documents and information which are already the subject of outstanding discovery between the parties. (*Id.* at § 3.31[7].)  Here, the parties have outstanding requests issued to one another. The parties should also be ordered to meet and confer on a regular basis to provide updates on the resolution of the *Snow* Action, including the number and types of claims that have been submitted by class members. This information, within the control of LensCrafters, will allow the parties to gauge whether the *Snow* settlement could even potentially implicate the excess layer and, if so, the scope of any potential damages.

---

[2] U.S. Fire has received most, but not all, of LensCrafters' policies that -- it contends -- provide coverage for the *Snow* Action.

- 7 -

### 4. Motion Practice

The *Deskbook* recognizes that many of the issues relevant in insurance coverage actions can be resolved early through motion for summary judgment practice. (*Id.* at § 3.32; *see also Manual* at § 2.06[b] ("Substantive discovery phasing, if properly employed, may, for example, facilitate dispositive motions, obviating the need for trial or narrowing the issues ultimately tried").) "Summary judgment is uniquely appropriate when the contract is before the court and the issue is contractual interpretation." *Connick v. Teachers Ins. & Annuity Ass'n of Am. & College Retirement Equities Fund*, 784 F.2d 1018, 1020 (9th Cir. 1986). The Court should, therefore, schedule resolution of as many policy interpretation issues as possible that do not require the resolution of any disputed material facts. U.S. Fire suggests that the issues ripe for this type of determination be discussed at a subsequent case management conference in September or October of this year, after the parties have met and conferred on all of the interpretation issues presented by the policies in this case.

### 5. Phasing the Trial

In the event dispositive motion practice is frustrated by material factual disputes, U.S. Fire submits that a phased trial would be appropriate to resolve any remaining issues.[3] A court can order a separate trial "of any claim . . .or of any separate issue" when doing so would further "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). The decision to phase an action into separate trials is within the sound discretion of the trial court and is especially appropriate when resolution of a single issue could be dispositive of the entire action. *See Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982); *Cook, supra*, 169 F.R.D. at 361 (bifurcating trials on breach of contract and bad faith in

---

[3] Examples of other cases in which courts have phased the trial include: *California Cafe Restaurant v. Nationwide Mut. Ins. Co.*, 1994 U.S. Dist. LEXIS 13175, *26 (N.D. Cal. 1994) (noting second phase unnecessary because there were no recoverable damages); *National Union Fire Ins. Co. of Pittsburgh, PA v. Seafirst Corp.*, 891 F.2d 762, 763 (9th Cir. 1989); *Cook v. United Servs. Auto. Ass'n*, 169 F.R.D. 359, 361 (D. Nev. 1996); *FMC Corporation v. Liberty Mutual Ins. Co.* (Santa Clara Superior Ct. No. 643058); *Martin Marietta Corporation v. Aetna* (Los Angeles Superior Ct. No. C-610358); *Procter and Companies v. Lockheed* (Santa Clara Superior Ct. No. 731752); *Hartford Accident & Indemnity Co., et al. v. Employers Ins. of Wausau [Syntex]* (San Francisco Superior Ct. No. C 847212); and *International Paper Co. v. Continental Casualty* (San Francisco Superior Ct. No. 930532).

insurance context).

Scheduling this matter for resolution in phases is consistent with the phasing approach suggested by the *Manual*. (*Manual* at § 6.03[b][3] ("In some cases a phased, or segmented, approach to trial can make trial preparation more efficient, avoid jury confusion and increase efficiency").) It is also consistent with the *Deskbook*, which recommends phasing an insurance coverage matter in the following phases, consistent with the defendants request here: Phase I – policy content and interpretation; Phase II – application of the policies to the evidence presented to determine the existence of the insurer's duty to indemnify; and Phase III – determination of damages for a breach of contract claim, if any, and allocation issues. (*See Deskbook* at § 3.32[1]-[3].) In the declaratory relief context, of course, Phase III may be unnecessary because ***avoiding*** damages is at the heart of the claim. Even assuming that Plaintiffs could properly assert a breach of contract claim at some point in the future, efficient resolution of the declaratory relief issues will focus the Court and the parties on what provisions or duties the defendants breached and what damages, if any, might have resulted from those breaches. (*Manual* at §6.03[b][3][*iv*] ("[P]roper allocation of damages is often a matter about which the parties will largely agree in light of the court's coverage determinations").) Thus, early resolution of the declaratory relief claim where, as here, breach of contract claims have not ripened (and may not ever do so), can promote judicial efficiency by limiting and tailoring the parties in discovery and trial of a later-asserted breach of contract claim. (*Id.* at § 2.06[b][6] ("[I]f the underlying claim or loss will not implicate high-level insurers, the parties may agree to delay discovery and consideration of any issues specific to these insurers until the amount of the claim or loss and the exhaustion, if any, of underlying layers is accurately quantified").) Resolution of any additional claims that might arise out of a breach of contract should, perforce, be resolved after determination of whether defendants have breached the contract..

    **a.**    **Phase I:  Policy Content and Interpretation**

As noted above, U.S. Fire does not expect that any disputes relating to missing, differing or incomplete policies will be present here.  To the extent any such issues arise, this phase of the trial would allow the parties to resolve the authenticity of any disputed policy provisions.

- 9 -

(*Deskbook* at § 3.33[1].)  After resolution of the content of all applicable policies, if necessary, the policy interpretation phase will resolve the meaning and construction of all relevant policy provisions and any other legal issues required for the fact finder to apply those policies to the facts involved.  (*Id.*)

        **b.**    **Phase II:  Application of the Policies**

Phase II would apply the policy provisions as interpreted in Phase I to determine whether the *Snow* Settlement is covered under each of the defendants' policies and, if so, when the different layers of coverage would exhaust, and would resolve all other issues where facts need to be applied to the policy terms.  (*Id.* at § 3.32[2].)

### III.  CONCLUSION

There is no reason to further delay the resolution of the parties' rights and obligations under the insurance policies at issue here.  Early case management provides a mechanism to guide the parties and potentially avoid the ripening of any breach of contract or bad faith claim by allowing the parties to determine whether coverage exists at all and, if so, which defendants would be responsible for what amount of the *Snow* Settlement.  That is the heart and purpose of a declaratory relief action.  The April 23, 2008 Case Management Conference should not be continued.  The parties should discuss with the Court a plan to meet and confer on the issues presented in this case and the impact of the *Snow* settlement.  Specifically, the Parties should be ordered to meet and confer regarding the results of the *Snow* settlement to determine whether the amount of underlying claims exceeds the limits of the primary insurance.  A further Case Management Conference should take place in September after the results of the *Snow* settlement are known.

Dated: March 25, 2008                            SQUIRE, SANDERS & DEMPSEY L.L.P.

                                                                                By:        */s/ David A. Gabianelli*
                                                                                  David A. Gabianelli

Attorneys for Defendant
UNITED STATES FIRE INSURANCE COMPANY

# PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is One Maritime Plaza, Third Floor, San Francisco, California 94111-3492.

On March 25, 2008, I served the following document described as:

**U.S. FIRE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO CONTINUE APRIL 23, 2008 CASE MANAGEMENT CONFERENCE**

☒ VIA THE UNITED STATES DISTRICT COURT ELECTRONIC FILING SERVICE on interested parties in this action as set forth below:

| | |
|---|---|
| Richard DeNatale, Esq.<br>Celia M. Jackson, Esq.<br>Heller Ehrman LLP<br>333 Bush Street<br>San Francisco, CA 94104-2878<br>Telephone:  (415) 772-6000<br>Facsimile:   (415) 772-6268<br>richard.denatale@hellerehrman.com<br>celia.jackson@hellerehrman.com | Terrence R. McInnis, Esq.<br>Ross, Dixon & Bell, LLP<br>5 Park Plaza, Suite 1200<br>Irvine, CA 92614<br>Telephone:  (949) 622-2700<br>Facsimile:   (949) 622-2739<br>tmcinnis@rdblaw.com |
| Robert D. Dennison, Esq.<br>Harris, Green & Dennison<br>5959 W. Century Blvd., Suite 1100<br>Los Angeles, CA 90045<br>Telephone:  (310) 665-8656<br>Facsimile:   (310) 665-8659<br>rdd@h-glaw.net | Alex F. Stuart, Esq.<br>Willoughby, Stuart & Bening<br>Fairmont Plaza<br>50 West San Fernando, Suite 400<br>San Jose, CA 95113<br>Telephone:  (408) 289-1972<br>Facsimile:   (408) 295-6375<br>afs@wsblaw.net |
| Chip Cox, Esq.<br>Long & Levitt<br>465 California Street, 5th Floor<br>San Francisco, CA 94104<br>Telephone:  (415) 438-4413<br>Facsimile:   (415) 397-6392<br>chipc@longlevit.com | |

Executed on March 25, 2008, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*/s/ David A. Gabianelli*
David A. Gabianelli

---